**Brian D. Whelan, Esq.  (SBN 256534)**
**WHELAN LAW GROUP, A Professional Corporation**
**1827 East Fir Avenue, Suite 110**
**Fresno, California   93720**
**Telephone: (559) 437-1079**
**Facsimile:  (559) 437-1720**
**E-mail: brian@whelanlawgroup.com**

Attorneys for: Defendant BENJAMIN PAUL MEREDITH

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN G. NUNES, | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]** |
| v. | |
| BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 to 100, Inclusive, | |
| Defendants. | |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF:

PLEASE TAKE NOTICE that Defendant BENJAMIN PAUL MEREDITH ("Defendant"), hereby removes this action from the Superior Court of California, County of Tulare, to the United States District Court, Eastern District of California, as further described below:

**JURISDICTION.**

1.      On or about October 5, 2020, a complaint was filed in the Superior Court of California, Tulare County, entitled, <u>Devin G. Nunes v. Benjamin Paul Meredith</u>, as Case No. VCU284528 (the "State Court Action"). True and correct copies of the pleadings received to date consisting of the Summons and Complaint, are attached hereto collectively as Exhibit "A."

2.      Plaintiff's Complaint asserts four causes of action: (1) Stalking (Cal. Civ.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]

1  Code §1708.7; (2) Aiding and Abetting; (3) Commercial Misappropriation; and (4) Unfair

2  Competition Law, (Bus. & Prof. Code § 17201 et seq.).

3      3.      In the State Court Action, on November 19, 2020, Defendant filed a Motion

4  to Strike the Compliant pursuant to California Code of Civil Procedure§ 425.16.  Thereafter, the

5  State Court continued the December 22, 2020 hearing date to January 22, 2021.  No decision,

6  tentative or otherwise, has been made by the State Court on the motion. True and correct copies of

7  the moving papers, opposition papers, and reply and sur-reply papers along with objections are

8  collectively attached hereto as Exhibit "B." On December 29, 2020, Plaintiff made a motion to

9  conduct discovery. True and correct copies of the moving papers, and opposition papers filed by all

10 parties are collectively attached hereto as Exhibit "C."  To date, no reply has been received. In the

11 State Court Action, no orders have issued with regards to Defendant's motion or Plaintiff's motion

12 for discovery. A hearing date will be promptly requested of this Court.

13     4.      On January 14, 2021, Plaintiff Devin Nunes dismissed all of the causes of

14 action against Defendant Twitter, Inc.. Thus, there are no other named Defendants in the complaint

15 aside from Defendant Meredith. Accordingly, joinder is not applicable. Attached hereto as Exhibit

16 "D" is a true and correct copy of the dismissal that has been filed and entered in the State Court

17 Action. Because Twitter has been dismissed, its motion to transfer venue from Tulare County to San

18 Francisco County is moot.  Attached as Exhibit "E" are the true and correct copies of the papers

19 associated with that motion.

20     5.      No previous requests have been made for the relief requested.

21     6.      This action is removable to the instant Court because diversity jurisdiction

22 exists as confirmed by 28 U.S.C. §1332, and consistent with 28 U.S.C. § 1446 (3) following receipt

23 of the January 14, 2021 dismissal.  Supplemental jurisdiction exists with respect to any remaining

24 claims pursuant to 28 U.S.C. §1367.

25                    **DIVERSITY OF CITIZENSHIP**

26     7.      As evidenced by Plaintiff's complaint, Defendant is a citizen of Washington.

27 / / /

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]

**AMOUNT IN CONTROVERSY**

8.     Through attorney's fees, compensatory damages, and other damages sought, Plaintiff seeks recovery in an amount believed to be in excess of $75,000.00. Though the amount has not been expressly stated in the complaint, similar complaints filed by Plaintiff Nunes across the country have sought damages in excess of millions of dollars.

9.     Accordingly, there is diversity of citizenship and the amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.  Diversity jurisdiction exists in this action and is removed to this Court pursuant to 28 U.S.C. §1441(b).

WHEREFORE, Defendant BENJAMIN PAUL MEREDITH, respectfully removes this action from the California Superior Court for the County of Tulare to this Court, pursuant to 28 U.S.C. §1332 and §1441(b).

Dated: January 20, 2021

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BENJAMIN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On January 20, 2021, I caused to be served the within document(s): **NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]**

( )   **VIA FAX:** by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:** by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)   **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)   **BY ELECTRONIC SERVICE:** by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

| | |
|---|---|
| Derek P. Wisehart<br>Law Offices of Derek P. Wisehart<br>2330 W. Main Street<br>Visalia, CA 93291<br>Tel: (559) 636-9473<br>Fax: (559) 636-9476<br>Email: derek@dwisehartlaw.com<br><br>Counsel for Plaintiff | Steven S. Biss<br>300 West Main Street, Suite 102<br>Charlottesville, Virginia 22903<br>Tel: (804) 501-8272<br>Fax: (202) 318-4098<br>Email: stevenbiss@earthlink.net<br><br>Counsel for Plaintiff |
| Thomas G. Sprankling (SBN 294831)<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Tel: (650) 858-6000<br>Fax: (650) 858-6100<br>Email:<br>thomas.sprankling@wilmerhale.com | Counsel for Defendant Twitter, Inc.   Patrick J. Carome (pro hac vice pending)<br>Ari Holtzblatt (pro hac vice pending)<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>Tel: (202) 663-6000<br>Fax: (202) 663-6363<br>Email: patrick.carome@wilmerhale.com<br>ari.holtzblatt@wilmerhale.com<br><br>Counsel for Defendant Twitter, Inc. |

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

4

NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]

1         I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3         Executed on January 20, 2021, at Fresno, California.

4              STACEY VUE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-457-1079
Fax: 559-457-1720

NOTICE OF REMOVAL BASED UPON DIVERSITY [28 U.S.C. §1441(b)]

# EXHIBIT "A"

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BENJAMIN PAUL MEREDITH, TWITTER, INC., AND DOES 1 TO 100, INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DEVIN G. NUNES

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* TULARE COUNTY SUPERIOR COURT, 221 SOUTH MOONEY BLVD., VISALIA, CA 93291 | **VCU284528** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DEREK P. WISEHART, ESQ., LAW OFFICES OF DEREK P. WISEHART, 2330 W. MAIN ST., VISALIA, CA 93291; (559) 636-9473

| DATE: *(Fecha)* October 5, 2020 | Stephanie Cameron | Clerk, by *(Secretario)* | Saeta | , Deputy *(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, (POS-010).)

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

1   Derek P. Wisehart, Esq. #178100
    Law Offices of Derek P. Wisehart
2   2330 W. Main Street
    Visalia, California 93291
3   Telephone:    (559) 636-9473
    Facsimile:    (559) 636-9476
4   Email: derek@dwisehartlaw.com

5   Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
6   300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
7   Telephone: (804) 501-8272
    Facsimile: (202) 318-4098
8   Email: stevenbiss@earthlink.net
    *(Application for Admission Pro Hac Vice*
9   *To be Filed)*

10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF TULARE

15

16  DEVIN G. NUNES.                          Case No. **VCU284528**

17                Plaintiff,                  **COMPLAINT FOR:**

18  vs.                                       1.  **STALKING**
                                                  (Cal. Civ. Code §1708.7)
19  BENJAMIN PAUL MEREDITH,
    TWITTER, INC., and                        2.  **AIDING AND ABETTING**
20  DOES 1 to 100, Inclusive,
                                              3.  **COMMERCIAL**
21                Defendants.                     **MISAPPROPRIATION**

22                                            4.  **UNFAIR COMPETITION**
                                                  (Bus. & Prof. Code §17200 et seq.)
23
                                             **Case Management Conference**
24                                           02/03/2021 08:30 AM   Department 02

25      Plaintiff, Devin G. Nunes ("Plaintiff"), by his undersigned counsel, files the following

26  Complaint against defendants, Benjamin Paul Meredith ("Meredith"), Twitter, Inc. ("Twitter"),

27  and Does 1-100 (the "Doe Defendants"), jointly and severally.

28

                                    **COMPLAINT**

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF TULARE

**10/05/2020**

STEPHANIE CAMERON, CLERK
Nay Saelee, Deputy

**Assigned to Judicial Officer**

Nathan Ide

**For All Purposes**

Plaintiff seeks damages in a sum to be determined by the Jury, plus permanent injunctive relief, prejudgment interest, attorneys' fees and costs incurred -- arising out of the Defendants' stalking, aiding and abetting, common law commercial misappropriation, and violation of California's unfair competition law, Bus. & Prof. Code § 17200 *et seq.*

## I. SUMMARY OF THE ACTION

1.      Meredith is a computer data scientist who runs a network of anonymous Twitter accounts that stalk Plaintiff 24-hours, every day. He is a powder-keg. Meredith harbors a deep-seated anger and obsession with Plaintiff, a prominent Republican Congressman from Tulare County.  Removed as an instructor at multiple colleges, Meredith was asked to leave the Tulare County Republican Party Central Committee due to his inappropriate relationships with female students.   Plaintiff was part of a group that asked to limit Meredith's activities with the Republican Party. Meredith is a violent, repeat offender who was convicted of multiple batteries, including battery upon a non-cohabitating partner, and malicious damage to telephone/power lines.  After having failed to pay his taxes, he fled California for Washington State, where he now helps run the tech company DKE Technologies.  For over two (2) years, Meredith has obsessively targeted Plaintiff.  The number and tenor of the cyber-attacks (described below) is escalating.  Meredith associates and coordinates attacks upon Plaintiff with violent extremists, such as convicted animal enterprise terrorist Andrew Stepanian, and others with whom he is in private communication.  In September 2019, Meredith threatened Plaintiff's life in a quickly-deleted tweet[1] that Plaintiff referred to the District of Columbia Capitol Police, who took the threat very seriously.  Meredith controls multiple anonymous Twitter accounts that he uses multiple times *daily* to viciously attack Plaintiff.  With Twitter's knowledge and direct

---

[1]      Whether it's over social media or via a text message or email, issuing a hoax threat is a Federal crime. [https://twitter.com/FBI/status/1066011067124539392].

2
**COMPLAINT**

participation, Meredith, in violation of § 1708.7 of the California Civil Code, has used Twitter in the past two years to deploy *thousands* of incendiary and hateful comments with the intent to injure, alarm, harass, dox and intimidate Plaintiff.  In one recent example, on August 27, 2020, Plaintiff was harassed on an airplane by a political activist working with Meredith.  Within minutes of Plaintiff deplaning, Meredith approvingly posted photos of the incident and doxxed Plaintiff's location dozens of times.  Plaintiff is unnerved and harassed by Meredith's escalating obsessive and compulsive behavior, which was/is intended to cause Plaintiff to fear for both his safety and for the safety of his family and staff.

2.      This action arises out of tortious conduct undertaken by Meredith, Twitter and the Does.  Meredith violated § 1708.7 of the California Civil Code and California common law.  He is liable for the torts of stalking and commercial misappropriation.  Twitter is liable for aiding and abetting Meredith's unlawful acts and for violation of California's unfair competition law. In this case, Plaintiff seeks general damages, special damages, punitive damages pursuant to § 3294 of the California Civil Code, and permanent injunctive relief to stop future stalking, misappropriation and unlawful, fraudulent and unfair competition.

## II.  PARTIES, JURISDICTION AND VENUE

3.      Plaintiff is a citizen of California.  He is 47 years old.  He is married with three daughters.  He lives with his family in Tulare County.  Plaintiff has an office in Visalia.  He has served in the United States House of Representatives since 2003.  He currently represents California's 22nd Congressional District.   He is the author of the book, *Restoring the Republic*, which was published in September 2010.  Plaintiff graduated from Tulare Union High School.  After associate's work at College of the Sequoias, he graduated from Cal Poly San Luis Obispo, where he received a bachelor's degree in agricultural business and a master's degree in agriculture.  Plaintiff was first elected to public office as one of California's youngest community

1  college trustees in state history at the age of 23.  In 2001, he was appointed by President George

2  W. Bush to serve as California State Director for the United States Department of Agriculture's

3  Rural Development section.  He left this post to run for California's 21st Congressional District

4  and now serves in the 22nd District as a result of redistricting in 2010.  Plaintiff serves as Ranking

5  Member of the House Permanent Select Committee on Intelligence, having been appointed to

6  the Committee in the 112th Congress and serving as Committee Chairman during the 114th and

7
115th Congresses.  He was appointed to the Ways and Means Committee in the 109th Congress
8
9  and now serves as a Ranking Member of the Health Subcommittee and a member of the Trade

10  Subcommittee, having served as Chairman of the Trade Subcommittee in the 113th Congress.  In

11  the 108th Congress, his first term in the House of Representatives, he served on the House

12  Resources Committee, in which he was Chairman of the National Parks Subcommittee, and on

13
the Agriculture and Veterans Affairs Committees.  Plaintiff has traveled extensively to war zones
14
15  to meet with soldiers and examine first-hand their status.  As a member of the House Permanent

16  Select Committee on Intelligence, he participates in oversight of the U.S. national security

17  apparatus, including the intelligence-related activities of seventeen agencies, departments, and

18  other elements of the United States Government.  He authored the Hubbard Act of 2008 (H.R.

19  5825), which was named in honor of the Hubbard brothers of California – Jared, Nathan, and

20  Jason.  Jared and Nathan lost their lives serving in Iraq.  Jason was discharged as a sole survivor,

21
but was denied separation benefits upon leaving the Army.  The Hubbard Act, which was enacted
22
23  into law, provides sole survivors with numerous benefits that were already offered to other

24  soldiers honorably discharged.  It relieves sole survivors from repaying any portion of their

25  enlistment bonus; entitles them to the educational benefits of the Montgomery GI Bill; and allows

26  them      to      receive      separation      pay      and      transitional      healthcare      coverage.

27  [https://nunes.house.gov/about/; https://www.devinnunes.com/bio].  Plaintiff's career as a U.S.

28

Congressman is distinguished by his honor, dedication and service to his constituents and country, honesty, integrity, ethics, and reputation for truthfulness and veracity.

4.     Defendant Meredith is a citizen of the State of Washington.  He lives in Gig Harbor, Washington.  He is 58 years old.  A sophisticated artificial intelligence (AI) data scientist, Meredith is co-founder, chief information officer and chief technology officer of DKE Technologies, a company that creates and delivers complex AI business solution products and services to customers.[2]  Meredith's background, training and extensive experience in computer science facilitated his ability to use the Twitter architecture to stalk Plaintiff.  Meredith is a prolific abuser of social media.[3]  Between 2018 and the present, with Twitter's knowledge and consent, Meredith created and employed multiple anonymous Twitter accounts in a scheme to follow, alarm and harass Plaintiff.  Meredith published and republished thousands, perhaps hundreds of thousands, of tweets that directly violated Twitter's terms of service.  The sheer volume of Meredith's tweets, retweets, replies, likes and other attacks upon Plaintiff is unprecedented.  The volume and substance of Meredith's vile and inciteful comments, together with his express threats and his coordination with violent third parties, demonstrates a depraved mind and credible threat of imminent bodily harm to Plaintiff.

5.     Defendant Twitter, is a citizen of California.  In its public filings with the Securities and Exchange Commission ("SEC"), Twitter represents that:

///
///

---

[2]     Meredith's partner and co-founder of DKE Technologies is Paul Privateer ("Privateer").

[3]     Although his social media presence largely consists of anonymous accounts, Meredith uses his own name on Medium (https://medium.com/), where he principally reposts comments about graphic and deviant sexual proclivities, political themes, and technology. [https://medium.com/@benpmeredith/has-recommended].

**COMPLAINT**

"Our primary service, Twitter, is a global platform for public self-expression and conversation in real time. Twitter allows people to consume, create, distribute and discover content and has democratized content creation and distribution. The reach of Twitter content is not limited to our logged-in users on the Twitter platform, but rather extends to a larger global audience. The public nature of the Twitter platform allows us and others to extend the reach of Twitter content beyond our properties."

In an effort to support Meredith that was (and is) encouraged by Twitter's CEO and its Board of Directors, Twitter (a) knowingly permitted hundreds of accounts to be created and used for the sole purpose of harassing Plaintiff, including the accounts controlled by Meredith and the Doe Defendants, (b) knowingly and repeatedly violated its own terms of service so as to facilitate the constant harassment, (c) knowingly permitted Meredith and others to misappropriate Plaintiff's name and likeness to use the Twitter platform as a profit center at Plaintiff's cost and expense, and (d) intentionally ignored Plaintiff's demands to cease and desist the unlawful use of Twitter's platform. Twitter has even gone so far as to censor and shadow-ban Plaintiff. Its institutional bias and malice towards Plaintiff is self-evident.

6.      The Doe Defendants are approximately 100 persons and or bots that use Twitter's platform, with Twitter's knowledge and consent, to follow, alarm and harass Plaintiff and misappropriate his name and likeness. The true names of the Doe Defendants, whether they be individuals, corporations, public interest groups, persons associated-in-fact or otherwise, are known to the Doe Defendants and Twitter, but are unknown to Plaintiff at this time and, therefore, Plaintiff sues the Doe Defendants by their fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Doe Defendants were in some manner culpable and/or responsible for the events and happenings alleged in this Complaint and, thereby, proximately caused injury and damage to the Plaintiff as alleged herein.

7.     Jurisdiction and venue are proper in this Court because the Defendants conducted business in Tulare County and caused injury to Plaintiff in Tulare County.  A substantial part of the events giving rise to the claims stated in this action occurred in Tulare County.

## III.  FACTUAL ALLEGATIONS

8.     Meredith is well-funded in his stalking campaign against Plaintiff by the Voter Protection Project ("VPP"), a Carey committee located in Seattle, Washington, and by others whose identities are concealed.[4]

9.     Between February 2018 and the present, Meredith has engaged in a pattern of conduct the intent of which was (and is) to follow, alarm and harass Plaintiff.  Using multiple Twitter accounts, Meredith tweeted and retweeted *thousands* of false, threatening, hateful, riotous, profanity-laced, salacious and scandalous statements about Plaintiff, including lewd, lascivious and hateful images of Plaintiff, statements accusing Plaintiff of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts.  Meredith used the false and misleading information to harass Plaintiff and interfere with his life, Congressional responsibilities and professional relationships.  In addition to the tweets, Meredith created, seeded and repeatedly

---

[4]     A Carey committee is a hybrid political action committee that is not affiliated with a candidate and has the ability to operate both as a traditional PAC, contributing funds to a candidate's committee, and as a super PAC, which makes independent expenditures.  To do so, Carey committees must have a separate bank account for each purpose.  The committee can collect unlimited contributions from almost any source for its independent expenditure account, but may not use those funds for its traditional PAC contributions.  VPP uses the Internet and telephone (wires) in interstate commerce to solicit donations from persons across the country.  Upon information and belief, VPP misrepresents and conceals the intended use of the donations, which are, in part, directed to Meredith to fund his stalking.  VPP's contributions to Meredith's unlawful activities also violate one or more campaign finance and Federal Election Commission ("FEC") disclosure laws.

used derogatory, insulting and threatening hashtags[5] within tweets about Plaintiff, and encouraged others to get the hashtags trending.  Meredith directly threatened Plaintiff's life and threatened to come after Plaintiff.  Meredith threatened to take Plaintiff's property.  Meredith incited people to vandalize Plaintiff's property.[6]  Meredith threatened to use deep fakes. Meredith relentlessly monitored and followed Plaintiff's personal and professional activities almost hourly, and routinely threatened to show up at fundraisers and other events and to disrupt Plaintiff's business.  Meredith tagged[7] Plaintiff and his colleagues.  Meredith solicited agents to search Plaintiff out at airports and events, including recently at the Republican National Convention, to watch Plaintiff, to surreptitiously photograph and videotape Plaintiff, his campaign vehicles, etc., and to post the photos and video to Twitter and incite third parties to harass Plaintiff and anyone that Meredith could identify as having a personal or business

---

[5]      A hashtag is a keyword or a phrase used to describe a topic or a theme, which is immediately preceded by the pound sign (#).  Hashtags target a subject and help other users find the topic.  A hashtag automatically becomes a clickable link when it is tweeted.  Anyone who sees the hashtag can click on it and be brought to a page featuring the feed of all the most recent tweets that contain that particular hashtag.  Twitter users are free to develop and use their own hashtags as long as they fall within the Twitter Rules set out by the company.  These Rules prohibit offensive and threatening language, as well as impersonating an individual, group or business.

[6]      These attacks are escalating.  In two separate incidents in August 2020, one of Plaintiff's staff members had his car vandalized and severely damaged outside Plaintiff's Visalia office, and another staff member had a bottle thrown at a campaign vehicle – pictures of which Meredith had posted online – as she drove it.

[7]      In his tweets, Meredith "tagged" Plaintiff's colleagues and opponents as a means of escalating the harassment and spreading the disinformation.  "Tags" are tweets that contain another account's username, preceded by the "@" symbol.  For example: "@".  "Tagging" someone is a way of including them in a conversation.  Tags appear on the sender's profile page of public tweets *and* in the recipient's notifications tab *and* will appear on the recipient's home timeline view if the recipient of the tag follows the sender.  Anyone who follows the sender of a tag, *i.e. anyone who follows any of Meredith's multiple Twitter accounts*, will also see the tweet in their home timeline. [https://help.twitter.com/en/using-twitter/types-of-tweets].

relationship with Plaintiff.  Meredith documented his actions on Twitter in order to send a message and threaten Plaintiff and cause him to fear for his personal safety.  Meredith regularly harasses and encourages others to harass Plaintiff at public events, severely limiting Plaintiff's freedom of movement.  Plaintiff reasonably believes that Meredith's ongoing pattern of conduct will eventually result in a violent attack on Plaintiff, his family, or his staff.

10.    Twitter is a social networking and micro-blogging service that allows users to post "tweets" and to "retweet" and "like" others' posts.  "A tweet is a short text post ... delivered through Internet or phone-based text systems to the author's subscribers". *United States v. Feng Ling Liu*, 69 F.supp.3d 374, 377 (S.D.N.Y. 2014); https://help.twitter.com/en/using-twitter/types-of-tweets (in general, a "tweet" is a "message posted to Twitter containing text, photos, a GIF, and/or video").  A "retweet" is simply a repost of another Twitter user's tweet on a user's own profile to show to that user's own followers. [https://help.twitter.com/en/using-twitter/retweet-faqs].

11.    Twitter uses its platform, including its proprietary algorithms, selectively to convey its corporate/institutional viewpoint, its position on issues and candidates for office, such as Plaintiff, to influence the outcome of elections, and as a dumping ground for opposition research.  Twitter and its CEO, Jack Dorsey, actively censor and discriminate against Plaintiff, and endorse and promote the many agendas of the Democratic Party and its media and non-media sympathizers, like VPP.

12.    For people like Meredith who live in the United States, the "Twitter User Agreement" is comprised of "Terms of Service", a "Privacy Policy", the "Twitter Rules" and all incorporated policies. [https://twitter.com/en/tos].  Twitter represents that its Terms of Service and Rules apply to all registered users.

13.    The Terms of Service ("Terms") govern a user's access to and use of Twitter's services, including its various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and other covered services ("Services"). Twitter contends that by using the Services, a user agrees to be bound by the Terms. [https://twitter.com/en/tos].   In order to protect the experience and safety of people who use Twitter, Twitter represents that it imposes limitations on the type of content and behavior that it allows.  These limitations are set forth in the Twitter Rules.  As a general rule, the Twitter Rules prohibit use of the platform for "any unlawful purposes or in furtherance of illegal activities."  Unlawful purposes and illegal activities include stalking, abusive behavior, hateful conduct, and defamation.  Twitter represents that it believes in

"freedom of expression and open dialogue, but that means little as an underlying philosophy if voices are silenced because people are afraid to speak up.  In order   to ensure that people feel safe expressing diverse opinions and beliefs, we prohibit behavior that crosses the line into abuse, including behavior that harasses, intimidates, or uses fear to silence another user's voice."

To this end, the Twitter Rules expressly bar "abuse" and "hateful conduct":

"Abuse:    You may not engage in the targeted harassment of someone, or    incite other people to do so.  We consider abusive behavior an attempt to harass, intimidate, or silence someone else's voice."
...

Hateful conduct:    You may not promote violence against, threaten, or harass  other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease.

Hateful imagery and display names:  You may not use hateful images or symbols in your profile image or profile header.  You also may not use your username, display name, or profile bio to engage in abusive behavior, such as targeted harassment or expressing hate towards a person, group, or protected category.

**Impersonation**

You may not impersonate individuals, groups, or organizations in a manner that is intended to or does mislead, confuse, or deceive others.  While you may maintain parody, fan, commentary, or newsfeed accounts, you may not do so if the intent of the account is to engage in spamming or abusive behavior.

10
**COMPLAINT**

[https://help.twitter.com/en/rules-and-policies/twitter-rules].  Twitter's rationale for prohibiting

abusive behavior is as follows:

> "On Twitter, you should feel safe expressing your unique point of view.   We
> believe in freedom of expression and open dialogue, but that means little as an
> underlying philosophy if voices are silenced because people are afraid to speak up.
>
> In order to facilitate healthy dialogue on the platform, and empower individuals to express
> diverse opinions and beliefs, we prohibit behavior that harasses or intimidates,   or   is
> otherwise intended to shame or degrade others."

Twitter acknowledges that:

> "In addition to posing risks to people's safety, abusive behavior may also lead to
> physical and emotional hardship for those affected."

[https://help.twitter.com/en/rules-and-policies/abusive-behavior].

14.     Twitter can suspend or terminate an account or cease providing the user with all

or part of the Services at any time for any or no reason, including, but not limited to, if Twitter

believes: (i) the user has violated the Terms or the Twitter Rules, or (ii) the user creates risk or

possible legal exposure for Twitter.  Twitter reserves the right to remove content that violates the

User Agreement, including for example, content that constitutes or involves "unlawful conduct"

or "harassment". [https://twitter.com/en/tos].

15.     In spite of its own Terms of Services and Rules, Twitter knowingly allowed

Meredith and others to create hundreds of accounts, act in concert, misappropriate Plaintiff's

name, photograph and likeness, target and bombard Plaintiff hourly every day, and repeatedly

harass Plaintiff with abusive and hateful content and lewd and lascivious images and videos.

16.     Twitter provides a means to report these violations of its Terms and Rules.

[https://help.twitter.com/en/rules-and-policies/twitter-report-violation;

https://help.twitter.com/forms/abusiveuser].  Twitter claims it reviews and takes action on reports

of    abusive    behavior    and    hateful    content.    https://help.twitter.com/en/rules-and-

policies/enforcement-options].  Twitter publicly professes to monitor its platform, as part of its

11
**COMPLAINT**

1   effort to self-regulate content and conduct and avoid regulation by both State and Federal

2   Governments.   [*See, e.g.*,   https://mashable.com/2017/11/17/twitter-hate-speech-symbols-

3   december-18/;  https://www.cnbc.com/2018/08/20/trump-says-its-very-dangerous-when-twitter-

4   facebook-self-regulate-content-reuters.html].

5       17.    In spite of its own Terms and Rules and public representations, Twitter

6   consciously ignored Meredith's abuse and harassment, and the abuse and harassment inflicted

7   upon Plaintiff by the Doe Defendants and other accounts.   When Meredith baited Twitter's

8   content moderators with intentionally hateful content about Plaintiff, and challenged Twitter to

9   moderate the content, Twitter did not even respond.   Twitter allowed Meredith and the Doe

10  Defendants to tweet and retweet abusive, alarming, harassing and hateful content with impunity

11  throughout 2018, 2019 and 2020.   Twitter even permitted Meredith to threaten Plaintiff's life.

12  Twitter did nothing to censure or suspend Meredith or any of the Doe Defendants.

13

## FIRST CAUSE OF ACTION

### (Stalking, Cal. Civ. Code § 1708.7)

14      18.    Plaintiff restates paragraphs 1 through 17 of this Complaint, and incorporates

15  them herein by reference.

16      19.    Between 2018 and the present, Meredith engaged in a pattern of conduct

17  (described above) the intent of which was to follow, alarm or harass Plaintiff.   Meredith's

18  unrelenting use of multiple Twitter accounts and his repeated misconduct on Twitter, including

19  his threat to Plaintiff's life and his exploitation of Twitter's architecture (hashtags, tagging,[8] etc.)

20  to follow, harass and dox Plaintiff, corroborates and demonstrates his intent, including his intent

---

[8]      For Meredith, it was very personal.  In addition to referencing Plaintiff by name and using his photograph, Meredith tagged Plaintiff ("@DevinNunes") in hundreds of offensive tweets and retweets.  Meredith's statements were not randomly published to the Internet.  Rather, they showed up at Plaintiff's social media doorstep on Plaintiff's Twitter feed.

to embarrass Plaintiff, to make Plaintiff's life miserable, and to instill fear in Plaintiff and others targeted by the harassment campaign. Meredith knew that his statements were widely available on the Internet, and that when Plaintiff saw he was being followed and photographs were being posted of him at airports, on airplanes, at fundraisers, and elsewhere, Plaintiff could easily feel threatened and intimidated, especially in the aftermath of the death of George Floyd and the cold murder of public servants.

20.     As a result of that pattern of conduct, Plaintiff reasonably feared for his safety and the safety of his family and staff. He was (and is) well aware that he had been targeted by Meredith. Due to the number of accounts controlled by Meredith, the volume (weight) and frequency (velocity) of the hateful postings and the invectives and vitriol repeatedly employed by Meredith, Plaintiff experienced substantial emotional distress. Meredith's use of Twitter was and is such that a reasonable person would suffer substantial emotional distress under the circumstances.

21.     Meredith acted with reckless disregard for Plaintiff's safety. He made multiple credible threats with intent to place Plaintiff in reasonable fear for his safety. The severity, tenor, frequency and escalating nature of Meredith's tweets and retweets, including the prevalent doxing of Plaintiff's picture and physical location, caused Plaintiff to reasonably fear for his safety and the safety of his immediate family and staff.

22.     In 2019, Plaintiff clearly and definitively demanded that Meredith cease and abate his pattern of conduct. Meredith persisted in his pattern of conduct and, indeed, he escalated the harassment. Meredith's conduct was (and is) oppressive and malicious.

23.     Meredith is liable for the tort of stalking in violation of § 1708.7 of the California Civil Code. Meredith used Twitter as the means by which he waged a campaign of stalking and harassment against Plaintiff. Meredith's actions constitute true threats, incitement, a course of

criminal conduct, and/or speech integral to criminal conduct or implementing a criminal purpose.

24.    As a direct result of Meredith's stalking, Plaintiff suffered (a) general damages, including, without limitation, pain and suffering, shame, mortification, damage to his reputation, and injury caused by Meredith's numerous false statements (b) special damages, including, without limitation, added cost and expense of security, career damage, impact upon his prospects for career advancement, and damage to his property, business, trade, profession and occupation, (c) punitive damages, (d) attorney's fees, and (e) court costs and other out-of-pocket expenses in a sum to be determined by the Jury.

25.    In addition to money damages, Plaintiff seeks equitable relief, including, but not limited to, an injunction (a) to order Meredith and Twitter to identify all accounts controlled and/or operated by Meredith, (b) to permanently enjoin and order Twitter to suspend Meredith and to deactivate all hyperlinks to all tweets, retweets, replies and likes by Meredith that are part of the pattern of conduct in violation of § 1708.7, and (c) to permanently prohibit Meredith from engaging in any future acts of stalking in violation of California law.  Plaintiff has no adequate remedy at law.  There is a substantial likelihood that Plaintiff will succeed on the merits of his claim against Meredith.  Without Court intervention and an injunction, he will suffer actual, irreparable and continuing injury to his property interests and personal rights.  Ultimately and as intended, Meredith's stalking will end in tragedy.

## SECOND CAUSE OF ACTION

### (Aiding and Abetting)

26.    Plaintiff restates paragraphs 1 through 25 of his Complaint, and incorporates them herein by reference.

27.   Meredith is liable to Plaintiff for the tort of stalking.   Twitter knowingly aided, abetted, counseled, commanded, induced or procured the substantive acts of stalking by Meredith described above.

28.   Through its review of account opening documentation and enforcement of its Terms of Service and Rules, including active daily content moderation, Twitter had actual knowledge that Meredith created and operated multiple accounts all targeting Plaintiff, and that Meredith used these Twitter accounts daily to stalk and harass Plaintiff.   In setting up the accounts, Twitter required Meredith to provide his name, phone number or email address, and date of birth.   Twitter represents that it actively monitors all accounts, so it knew, *inter alia*, that Meredith used Twitter to threaten Plaintiff's life and that Meredith was (and is) using multiple accounts to target, follow and harass Plaintiff *every day for over two years*.   Plaintiff also alerted Twitter about Meredith's conduct and asked Twitter to intervene to stop Meredith's stalking and harassment.   Twitter was well aware of Meredith's actions and his intent.   Twitter knew that Meredith's conduct was unlawful, fraudulent and unfair.   Indeed, Twitter took legal action against a user in 2012 who engaged in similar conduct using multiple accounts to violate Twitter's Terms of Service. *See Twitter, Inc. v. Skootle Corp.*, 2012 WL 2375486 (N.D. Cal. 2012) ("Twitter seeks preliminary and permanent injunctive relief restraining Harris from: (a) creating Twitter accounts for purposes that violate the TOS, including 'bot' accounts; (b) accessing or searching Twitter accounts for purposes that violate the TOS; (c) transmitting unsolicited commercial messages via Twitter; (d) engaging in false or misleading advertising; and (e) engaging in any violations of the TOS. Twitter also seeks compensatory, statutory, punitive, and exemplary damages, restitution, and disgorgement of profits, reasonable costs, and attorneys' fees as permitted by law.").

29.     Twitter provided substantial assistance and encouragement to Meredith by (a) knowingly hosting and monetizing the abusive and hateful content – providing Meredith with the platform and voice, exposure to a massive audience, and a financial profit center (means and opportunity to stalk Plaintiff), (b) permitting its platform to be populated and used by bots[9] whose sole purpose was/is to artificially republish and amplify Meredith's harassment, (c) intentionally abandoning and refusing to enforce its Terms of Service and Rules against Meredith and others who harass Plaintiff with the express purpose to facilitate the stalking, (d) completely ignoring lawful complaints about Meredith's repeated violations of the Twitter Terms of Service and Rules, (e) instructing its so-called Fact-Checking Network of human content moderators to disregard Meredith's accounts and others' abuse of Plaintiff, (f) programming its algorithms to disregard the harassment perpetrated by Meredith, his accounts and agents, (g) ratifying the malicious conduct of Meredith and other Twitter users by knowingly allowing them to continue to follow and harass Plaintiff on Twitter, (h) selectively encouraging defamation of Plaintiff in order to further Twitter's left-wing political agenda, to undermine public confidence in Plaintiff and to benefit his opponents and opponents of the Republican Party, and (i) by misrepresenting that Twitter is accountable for its actions and for the enforcement of its Terms of Service, Rules

---

[9]     According to Twitter, a bot is simply an "automated account". [https://blog.twitter.com/en_us/topics/company/2020/bot-or-not.html].   Upon information and belief, approximately one-third of all accounts on Twitter are bots.  As this case demonstrates, Twitter permits bots to manipulate its platform by artificially amplifying conversations, including through the creation of multiple overlapping accounts, and by engaging in bulk or aggressive tweeting and retweeting, engaging, and following.  Meredith's accounts operate as a "bot farm" 24-hours/day.  They give the fraudulent appearance of wide-spread, grass-roots support, which increases the security risks to Plaintiff.  Twitter intentionally gave Meredith the ability to use its architecture in every illegal way possible to stalk Plaintiff.  Twitter's misconduct is highlighted by its treatment of parody account @AOCPress.  Twitter accused the account holder of running a bot farm and tweeting from multiple accounts.  Twitter permanently suspended the account. Not so with Meredith.  Twitter knowingly aided and abetted Meredith in his campaign of harassment against Plaintiff.

and policies. [https://twitter.com/jack/status/1265837138114830336].   Twitter provided a "public square" for Meredith and other Democratic political operatives, while censoring and suspending accounts run by Republicans.   For example, in May 2019, Twitter permanently suspended the parody account @AOCPress, which satirized Democratic Congresswoman Alexandria Ocasio-Cortez.[10]  @AOCPress did not engage in anything remotely resembling the aggressive stalking of Plaintiff perpetrated by Meredith from multiple anonymous accounts, in violation of Twitter's Rules.  Meredith's use of Twitter to harass Plaintiff is part of a scheme or artifice engineered by Twitter and its CEO.  Twitter is fully aware that individuals, such as Meredith, and other public-interest groups (cells and coalitions of such groups) are using the platform to engage in information warfare against Plaintiff.  Twitter has adopted and embraced a corporate policy that permits this egregious targeting and misconduct.

30.    Twitter is guilty of oppression, fraud and malice.  Twitter's Terms of Service and Rules intentionally misrepresent that Twitter forbids stalking, harassment and abuse.  In truth, Twitter allows Meredith and others to use its platform to break the law.  Twitter's representations were and are material.  Twitter's entire business (and stock price) is predicated on its ability to sell advertisements.  If the truth was known — that Twitter is really a platform for stalking, harassment, pornography and other vices — Twitter's advertising revenue would disappear. Twitter conceals the very existence of Meredith and his multiple accounts and the fact that these accounts exist solely to harass Plaintiff.  Twitter's intentional conduct is despicable.  It knowingly subjects Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

///

_____
[10]    [https://humanevents.com/2019/05/06/aoc-press-parody-killed-in-latest-big-tech-election-interference/;   see   also   https://www.mediaite.com/news/twitter-suspends-aocoffice-reincarnation-of-banned-aoc-parody-account/].

17
**COMPLAINT**

31    Twitter's conduct was a substantial factor in causing harm to Plaintiff.  But for Twitter's active and substantial facilitation, Meredith would have been suspended from Twitter and unable to perpetrate the stalking.

32.    As a direct result of Twitter's aiding and abetting, Plaintiff suffered (a) general damages, including, without limitation, pain and suffering, shame, mortification, damage to his reputation, and injury caused by Meredith's numerous false statements (b) special damages, including, without limitation, added cost and expense of security, career damage, impact upon his prospects for career advancement, and damage to his property, business, trade, profession and occupation, (c) punitive damages, (d) attorney's fees, and (e) court costs and other out-of-pocket expenses in a sum to be determined by the Jury.

## THIRD CAUSE OF ACTION

### (Common Law Commercial Misappropriation)

33.    Plaintiff restates paragraphs 1 through 32 of his Complaint, and incorporates them herein by reference.

34.    Between 2018 and the present, Meredith used Plaintiff's identity and appropriated Plaintiff's name, photograph and likeness to his advantage, commercially and otherwise. Meredith used and uses Plaintiff's name, photograph and likeness to promote himself and his multiple anonymous Twitter accounts, to sell his merchandise and to raise money for his own commercial and personal purposes.   Meredith engaged in professional fund-raising and personally profited from his use of Plaintiff's name, photograph and likeness. Meredith has made thousands of dollars.

35.    Plaintiff's name and image are highly recognizable.   Plaintiff is readily identifiable from Meredith's tweets and other social media posts, which feature Plaintiff's face, his actual name and use his photograph and likeness. Meredith used Plaintiff's name to solicit

18
COMPLAINT

money and on or in products, merchandise or goods (t-shirts, coffee mugs and other paraphernalia) offered for sale to the public.  Meredith knowingly invoked and used Plaintiff's name and likeness to increase the marketability and sales of his products.

36.   Meredith never sought consent and Plaintiff has never consented to Meredith's misappropriation of Plaintiff's name, photograph and likeness.

37.   The use of Plaintiff's name and photograph was not incidental.  Rather, Meredith intentionally used Plaintiff's name and photograph to take advantage of Plaintiff's reputation, prestige, and known brand in Tulare County and elsewhere.

38.   As a direct result of Meredith's commercial misappropriation, Plaintiff suffered actual damages.  Plaintiff seeks disgorgement of the revenue and profits received by Meredith from the unlawful use of Plaintiff's name and likeness, personal injuries, punitive damages, costs, and other out-of-pocket expenses and damages in a sum to be determined by the Jury.

## FOURTH CAUSE OF ACTION

### (Violation of Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*)

39.   Plaintiff restates paragraphs 1 through 38 of his Complaint, and incorporates them herein by reference.

40.   Under California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Section 17500 states that it is unlawful for any corporation, with the intent directly or indirectly to perform services or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in any manner or means whatever, including over the Internet,

19
**COMPLAINT**

any statement concerning those services, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. It is also unlawful for any corporation to make or disseminate or cause to be made or disseminated any untrue or misleading statement as part of a plan or scheme with the intent not to sell those services as advertised. Any violation of § 17500 of the Bus. & Prof. Code is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or both. *See also Bus. & Prof Code § 17534.*

41.    Section 17203 of the UCL provides that any person who "engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." *See also Bus. & Prof. Code § 17535 ("Any ... corporation ... which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment ... of any practices which violate this chapter").*

42.    Section 17206 of the UCL creates a civil penalty for acts of unfair competition. Any person who engages, has engaged, or proposes to engage in unfair competition "shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation".

43.    Twitter is a product or platform that allows people to consume, create, distribute and discover content. Twitter enables registered users to read and post short messages called tweets. In addition to messages (limited to 280 characters), Twitter users are also able to upload images or short videos. Tweets are posted to a publicly available profile or can be sent as private direct messages to other users. As of the first quarter of 2019, Twitter averaged 330 million

monthly active users (MAU), a decline from its all-time high of 336 MAU in the first quarter of 2018. In 2019, Twitter stopped tracking DAU, and adopted a new metric: *Monetizable Daily Active Usage or Users (mDAU)*. Twitter defines mDAU as people, organizations, or other accounts who logged in or were otherwise authenticated and accessed Twitter on any given day through twitter.com or Twitter applications that are able to show ads. Average monetizable daily active users (mDAU) were 152 million for the three months ended December 31, 2019, an increase of 21% year-over-year.

44.     Twitter, with the intent to perform services and to induce the public to use its platform and services, made and disseminated to Plaintiff and 330 million+ other consumers in California and elsewhere the Terms of Service and Rules. Twitter required Plaintiff and all other consumers to accept the Terms of Service and Rules or be refused admission to the "public square" and denied use of Twitter's services.

45.     Twitter's operation of a social media platform   a "public square"   and its use and enforcement of its Terms of Service and Rules are business acts or practices within the meaning of the UCL.

46.     "An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity that is at the same time forbidden by law. The UCL's 'unlawful' prong covers a wide range of conduct; among them, it makes violations of other laws independently actionable. UCL claims under the unlawful prong 'borrow[] violations of other laws ... and make[] those unlawful practices actionable under the UCL.' 'Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.' Accordingly, UCL claims under the unlawful prong 'stand or fall depending on the fate of the antecedent substantive causes of action.'" *Soo v. Lorex Corporation*, 2020 WL 5408117, at * 7 (N.D. Cal. 2020) (citations and quotations omitted). Under the UCL, a fraudulent business

practice is "one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255, 99 Cal. Rptr.3d 768 (2009). A business act or practice is "unfair" if, *inter alia*, the act or practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and "the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257, 106 Cal. Rptr.3d 46 (2010).

47.    Between 2019 and the present, Twitter engaged in persistent unlawful, unfair and fraudulent business acts or practices, unfair, deceptive, untrue and misleading advertising, and acts prohibited by § 17500 of the Bus. & Prof. Code. Specifically, Twitter aided and abetted Meredith's stalking in violation of California law *and* aided and abetted thousands, perhaps hundreds of thousands, of violations of Twitter's Terms of Service and Rules by Meredith, by the Doe Defendants and other users, including persons on whom Twitter bestowed "blue check" status.[11] In addition to aiding and abetting the stalking, Twitter's conduct provided a substantial business advantage to Meredith and others who trade off of Plaintiff's name and likeness. In advertising and in tweets by company CEO, Dorsey, Twitter consistently misrepresented that it was "transparent" about its political activities and that it defended and protected the rights of all users to use its services; yet, Twitter implemented a policy of institutional censorship of conservative viewpoints, shadow-banned users, including Plaintiff, and suspended users, including @AOCPress, whose viewpoints or ideology did not fall in line with the agenda of Twitter. Twitter made multiple untrue and deceptive statements to the public and in its Terms of Service and Rules, and misrepresented that it uniformly enforces its Terms of Service and Rules. In truth, Twitter selectively enforces its Terms of Service and Rules and, as this case

---

[11]    The blue verified badge on Twitter lets people know that an account of public interest is authentic. Bluechecks tend to have very large followings on Twitter.

22

**COMPLAINT**

demonstrates, refused to enforce the same Terms of Service and Rules against Meredith. Twitter misrepresented and concealed the fact that it aided and abetted Meredith's use of the platform to stalk Plaintiff. Twitter's conduct violates the UCL. Its business practices are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

48.     Twitter's business acts and practices are fraudulent because Twitter held itself out to be a free speech platform – in fact, *the* "free speech wing of the free speech party," as its general manager in the United Kingdom, Tony Wang, stated in 2012. [https://www.theguardian.com/media/2012/mar/22/twitter-tony-wang-free-speech].   Twitter's advertisements describe it as "the live public square," and a "public forum." Its "Values" page states: "We believe in free expression and believe every voice has the power to impact the world", and Twitter proclaims that its mission is to "[g]ive everyone the power to create and share ideas instantly, without barriers."  Relying on these statements, Plaintiff and millions of other similarly-situated users reasonably assumed that Twitter would honor its pledges and keep the platform free of bad actors, bots, stalkers, and harassers. Based on Twitter's advertising, Plaintiff reasonably expected that Twitter was and would continue to be a public forum for the speech of its users. Twitter specifically misrepresented that it protected Plaintiff from stalking, abuse, hate, threats, harassment, intimidation, and the violence of others.

49.     Plaintiff suffered substantial injury in fact and has lost money or property as a result of Twitter's violations of the UCL and unfair competition.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Devin G. Nunes respectfully requests the Court to enter Judgment against Defendants, Benjamin Paul Meredith, Twitter, Inc. and Does 1-100, jointly and severally, as follows:

A.     General damages in a sum according to proof;

B.      Special damages in a sum according to proof;

C.      Punitive damages in a sum according to proof;

D.      Prejudgment interest at the maximum rate allowed by law;

E.      Post judgment interest;

F.      Attorney's Fees pursuant to California Civ. Code § 1021.5;[12]

G.      Attorney's Fees and Costs in a sum according to proof; and

H.      Such other relief as is just and proper.

DATED: October ___, 2020                    LAW OFFICE OF DEREK P. WISEHART

                                            Derek P. Wisehart, Attorney for Plaintiff,
                                            DEVIN G. NUNES

---

[12]     Plaintiff is enforcing an important right affecting the public interest, insofar as this action furthers the strong California public policy in favor of free markets and against restraint of trade. This action confers a significant benefit on the general public or a broad class of persons, namely millions of Twitter users in California and the multitude of California residents who use social media to obtain truthful news and information. Finally, Plaintiff's attorneys' fees should not in the interest of justice be paid out of any recovery. In this case, the necessity and financial burden of private enforcement transcends Plaintiff's personal interest in this controversy.

24
**COMPLAINT**

# EXHIBIT "B"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMERON, CLERK
NICOLE RENT
BY:_____

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5

6   Attorneys for Defendant BEN PAUL MEREDITH

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11           Plaintiff,                )   **NOTICE OF MOTION AND MOTION TO**
                                       )   **STRIKE COMPLAINT PURSUANT TO**
12       v.                            )   **CALIFORNIA CODE OF CIVIL**
                                       )   **PROCEDURE SECTION 425.16**
13  BENJAMIN PAUL MEREDITH,            )   **(ANTI-SLAPP)**
    TWITTER, INC., and DOES 1 to 100,  )
14  Inclusive,                         )   Date:   December 22, 2020
                                       )   Time:  8:30 a.m.
15           Defendants.               )   Dept.: 7
                                       )
16                                     )
                                       )
17                                     )   Complaint Filed:   October 5, 2020
                                       )   Trial Date:        Not Set
18                                     )

19

20  TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD;

        **PLEASE TAKE NOTICE THAT** on December 22, 2020, at 8:30 a.m., or as soon thereafter
21
    as counsel may be heard in Department 7 of Tulare County Superior Court, located at 221 S. Mooney
22
    Blvd, Visalia, CA 93291, Defendant Ben Paul Meredith ("Defendant Meredith"), will and hereby
23
    does move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking
24
    the Complaint filed by Plaintiff Devin G. Nunes ("Plaintiff") as to all of the claims filed against
25
    Defendant Meredith and dismissing, in whole or in part, the Complaint with prejudice and without
26
    leave to amend.
27
        The claims in the Complaint as against Defendant Meredith all stem from Defendant's
28
    alleged activity in furtherance of Defendant's right of petition and/or free speech under the United



Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                              1

States Constitution in connection with a public issue. Because Plaintiff's claims, as against Defendant Meredith, all arise from his conduct in furtherance of his exercise of the right of free speech in connection with a public issue and/or issue of public interest, they are subject to a special motion to strike under California's anti-SLAPP statute, C.C.P. § 425.16(e)(3)-(4). Consequently, the burden shifts to Plaintiff to demonstrate a probability of prevailing on each of the claims. *See* Cal. Civ. Proc. Code § 425.16(b)(1).

Further, Plaintiff cannot meet his burden for the following independent reasons:

1. Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Defendant Meredith's alleged wrongful activity is protected by the First Amendment;

2. Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Plaintiff does not have any independent corroborating evidence to support this claim (*See* Cal. Civ. Code Section 1708.7(a)(1));

3. Plaintiff cannot demonstrate a probability of prevailing on his commercial misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is protected by the First Amendment; and

4. Plaintiff cannot demonstrate a probability of prevailing on his misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is exempt from liability under the Computer Decency Act (CDA), 47 U.S.C.A. § 230.(c)(1), and Civil Code Section 3344(d) because it relates to public affairs within the meaning of that statute and/or on account of immunity afforded thereunder.

This Motion is based on this Notice of Motion; Memorandum of Points and Authorities filed concurrently herewith; on the concurrently-filed Declarations of Ben Meredith and Brian Whelan; on any other matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument and evidence as may be received by this Court at the hearing on this Motion and at the time of the hearing.

///

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

NOTICE OF MOTION

1

2

3

        Defendant Meredith reserves the right to recover his attorney's fees and costs incurred, and in an amount according to proof, through a subsequently noticed motion following the hearing on this motion.

4

5 Dated: November 19, 2020

WHELAN LAW GROUP,
A Professional Corporation

6

7 By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

NOTICE OF MOTION

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On November 19, 2020, I caused to be served the within document(s): **NOTICE OF MOTION AND MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16  (ANTI-SLAPP)**

( )     **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )     **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)     **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )     **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )     **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )     **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

NOTICE OF MOTION

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMERON, CLERK
BY:    NICOLE RENTERIA

1    Brian D. Whelan, Esq.  (SBN 256534)
     WHELAN LAW GROUP, A Professional Corporation
2    1827 East Fir Avenue, Suite 110
     Fresno, California  93720
3    Telephone: (559) 437-1079
     Facsimile:  (559) 437-1720
4    E-mail: brian@whelanlawgroup.com

5

6    Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10   DEVIN G. NUNES,                    )   Case No. VCU284528
                                        )
11            Plaintiff,                )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES IN SUPPORT OF MOTION**
12       v.                             )   **TO STRIKE COMPLAINT**
                                        )
13   BENJAMIN PAUL MEREDITH,            )
     TWITTER, INC., and DOES 1 to 100,  )   Date:   December 22, 2020
14   Inclusive,                         )   Time:  8:30 a.m.
                                        )   Dept.:  7
15            Defendants.               )
                                        )
16                                      )
                                        )
17                                      )   Complaint Filed:   October 5, 2020
                                        )   Trial Date:        Not Set
18

19   ////

20   ////

21   ////

22   ////

23   ////

24   ////

25   /////

26   ////

27   ////

28   /////

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   POLITICAL HISTORY BETWEEN MEREDITH AND NUNES. . . . . . . . . . . 1

   B.   NUNES' FALSE (AND HYPOCRITICAL) CLAIMS . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND/MATERIAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.   Twitter Is a Public Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.   Congressman Nunes Is a Public Figure . . . . . . . . . . . . . . . . . . . . . . . . 4

   C.   Plaintiff Complains of Constitutionally Protected Speech . . . . . . . . . . . . . . . 5

III. LAW AND DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.   Defendant Meredith's Anti-SLAPP Motion Is Timely . . . . . . . . . . . . . . . . . . . . 5

   B.   The Anti-SLAPP Statute Broadly Applies To Claims That Target The Exercise Of Free Speech About Issues Of Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   C.   Plaintiff's Claims Fall Within the Scope of the Anti-SLAPP Statute . . . . . . . . . 7

      1.   All of Defendant Meredith's Alleged Wrongful Conduct Involves the Exercise of Free-Speech Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2.   Meredith's Speech Relates to An Issue of Public Interest. . . . . . . . . . . . . 8

   D.   Plaintiff Cannot Demonstrate a Probability of Prevailing on His Claims Against Meredith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      1.   The First Amendment Bars Plaintiff's Stalking and Misappropriation Claims as does the Computer Decency Act . . . . . . . . . . . . . . . . . . . . . . . 10

      2.   Civil Code Section 3344(d) Also Defeats Plaintiff's Misappropriation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      3.   Plaintiff's Stalking Claim Also Fails Because He Has No Independent Corroborating Evidence to Support It. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

i

# TABLE OF AUTHORITIES

**CASE**      **PAGE**

*Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barrett v. Rosenthal*, 40 Cal.4th 33, 41, fn. 4 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036, 1042 (1997) . . . . . . . . . . . . . . . . . . . . . . . 6

*Cardtoons*, 95 F.3d at 969 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996) . . . . . . . . . . . . . 7, 10

*C.B.C. Distribution*, 505 F.3d at 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) . . . . . . . . . . . . . . 8

*Doe No. 14 v. Internet Brands, Inc.*, 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dora*, 15 Cal. App. 4th at 1545-1546. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 572 (2000) . . . . . . . . . . . . 10

*Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421 (1983) . . . . . . . . . . . . . . . . . . . . . . . 14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Gionfriddo*, 94 Cal. App. 4th at 410-411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Guglielmi*, 25 Cal. 3d at 867-868 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1347 (2007) . . . . . . . . . . . . . . . . . . . . . . . 9

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) . . . . . . . . . . . . 8

*Hilton*, 599 F.3d at 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ingels v. Westwood One Broad. Serv.*, 129 Cal. App. 4th 1050, 1059, 1075, 28 Cal. Rptr. 3d 933 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1254 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Kaiser Foundation Hospitals v. Superior Court*, 49 Cal.App.3d 523, 525 (1975) . . . . . . . . . . . 6

*Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998) . . . . . . . . . . . 11

*Montana*, 34 Cal. App. 4th at 795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

*Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 10

*Navellier v. Sletten*, 29 Cal. 4th 82, 88, (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

ii

MEMORANDUM OF POINTS AND AUTHORITIES

*New Kids*, 971 F.2d at 310 n.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Nygard v. Uusi- Kerttula,* 159 Cal. App. 4th 1027, 1042, (2008) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Paulsen v. Personality Posters, Inc.*, 299 N.Y.S.2d 501, 507 (1968) . . . . . . . . . . . . . . . . . . . . 12

*Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Seelig v. Infinity Broadcasting,* 97 Cal. App. 4th 798, 807-808 (2002) . . . . . . . . . . . . . . . . . . 8

*Snyder v. Phelps*, 562 U.S. 443, 452 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stewart v. Rolling Stone,* 181 Cal. App. 4th 664, 669, 105 Cal. Rptr. 3d 98 (2010) . . . . . . . . 7, 12

*United States v. Cassidy*, (D. Md. 2011) 814 F. Supp. 2d 574, 576-78 . . . . . . . . . . . . . . 4, 10, 11

*Wong v. Armstrong World Industries, Inc.*, 232 Cal.App.3d 1032, 1034 (1991) . . . . . . . . . . . . 6


**STATUTES**

Cal. Civ. Code § 1708.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12, 15

Cal. Civ. Code § 3344(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Proc. Code § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

C.C.P. § 425.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 15

C.C.P. § 583.110(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3 Witkin, Cal.Procedure (3d ed. 1985) Actions, § 814, p. 801 . . . . . . . . . . . . . . . . . . . . . . . . 6

Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

iii

Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") submits the following in support of his motion for an order striking the causes of action alleged against him by Plaintiff DEVIN NUNES ("Plaintiff" or "NUNES") pursuant to C.C.P. § 425.16.

## I.
## INTRODUCTION.

Congressman NUNES sued MEREDITH because he does not like what MEREDITH is allegedly saying about him online, i.e. protected speech. Plaintiff has artfully crafted his complaint to try to convert digital speech into a physical stalking and commercial misappropriation conspiracy in order to censor unflattering commentary – largely, if not entirely, made by other people.

### A.    POLITICAL HISTORY BETWEEN MEREDITH AND NUNES.

From 2001 through 2005, MEREDITH lived in Visalia, CA. Through involvement in Republican-party politics, MEREDITH came to know NUNES. In fact, NUNES approached MEREDITH to run for the Tulare County Republican Central Committee ("Central Committee"). With NUNES' help, MEREDITH won the election and held elected office from 2000 until 2002. (MEREDITH Decl. Para. 5.)

In 2002, MEREDITH opposed the Central Committee's endorsement of NUNES' candidacy for United States Congress. MEREDITH did not believe the then twenty-something-year old was qualified. (MEREDITH Decl. Para. 6.) NUNES harbored a grudge (and still does, apparently).

Thereafter, NUNES was elected to *serve* in the United States Congress, and MEREDITH chose to leave the Central Committee. (MEREDITH Decl. Para. 7.)  At or around that time, MEREDITH, who holds a doctorate in education, had held multiple positions in colleges and universities in California, Washington and Oklahoma, and had risen to the rank of Dean, left Porterville College in good standing to take a job at San Joaquin Valley College.  (MEREDITH Decl. Para. 7.)  From there, MEREDITH moved onto Washington State to pursue career opportunities, though never becoming "a network engineer or cyber security expert" as claimed in the lawsuit. (MEREDITH Decl. Paras. 3, 7.)

### B.    NUNES' FALSE (AND HYPOCRITICAL) CLAIMS.

Over the course of the last two years, NUNES has sued a number of people and organizations throughout the country. (Whelan Decl. Para. 2.)  Of the more famous lawsuits, is one against a

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

parody Twitter account user, @DevinCow. In that lawsuit, Nunes seeks 250 million dollars for reputation damages. The Virginia-based lawsuit against "a twitter cow" has generated a tremendous following and its own satirical "mooovement." ("Cow Lawsuit") (Whelan Decl. Para. 3.)

In this lawsuit, the singular event NUNES identified concerned a claimed [but non-existent] association with an unnamed "political activist" and an incident on August 27, 2020. According to the Complaint, NUNES was on a flight where he "was harassed by a political activist...working with Meredith." (Complaint, Para. 1.) The incident was videotaped and a matter of news record. The report and video are available online in an article titled "Exclusive: What Really Happened on the "Plane Full of Anarchists."(https://demcastusa.com /2020/09/03/ exclusive-what-really-happened-on-the-plane- full-of-anarchists/; Whelan Decl. Para. 4.)

The incident involves an empty plane and a request from the "activist" who calmly (but unexpectedly) asked NUNES if he " Sued any cows lately ....sued any cow..more cows.. lately ....moo moo." ("Plane Event") (Whelan Decl. Para. 4.) NUNES claims MEREDITH's after-the-fact approval of the Plane Event somehow violates the law. It does not. The video, in a public place, is a common, accepted, and encouraged form of "political tracking" and importantly protected activity – which MEREDITH incontrovertibly did not engage in. (MEREDITH Decl. Para. 8.) [1]

Indeed, NUNES knows that such "political tracking" is accepted campaign protocol. In fact, the National Republican Congressional Committee ("NRCC") asks its candidates, like NUNES, to emulate the Plane Event as it may "be very embarrassing if used correctly" and when done "FULL TIME" can lead to a "win." The NRCC's video tracking guide states:

"In the YouTube, flipcam, reality TV era, voters are predisposed to believe messages that they can see with own eyes rather than something that is merely described to them. The only way to do that effectively is to create a tracking program in your campaign that relentlessly gathers footage of your opponent. Only after dedicating the resources to tracking them FULL TIME will you eventually yield the video that you need to win... [Emphasis Added.]

....

It is extremely important that you pay close attention while you are filming. You should make mental notes (or written notes, if possible) of things that your subject

---

[1] If a party only passively displays content that is created entirely by third parties, then it is only a "service provider" with respect to that content and thus shielded from liability under the Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1).

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

MEMORANDUM OF POINTS AND AUTHORITIES

may do that could be of use at a later point. Unusual facial expressions, whether they be angry, goofy, etc., fall into this category. So do comments that are either factually inaccurate, outlandish, or contradictory to other statements the candidate has made. **These are things that can prove to be very embarrassing if used correctly**." [Emphasis Added.] (Whelan Decl. Para. 5, Exhibit "B" .)

The NRCC video tracking guide addresses a policy on "honesty" and "legal issues" – all conforming with what happened with the tongue-in-cheek question about NUNES "suing more cows." With regards to the Plane Event, MEREDITH was not even alleged to have been present nor was he present nor did he conspire to be present or have questions about cow lawsuits asked. (Complaint Para. 1; MEREDITH Decl. Para. 8.)

The lawsuit is long on histrionics and hyperbole and short on facts and specifics.  In brief, MEREDITH did not conspire with "animal enterprise terrorists" to "stalk" NUNES. And on average, MEREDITH tweeted 2-3 times per day – a far cry from the thousands as claimed and without regard to first amendment right protections. (MEREDITH Decl. Para. 9.) MEREDITH lives in Washington State and has never threatened to physically harm NUNES (MEREDITH Decl. Para. 8-9), nor has MEREDITH ever been contacted by the District of Columbia Capitol Police in any way for any reason. Ever. (MEREDITH Decl. Para. 9.)  Moreover, Meredith did not misappropriate NUNES' likeness nor generated money or otherwise from NUNES.  (MEREDITH Decl. Para. 8.)  Plaintiff's claims all fail because they violate MEREDITH's First Amendment rights.  Moreover, Plaintiff has no evidence to support his claims because the events simply did not happen or happened and were protected speech. Since Plaintiff's complaint is a classic SLAPP lawsuit, Defendant has filed this motion to strike all of Plaintiff's claims against him.

## II.
## BACKGROUND/MATERIAL FACTS.

### A.   Twitter Is a Public Forum.

This case involves allegations, described in greater detail below, that a wrong was committed through Defendant's use of a relatively recent phenomenon of the internet age, "Twitter."  Essential to the analysis of the legal issues in this case is an understanding of this phenomenon, which has become almost ubiquitous.

Twitter is a real-time information network that connects users to "what's happening in the

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

world and what people are talking about right now." At the heart of Twitter are small bursts of information called Tweets. Each Tweet is 140 characters in length. Twitter users may choose to "follow" other users. If user No. 1 decides to "follow" user No. 2, Twitter messages (Tweets) posted by user No. 2 will show up on the home page of user No. 1 where they can be read.

A Twitter user may choose to block someone, e.g., someone whose messages are deemed offensive, in which case the offending user will be unable to follow the offended user or add that user to his or her lists, and the blocked user's Tweets will not be delivered to the other user's home page. Twitter provides detailed instructions for blocking Tweets from another user as well as for "unfollowing" another user, i.e. blocking Tweets from a user that one used to follow.

A Direct Message ("DM") is a private message sent from one Twitter user to another, but such messages can only be sent to another user who is a "follower." All Twitter users are provided with the ability to block other users, in which case one user cannot follow another and neither their "Tweets" nor their Direct Messages will be delivered. Thus, any Twitter user has the ability to "turn off" ("block" or "unfollow") communications from another user.

"[A] Twitter user [does not] have to see what is posted on another person's … Twitter account. This is in sharp contrast to a telephone call, letter or e-mail specifically addressed to and directed at another person, and that difference, as will be seen, is fundamental to the First Amendment analysis in this case." *United States v. Cassidy*, (D. Md. 2011) 814 F. Supp. 2d 574, 576-78.

**B.    Congressman Nunes Is a Public Figure.**

There is no disputing NUNES status as a public figure. Indeed, on NUNES' wikipedia page, NUNES advertises that he is an American politician serving as the U.S. Representative for California's 22nd congressional district since 2003. A member of the Republican Party, NUNES was Chair of the House Intelligence Committee from 2015 to 2019. He was also a member of President Donald Trump's transition team. NUNES' district, numbered as the 21st from 2003 to 2013 and as the 22nd after redistricting, is in the San Joaquin Valley and includes most of western Tulare County and much of eastern Fresno County.

In March 2017, the U.S. House intelligence committee, which NUNES chaired at the time,

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

MEMORANDUM OF POINTS AND AUTHORITIES

1  launched an investigation into possible Russian interference in the 2016 United States elections. On

2  April 6, 2017, he temporarily stepped aside from leading that investigation while the Office of

3  Congressional Ethics investigated allegations (which NUNES denied) that he had improperly

4  disclosed classified information to the public. In December 2017 the Republican-majority U.S.

5  House Committee on Ethics closed its investigation without taking any action against NUNES.

6      In February 2018, NUNES publicly released the NUNES memo, a four-page memorandum

7  alleging an FBI conspiracy against Donald Trump. NUNES subsequently began an investigation of

8  the FBI and the Justice Department for allegedly abusing their powers in an attempt to hurt Trump.

9  (Source: https://en.wikipedia.org/wiki/Devin_Nunes)

10      **C.**   **Plaintiff Complains of Constitutionally Protected Speech.**

11      Plaintiff claims that Defendant MEREDITH is liable for the torts of stalking and commercial

12  misappropriation (First and Third causes of action.)   (See Plaintiff's Complaint, Para. 2, Lines

13  10-12.) These claims are all based on constitutionally protected speech.  Plaintiff's entire complaint

14  is directed at Defendant MEREDITH's alleged use of multiple Twitter accounts.  Specifically,

15  Plaintiff takes issue with the content of statements that Defendant MEREDITH allegedly "Tweeted"

16  and "re-Tweeted" on accounts that were allegedly associated with Defendant MEREDITH.  With the

17  exception of one instance, Plaintiff does not provide any information in his complaint to indicate that

18  there are any exceptions to these constitutionally protected statements.  With regards to the single

19  instance where Defendant allegedly made a threat on Plaintiff's life, Plaintiff's own characterization

20  of that threat demonstrates that it was not a "true threat." (See footnote 1 of Plaintiff's Complaint

21  where he characterizes the alleged threat on his life as a "hoax threat.")  Aside from the fact Plaintiff

22  admits this statement was not a "true threat," the fact is, Defendant never threatened Plaintiff's life.

23  (MEREDITH Decl. Para. 8.) Thus, all of the comments and statements allegedly made by Defendant

24  are constitutionally protected by the First Amendment.

**III.**
**LAW AND DISCUSSION.**

25

26      **A.**   **Defendant Meredith's Anti-SLAPP Motion Is Timely.**

27  A special motion to strike must be filed within 60 days after service of the complaint on the

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

MEMORANDUM OF POINTS AND AUTHORITIES

1  defendant, unless the trial court exercises its discretion to consider a later-filed motion. C.C.P. §

2  425.16(f) (emphasis supplied). "Service" consists of serving the summons and complaint and

3  effecting return of summons. C.C.P. § 583.110(f) ("Service" includes return of summons); *Wong v.*

4  *Armstrong World Industries, Inc.*, 232 Cal.App.3d 1032, 1034 (1991). A return of summons is

5  required to inform the court that the defendant has received jurisdictional notice. *Kaiser Foundation*

6  *Hospitals v. Superior Court*, 49 Cal.App.3d 523, 525 (1975); 3 Witkin, Cal.Procedure (3d ed. 1985)

7  Actions, § 814, p. 801; *Wong* at 1035. Here, the complaint was served on October 7, 2020. Thus,

8  this motion is timely.

9        **B.      The Anti-SLAPP Statute Broadly Applies To Claims That Target The
              Exercise Of Free Speech About Issues Of Public Interest.**

10       In 1992, the California Legislature enacted Code of Civil Procedure § 425.16 "to nip SLAPP

11  litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights.

12  *Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036, 1042 (1997). Under the statute, any "cause of

13  action against a person arising from any act ... in furtherance of the person's right of ... free speech

14  ... in connection with a public issue shall be subject to a special motion to strike, unless the court

15  determines that the plaintiff has established that there is a probability that the plaintiff will prevail

16  on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). Reacting to court rulings that interpreted the

17  statute too narrowly, the Legislature amended Section 425.16 in 1997 to ensure that it "shall be

18  construed broadly." Cal. Civ. Proc. Code § 425.16(a).

19       In *Navellier v. Sletten*, 29 Cal. 4th 82, 88, (2002), the Supreme Court outlined the two-step

20  process for determining whether an action must be stricken under Section 425.16. "First, the court

21  decides whether the defendant has made a threshold showing that the challenged cause of action is

22  one arising from protected activity." *Id.* at 88. To make this showing, the defendant must

23  demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the

24  categories spelled out ... in section 425.16, subdivision (e)." *Id.* Under subdivision (e)(4), the

25  Legislature has extended the statutes protection to "any" conduct "in furtherance of the exercise of

26  the constitutional right ... of free speech in connection with ... an issue of public interest." Second,

27  if the claim arises from protected conduct, the court "must then determine whether the plaintiff has

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

6

MEMORANDUM OF POINTS AND AUTHORITIES

1  demonstrated a probability of prevailing on the claim." *Id.* If the plaintiff cannot meet this burden,

2  then the claim must be stricken. *Id.*

3      To prevent plaintiffs from using artful pleading to evade the anti-SLAPP statute, courts have

4  emphasized that Section 425.16 applies to any claim arising from protected conduct, regardless of

5  how the claim is labeled. *Navellier*, 29 Cal. 4th at 92. "[T]he nature ... of the action is not what is

6  critical"; if it arises from protected conduct, it is subject to an anti-SLAPP motion. *Church of*

7  *Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996), disapproved on other grounds, 29 Cal.

8  4th 53 (2002). Thus, courts have held that the statute applies to a variety of claims, including

9  right-of-publicity (*Stewart v. Rolling Stone*, 181 Cal. App. 4th 664, 669, 105 Cal. Rptr. 3d 98

10  (2010)), and unfair business practices (*Ingels v. Westwood One Broad. Serv.*, 129 Cal. App. 4th

11  1050, 1059, 1075, 28 Cal. Rptr. 3d 933 (2005)). And, since the stalking claim is predicated entirely

12  on constitutionally protected speech, there is no doubt that the anti-SLAPP statute applies to that

13  claim as well. In fact, the stalking statute cited by Plaintiff also supports this conclusion: "This

14  section shall not be construed to impair any constitutionally protected activity, including, but not

15  limited to, speech, protest, and assembly." Cal. Civ. Code § 1708.7(f).

16  **C.   Plaintiff's Claims Fall Within the Scope of the Anti-SLAPP Statute.**

17        **1.   All of Defendant Meredith's Alleged Wrongful Conduct Involves the Exercise of Free-Speech Rights.**

18      Protected activity includes any "written or oral statement or writing made in a place open to

19  the public or a public forum in connection with an issue of public interest" or "any other conduct in

20  furtherance of the exercise . . . of the constitutional right of free speech in connection with a public

21  issue or an issue of public interest." C.C.P. § 425.16(e)(3)-(4). MEREDITH exercised his

22  constitutional right of free speech by posting a "written statement" on Twitter, a "public forum." Web

23  sites accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Barrett v.*

24  *Rosenthal*, 40 Cal.4th 33, 41, fn. 4 (2006); *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576

25  (2005). Not surprisingly, websites like Twitter have been specifically recognized as a "public forum"

26  for purposes of the anti-SLAPP statute. *Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1254 (2017)

27  (*Jackson*).

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

7

MEMORANDUM OF POINTS AND AUTHORITIES

And, with regards to the [untrue/false] allegations that Defendant MEREDITH sold products with Plaintiff's image and likeness, the fact that expressive works are sold for a profit does not in any way diminish their First Amendment protection. *See, e.g., Guglielmi*, 25 Cal. 3d at 867-868; *Gionfriddo*, 94 Cal. App. 4th at 412. As long as the work does "not merely advertise another unrelated product," it enjoys full constitutional protection. *Cardtoons*, 95 F.3d at 969. See also *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("[i]f a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels").  The allegations in the complaint make it quite clear that Defendant was not using Plaintiff's image to endorse ideas, statements, or products made by Defendant - quite the opposite.  To the extent Plaintiff's image was in fact used, it was used as expressive, constitutionally protected speech.

### 2.    Meredith's Speech Relates to An Issue of Public Interest.

All of the alleged wrongful activity plainly relates to an "issue of public interest" for purposes of Section 425.16. In fact, "[t]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society[.]" *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). The case law underscores how broadly "public interest" has been defined under the statute. In *Seelig v. Infinity Broadcasting*, 97 Cal. App. 4th 798, 807-808 (2002), for example, the court held that a radio host's on-air criticism of a contestant from the reality show *Who Wants To Marry A Multi-Millionaire* related to a matter of public interest. The court noted that the show had been of "significant interest to the public" because of "what its advent signified about the condition of American society." *Id. In Nygard v. Uusi- Kerttula*, 159 Cal. App. 4th 1027, 1042, (2008), the court reiterated that an issue of public interest "is any issue in which the public is interested," including in that case an article about a Finnish businessman's vacation home in the Bahamas. "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute - it is enough that it is one in which the public takes an interest." *Id.* And in *Hilton*, the Ninth Circuit instructed that courts "must construe ... 'issue of public interest' ... broadly" to include any "topic of widespread, public interest" or "person ... in the public eye." 599 F.3d at 906-907. Applying

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

8

MEMORANDUM OF POINTS AND AUTHORITIES

those definitions, the court held that a greeting card poking fun at Paris Hilton's reality-television persona met the statutes public-interest requirement. *Id.*

In analogous contexts, courts have recognized a substantial public interest in biographical information about historical figures, including their names and images and descriptions of their failures and achievements. *Dora v. Frontline Video* is instructive. There, the court found that a film about surfing in Southern California in the 1950s, which included images and audio of surfing pioneer Mickey Dora, concerned a matter of public interest. 15 Cal. App. 4th at 542-543. In *Gionfriddo*, the court reiterated that "the public interest is not limited to current events; the public is also entitled to be informed and entertained about our history." 94 Cal. App. 4th at 416. Thus, the court held that baseball-game programs that used retired players' names, likenesses, and biographical information concerned a matter of public interest. See also *Hilton*, 599 F.3d at 912 ("[p]ublic interest attaches to people who by their accomplishments ... create a bona fide attention to their activities'). And, for better or worse, celebrity gossip is an issue of public interest. *Jackson*, 10 Cal.App.5th at 1254. ("Jackson's pregnancy, its termination and her cosmetic surgery, were 'celebrity gossip' properly considered, under established [anti-SLAPP case law], as statements in connection with an issue of public interest. . . ."); see also, *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1347 (2007) (public interest in the personal life of Marlon Brando).

Plaintiff cannot reasonably dispute that the alleged tweets referring to Plaintiff, as well as the alleged content containing his images, relate to an issue of public interest, both in their broad focus on a prominent figure and events in American history and in their specific focus that touch on current political issues.  Plaintiff acknowledges that he is a public figure and also acknowledges that his complaint **"is enforcing an important right affecting the public interest."** [Emphasis added.] (See fn. 12 of Plaintiff's Complaint.)  If a greeting card about Paris Hilton, a deejay's rant about a reality-show contestant, an article about a businessman's vacation home, and gossip about the personal lives of celebrities relate to matters of public interest under Section 425.16, then the alleged Tweets, etc. challenging Plaintiff's character and qualifications as a political leader obviously satisfy that test.  Accordingly, Plaintiff's claims are subject to a special motion to strike.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

9

MEMORANDUM OF POINTS AND AUTHORITIES

**D.**   **Plaintiff Cannot Demonstrate a Probability of Prevailing on His Claims Against Meredith.**

Because MEREDITH's alleged conduct falls within the scope of the anti-SLAPP statute, the burden shifts to Plaintiff to establish a probability that he will prevail on his claims. See Cal. Civ. Proc. Code § 425.16(b)(1). This burden is substantial. As the court explained in *DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 572 (2000), to satisfy [his] burden under the second prong of the anti-SLAPP statute, it is not sufficient that [the plaintiff's] complaint survive a demurrer or motion to dismiss. A plaintiff cannot simply rely on the allegations set forth in the complaint, nor can a court accept those allegations. *Church of Scientology*, 42 Cal. App. 4th at 656. Instead, the plaintiff must adduce competent, admissible evidence showing that he has a legally sufficient claim, *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (citations omitted), and must meet the defendant's constitutional defenses[.]" *Robertson v. Rodriguez*, 36 Cal. 4th 347, 359 (1995).

Because Plaintiff cannot do so, MEREDITH's Motion should be granted.

**1.**   **The First Amendment Bars Plaintiff's Stalking and Misappropriation Claims as does the Computer Decency Act.**

The United States Supreme Court recently reaffirmed that "speech on public issues occupies *the highest rung of the hierarchy of First Amendment values*, and is entitled to *special protection*." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (emphasis added) (barring state-law tort claim based on speech concerning matters of public import). The Court highlighted guiding principles that accord broad protection to speech to ensure that courts themselves do not become inadvertent censors. *Id.* It instructed that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (citations and quotation marks omitted). And the Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern." *United States v. Cassidy*, 814 F. Supp. 2d 574, 582 (D. Md. 2011) "This is because 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate "breathing space" to the freedoms protected by the First Amendment." ' [Citations.]" *Id.*

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

10

MEMORANDUM OF POINTS AND AUTHORITIES

Reflecting these principles, courts have found that under the First Amendment, "no cause of action [for violation of the right of publicity] will lie for the publication of matters in the public interest[.]" *Montana*, 34 Cal. App. 4th at 795. Also, in a case similar to this one, a Court found that an indictment, based on a cyberstalking statute (containing language similar to Cal. Civ. Code Section 1708.7), which was directed at speech "challenging [the complaining party's] character and qualifications as a religious leader," should be dismissed because it was clearly directed at protected speech. *Cassidy*, 814 F.Supp.2d at 583.

Like the public interest prong of the anti-SLAPP statute, the constitutional public-interest defense is to be construed broadly, and is not limited to news in the narrow sense of reports of current events. *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998). It applies equally to the dissemination of information in various media, ranging from online fantasy-sports games (*C.B.C. Distribution*, 505 F.3d at 823) and parody trading cards (*Cardtoons*, 95 F.3d at 969) to baseball-game programs (*Gionfriddo*, 94 Cal. App. 4th at 410-411) and posters (*Montana*, 34 Cal. App. 4th at 795). The court in *Gionfriddo* expressly declared that [e]ntertainment features receive the same constitutional protection [against right-of-publicity claims] as factual news reports. 94 Cal. App. 4th at 410. The Tenth Circuit echoed this principle in *Cardtoons*, making clear that [s]peech that entertains, like speech that informs, is protected by the First Amendment because the line between informing and entertaining is too elusive for the protection of that basic right. 95 F.3d at 969 (citations omitted).

Regarding Plaintiff's stalking claim, *Cassidy* provides helpful guidance. In *Cassidy*, the court dismissed a criminal indictment because the complaint violated the defendant's First Amendment rights of free speech. There, the defendant used Twitter and Internet blogs to wage a campaign of harassment against the leader of a Buddhist sect. Finding the victim to be a "well-known religious figure" who was the subject of a "critical non-fiction book" written by a *Washington Post* journalist, and that the defendant's speech "challenge[d] her character and qualifications as a religious leader," the Court held that the Government's indictment based on a cyberstalking statute was clearly directed at protected speech and did not fall within one of the recognized exceptions. *Cassidy*, 814 F.Supp.2d at 583. Here, as in *Cassidy*, the alleged Tweets are challenging Plaintiff's character and

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1  qualifications as a political leader and deserve special protection under the First Amendment. See

2  also Cal. Civ. Code § 1708.7(f).

3  As for Plaintiff's common law misappropriation claim, "our Supreme Court has cautioned:

4  'Giving broad scope to the right of publicity has the potential of allowing a celebrity to accomplish

5  through the vigorous exercise of that right the censorship of unflattering commentary that cannot be

6  constitutionally accomplished through defamation actions.' [Citation.]" *Stewart v. Rolling Stone*

7  *LLC*, 181 Cal. App. 4th 664, 682 (2010). Here, *Montana* and *C.B.C. Distribution* are instructive.

8  In *Montana*, a newspaper produced a poster commemorating the San Francisco 49ers' Super Bowl

9  victories, which featured a photograph of quarterback Joe Montana with scant accompanying text.

10  34 Cal. App. 4th at 795-798. Although the newspaper sold copies of the poster, the court concluded

11  that it was a form of public interest presentation to which [First Amendment] protection must be

12  extended. 34 Cal. App. 4th at 795 (quoting *Paulsen v. Personality Posters, Inc.*, 299 N.Y.S.2d 501,

13  507 (1968)). The court also reaffirmed that the public-interest test is not restricted to current events

14  but may extend to the reproduction of past events. *Id.* at 793.

15  Similarly, in *C.B.C. Distribution*, the plaintiff offered online fantasy-baseball games

16  incorporating Major League Baseball players' actual names, nicknames, likenesses, signatures,

17  pictures, statistics, and other biographical information. 505 F.3d at 823. The plaintiff initially

18  licensed this information from the Major League Baseball Players Association. *Id.* at 821. But when

19  the Players Association declined to renew the license, the plaintiff sought a judicial declaration that

20  it had a First Amendment right to use the information without a license. *Id.* The Eighth Circuit

21  agreed, holding that the First Amendment protected the plaintiff's right to use athletes' names,

22  likenesses, and biographical information in an online game. As the court declared, "the information

23  used in CBC's fantasy baseball games is all readily available in the public domain, and it would be

24  strange law that a person would not have a first amendment right to use information that is available

25  to everyone." *Id.* at 823. On those grounds, the court held that the First Amendment "trump[ed] the

26  players' right of publicity." *Id.* at 822-824.

27  Furthermore, and though it is unclear what exactly constitutes Plaintiff's complaints, to the

28  extent they are solely comprised of Defendant's re-publishing of other twitter posts, absolute

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

12

immunity applies under Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1). As the Ninth Circuit has explained, "Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir.2008) (en banc). Section 230 was enacted to "protect[ ] websites from liability for material posted on the website by someone else." *Doe No. 14 v. Internet Brands, Inc.*, 767 F.3d 894, 897 (9th Cir.2014). Specifically, section 230 states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Importantly, section 230's "grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of the offending content." *Roommates.Com*, 521 F.3d at 1162 (quoting 47 U.S.C. § 230(f)(3)). CDA immunity, thus, does not apply to "the creation of content" by a website. Id. at 1163. Because a "website operator can be both a service provider and a content provider," it "may be immune from liability for some of the content it displays to the public but be subject to liability for other content." Id. at 1162–63.

The California Supreme Court addressed this issue of user liability in the case of *Barrett v. Rosenthal*, (2006) 40 Cal. 4th 33 when it held: "We granted review to decide whether section 230 confers immunity on 'distributors.' Because this case involves the liability of an individual rather than a service provider, we asked the parties to address the definition of the statutory term "user." We also requested briefing on whether the immunity analysis is affected if a user engages in active rather than passive conduct. We conclude that section 230 prohibits "distributor" liability for Internet publications. We further hold that section 230(c)(1) immunizes individual "users" of interactive computer services, and that no practical or principled distinction can be drawn between active and passive use" . . . "We acknowledge that recognizing broad immunity for defamatory republications on the Internet has some troubling consequences. Until Congress chooses to revise the settled law in this area, however, plaintiffs who contend they were defamed in an Internet posting may only seek recovery from the original source of the statement." *Id.* 39-40

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

13

MEMORANDUM OF POINTS AND AUTHORITIES

1   If the public-interest defense bars right-of-publicity claims arising from the use of an athletes'

2   name and likeness in a game program, on a poster, or in an online fantasy game, Defendant's alleged

3   use of Plaintiff's name and likeness in connection with a public debate about the quality and

4   character of our Nation's political leaders must be afforded the same protection. Further, and as

5   discussed by the California Supreme Court, the mere republication of anything on Twitter is

6   absolutely privileged – unless and until Congress changes it.

7           **2.**    **<u>Civil Code Section 3344(d) Also Defeats Plaintiff's<br>Misappropriation Claim.</u>**

8   When the California Legislature enacted Section 3344, it expressly exempted from liability

9   any use of an individual's likeness in an expressive work that relates to public affairs. Cal. Civ. Code

10  § 3344(d). That exemption affords such works even broader protection against statutory

11  misappropriation claims than the First Amendment does; in fact, it is designed to avoid First

12  Amendment questions in the area of misappropriation by providing extra breathing space for the use

13  of a person s name in connection with matters of public interest. *New Kids*, 971 F.2d at 310 n.10.

14  Both the Ninth Circuit and the California Supreme Court have observed that Section 3344(d)

15  provides a complete defense to statutory **and common-law right-of-publicity claims**. *Id.* at

16  309-310; *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421 (1983).

17  Consistent with the legislative purpose, courts have interpreted the "public affairs" exemption

18  expansively, and have recognized that it applies to much more than just traditional news reports. In

19  *Dora*, for example, the court rejected the plaintiff's argument that the defendants' film about early

20  surf culture did not relate to "public affairs" within the meaning of Section 3344(d). 15 Cal. App.

21  4th at 545-546. Noting that "Civil Code section 3344, subdivision (d) distinguishes between news

22  and public affairs," the court held that "the Legislature intended that the category of public affairs

23  would include things that would not necessarily be considered news." *Id.* at 545. Because "the public

24  is interested in and constitutionally entitled to know about things, people, and events that affect it,"

25  the court concluded that "we cannot limit the term 'public affairs' to topics that might be covered on

26  public television or public radio." *Id.* at 546. Turning to the defendants' film, the court observed that

27  "surfing has created a lifestyle that influences speech, behavior, dress, and entertainment," and "has

28  also had a significant influence on the popular culture, and in that way touches many people." *Id.*

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-457-1079<br>Fax: 559-457-1720

14

MEMORANDUM OF POINTS AND AUTHORITIES

1    For those reasons, the court found that early surf culture satisfied the public-affairs test, and that the

    film was exempt from liability under Section 3344(d).

2        Like the works at issue in *Dora*, *Montana*, and *New Kids*, the content at issue in this case

3    falls within the public-affairs exemption. These decisions recognize that the exemption shields works

4    whether informative, entertaining, or both that relate to "popular culture" and to "real-life

5    occurrences." *Dora*, 15 Cal. App. 4th at 1545-1546. As set forth in detail above, all of the material

6    alleged in Plaintiff's complaint relates to issues of public interest, and thus to "public affairs" within

7    the meaning of Section 3344(d). Plaintiff's misappropriation claim fails for this additional reason.

8              3.    **Plaintiff's Stalking Claim Also Fails Because He Has No**
                     **Independent Corroborating Evidence to Support It.**

9

10       Cal. Civ. Code Section 1708.7(a)(1) requires Plaintiff to provide "independent corroborating

11    evidence" of his stalking claim. Plaintiff cannot provide any independent corroborating evidence

12    that Defendant was working with individuals to physically stock and surveil Plaintiff to cause

13    Plaintiff to fear for his safety. Plaintiff's entire complaint is based on wild speculation and on

14    constitutionally protected speech. His claim of stalking fails for this reason alone. Moreover, it is

15    unreasonable for Plaintiff to claim that the alleged Tweets caused him to feel harassed, etc. when all

16    he had to do to ignore Defendant MEREDITH's alleged harassing comments was to click "unfollow"

17    or "block." Plaintiff simply could have turned off the communications and blocked the comments

18    from Defendant's alleged accounts.

19                                      **IV.**
                                 **CONCLUSION.**

20       California's SLAPP statute provides for the early dismissal of meritless actions, like this one

21    as against MEREDITH, which arise from the exercise of free speech rights. C.C.P. § 425.16.

22    Accordingly, Defendant MEREDITH respectfully requests that this Court strike from Plaintiff's

23    Complaint all of the causes of action against Defendant MEREDITH with prejudice (the First and

24    Third Causes of Action), and award him attorney's fees and costs incurred in defending against this

25    meritless lawsuit. C.C.P. § 425.16(c).

26    Dated: November 18, 2020          WHELAN LAW GROUP,
                                        A Professional Corporation
27

28                                      By Brian D. Whelan,
                                        Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

15

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On November 19, 2020, I caused to be served the within document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE COMPLAINT**

( )     **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )     **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)    **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )     **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )     **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )     **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

| | |
|---|---|
| Derek P. Wisehart | Steven S. Biss |
| Law Offices of Derek P. Wisehart | 300 West Main Street, Suite 102 |
| 2330 W. Main Street | Charlottesville, Virginia 22903 |
| Visalia, CA 93291 | Tel: (804) 501-8272 |
| Tel: (559) 636-9473 | Fax: (202) 318-4098 |
| Fax: (559) 636-9476 | Email: stevenbiss@earthlink.net |
| Email: derek@dwisehartlaw.com | |
| | Counsel for Plaintiff |
| Counsel for Plaintiff | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

16

MEMORANDUM OF POINTS AND AUTHORITIES

1   Brian D. Whelan, Esq.  (SBN 256534)
2   WHELAN LAW GROUP, A Professional Corporation
    1827 East Fir Avenue, Suite 110
3   Fresno, California   93720
    Telephone:  (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMERON, CLERK
BY:   NICOLE RENTERIA

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            COUNTY OF TULARE

9

10  DEVIN G. NUNES,                        )  Case No. VCU284528
                                           )
11            Plaintiff,                    )  **DECLARATION OF BEN MEREDITH IN**
                                           )  **SUPPORT OF DEFENDANT'S SPECIAL**
12       v.                                )  **MOTION TO STRIKE PLAINTIFF'S**
                                           )  **COMPLAINT PURSUANT TO**
13  BENJAMIN PAUL MEREDITH,                )  **CALIFORNIA CODE OF CIVIL**
    TWITTER, INC., and DOES 1 to 100,      )  **PROCEDURE SECTION 425.16**
14  Inclusive,                             )  **(ANTI-SLAPP)**
                                           )
15            Defendants.                   )  Date:   December 22, 2020
                                           )  Time:   8:30 a.m.
16                                         )  Dept.:  7
                                           )
17                                         )  Complaint Filed:   October 5, 2020
                                           )  Trial Date:        Not Set
18

19       I, BEN PAUL MEREDITH, declare:

20       1.      I am the one of the Defendants in this case.  The following facts are within my

21  personal  knowledge and, if called as a witness, I can testify competently to each of them.

22       2.      I hold a doctorate in education. I have held multiple positions in colleges and

23  universities in California, Washington and Oklahoma. I rose to the rank of Dean.  In 2002, I left

24  Porterville College in good standing to take a job at San Joaquin Valley College.  Ultimately,  I

25  moved to Washington State to pursue a career opportunity, and not because I was "pushed" out

26  of California, as Mr. Nunes claims.

27

28

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                    1

                       DECLARATION OF BEN MEREDITH

3.      Among other positions I now hold, I am the Chief Technology Officer and Co-Founder of DKE Technologies (dketechnologies.com), which is a search engine development company. I am also the Chief Technology Officer and Co-Founder of NoSchoolViolence.org (noschoolviolence.org), a federally registered 501(c)(3) non-profit, that uses machine learning to uncover insights to reduce school violence.  I am not a network engineer or cyber security expert as claimed in the lawsuit.

4.      I do not have a business or interest in a business that makes use of Mr. Nunes' image or likeness nor have I generated any moneys directly or indirectly from Mr. Nunes or his likeness.

5.      HISTORY WITH DEVIN NUNES: From 2001 through 2005, I lived in Visalia, California. Through my involvement in Central Valley Republican politics, I came to know Devin Nunes. In fact, Devin Nunes and his friend, Johnny Amaral, approached me to run for the Tulare County Republican Central Committee. With their help, I won the election. I held elected office from 2000 until I left the position in 2002.

6.      In 2002, I vocally opposed the Central Committee's endorsement of Devin Nunes' candidacy for United States Congress. Though Mr. Nunes had helped me with my election, I did not believe the twenty-something-year old was qualified to represent us in the United States Congress. The endorsement was very aggressively pushed by then-Representative Bill Thomas of Bakersfield.  I was grateful for Mr. Nunes' help to elect me to the position, but I felt that it was my duty and obligation, based on what I had come to know of Nunes, to resist his candidacy and thus the endorsement. This of course did not go over well, and has apparently resulted in Mr. Nunes' grudge against me for the better part of two decades.  From my experience on the Tulare County Republican Central Committee, I held no ill will against Mr. Nunes -- though, of course, now I am displeased to be named me in another one of his frivolous lawsuits.

7.      In 2002, I left the Central Committee and other posts in the California GOP of my own free-will as a result of my disagreement with the direction of the California GOP and the Tulare County Central Committee.

///

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

8.      <u>MR. NUNES' FALSE CLAIMS</u>: Mr. Nunes makes many false statements about me in his lawsuit. I will address those that are relevant to this motion (in other words, I am not going to hunt down all of the false and irrelevant smears bandied about in the lawsuit):

A)      I have not deployed "thousands of incendiary and hateful comments" against Mr. Nunes as alleged in the lawsuit;

B)      I have not coordinated with "violent extremists" to "attack" Mr. Nunes;

C)      I only have one twitter account (and not many as claimed);

D)      I have never threatened Mr. Nunes' life;

E)      I have never been contacted by District of Columbia Capitol Police in any way for any reason. Ever;

F)      I do not know the CEO of Twitter;

G)      I have never met the CEO of Twitter nor coordinated with Twitter for any purpose;

H)      I have not received any money from the Voter Protection Project;

I)      I have not received any monies from any person with respect to any activities related to or connected to any activity of mine on Twitter;

J)      I have never accused Plaintiff of "assassination" or "murder;"

K)      I have never solicited any agent or any person to physically harm Mr. Nunes;

L)      I have never threatened Mr. Nunes with bodily harm;

M)      I had nothing to do with the August 27, 2020 "incident." I was not there and I did not tell someone to record what happened;

N)      Since 2002, I cannot recall a single time where I was anywhere near Mr. Nunes nor have I "stalked" Mr. Nunes in any fashion or as claimed in the first cause of action.

O)      I have not used Mr. Nunes' image and/or likeness for commercial activities;

P)      I have not used Mr. Nunes' image and/or likeness to sell merchandise;

Q)      I have not used Mr. Nunes' image and/or likeness to make any money (again, I have not made any money off of Mr. Nunes or his image and/or likeness);

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1721

3

R)   I have not used Mr. Nunes' name to "solicit money and on or in porducts, merchandise or goods (t-shirts, coffee mugs and other paraphernilia[sic]) offered for sale to the public." (Plaintiff's Complaint at para. 35.)

S)   I have not done any business that involves Mr. Nunes or his image and likeness, nor have I "unfairly competed" with Mr. Nunes for his name, image, or likeness as he claims in his fourth cause of action; and

T)   My name is Ben and has never been Benjamin.

9)   Prompted by this lawsuit, and after having been credited for an "unprecedented" number of tweets, I took the time to see how many twitter messages I sent, tweeted, or liked. Since the inception of my account, I average 2.19 tweets per day and 3.73 "likes" per day. Objectively, this is not an unprecedented number by any stretch of the imagination.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on November 12, 2020

By Meredith

Whelan Law Group,
A Professional Corporation
1827 Fam Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559 437-1079
Fax: 559-437-1720

4

DECLARATION OF BEN MEREDITH

**PROOF OF SERVICE**

1

2      I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On November 19, 2020, I caused to be served the within document(s): **DECLARATION OF BEN MEREDITH IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 (ANTI-SLAPP)**

3

4

5

6      ( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

7

8      ( )   **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

9      (X)   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

10

11

12      ( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

13

14      ( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

15

16      ( )   **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

17

18      Derek P. Wisehart                              Steven S. Biss
        Law Offices of Derek P. Wisehart          300 West Main Street, Suite 102
19      2330 W. Main Street                          Charlottesville, Virginia 22903
        Visalia, CA 93291                            Tel: (804) 501-8272
20      Tel: (559) 636-9473                          Fax: (202) 318-4098
        Fax: (559) 636-9476                          Email: stevenbiss@earthlink.net
21      Email: derek@dwisehartlaw.com

                                                     Counsel for Plaintiff
22      Counsel for Plaintiff

23      I declare under penalty of perjury under the laws of the State of California that the

24      foregoing is true and correct.

25      Executed on November 19, 2020, at Fresno, California.

26

27                                                     STACEY VUE

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

DECLARATION OF BEN MEREDITH

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMERON CREARIA

BY: _____

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                       COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11               Plaintiff,            )   **DECLARATION OF BRIAN D. WHELAN**
                                       )   **IN SUPPORT OF MOTION TO STRIKE**
12          v.                         )   **COMPLAINT**
                                       )
13  BENJAMIN PAUL MEREDITH,            )
    TWITTER, INC., and DOES 1 to 100,  )   Date:   December 22, 2020
14  Inclusive,                         )   Time:   8:30 a.m.
                                       )   Dept.:  7
15               Defendants.           )
                                       )
16                                     )
                                       )
17                                     )   Complaint Filed:   October 5, 2020
                                       )   Trial Date:        Not Set
18  _____)

19          I, Brian D. Whelan, declare:

20          1.      I am an attorney at law, duly authorized and licensed to practice before all

21  of the courts in the State of California, and I am the attorney for Defendant Ben Paul Meredith

22  ("Defendant").

23          2.      Over the course of the last two years, NUNES has sued a number of people

24  and organizations throughout the United States.  I represented three individuals that NUNES sued

25  in Tulare County in August 2019 (Paul Buxman, Daniel O'Connell, and Hope Nisly in Case No.

26  279766.)  In that case, NUNES took exception with my clients' involvement in their unsuccessful

27  ballot designation lawsuit challenging NUNES' designation as a "farmer." Consequently, NUNES

28  sued my clients for interference with his "prospective economic advantage," and for engaging in "a

FAXED

Whelan Law Group,
A Professional Corporation
1827 Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                       1
            DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

1  civil conspiracy." NUNES dismissed the case before a motion to strike was filed but within an hour

2  after my call to his then local counsel to discuss a date for the motion to strike.

3          3.      In preparing this motion, I have reviewed multiple lawsuits where NUNES

4  is the Plaintiff and Mr. Biss is one of the attorneys – as is the case here and as was the case with the

5  lawsuit I mentioned in the preceding paragraph. Of the more newsworthy lawsuits, is the lawsuit

6  against a parody Twitter account user @DevinCow venued in Virginia in the Circuit Court of the

7  County of Henrico (Case No. CL19-1715-00). In that lawsuit, NUNES is claiming $250 million

8  dollars in damages to his reputation on account of statements made by the twitter user with the

9  handle @DevinCow along with the other defendants. Naturally, the lawsuit has generated national

10 attention from late night talk shows hosts (Jimmy Kimmel, and Stephen Colbert) and celebrities. The

11 twitter handle @DevinCow now has over seven hundred thousand followers and its own satirical

12 "mooovement;" as described on Twitter by the "followers" who post satirical videos dressed like

13 cows poking fun at the lawsuit and the Plaintiff in that lawsuit, NUNES.

14         4.      In this lawsuit, NUNES claims an unnamed "political activist" engaged him

15 on August 27, 2020 on a flight. (Complaint para. 1.) The incident was itself videotaped and is a

16 matter of news record and is available online in an article titled "Exclusive: What Really Happened

17 on the "Plane Full of Anarchists."(https://demcastusa.com /2020/09/03/ exclusive-what-

18 really-happened-on-the-plane- full-of-anarchists/. Attached as Exhibit "A" is a true and correct copy

19 of the print out of the relevant portions of the webpage where the article was located and printed as

20 of November 18, 2020 at 9:18 p.m. (The article is visible online as is the video, but the advertising

21 on the article obscures portions of the text when it is printed). The video that is described in the

22 article and embedded in the article depicts a woman who asked NUNES on an empty plane and with

23 a phone camera if he " Sued any cows lately ....sued any cow..more cows.. lately ....moo moo."

24         5.      Indeed, NUNES knows that "political tracking," such as what he experienced

25 with the above described event, is an accepted and encouraged part of congressional campaigns. In

26 2012, just like NUNES, I ran as a Republican candidate for United States Congress here in the

27 Central Valley. During my candidacy, the National Republican Congressional Committee ("NRCC")

28 supplied candidates, such as myself, with written guides to assist with the campaign. Attached as

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

1   Exhibit "B" is a true and correct copy of the March 26, 2012 email I received from the NRCC with
2   a "Video Tracking Guide" – less redactions of the telephone numbers.  (Aside from the "video
3   tracking guide," I am not supplying the other lengthy attachments attached to the Exhibit "B" email.)
4   After I won the primary election, the NRCC invited United States Congressional candidates from
5   across this country to Washington D.C. to attend "candidate school." I attended and the NRCC
6   reinforced and repeated (in writing) that video tracking your opponent, around the clock, was
7   expected of the candidates.  (I chose not to, and lost the election – though I am sure that's not why
8   I lost the election.) During a break in the "candidate school," I also met with NUNES and the
9   director of the NRCC. I know that all of the NRCC materials, like the ones I attach here, were
10  supplied or made available to all candidates and their campaigns, including NUNES.

11          6.      Attached as Exhibit "C" is a true and correct copy of the NUNES wikipedia
12  page referenced in the accompanying brief.

13          I declare under penalty of perjury, under the laws of the State of California, that
14  the foregoing is true and correct.

15                  Executed on November 18, 2020.

16

17                                                      Brian D. Whelan

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

Exhibit "A"

 

# Exclusive: What Really Happened on the "Plane Full of Anarchists"

SEPTEMBER 3, 2020 · NATIONAL / OP-ED · BY JAMIE CARTER · 9 MINS READ



I attended the 2020 March on Washington last weekend, flying all the way from Salt Lake City to join with my fellow activists and demand an end to police brutality against Black Americans. It was a thrilling experience. The day I got back, exhausted from the DC heat and weekend events, imagine how surprised I was to hear the President talking about me.

"The person on the plane said there were about six people like that person or more less and what happened is the entire plane filled up with the looters, the anarchists, rioters—people looking for trouble."

YOU MIGHT BE INTERESTED IN    ✕      

e "anarchists" in question were on a plane from SLC to DC,

n Devin Nunes.

it is so beyond ridiculous that the President characterized it

nounced (the day of George Floyd's funeral), I immediately called Lori Coleman, a friend and coworker at DemCast Usa. and we booked tickets and a hotel that very day. We knew this would be an important moment in history, and we wanted to be there – to be a witness and to stand in solidarity with the Black Lives Matter movement.

This was my first trip to the DC area, and when the day of the trip finally arrived, I woke up early for my 10am flight. The plane I boarded was on layover from the LA area. As I waited to board, I talked to many people that were also heading to the March on Washington. The atmosphere brimmed with excitement, anger over what had been happening, and a feeling of solidarity among those that were going.

Early on, I recognized that Devin Nunes was on the plane. As you may recall, Nunes – a well known Trump propagandist and enabler – has such a low tolerance for criticism that he famously sued a Twitter user masquerading as "Devin Nunes' cow" because of how relentlessly the cow pointed out his treasonous activities on the platform.

In that light, everything that followed makes perfect sense.

About an hour into the flight, I went to the restroom, and on the way back I decided to have a little fun with Nunes. Having long been a supporter of @devincow, I pulled out my phone and hit record. Stopping at his seat, I asked him "Have you sued any cows lately?"

He just stared, so I asked again: "Have you sued any more cows latey?"

YOU MIGHT BE INTERESTED IN          ✕



**...eorgiaOnMyMind**          

...thugs and anarchist mooing at
...A rep.

I'm shocked he survived the angry mob.

I would also like to ask who paid for the 1st class flight
ticket and why he was wearing the mask around his neck?

2:21 PM · Sep 1, 2020 from Salt Lake City, UT          ⓘ

♡ 4.7K     ⚡ See the latest COVID-19 information on Twitter

(BTW – nice mask etiquette, Devin.)

YOU MIGHT BE INTERESTED IN          ✕                    GO TO TOP

...my seat. That was the entire exchange.

...ummoned two flight attendants, speaking to them for ...t class, and allowed no one else to use the restroom at the ...t. When the flight landed, once again, two flight attendants ...ited the plane before everyone else could moo at him.

A narrow escape! What a snowflake.

A 12 second exchange has now led to days of news coverage over the "antifa thug protestors that descended on DC to disrupt the RNC convention." In reality, there were no thugs – just this white suburban mom who mooed at him.

I like to picture the moment that Devin went crying to uncle Donald to tell him about all the scary people on that plane. It's hard to even fathom the intense fragility of this Twitter-cow-suing, suburban-mom-fearing man who turned a moo into a near-death narrative.

While this story is funny on its face, in reality this incident and its aftermath showcase the intensely dangerous games that Trump and his enablers play with the truth. This isn't a one-off event, and we all know it. This administration is only concerned with holding on to power, and they take every opportunity to twist and squeeze facts until they fit snugly into a narrative that suits them.

They've been doing this on a much grander scale with the entire Black Lives Matter movement since the death of George Floyd – painting protestors as anarchists who want to finish off the cities and then take their urban violence to your doorstep in suburban and rural America. It's pure fear-mongering and distortion, aimed at churning the white fragility that delivered him the White House in 2016.

Reality doesn't matter to them. Just the narrative.

YOU MI HT BE IN ER STED IN       ✕              

on, I attended the protests outside of the White House as

for the Republican nomination. There was music & dancing –

ere was no violence, no anarchy, no destruction. Nothing.

**eorgiaOnMyMind**
@JCTheResistance

In the midst of the violent mob that @realDonaldTrump is so terrified of he had to barricade himself in.

6:35 PM · Aug 27, 2020                                      ⓘ

♡ 198      💬 102 people are Tweeting about this

**Jamie Carter - #GeorgiaOnMyMind**
@JCTheResistance

Bigger than Trump's inauguration.

#RNCConvention2020
#TrumpChaos



Carter - #GeorgiaOnMyMind's other Tweets

As Trump was getting ready to speak, we headed over to the South Side of the White House. There were sirens, blow horns, pots and pans and air horns. And a LOT of laughter.



**Jamie Carter - #GeorgiaOnMyMind**
@JCTheResistance

Outside the South gates of the WH giving @realDonaldTrump his termination papers.

#RNC2020
#TrumpChaos

YOU MIGHT BE INTERESTED IN ✕  



e are Tweeting about this

of the United States is calling "thugs". Everyday people who
who have the gall to exercise their First Amendment right to
engage in peaceful protest.

The next day, the march itself was transformative for me: powerful speakers, raw emotions and people of all races, ethnicities, ages, genders, orientations and identities coming together to say, in one voice: "No more."

YOU MIGHT BE INTERESTED IN   ✕

This is my America and I reject the narrative that Donald Trump and Devin Nunes are weaving.

Do we now live in a country where you are not allowed to even speak to (ok, ok – and poke fun at) elected officials? A country that if you try to change the status quo so that equality is finally achieved, you are labeled "antifa"? A country that if you disagree with those in power you are a thug?

If so, I will proudly bear that label. I'll be a 'thug'.

Exhibit "B"

**brian@whelanlawgroup.com**

| | |
|---|---|
| **From:** | Allison Coccia <acoccia@NRCC.org> |
| **Sent:** | Monday, March 26, 2012 9:17 AM |
| **To:** | Brian@whelanlawgroup.com |
| **Cc:** | Jon Reedy |
| **Subject:** | Young Guns Step 2 - On the Radar -Brian Whelan |
| **Attachments:** | 6. Young Guns Campaign Contacts.xlsx; 7. Sample Finance Plan.docx; 8. VIDEO TRACKING GUIDE.docx; Step 2 - On the Radar 5_2_11.pptx |

Brian:

How are you?

Please find attached an electronic version of the "On the Radar" package for the 2011-2012 Young Guns Program.

Please review the attached powerpoint document entitled Step 2 On the Radar.  It includes all of the benchmarks to complete this level.  The additional attachments are the corresponding templates we would like your campaign  to complete as well as other helpful documents.  Once you complete these benchmarks, we will review what you have submitted and let you know whether you have achieved the "On the Radar" level.

Please feel free to call me any time with any questions you might have at _____ (cell.)

Allison Coccia       (Redacted)
Young Guns
NRCC

_ (Redacted)

1

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

Form #8

# VIDEO TRACKING GUIDE
## On the Radar

Video tracking is an essential tactic that can make or break your campaign. You not only need to explain to the voters why you should be elected, you need to explain why your opponent should be replaced – particularly if you are running against a sitting incumbent. In the YouTube, flipcam, reality TV era, voters are predisposed to believe messages that they can see with own eyes rather than something that is merely described to them. The only way to do that effectively is to create a tracking program in your campaign that relentlessly gathers footage of your opponent. Only after dedicating the resources to tracking them FULL TIME will you eventually yield the video that you need to win. And remember, you are raising tremendous amounts of money to put into television advertising – a visual medium. You need visual content to be successful.

For the tracker: You will be put into uncomfortable, high stress environments. However, yours is a position where a motivated individual will excel, and your services are an invaluable asset. Here are some things you should keep in mind when tracking your candidate:

*Safety: First, a word on safety: if at any time you ever feel that your safety is threatened, simply leave. As important as gathering footage is, it is never more important than your safety.*

**The Importance of Gathering Footage:** If gathering footage and obtaining field research on our opponents were not of paramount importance, the video research program would not exist. Consequently, the video you will obtain, even video that may not initially seem important or extraordinary in any way, may turn out to be of invaluable use. There are two major reasons that we collect footage:

1) To hold politicians accountable for their words and actions. By filming politicians, we are able to make sure that they do not flip-flop, make promises they cannot keep, overstate or exaggerate their past achievements and their record or tell outright lies. Everyone remembers the Virginia 2006 U.S. Senate race, when Republican Sen. George Allen was caught on tape ridiculing an opponent's tracker, leading to the famous "Macaca" moment. That single clip of shaky, low-quality video footage went a long way toward defeating a very powerful incumbent. While these types of "silver bullet" moments are rare, they are certainly possible, and they can be game-changers.

2) In addition to holding politicians accountable, field video is used to gather production-quality video for online web and television ads. Your footage could be the difference between winning and losing a seat in an important national election.

**Finding Events**
As obvious as this seems, the most important part of your work as video researcher (aside from

1

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

**Form #8**

the actual filming) will be to find events. Finding events can be difficult, but it is essential in gathering footage. You will soon find that events can be found through a variety of sources and channels.

## Bookmarks
There are many sources to access to seek out events that the candidate will be attending. A strong suggestion would be to create bookmarks of these pages by creating separate folders inside your bookmarks to keep various categories of web pages (Newspapers, Television Stations, Blogs, etc.) This will save you much needed time and an immense amount of unnecessary frustration.

## Sources
1.) *Candidate Web Sites.* The first and most obvious place to start your events search is the opposing candidate's website. Almost all candidates will have an "Events" tab or page on their website where they will post upcoming events. This method of event-finding will have varying degrees of success, depending on which particular candidate you track. Some candidates post everything they do on their website, while others are much more secretive. If you are following an incumbent, be sure to also check their official House site in addition to their campaign site.

2.) *News Searches.* Most of your events will be found through online news searches. The most frequently used of these is Google News. Be sure to make this process easier by setting up your Google Alerts and having them sent to your email. You can do this by going to Google Alerts and typing your search term in the search bar. Then select "comprehensive" as your alert type, as this will cover news, blogs, web, video, and groups. In the "how often" drop-down menu, you will want to select "as-it-happens." Include in your news searches a search of the state you are researching (Example: "Ohio"). This will keep you updated on all state news, in addition to helping you find important upcoming political events that your candidate may attend.

3.) *Blogs.* Every state has its own political blogs that will provide you with tips, rumors, and information to help you find events. If your race is one that is discussed commonly in the national news, check some of the more informative blogs regularly. Reading liberal blogs such as the Daily Kos can come in handy when they write about your race. In order to streamline this potentially cumbersome process, you should subscribe to Bloglines (http://www.bloglines.com). Bloglines is a fast, easy, and user-friendly RSS newsreader. It requires no software installation, which means that it can be accessed from any device (including phones) with internet. To sign up, simply enter your e-mail address, create a password, and then reply to an e-mail confirmation. Bloglines organizes all your information into "read" and "unread" blog entries, which quickly allows you to see which entries are old and which are new.

4.) *Email Lists.* Being on email lists is one of the most important ways of locating events. Start out by subscribing to all email lists put out by the candidate you are researching. These

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

5.) *Facebook and MySpace.* As odd as it may sound, virtually every legitimate candidate will have a Facebook page and probably a MySpace page. Check these daily as valuable information can be obtained this way.

6.) *Our Candidate's Campaigns and State GOP Officials.* Finding events does not have to be a one person job. Inevitably, the campaigns of our candidates will find out about some events either before you or that you were not able to find. It is important to have at least one contact person at the campaign that you can email or check in with on a regular basis to see if they know of any upcoming events. Oftentimes, members of the media will contact the campaign when they get press releases from the opposing campaign. Be ready to take advantage of this.

7.) *All Newspapers, TV Stations, and Radio Stations in or Around Your Area.* Scanning all local and state newspapers will be extremely important, as will keeping up with all the local TV news. To a lesser extent, this is also true of radio. To find an exhaustive list of newspapers, TV stations, and radio stations in your state, visit <u>SGH Resources State Handbook & Guide</u>.[1] Scroll down, select your state, and then you will get a list of all the listings in your state, along with the URL for each of them. Add these to your bookmarks. Do not neglect small town newspapers. These papers are usually the lifeblood of their small communities and a campaign stop from a candidate is sure to make news.

**Setting Up and Getting Into Events**
Once you have found an event, send a quick email to your national contact highlighting the date and time of the event, location, source, and a short description (if applicable). Some events will require you to purchase a ticket, such as a banquet being put on by a local chamber of commerce where our opponent is the speaker, but do not purchase tickets to campaign fundraisers.

Make sure you have current and accurate directions to all of your events. Be sure to have updated maps in your car and try to utilize things like Google Maps and MapQuest, as well as internet on your cell phone or blackberry.

<u>*Preparation:*</u> Make sure you have current and accurate directions to all of your events and ensure that you allow plenty of time to make it to your event. Allow for special considerations such as rush-hour traffic, off-peak public transportation hours, weather, and unforeseen emergencies. Arriving 15-30 minutes early should afford you the opportunity to scope out the venue and decide where the best location is for you to shoot. Attempt to be as inconspicuous as possible in the time leading up to the arrival of the candidate. Be prepared.

<u>*Removal from Events:*</u> Candidates and campaigns will sometimes try to have you removed from events because they do not want you to film them (for obvious reasons). This may be as simple as a campaign staffer asking you to leave or may involve police officers requesting your personal information. The best policy in this situation is to explain to the officer who you are and that you

3

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

are there for political purposes and that you have a right to be there. Almost all officers will allow you to stay, but if they do not, you should follow their instructions. The last thing anyone wants is for you to be hauled off to jail. Simply ask the officer for his/her name, badge number, and name and phone number of their supervisor, and then leave the scene. Finally, you are under no obligation to explain your purpose or identity except upon request by a law enforcement officer.

*Legal Issues:* While attending certain events, it's important to know that you are acting within the law. As a general rule, you should always be polite and respectful and never attempt to harass, alarm, or frighten those around you. There are a few standard rules to follow to ensure you're on the right side of the law:

1) You may record anyone in a public place, on public property.

2) You may record the exterior of private property as long as you are on public property.

3) You may record private property that is generally open to the public, unless told otherwise.

4) You may not film the interior of private property from anywhere, without consent of the property owner.

5) Members of the public have a very limited scope of privacy rights when they are in public places. Basically, anyone can be photographed without their consent except when they have secluded themselves in places where they have a reasonable expectation of privacy such as dressing rooms, restrooms, medical facilities, and inside their homes.

6) Public officials and private citizens voluntarily involved in newsworthy incidences are defined as public figures. Public figures have fewer rights to privacy than an "ordinary person." Public officials, and their staffers and family members are still entitled to freedom from harassment. This means that, when filming events, you should avoid behavior such as hounding, following, intruding, frightening, terrorizing, or ambushing your subjects.

7) Public places include, but are not limited to: sidewalks, roads, city halls, courthouses, or other city buildings, public parks, pavilions, and other such places.  You have a right to be in these areas and cannot be legally made to leave.

*Dealing with Politicians:* As a public figure, their beliefs on issues of public policy as well as personal indiscretions are of general interest to the public and subsequently, 'fair game'. You have the unique opportunity to keep politicians honest and restore accountability. There is always a chance that the candidate you're following will lose his or her temper, become angry that he or she is being filmed, shove your camera, or become aggressive with you in some other manner. There are a few things to remember in these scenarios. **The first and foremost is to be concerned for your personal safety.** If, however, a candidate does confront you **and you are**

4

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

**safe**, do your best to get a good, steady shot, and remember to keep the camera rolling. That type of footage may only come about once every couple of years and it would be a shame to lose it, if safety is not an issue.

*Honesty:* One of the first things you will find out about going to opposing events is that you will almost always be asked at least once who you are and what you are doing. People naturally get curious when someone with a camera is filming. It is your prerogative to keep that information to yourself, but **do not pretend to be someone you are not**. There are a number of ways to approach the situation. You can tell them that you would rather not disclose who you are or what you are doing. You can also answer in vague but true generalities, such as "I work for a political organization and I am here for political purposes."

**Filming Events**

*Equipment:* In most cases, you will need a video camera and tripod. In absence of a tripod, it is best to cross one arm across your waist and rest your other arm on top of it, which will provide some stability for the camera. In general, you will not need expensive equipment such as telephoto lenses and high-powered microphones. Simple video cameras are not only easier to operate but also are less obtrusive. Be sure to experiment with the equipment until you are comfortable with it.

*Camera Shots:* Because it is important to obtain production-quality video, you must take every step to obtain a good shot. When possible, record for 5 seconds before and after filming the subject. While not completely necessary, this makes editing easier. In order to obtain the best possible shot, always employ the **rule of thirds**. Mentally divide the shot into thirds (both horizontally and vertically), as seen in the following picture of the bee. Always try to place your subject in the middle third of the shot.



You should also be mindful of **headroom**. It seems obvious not to cut off the head of the subject that you are filming, but also pay attention to providing too much headroom. Again, the rule of thirds comes in handy here.

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

Every action and shooting situation is different; some will require you to move fast or to stay still, to let the subjects know that they are being filmed or to stay hidden.

*Watching for Things of Interest:* It is extremely important that you pay close attention while you are filming. You should make mental notes (or written notes, if possible) of things that your subject may do that could be of use at a later point. Unusual facial expressions, whether they be angry, goofy, etc., fall into this category. So do comments that are either factually inaccurate, outlandish, or contradictory to other statements the candidate has made. These are things that can prove to be very embarrassing if used correctly. Once you are done filming each event, write a comprehensive but brief synopsis of the event and send to your contact for the event. Be sure to make them aware of anything unusual or exceptional in your footage. Also, include the names and positions, if applicable, of other people in the footage. Remember, you are the person who saw the event firsthand, and you are in the best position to tell the story of what happened.

*B-Roll:* B-Roll is supplemental footage inserted into ads, interviews, or documentaries and used to fill in gaps where a visual image is needed. You should shoot this footage before or after the candidate arrives to the event if possible. If you do shoot B-Roll, you should look for landmarks and sites that are unique to the location of the event, such as a restaurant or bar façade or recognizable monuments. When shooting B-Roll, hold each shot for approximately 12-15 seconds, and be sure to make several shots of each image. Include various camera techniques such as a pan (side-to-side), tilt (up-and-down), and a zoom in and zoom out shot of each subject.

[1] *This can be viewed at http://www.shgresources.com/resources/newspapers/.*

Exhibit "C"

WIKIPEDIA

# Devin Nunes

**Devin Gerald Nunes** (/ˈnuːnɛs/;[1] born October 1, 1973) is an American politician and former dairy farmer serving as the U.S. Representative for California's 22nd congressional district since 2003. A member of the Republican Party, Nunes was Chair of the House Intelligence Committee from 2015 to 2019. He was also a member of President Donald Trump's transition team.[2] Nunes's district, numbered as the 21st from 2003 to 2013 and as the 22nd after redistricting, is in the San Joaquin Valley and includes most of western Tulare County and much of eastern Fresno County.

In March 2017 the U.S. House intelligence committee, which Nunes chaired at the time, launched an investigation into possible Russian interference in the 2016 United States elections. On April 6, 2017, he temporarily stepped aside from leading that investigation while the Office of Congressional Ethics investigated allegations (which Nunes denied) that he had improperly disclosed classified information to the public.[3][4] In December 2017 the Republican-majority U.S. House Committee on Ethics closed its investigation without taking any action against Nunes.[5]

In February 2018, Nunes publicly released the Nunes memo, a four-page memorandum alleging an FBI conspiracy against Donald Trump. Nunes subsequently began an investigation of the FBI and the Justice Department for allegedly abusing their powers in an attempt to hurt Trump.[6][7]

## Contents

**Early life, education and early career**

**U.S. Congress**
Elections
Committees and caucuses
112th Congress
114th Congress

**Political positions**
Energy
Environment
Fiscal policy

**Devin Nunes**



Ranking Member of the House Intelligence Committee
**Incumbent**
**Assumed office**
January 3, 2019

| | |
|---|---|
| **Preceded by** | Adam Schiff |

**Chair of the House Intelligence Committee**
In office
January 3, 2015 – January 3, 2019

| | |
|---|---|
| **Preceded by** | Mike Rogers |
| **Succeeded by** | Adam Schiff |

**Member of the U.S. House of Representatives from California**
**Incumbent**
**Assumed office**
January 3, 2003

| | |
|---|---|
| **Preceded by** | Constituency established |
| **Constituency** | 21st district (2003–2013) 22nd district (2013–present) |

**Personal details**

| | |
|---|---|
| **Born** | Devin Gerald Nunes October 1, 1973 |

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On November 19, 2020, I caused to be served the within document(s): **DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT**

( )  **VIA FAX:** by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )  **BY HAND DELIVERY:** by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)  **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )  **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )  **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )  **BY ELECTRONIC SERVICE:** by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

1   Derek P. Wisehart, Esq. #178100
    Law Offices of Derek P. Wisehart
2   2330 W. Main Street
    Visalia, California 93291
3   Telephone:     (559) 636-9473
    Facsimile:      (559) 636-9476
4   Email: derek@dwisehartlaw.com

5   Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
6   300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
7   Telephone: (804) 501-8272
8   Facsimile: (202) 318-4098
    Email: stevenbiss@earthlink.net
9   (*Application for Admission Pro Hac Vice
    To be Filed*)
10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF TULARE

15

16  DEVIN G. NUNES.                         Case No. VCU284528

17              Plaintiff,                  **PLAINTIFF'S MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
18  vs.                                     OPPOSITION TO DEFENDANT'S
                                            MOTION TO STRIKE COMPLAINT
19  BENJAMIN PAUL MEREDITH,                 PURSUANT TO CCP § 425.16**
    TWITTER, INC., and
20  DOES 1 to 100, Inclusive,               Date:    December 22, 2020
                                            Time:    8:30 a.m.
21              Defendants.                 Dept.    7

22

23

24

25

26

27

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.  MEREDITH'S CONDUCT IS NOT PROTECTED FREE SPEECH ............................ 2

II.  PLAINTIFF'S EVIDENCE ......................................................................... 5

III.  MEREDITH'S DECLARATION AND SPOLIATION OF EVIDENCE.................... 7

IV.  DISCUSSION  9

    A.  MEREDITH COMMITED THE TORT OF STALKING.................................. 9

        1. Meredith's Motion To Strike Is Meritless ................................. 10

          a.    Meredith Fails The First Step ................................. 11

          b.    There Is A Reasonable Probability That Plaintiff
             Will Prevail ...................................................... 12

    B.  PLAINTIFF STATES A CLAIM OF COMMON LAW
       MISAPPROPRIATION............................................................... 14

V. CONCLUSION AND REQUEST FOR RELIEF................................................ 15

i

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                    **PAGE**

3

*Albert v. Seal*, 2018 WL 1163852, at * 10 (Cal.App. 2018) ................................................11

4

*Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014)                                      3

5

*Buchanan v. Crisler*, 323 Mich.App. 163, 922 N.W.2d 886, 895-896 (2018)        6

6

*City of Costa Mesa v. D'Alessio Inv., LLC*, 214 Cal.App. 4th 358, 371-372 (2013) ..............  10

7

*City of Cotati v. Cashman*, 29 Cal.4th 69, 76, 80-81, 124 Cal.Rptr.2d 519 (2002)................  11

8

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387,
   106 Cal.Rptr.2d 126 (2001) ..........................................................................  13

9

10

*Commonwealth v. Walters*, 472 Mass. 680, 37 N.E.3d 980, 995-996 (2015) ......................  4

11

*Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal.App.4th 1237,
   1244-1245 (2013).......................................................................................  10

12

13

*Eastwood v. Superior Court*, 149 Cal.App.3rd 409, 416-417,
   198 Cal.Rptr. 342 (1983) .............................................................................  13

14

15

*Equilon Enters. V. Consumer Cause, Inc.*, 29 Cal.4th 53, 67,
   124 Cal.Rptr.2d 507 (2002) ........................................................................9. 10

16

*Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013) ........................................10

17

18

*Khan v. 7-Eleven, Inc.*, 2014 WL 12601018, at * 4 (C.D. Cal. 2014)...............................9

19

*Krapacs v. Bacchus*, 301 So.3d 976, 979 (Fla. 4th DCA 2020) .....................................2

20

*Logue v. Book*, 297 So.3d 605, 612 (Fla. 4th DCA 2020) ...........................................13

21

*Madsen v. Buffum*, 2013 WL 12139139, at * 2 (C.D. Cal. 2013)...................................9

22

*Matter of Welfare of A.J.B.*, 910 N.W.2d 941, 501 (Minn.App. 2018) ............................2

23

*McNally v. Bredemann*, 30 N.E.2d 557, 563 (Ill.App. 2015) ......................................3

24

*No Doubt v. Activision Publishing Co.*, 192 Cal.App.4th 1018, 1034,
   122 Cal.Rptr.3d 397 (2011) ........................................................................14

25

26

*People v. Borelli*, 77 Ca.App.4th 703, 716, 91 Cal.Rptr.2d 851 (2000)..............................1

27

ii

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

*People v. Carboy*, 37 Misc.3d 83, 955 N.Y.S.2d 473 (N.Y. Super. 2012) ............................3

*People v. Gonzalez*, 2 Cal.5th 1138, 1143, 394 P.3d 1074 (2017) ........................................4

*People v. Lenio*, 2019 WL 637814 @ *3 (Mich.App. 2019).................................................13

*Piester v. Escobar*, 36 N.E.3d 344, 348 (Ill. App. 2015)........................................................2

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal.App.4th 464, 476, 39 Cal.Rptr.3d 43 (2006) ............................................................................................................12

*Purifoy v. Mafa*, 556 S.W.3d 170, 192 (Tenn.App. 2017)......................................................2

*Thunder Studios, Inc. v. Kazal*, 2018 WL 5099726, at * (C.D. Cal. 2018) ...........................8

*United Artists Corporation v. United Artist Studios, LLC*, 2019 WL 6917918, at * 10 (C.D. Cal. 2019).............................................................................................................1

*United States v. Feng Ling Liu*, 69 F.Supp.3d 374, 377 (S.D.N.Y. 2014) ............................6

*United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) .................................................2

*Wallace v. McCubbin*, 196 Ca.App.4th 1169, 1182-1184 (2011) ........................................10

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 572, 576 (1977) .........................14

## STATUTES

California Code of Civil Procedure § 425.16 . . . . . . . . . . . . . . . . . . . . . . . .2, 9, 10, 11, 12

California Civil Code § 1708.7.......................................................................................4, 8

## SECONDARY SOURCES

### Unpublished Cases:

*The following cases are cited and intended to be persuasive only pursuant to California Rule of Court, Rule 8.1115 (b)(1), which states:  An unpublished opinion may be cited or relied on: (1) When the opinion is relevant under the doctrines of law of the case....*

*Armstrong v. Parker*, 2013 WL 6795409, at * 4 (Cal.App. 2013) (unpublished) .................1

*Emerson v. Powers*, 2016 WL 7368641, at * 1 (Cal.App. 2016) (unpublished) ..................11

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

*Gibson v. Swingle*, 2010 WL 2136655, at * 6 (Cal.App. 2010) (unpublished) .....................12

*Hi-Land Mountain Homes, Inc. v. McEntyre*, 2019 WL 3335176, at ** 1, 12 (Cal.App. 2019) (unpublished) ......................................................................................11

*Levy v. Pearson*, 2009 WL 891032, at * 6 (Cal.App. 2009) (unpublished) ..........................12

*People v. Crittenden*, 2020 WL 3026340, * 9 (Cal.App. 2020) (unpublished) ....................9

*R.B.T. v. Taub*, 2020 WL 2744579, at * 5 (Cal.App. 2020) (unpublished) ...........................9

*Ratto v. Son*, 2007 WL 1244323, at * 8 (Cal.App. 2007) (unpublished)..............................12

*Santsche v. Hopkins*, 2019 WL 1353295, at ** 5-6 (Cal.App. 2019) (unpublished) ............11


**Other Secondary Sources:**

Fraser, Olsen, Lee, Southworth, & Tucker, The New Age of Stalking: Technological Implications for Stalking, 61 Juv. & Fam. Ct. J. 39, 41, 46–48 (Fall 2010).........................4

https://www.merriam-webster.com/dictionary/dox ...................................................6


**OTHER SOURCES**

Complaint

https://help.twitter.com/en/using-twitter/types-of-tweets ......................................................6

https://help.twitter.com/en/using-twitter/retweet-faqs ...........................................................6

https://help.twitter.com/en/using-twitter/liking-tweets-and-moments...................................7

https://www.linkedin.com/in/benpmeredith/ .........................................................................8

https://medium.com/@benpmeredith..........................................................................8

https://www.howtogeek.com/326159/can-other-people-see-the-tweets-ive-liked/ ...............7

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, respectfully submits this Memorandum in Opposition to the motion to strike pursuant to California Civil Code § 425.16 filed by defendant, Benjamin Paul Meredith ("Meredith").

## I.   MEREDITH'S CONDUCT IS NOT PROTECTED FREE SPEECH

1.      When words are part of a pattern of stalking or harassing behavior, they do not constitute protected speech. *See, e.g., People v. Borelli*, 77 Cal.App.4th 703, 716, 91 Cal.Rptr.2d 851 (2000) ("While the right to free speech guarantees a powerful right to express oneself, it does not include the right to repeatedly invade another person's constitutional rights of privacy and the pursuit of happiness through the use of acts and threats that evidence a pattern of harassment designed to inflict substantial emotional distress.");[1] *United Artists Corporation v. United Artist Studios, LLC*, 2019 WL 6917918, at * 10 (C.D. Cal. 2019) ("Schramm's online postings and his alleged advertising campaign are not protected under the First Amendment so long as the posts are threatening, harassing, or defamatory to Flores, Plaintiff's employees, or Plaintiff's counsel … [T]he First Amendment does not protect offensive and threatening messages and posts on public or semi-public websites, and such postings can be considered a harassing course of conduct.") (citing *Armstrong v. Parker*, 2013 WL 6795409, at * 4 (Cal.App. 2013) (unpublished) (finding harassment where the defendant posted comments on Facebook which either stated or strongly implied that the harassee was on welfare, has been promiscuous since a young age, was afflicted with sexually transmitted infections, wanted to rape little boys, and made threats of

---

[1]      Stalking statutes do not regulate the *content* of speech inasmuch as the *manner* in which the communication is made (*i.e.*, through repeated unconsented contact reasonably causing the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested). *See Borelli*, 77 Cal.App.4th at 716, 91 Cal.Rptr.2d at 851.

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

violence)); *United States v. Osinger*, 753 F.3d 939, 947 (9ᵗʰ Cir. 2014) (the defendant was "unrelenting in his pursuit and harassment" of the victim, including sending threatening text messages, impersonating the victim on Facebook, and posting sexually explicit photographs of her – "Any expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress" to the victim); *id. Krapacs v. Bacchus*, 301 So.3d 976, 979 (Fla. 4ᵗʰ DCA 2020) (the act of retagging plaintiff in defendant's social media posts "for four hours" constitutes one example of cyberstalking – "This conduct, by itself, is akin to an attempt to force unwanted speech upon Bacchus and therefore 'crosses the line' in terms of First Amendment protection.") (citation and quotation omitted); *Matter of Welfare of A.J.B.*, 910 N.W.2d 941, 501 (Minn.App. 2018) ("engaging in a pattern of harassing conduct [tweets directed towards the victim's autism] is not protected by the First Amendment simply because it is carried out by means of speech … The fact that A.J.B. engaged in this conduct in part by means of speech does not entitle this activity to First Amendment protection. The fact that speech was employed as the mechanism for causing the victim distress does not insulate the actor from punishment if the speech was integral to the commission of the crime itself."); *Purifoy v. Mafa*, 556 S.W.3d 170, 192 (Tenn.App. 2017) ("Here, Dr. Mafa's repeated video and written postings to and about Ms. Purifoy were part of his course of conduct of stalking. His repeated posts were clearly meant to harass, degrade, intimidate, threaten, and humiliate Ms. Purifoy, and they had the desired effect of causing her fear and emotional distress. This was not protected free speech that was exempt from the stalking statute's definition of harassment."); *Piester v. Escobar*, 36 N.E.3d 344, 348 (Ill. App. 2015) ("Escobar's social media postings and other online comments were part of a course of conduct of stalking. For example, screen saves attached to the addendums show Escobar monitoring Piester's daily activities and making degrading, threatening and harassing

comments about her.  This speech is not protected under the First Amendment."); *McNally v. Bredemann*, 30 N.E.2d 557, 563 (Ill.App. 2015) ("words surrounding surveiling, interfering, or harassing a person to intimidate are not constitutionally protected.  While stalking does contain an element of speech, that speech does not fall within the protections of the first amendment. Bredemann's Internet postings, under his various aliases, were a transparent part of his stalking conduct.") (citations omitted); *Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014) ("The United States and Indiana Constitutions afford sweeping protections to speech about public officials or issues of public or general concern, even if the speech is intemperate or caustic.  But there is no such protection for "true threats"—including veiled or implied threats, when the totality of the circumstances shows that they were intended to put the victims in fear for their safety.  Fear for one's *reputation* is often the price of being a public figure, or of involvement in public issues.  But fear for one's *safety* is not … Defendant's conduct, including showing his victims against a backdrop of obsessive and volatile behavior that he knew where they lived, was clearly intended to place them in fear—not fear of merely being ridiculed, but fear for their homes and safety, the essence of an unprotected 'true threat.'  Causing that fear is unlawful in itself, and all the more damaging when, as here, it aims to interfere with these victims' lawful obligations of being a neutral judicial officer or a truthful witness—both of which are at the core of our justice system") (emphasis in original); *People v. Carboy*, 37 Misc.3d 83, 955 N.Y.S.2d 473 (N.Y. Super. 2012) (in stalking cases, the "defendant's right to free speech is permissibly subordinated to the complainant's right to be free of repetitive, unwanted verbal and non-verbal communications which are likely to instill in the complainant a reasonable fear of harm.") (quotation omitted).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

2.    "There is no question that new technology has created increasing opportunities for stalkers to monitor, harass, and instill fear in their victims, including through use of Web sites. *Commonwealth v. Walters*, 472 Mass. 680, 37 N.E.3d 980, 995-996 (2015) (citing Fraser, Olsen, Lee, Southworth, & Tucker, The New Age of Stalking: Technological Implications for Stalking, 61 Juv. & Fam. Ct. J. 39, 41, 46–48 (Fall 2010) (discussing uses of Internet to cause physical harm, threaten, or post damaging information about a victim)). "Cyberstalking is a new high-tech version of stalking.  At its worst, cyberstalking can become 'real world' stalking, with potentially dangerous and even deadly consequences.  Cyberstalking can take the form of threatening, obscene, or hateful e-mail; pages; faxes; and voice mail messages". *People v. Gonzalez*, 2 Cal.5th 1138, 1143, 394 P.3d 1074 (2017).

3.    This is a civil action for stalking in violation of § 1708.7 of the California Civil Code and for common law commercial misappropriation.[2]  The matter is before the Court on Meredith's motion to strike.  For the reasons stated below, the motion should be DENIED.

## II.  PLAINTIFF'S EVIDENCE[3]

4.    Plaintiff is married with three daughters.  He lives with his family in Tulare County.  Plaintiff is a United States Congressman.  He represents California's 22nd Congressional District.  He has an office in Visalia and Washington, D.C., and a staff that assist him in the performance of his Congressional duties.  Plaintiff serves as Ranking Member of the House Permanent Select Committee on Intelligence.  As a member of the House Intelligence

---

[2]    Plaintiff also asserts claims of aiding and abetting (COUNT II) and unfair competition (COUNT IV) against Twitter.  This Memorandum addresses only the claims against Meredith.

[3]    *See* Declaration of Devin G. Nunes, filed herewith and incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

Committee, he participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.

5.     For over two (2) years, Meredith has used Twitter to follow, alarm, place under surveillance and relentlessly harass Plaintiff.   Meredith has committed multiple acts of cyberstalking, including

- Meredith threatened Plaintiff's life in September 2019 by posting a tweet that encouraged Plaintiff to cut his throat with a razor;

- Using multiple fake accounts that he created or operates for the purpose of stalking Plaintiff, Meredith has published and republished ***thousands*** of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about Plaintiff, including

  - ▶ lewd, lascivious and hateful images of Plaintiff, including images that portray Plaintiff performing criminal acts;

  - ▶ statements accusing Plaintiff of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts;[4]

- Meredith incessantly tags @DevinNunes in tweets, forcing Meredith's unwanted speech upon Plaintiff and his followers;

- Meredith's tweets routinely employ threatening, harassing and vile #hashtags, which Meredith encourages third parties to "get trending";

- Meredith relentlessly monitors and follows Plaintiff's personal and professional activities almost hourly, and routinely threatens to show up at fundraisers and other events and to disrupt Plaintiff's business;

- Meredith solicited agents to search Plaintiff out at airports and events, including recently at the Republican National Convention, to watch Plaintiff, to surreptitiously photograph and videotape Plaintiff, his campaign vehicles, etc., and to post the photos and video to Twitter and incite third parties to harass Plaintiff;

---

[4]     Meredith admits publishing the inciteful statements, but denies in his declaration using the words "assassination" and "murder".

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

- Meredith has repeatedly doxed[5] Plaintiff's location on airplanes, at airports, and at multiple events;

- Meredith has repeatedly doxed the location of Plaintiff's campaign vehicles, inciting people to vandalize and assault Plaintiff's staffers – In two separate incidents in August 2020, one of Plaintiff's staff members had his car vandalized and severely damaged outside Plaintiff's Visalia office, and another staff member had a bottle thrown at a campaign vehicle – pictures of which Meredith had posted online – as she drove it;

- Meredith conscripted Plaintiff's name and uses it in his primary Twitter account;

- Meredith organized a GoFundMe campaign in which he uses Plaintiff's name to solicit funds to pay his personal expenses.  Meredith has generated substantial funds from this enterprise.

In addition to cyberstalking, Meredith's conduct constitutes "cyberstalking by proxy.[6]

## III.  MEREDITH'S DECLARATION AND SPOLIATION OF EVIDENCE

6.     Meredith's declaration admits that he *now* operates at least one Twitter account.

Meredith claims that since the inception of this account, he "average[s]" 2.19 tweets[7] per day and

---

[5]     "Dox" means to publicly identify or publish private information about a particular individual on the Internet with malicious intent, especially as a form of punishment or revenge. [https://www.merriam-webster.com/dictionary/dox].

[6]     *See Buchanan v. Crisler*, 323 Mich.App. 163, 922 N.W.2d 886, 895-896 (2018) ("cyberstalking by proxy" described a situation in which it is not the postings themselves that are harassing to the victim; rather, it is the unconsented contacts arising from the postings that harass the victim.  In particular, the stalker "posts a message about the victim, without the victim's consent, and as a result of the posting, others initiate unconsented contacts with the victim.  These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim.  In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim.").

[7]     "A tweet is a short text post … delivered through Internet or phone-based text systems to the author's subscribers".  *United States v. Feng Ling Liu*, 69 F.Supp.3d 374, 377 (S.D.N.Y. 2014); https://help.twitter.com/en/using-twitter/types-of-tweets (in general, a "tweet" is a "message posted to Twitter containing text, photos, a GIF, and/or video").  A "retweet" is simply a repost of another Twitter user's tweet on a user's own profile to show to that user's own followers. [https://help.twitter.com/en/using-twitter/retweet-faqs].

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

3.73 "likes"[8] every day. This supports Plaintiff's position that Meredith has had, since inception, an obsession with Plaintiff and, given the volume of tweets, that Meredith's attacks are "relentless". Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students. Meredith admits that he has a "HISTORY WITH DEVIN NUNES", although Meredith suggests that it is Plaintiff who holds a "grudge against me for the better part of two decades".

7.      Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his account, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average", (c) the identity of the accounts that he controls, (d) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.*, "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,[9] and (f) the subject matters of the 3.73 daily tweets that Meredith "liked".

8.      Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist

---

[8]      On Twitter, "likes" are represented by a small heart and are used to show appreciation for a tweet or retweet. [https://help.twitter.com/en/using-twitter/liking-tweets-and-moments]. When a user "likes" a tweet, the person who wrote the tweet finds out instantly, thanks to Twitter's notification feature. In addition, people can see "likes" from the user's profile page, where there is a "Likes" tab. Anyone who wants to can click on the Likes tab and scroll through every tweet that the user has ever liked. [https://www.howtogeek.com/326159/can-other-people-see-the-tweets-ive-liked/].

[9]      Meredith's declaration fails to disclose that, in addition to his tweets and likes, Meredith regularly retweets other users' content multiple times every day.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

1   with an expertise in computer science.  Significantly, since the filing of this action, Meredith has

2   altered his LinkedIn profile in an effort to downplay his expertise in computer science.  He used

3   to describe himself as a "Data Scientist".  Now, he claims to be "Executive Director | Co-Founder

4   at Social Impact Analytics Institute".  Meredith also erased any reference to DKE Technologies

5   from his LinkedIn profile. [*see* https://www.linkedin.com/in/benpmeredith/] and scrubbed any

6   visible trace of the former website of DKE Technologies from the Internet.  For good measure,

7   Meredith also deleted his medium account [*see* https://medium.com/@benpmeredith], which

8   contained numerous incriminating statements.  **Meredith's spoliation of evidence is extremely**

9   **serious.  Meredith's conduct speaks volumes about his lack of credibility.  The Court should**

10  **deny his motion without more because of his obstruction and misconduct.**

## IV.  DISCUSSION

### A.   *MEREDITH COMMITTED THE TORT OF STALKING*

9.      California Civil Code § 1708.7 creates a civil cause of action for stalking.

10.     Under California Civil Code § 1708.7, a plaintiff must allege three elements to

plead the tort of stalking.  First, the "defendant engaged in a pattern of conduct the intent of which

was to follow, alarm, place under surveillance, or harass the plaintiff." *Cal. Civ. Code §*

*1708.7(a)(1)*.  Second, as a result of the defendant's conduct, the plaintiff either: (1) "reasonably

feared for his or her safety, or the safety of an immediate family member"; or (2) "suffered

substantial emotional distress, and the pattern of conduct would cause a reasonable person to

suffer substantial emotional distress." *Id. at § 1708.7(a)(2)*.  Third, the defendant made a credible

threat intending to place plaintiff in "reasonable fear for his or her own safety" or with reckless

disregard of plaintiff's safety, and the defendant persisted despite the fact that on at least one

occasion, plaintiff made clear that the "defendant cease and abate his or her pattern of conduct."

*Id. at § 1708.7(a)(3). Thunder Studios, Inc. v. Kazal*, 2018 WL 5099726, at * (C.D. Cal. 2018)

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

(plaintiff stated a claim of stalking, where he alleged that the defendants carried "signs with disparaging statements" about plaintiff, which they displayed at plaintiff's workplace); *Khan v. 7-Eleven, Inc.*, 2014 WL 12601018, at * 4 (C.D. Cal. 2014) (the "menacing and unrelenting following" of plaintiff and repeated conduct of defendants' employees or agents was "sufficient to show that 7-Eleven acted with the intent to follow, alarm, or harass Khan"); *Madsen v. Buffum*, 2013 WL 12139139, at * 2 (C.D. Cal. 2013) (defendants' creation of a website named after plaintiffs' last names—Madsen and Coker—("www.stopmadsencoker.com"), and use of email communications to monitor plaintiffs' business activities was enough to infer defendants had acted with the intent to harass); *see People v. Crittenden*, 2020 WL 3026340, * 9 (Cal.App. 2020) (unpublished) (evidence supporting the stalking conviction against the defendant consisted solely of the defendant's speech in the form of web banners and his e-mails directed at the victim (a Deputy Sheriff) and others.  The defendant's repeated harassment was not protected speech.  The emails seriously alarmed, annoyed, tormented, or terrorized the victim, and served no legitimate purpose); *R.B.T. v. Taub*, 2020 WL 2744579, at * 5 (Cal.App. 2020) (unpublished) ("Substantial evidence supports the restraining order.  Defendant sent 75 emails and a letter to a minor in a six-month period … [A]ggressive and inappropriate statements saturate these documents.").

1. ***Meredith's Motion To Strike Is Meritless***

11.     California Code of Civil Procedure § 425.16 is called the "anti-SLAPP" statute because it allows a defendant to gain early dismissal of claims that are designed primarily to chill the exercise of First Amendment rights.  Section 425.16(b)(1) provides as follows:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim."

In ruling on an anti-SLAPP motion, the Court engages in a two-step process. *Equilon Enters. V.*

*Consumer Cause, Inc.*, 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507 (2002).  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action "arises from" acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.*  Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.*

a. ***Meredith Fails The First Step***

12.    For the first part of the test, a defendant must make a prima-facie showing that the claim "arises from" his conduct "in furtherance of" his exercise of free speech or petition rights as defined in § 425.16(e). *Equilon*, 20 Cal.4th at 61, 124 Cal.Rptr.2d at 514.  "For purposes of the anti-SLAPP statute, a cause of action 'arises from' conduct that it is 'based on.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal.App.4th 1237, 1244-1245 (2013)).  Thus, the Court must ask what activities form the basis for each of the plaintiff's claims. *Id.*  The court then must ask whether those activities are "protected" and thereby bring the claim within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Ca.App.4th 1169, 1182-1184 (2011)).  Arguments about the merits of the plaintiff's claims or the defendant's defenses are irrelevant in the first step of the anti-SLAPP analysis:  for example, in a defamation case, it does not matter whether defendant actually made the statements he or she is alleged to have made, whether the statements were true or not, or whether they were defamatory or not. *See, e.g., City of Costa Mesa v. D'Alessio Inv., LLC*, 214 Cal.App.4th 358, 371-372 (2013).  The "first step" only determines whether § 425.16's procedural protection applies to the alleged activities in question. *Id.* at 372.

13.    **For purposes of the first prong of the anti-SLAPP analysis, the question is not what the defendant did, it is what the plaintiff accuses him of doing.**  If the plaintiff's

1  cause of action against the defendant does not meet the threshold criterion (of protected speech),

2  it is not subject to a motion to strike and the court never reaches the issue of whether the plaintiff

3  can show a probability of success on the merits. *City of Cotati v. Cashman*, 29 Cal.4th 69, 76, 80-

4  81, 124 Cal.Rptr.2d 519 (2002).

5       14.    Meredith's anti-SLAPP motion fails at the gate.   Plaintiff's claim of stalking[10]

6  involves Meredith's conduct, not his speech.   **California Civil Code § 425.16 does not apply**.

7  *See, e.g., Hi-Land Mountain Homes, Inc. v. McEntyre*, 2019 WL 3335176, at ** 1, 12 (Cal.App.

8  2019) (unpublished) (plaintiffs alleged that defendant "posted negative comments on Facebook

9  and commented in newspaper articles in order to ruin their reputation and business."  The trial

10 court denied defendant's SLAPP motion finding that, plaintiff's cause of action for stalking

11

12 "involved conduct, not speech."   The Court of Appeals affirmed.); *Santsche v. Hopkins*, 2019

13 WL 1353295, at ** 5-6 (Cal.App. 2019) (unpublished) (the defendant engaged in activities that

14 were *not* protected under section 425.16, including "relentlessly" submitting postings on social

15 media sites about plaintiff and creating a website that included plaintiff's personal address.

16 "Antagonistic acts, deliberate infliction of emotional distress, and intrusion and trespass onto

17

18 someone's property are not forms of speech that are constitutionally protected."); *Albert v. Seal*,

19 2018 WL 1163852, at * 10 (Cal.App. 2018) ("The stalking allegation survives Albert's anti-

20 SLAPP, since it is not itself litigation-related or an exercise of free speech.  It makes no difference

21 that it might have been a ground for a restraining order, the actual allegation is independent of

22 any litigation or issue of public interest."); *Emerson v. Powers*, 2016 WL 7368641, at * 1

23

24 (Cal.App. 2016) (unpublished) ("We conclude the trial court properly denied the motion to strike

25

26       [10]    Anti-SLAPP motions are traditionally filed in defamation cases, where the cause
27 of action is based on the defendant's "speech".

28

1   because appellant's alleged conduct does not qualify as protected activity under the anti-SLAPP

2   statute. Accordingly, we affirm."); *Gibson v. Swingle*, 2010 WL 2136655, at * 6 (Cal.App. 2010)

3   (unpublished) (where the defendant posted messages on Craigslist.org and created a blog through

4   Google, accusing plaintiff of breaking laws, using illegal drugs, harassing and stalking people,

5   frequently using profanity, being mentally ill, threatening people with violence, accusing plaintiff

6   of threatening to blow up someone's car, expressing contempt for the Bible, making racist

7   remarks directed at Mexican-Americans, and being a "perv", anti-SLAPP motion was denied

8   because the suit did not arise from, and was not based on, defendant's political speech *or* any

9

10   other speech of public interest. Rather, as the complaint made clear, the claims were based on

11   Internet posts describing plaintiff's "alleged character flaws and his alleged illegal or otherwise

12   improper conduct … Here, [plaintiff's] claims are based on defendant's alleged derogatory

13   Internet posts, not on political statements."); *Levy v. Pearson*, 2009 WL 891032, at * 6 (Cal.App.

14   2009) (unpublished) (inappropriate contact and stalking does not qualify for anti-SLAPP

15   treatment); *Ratto v. Son*, 2007 WL 1244323, at * 8 (Cal.App. 2007) (unpublished)

16   ("The stalking claim was not based on constitutionally protected activities and the trial court

17   properly denied the special motion to strike under section 425.16.").

18

19          **b.    *There Is A Reasonable Probability That Plaintiff Will Prevail***

20          15.    Even if a claim of stalking did arise from constitutionally protected speech –

21   which it does not – Plaintiff has established a reasonable probability that he will prevail.

22          16.    To establish a probability of prevailing, a plaintiff must demonstrate that the

23   complaint is legally sufficient and supported by a sufficient prima-facie showing of facts to

24   sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Premier Med.

25   Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal.App.4th 464, 476, 39 Cal.Rptr.3d 43 (2006).

26   In deciding the question of potential merit, the trial court considers the pleadings and evidentiary

27

28
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

1   submissions of both the plaintiff and the defendant.  The Court does not *weigh* the credibility or

2   comparative probative strength of competing evidence.

3        17.    Meredith's self-serving and conclusory denials in his declaration do not, as a

4   matter of law, defeat Plaintiff's evidence that Meredith engaged in multiple egregious acts of

5   stalking over a two-year period. *See Logue v. Book*, 297 So.3d 605, 612 (Fla. 4th DCA 2020)

6   ("social media postings that are not sent directly to an individual may nonetheless be directed at

7   an individual in a number of ways, including by 'tagging' that person in a post … Accordingly,

8   a credible threat made on social media can be actionable under the statute even if that post was

9   not sent directly to the person targeted."); *People v. Lenio*, 2019 WL 637814, at * 3 (Mich.App.

10  2019) ("defendant specifically targeted the victim in this case by tagging him … A rational jury

11  could find that defendant intended to disturb the victim's peace and quiet by sending the victim

12  four tweets in which defendant used offensive, ethnoreligious slurs and threatened violence").

13

14  **B.    _PLAINTIFF STATES A CLAIM OF COMMON LAW MISAPPROPRIATION_**

15       18.    The tort of misappropriation of name or likeness originated as a branch of

16  the common law right of privacy.  To prove a misappropriation, a plaintiff must show "(1) the

17  defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to

18  defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."

19  *Eastwood v. Superior Court*, 149 Cal.App.3rd 409, 416-417, 198 Cal.Rptr. 342 (1983).  "What

20  the right of publicity holder possesses is … a right to prevent others from misappropriating the

21  economic value generated … through the merchandising of the 'name, voice, signature,

22  photograph, or likeness' of the [holder]." *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25

23  Cal.4th 387, 106 Cal.Rptr.2d 126 (2001).

24

25       19.    The merchandizing or misappropriation of a person's name or likeness is not

26  protected expression under the First Amendment. *Comedy III Productions*, 25 Cal.4th at 400, 106

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

Cal.Rptr. at 136 (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 572, 576 (1977) ("[T]he rationale for [protecting the right of publicity] is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay.'")); *No Doubt v. Activision Publishing Co.*, 192 Val.App.4th 1018, 1034, 122 Cal.Rptr.3d 397 (2011) ("the context in which [defendant had] use[d] the literal likenesses of No Doubt's members d[id] not qualify ... for First Amendment protection.").

20.     Meredith offers no facts to support any "transformative use" defense. Meredith is also not using Plaintiff's name in connection with any news, public affairs, or sports broadcast or account, or any political campaign. Meredith is using Plaintiff's name on or in products, merchandise or goods (t-shirts, coffee mugs and other paraphernalia) offered for sale to the public. He is also using Plaintiff's name to solicit money to pay his personal bills.

## IV.     CONCLUSION AND REQUEST FOR RELIEF

Meredith's **stalking conduct** amounts to unprotected "true threats" and harassment in violation of both civil and criminal law (e.g. PC §646.9). Such conduct falls outside the scope of protected speech, and, therefore, Meredith's motion fails on the first step, and must be denied. We live in times where violence occurs all too frequently and an ordinary day may turn into a horrific tragedy. There are already too many examples in this country where failure to act has resulted in significant harm. Courts are, and must be, vigilant in reviewing complaints of stalking, such as the one filed in this case, and must not be fooled by the stalker's plea of SLAPP protection.

Plaintiff respectfully requested that Meredith's motion to strike be denied.

DATED:     December 9, 2020          LAW OFFICE OF DEREK P. WISEHART

                                                    Derek P. Wisehart, Attorney for Plaintiff.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

4    I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California 93291.

5

6    On December __9__, 2020, I served the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §426.16** on all interested parties, by

7    placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

8

| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA 93720<br>Email: brian@whelanlawgroup.com | |

9

10

11

12   **[ ]    By Personal Service** - I delivered such envelope by hand to the addressee.

13

14   **[ X ]    By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California. I am readily familiar with the business practice at

15   my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed

16   is deposited with the United States Postal Service that same day in the ordinary course of business.

17

18   **[ ]    By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to

19   a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or

20   provided for.

21   **[ ]    By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of

22   this declaration to the above interested parties at the listed facsimile transmission telephone number.

23

24   **[ X ]    By Electronic Service:** I sent the afore-described document(s) from email address dnorys@dwisehartlaw.com to the person(s) at the email addresses listed above. I did not receive within a reasonable time after transmission any

25   electronic message or other indication that the transmission was unsuccessful.

26

1

   **X**  **(State)**   I declare under penalty of perjury under the laws of the State of

2 California that the foregoing is true and correct.

3       **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

4

     Executed on December _9_, at Visalia, California.

5

6                                *Deborah M. Norys*

                              Deborah M. Norys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Derek P. Wisehart, Esq. #178100
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, California 93291
Telephone:     (559) 636-9473
Facsimile:     (559) 636-9476
Email: derek@dwisehartlaw.com

Steven S. Biss, Esquire
(Virginia State Bar No. 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Application for Admission Pro Hac Vice*
        *To be Filed*)

Attorneys for Plaintiff, DEVIN G. NUNES

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF TULARE

| | |
|---|---|
| DEVIN G. NUNES. <br><br> Plaintiff, <br><br> vs. <br><br> BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 to 100, Inclusive, <br><br> Defendants. | Case No. VCU284528 <br><br> **DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT, BENJAMIN PAUL MEREDITH'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16** |

I, DEVIN G. NUNES, declare as follows:

1.     I am over 21 years of age and otherwise competent to make this Declaration.  I have personal knowledge of the statements contained herein based upon (a) documents and information in my possession and control, (b) my personal observations, memory, and experiences, (c) public information and statements by the defendant, Benjamin Paul Meredith

**DECLARATION OF PLAINTIFF, DEVIN G. NUNES**

("Meredith"), on the Internet and on Twitter, and (d) documents known or reasonably believed to be in the possession, custody and control of others, including Michelle Meredith.   The statements in this Declaration are true and accurate to the best of my knowledge, information and belief.

2.     I am the Plaintiff in this action.   I authorized my counsel to file this case.   I reviewed the complaint before it was filed, and affirm that the facts stated in the complaint are truthful and accurate.

3.     I am married with three daughters.   I live with my family in Tulare County.   I am a United States Congressman, representing California's 22nd Congressional District.   I have an office in Visalia and Washington, D.C., and a staff that assist me in the performance of my Congressional duties.   I serve as Ranking Member of the House Permanent Select Committee on Intelligence.   As a member of the House Intelligence Committee, I participate in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.   My official website is https://nunes.house.gov/].

4.     I have a personal Twitter account, https://twitter.com/DevinNunes.   The name of my homepage or profile is "Devin Nunes".   The link to my personal profile is @DevinNunes.   I use my personal Twitter account to tweet, retweet and "like" information of interest.[1]

---

[1]     A tweet is a short text post or message delivered my followers. [https://help.twitter.com/en/using-twitter/types-of-tweets (in general, a "tweet" is a "message posted to Twitter containing text, photos, a GIF, and/or video").   A "retweet" is a repost of another Twitter user's tweet on my profile.   I retweet information to share it with my followers. [https://help.twitter.com/en/using-twitter/retweet-faqs].   On Twitter, "likes" are represented by a small   heart   and   are   used   to   show   appreciation   for   a   tweet   or   retweet. [https://help.twitter.com/en/using-twitter/liking-tweets-and-moments].   When I "like" a tweet, the person who wrote the tweet finds out instantly, thanks to Twitter's notification feature. People can see "likes" from my profile page, where there is a "Likes" tab.

2
**DECLARATON OF DEVIN G. NUNES**

5.      For over two (2) years, Meredith has used Twitter to follow, alarm, place me under surveillance, and relentlessly harass me.  He uses multiple different Twitter accounts to tweet about me, retweet statements about me, and like posts by third parties about me.

6.      In September 2019, Meredith threatened my life.  He quoted one of my tweets, and then encouraged me to cut my own throat with a razor.  Shortly after he posted the threat, he deleted it.  The tweet greatly alarmed me.  I reported the matter to the Capitol Police.

7.      Between 2019 and the date of this Declaration, Meredith has published and republished *thousands* of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about me.  His tweets have included hundreds of lewd, lascivious and hateful images of me, including images that portray me performing criminal acts.  Meredith has published hundreds of statements falsely accusing me of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts.

8.      Meredith targeted me in hundreds of his offensive and demeaning tweets and retweets by "tagging" me.  Each time he include "@DevinNunes" in a tweet or retweet, that post came directly to my homepage.  In this manner, he intentionally forced his unwanted statements upon me and my followers.  The volume of tweets and retweets was (and continues to be) staggering.  Meredith publishes incessantly, day and night, which leads me to believe that there are multiple people involved in the harassment campaign.  It is very personal, and it causes substantial emotional distress and fear for my safety and the safety of my family and my staff.

9.      Meredith frequently included threatening and harassing "#hashtags" in his tweets and retweets in order to encourage third parties to search for me and get Meredith's issues

"trending".[2]

10.     Meredith followed my personal and professional activities almost hourly, and routinely threatened to show up at fundraisers and other events and to disrupt my business. He solicited agents to search me out at airports and events, including recently at the Republican National Convention, to watch me, to surreptitiously photograph and videotape me, and my campaign vehicles. He posted the photos and video to Twitter.

11.     Meredith has repeatedly doxed[3] my location on airplanes, at airports, and at multiple events.

12.     During the recent Congressional Election, Meredith repeatedly doxed the location of my campaign vehicles. His tweets incited people to vandalize vehicles and assault one of my staff. In two separate incidents in August 2020, one of my staff members had his car vandalized and severely damaged outside my Visalia office, and another staff member had a bottle thrown at a campaign vehicle – pictures of which Meredith had posted online – as she drove it.

13.     Meredith has conscripted my name and uses it in his primary Twitter account. He has also organized a GoFundMe campaign in which he uses my name to solicit funds to pay his personal expenses. Meredith has generated substantial funds from this enterprise. Meredith is also using my name and picture to sell merchandise, such as t-shirts and coffee mugs.

---

[2]     A hashtag is a keyword or a phrase used to describe a topic or a theme, which is immediately preceded by the pound sign (#). Hashtags target a subject and help other users find the topic. A hashtag automatically becomes a clickable link when it is tweeted. Anyone who sees the hashtag can click on it and be brought to a page featuring the feed of all the most recent tweets that contain that particular hashtag.

[3]     "Dox" means to publicly identify or publish private information about a particular individual on the Internet with malicious intent, especially as a form of punishment or revenge. [https://www.merriam-webster.com/dictionary/dox].

4
**DECLARATON OF DEVIN G. NUNES**

14. My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter. On September 16, 2019, shortly after Meredith threatened my life, a WordPress.com website appeared on the Internet. The website contains the following information:

# Michelle Emmett is @devincow reveals former Janz intern @fresyas Mendoza #Fresno #politics

👤 janzinterntruths   🕐 September 16, 2019   🗂 Politics   🏷 Fresno



**Yas Mendoza**
@fresYas

**Following**

Michelle Emmitt @EmmettMiche11em is @devincow.  She made the account to troll Nunes because Nancy Gilmore asked her to.

7:29 PM · 8 Jul 2019

3 Retweets  4 Likes

🗨 2   🔁 9   ♡ 4   ✉

[https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-former-janz-intern-fresyas-mendoza-fresno-politics/].  The user of the @EmmettMiche11em Twitter account created the following profile:

GIVING THANKS TODAY FOR THE COMPASSIONATE PEOPLE; THE LOVERS, HELPERS, GIVERS, AND HEALERS, WHO MORE THAN JUST THEMSELVES,

Follow

**Michelle** 🔒
@EmmettMiche11em

Mom, wife, therapist, dog friend.

🗓 Joined May 2009

**5,467** Following   **4,977** Followers

**These Tweets are protected**

Only approved followers can see @EmmettMiche11em's Tweets. To request access, click Follow. Learn more

A review of tweets in which @EmmettMiche11em was tagged revealed that she was tagged by Meredith in innumerable tweets about me.

15.    After searching for Twitter profiles with similar descriptions, *i.e.*, "Mom, wife, therapist, dog friend", my attorneys came across a Twitter account for a "Michelle Meredith" in Gig Harbor, Washington.   [https://twitter.com/michelemeredith?lang=en].    Through the Whitepages, they discovered that she was married to Meredith, the same person who was tagging her in the vile tweets and retweets he published about me.

16.    My attorneys also learned that Meredith has more than one Twitter account by studying the profile pictures that Meredith used in various websites.  For instance, he used/uses a picture of a mountain peak in Washington State on multiple profile pages, including one of his

6

**DECLARATON OF DEVIN G. NUNES**

Twitter accounts. He also uses a picture of the Seattle skyline.

17.     I have reviewed Meredith's declaration filed in this matter. Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students, but I have first-hand knowledge that he was. I believe that this is the origin of his obsession with me and his desire to harm me.

18.     Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his accounts, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average" number, (c) the identity of the accounts that he controls, (d) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.*, "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,[4] and (f) the subject matters of the 3.73 daily tweets that Meredith "liked".

19.     Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist with an expertise in computer science. Significantly, since the filing of this action, Meredith has altered his LinkedIn profile in an effort to downplay his expertise in computer science. He used to describe himself as a "Data Scientist":

---

[4]     Meredith's declaration fails to disclose that, in addition to his tweets and likes, Meredith regularly retweets other users' content multiple times every day.

7

**DECLARATON OF DEVIN G. NUNES**

Now, he claims to be "Executive Director | Co-Founder at Social Impact Analytics Institute". Meredith also erased any reference to DKE Technologies from his LinkedIn profile. [*see* https://www.linkedin.com/in/benpmeredith/] and scrubbed any visible trace of the former website of DKE Technologies from the Internet. For good measure, Meredith also deleted his medium account [*see* https://medium.com/@benpmeredith], which contained numerous incriminating statements.

20.    Meredith's direct threat on my life, coupled with the quantity, aggressive, inappropriate and abusive statements that saturate his tweets, retweets and likes, and the relentless doxing of my location at events, at airports and on airplanes, seriously alarms me and has tormented me for years. The tweets serve no legitimate purpose other than to harass me and inflict harm.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed by me this 9th day of December, 2020 in Washington, D.C.


_____

DEVIN G. NUNES, Declarant

DECLARATON OF DEVIN G. NUNES

1                                    **PROOF OF SERVICE**

2

3     STATE OF CALIFORNIA, COUNTY OF TULARE

      I am a citizen of the United States and a resident of the County aforesaid; I am over the
4     age of eighteen years, and not a party to the within action; my business address is 2330
      W. Main Street, Visalia, California 93291.
5
      On December __9__, 2020, I served the foregoing **DECLARATION OF DEVIN G.**
6     **NUNES IN OPPOSITION TO DEFENDANT BENJAMIN PAUL MEREDITH'S MOTION**
      **TO STRIKE COMPLAINT PURSUANT TO CCP §426.16** on all interested parties, by
7     placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

8     | Brian D. Whelan, Esq. | |
      | WHELAN LAW GROUP, A Professional | |
9     | Corporation | |
      | 1827 East Fir Ave., Suite 110 | |
10    | Fresno, CA 93720 | |
      | Email: brian@whelanlawgroup.com | |
11

12        [ ]       **By Personal Service** - I delivered such envelope by hand to the
13        addressee.

          [ X ]     **By Mail** - I deposited such envelope with the United States Postal Service,
14        enclosed in a sealed envelope with postage thereon fully prepaid, in the United
          States Mail at Visalia, California.  I am readily familiar with the business practice at
15        my place of business for collection and processing of correspondence for mailing
          with the United States Postal Service.  Correspondence so collected and processed
16        is deposited with the United States Postal Service that same day in the ordinary
          course of business.
17
          [ ]       **By Express Service Carrier** - I deposited in a box or other facility
18        regularly maintained by Federal Express, an express service carrier, or delivered to
          a courier or driver authorized by said express service carrier to receive documents in
19        an envelope designated by the said express carrier, with delivery fees paid or
          provided for.
20
          [ ]       **By Facsimile** - I transmitted from a facsimile transmission machine whose
21        telephone number is 559/636-9476, the afore-described document(s), and a copy of
          this declaration to the above interested parties at the listed facsimile transmission
22        telephone number.
23
          [ X ]     **By Electronic Service:**  I sent the afore-described document(s) from
24        email address dnorys@dwisehartlaw.com to the person(s) at the email addresses
          listed above.  I did not receive within a reasonable time after transmission any
25        electronic message or other indication that the transmission was unsuccessful.

26

1

   **X**   **(State)**    I declare under penalty of perjury under the laws of the State of

2  California that the foregoing is true and correct.

3         **(Federal)**  I declare that I am employed in the office of a member of the Bar of

this Court at whose direction the service was made.

4

        Executed on December  9 , at Visalia, California.

5

6                             _Deborah M. Norys_

                             Deborah M. Norys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1   **Brian D. Whelan, Esq.  (SBN 256534)**
    **WHELAN LAW GROUP, A Professional Corporation**
2   **1827 East Fir Avenue, Suite 110**
    **Fresno, California  93720**
3   **Telephone: (559) 437-1079**
    **Facsimile:  (559) 437-1720**
4   **E-mail: brian@whelanlawgroup.com**

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

**DEC 15 2020**

STEPHANIE CAMERON, CLERK
BY:_____

Leticia Hernandez Sandoval

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               COUNTY OF TULARE

9

10  DEVIN G. NUNES,         )  Case No. VCU284528
                         )
11       Plaintiff,      )  **REPLY MEMORANDUM OF POINTS**
                         )  **AND AUTHORITIES IN SUPPORT OF**
12       v.          )  **MOTION TO STRIKE COMPLAINT**
                         )
13  BENJAMIN PAUL MEREDITH,   )  Date:  December 22, 2020
    TWITTER, INC., and DOES 1 to 100, )  Time:  8:30 a.m.
14  Inclusive,               )  Dept.:  7
                         )
15       Defendants.    )  Complaint Filed:  October 5, 2020
                         )  Trial Date:      Not Set
16                            )
                         )
17                           )

18

19      Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") submits the

20  following reply in support of his motion for an order striking the causes of action alleged against

21  him by Plaintiff DEVIN NUNES ("Plaintiff" or "NUNES" ) pursuant to C.C.P. § 425.16.

22                         **I.**

23                **<u>INTRODUCTION.</u>**

24      While the rules of evidence and civil procedure have little role in the political theater that

25  Nunes is accustomed to, the applicable rules bar this political lawsuit from proceeding.

26      In the first instance, there is a dispute as to the speech and conduct at issue. Consequently,

27  in the anti-SLAPP analysis, Nunes carries the burden to show a probability of prevailing on the

28  merits. Our California Supreme Court in *City of Montebello v. Vasquez*, (2016) 1 Cal. 5th 409

**FAXED**

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

1    stated: "If ... a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be

2    resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's

3    burden to show a probability of prevailing on the merits." Id. at 424.   In fact, "[i]t is not the

4    defendant's burden ... to establish that the challenged cause of action is [ ] protected as a matter

5    of law." *(Lieberman v. KCOP Television, Inc.*, (2003) 110 Cal.App.4th 156, 165.)

6        Because Nunes was obligated to provide competent admissible evidence to demonstrate a

7    probability of prevailing on the merits, but failed to do so, this motion must be granted.

8                            **NUNES' FLAWED CONSPIRACY THEORY**.

9        Relying on the word of his attorneys, Nunes sued Meredith for "thousands" of written

10   statements and alleged commercial activities. (Complaint, P. 9; Nunes Decl., Paras. 14-16.)

11   Nunes, however, failed to produce a single writing, statement or tweet that Meredith allegedly

12   authored or competent evidence of any commercial activities. The "intelligence" behind this

13   lawsuit, if it can be called that, and the identification of Meredith as a party, boils down to

14   Nunes' attorneys having *located* Meredith "by searching the internet and twitter." (Nunes Decl.,

15   Paras. 14-16.) Beyond the layers of hearsay and foundational problems presented by Nunes'

16   Declaration, the information is provably false.

17       According to Nunes, the "conspiracy" was discovered when Nunes' attorneys "found"

18   Meredith's wife after serendipitously stumbling upon a tweet from @fresyas or "Yas Mendoza."

19   (Nunes Decl., P. 14.)  Ms. Mendoza, the owner of the account at issue, acknowledges, with

20   admissible evidence, that the tweet starting the Nunes' misadventure never came from her

21   account and is indeed a fabrication. (Mendoza Decl., p. 3-5.)

22       Next, in response to Meredith's moving papers, Nunes claimed everything in his lawsuit

23   is true. (Nunes Decl., P. 2.)  In verifying the complaint, Nunes doubled down on the August 27,

24   2020 sue-any-more-cows- plane-event conspiracy. With admissible evidence, Ms. Carter, the

25   individual who lives in Utah and had asked Mr. Nunes about suing any more cows on the flight,

26   acknowledges that she does not know Meredith, has never heard of Meredith, and has never

27   spoken with Meredith. Instead, Ms. Carter spontaneously thought to ask Nunes about suing more

28   cows because of the absurdity of a congressman suing a "twitter cow." (Carter Decl. Paras. 2-5.)

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

1   Further, the video was re-tweeted thousands of times by people that enjoyed the video and not as

2   part of some broader conspiracy.  (Carter Decl. P. 4.)

3          Last, Meredith does not sell, nor has he ever sold, Nunes' mugs and/or t-shirts or other

4   similar Nunes paraphernalia or merchandise. Meredith does not have a gofundme account nor

5   has he ever set one up.  Meredith only has one twitter account.  Meredith has never threatened

6   Nunes nor told Nunes "to slit his own throat." Meredith does not "dox" Nunes and is <u>not</u> the only

7   person in the state of Washington with an affinity for Mt. Rainier internet backgrounds.

8   (Meredith Decl., Paras. 2-8.)   Most importantly, Nunes ("Ranking Member of the House

9   Permanent Select Committee on Intelligence") has offered no competent intelligence or

10  admissible evidence to the contrary. None exists.

## II.
## LAW AND DISCUSSION.

### A.   <u>Defendant Easily Satisfies the First Prong Because Plaintiff Cannot Show that the Underlying Speech Is Illegal – *As a Matter of Law*.</u>

14         Nunes claims Meredith threatened his life in September 2019 by instructing Nunes, through

15  twitter, to kill himself. According to Nunes, Meredith deleted the offending tweet. (Nunes Decl. Para

16  6.) Nunes does not identify Meredith's twitter name or twitter handle. While claiming thousands of

17  tweets exist, Nunes does not provide any single tweet ascribed to Meredith.   Nunes does not state

18  who actually saw the tweet or if it was relayed to him by someone else. Then, one year later, Nunes

19  filed this lawsuit.   Meredith, who knows the name of his twitter account and knows what he wrote

20  or did not write, did not threaten Nunes or instruct Nunes to "slit his own throat with a razor."

21  (Meredith Decl., P. 3.)

22         Consequently, because there is a dispute as to the underlying political conduct, speech and/or

23  statements, the first prong of the two-prong analysis has been satisfied. "Our Supreme Court has

24  emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases

25  of illegality. '**If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it**

26  **cannot be resolved within the first step but must be raised by the plaintiff in connection with**

27  **the plaintiff's burden to show a probability of prevailing on the merits.**' [Emphasis added.]

28  '[T]he showing required to establish conduct illegal as a matter of law - *either through defendant's*

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

*concession or by uncontroverted and conclusive evidence* - is not the same showing as the plaintiff's second prong showing of probability of prevailing.' Applying *Flatley*, subsequent courts have reiterated that it is only in 'rare cases in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478, internal citations omitted, italics in original.)

"In *Flatley*, the Supreme Court noted that 'Mauro did not deny that he sent the letter nor did he contest the version of the telephone calls set forth in Brandon's and Field's Declarations in opposition to the motion to strike. We may therefore view this evidence as uncontroverted.' " *Supra*, 39 Cal.4th at pp. 328–329. **Here**, in contrast, ***the evidence is controverted***. Defendant denies that he made any of the statements that Plaintiff alleges he made, and denies that he used Plaintiff's image and/or likeness for commercial activities, etc. Defendant also claims that the he did not coordinate with "violent extremists" to "attack" Plaintiff and that he is not responsible for a "unprecedented" number of tweets; contrary to Plaintiff's assertion that Defendant has multiple Twitter accounts, Defendant only has one Twitter account. Thus, there is a dispute as to whether the statements were even made, and if so, exactly what Defendant said and how often he said it, and whether it constituted a true threat and/or harassment.

The conduct as alleged in the complaint, even if it were accurately reported, does not necessarily constitute a "true threat" and/or "harassment" *as a matter of law*, as (1) there are no specific statements referenced in the complaint – rather, the allegations are merely vague characterizations and legal conclusions; thus, it is impossible to conclude – *as a matter of law* – that the alleged tweets, etc. constituted a true threat when none of the actual language, or even a factual summary for that matter, is presented to the Court. Plaintiff does not even include one of the alleged Tweets as an example in his Declaration.[1] And, separately, (2) the alleged conduct constituted

---

[1] The only example that Plaintiff offers is one characterization of a Tweet that he, wrongfully, attributes to Defendant. The alleged Tweet was supposedly made by Defendant in response to a statement made by Plaintiff encouraging Plaintiff to cut his own throat with a razor. Even this characterization, if taken as undisputed (which, of course, is not the case) cannot, as a matter of law, be construed as a true threat: There are several factual issues surrounding this statement that prevent the Court from determining, as a matter of law, that this was a "true threat." One, Plaintiff states that the Tweet was quickly deleted. The fact that the Tweet was deleted can be construed to mean that

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

protected speech concerning a "public issue or an issue of public interest." On this point, *Vogel v. Felice*, (2005) 127 Cal. App. 4th 1006 is instructive. The plaintiffs in *Vogel* were candidates for public office who challenged statements the defendant made about them on the defendant's public website. *Id.* at 353. The plaintiffs alleged that:

> "[T]he website 'contained statements associating Plaintiffs with criminal conduct and fraud,' and specifically noted 'the statement 'J. J. Vogel's Wanted as a Dead Beat Dad,' which, when clicked upon, opened another web site dedicated to locating 'deadbeat dads,' ' and 'the statement, 'Paul Grannis-Bankrupt, Drunk & Chewin' tobaccy' which when clicked upon, opened a new web page associating Plaintiff Grannis with criminal, fraudulent, and immoral conduct." Plaintiffs alleged that additional (but unspecified) defamatory statements appeared in '[n]umerous e-mails and bulletin messages ... sent and received through said web site' as well as in '[o]ther web pages in said web site,' which 'contained false and defamatory statements about Plaintiffs, including ... patent associations with criminal and fraudulent conduct.' " *Id.* at 355.

In concluding that these statements were protected by the anti-SLAPP statute, the Court of Appeal stated, in pertinent part, as follows:

> "Here all of the causes of action alleged by plaintiffs rest exclusively and entirely on defendant's conduct in publishing the offending statements on his Web site. Since that conduct fell squarely within the realm protected by section 425.16, all of plaintiffs' causes of action are subject to the statute." *Id.* at 16

Thus, Plaintiff's complaint that Defendant, "published and republished ... statements accusing Plaintiff of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts," do not constitute unprotected speech on their face.

---

it was not intended to be delivered to Plaintiff or that it was not meant as a serious threat. Second, and separately, the alleged Tweet does not indicate that the Defendant will himself carry out a threat of violence or is encouraging others to commit violence towards Plaintiff. Third, without the context, it is impossible to determine whether the alleged Tweet was a joke – Plaintiff admits that the Tweet was in response to a statement made by Plaintiff, but does not provide that statement. Plaintiff also claims that he reported the Tweet to the police, but fails to mention whether or not there were any charges or any investigations that resulted or supply any evidence corroborating the claim; it can be inferred that the failure to include this information means that the police determined that the alleged Tweet was not actionable. Last, Plaintiff fails to provide the evidence to substantiate when and how he discovered the alleged Tweet. His Declaration lacks foundation on this point. This is important because, likely, he learned of the "quickly deleted Tweet" through third-party hearsay – this is not admissible evidence.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**B.**   **Plaintiff Fails to Establish A Probability of Prevailing on the Merits.**

The second prong of the anti-SLAPP analysis compels Nunes to produce competent admissible evidence demonstrating a probability of prevailing on the merits. Nunes has failed to do so and thus this motion must be granted. *Alpha & Omega Dev., LP v. Whillock Contracting, Inc.*, (2011) 200 Cal. App. 4th 656 states:

> "To show a probability of prevailing for purposes of section 425.16, a plaintiff must ' " 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.' " ' [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010; see also *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [plaintiff " 'must demonstrate that the complaint is ... supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' "].) "[T]he plaintiff 'cannot simply rely on the allegations in the complaint' [citation]...." (*ComputerXpress, Inc. v. Jackson*, supra, 93 Cal.App.4th at p. 1010.) Rather, " '[t]he plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.]...' " (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679, 105 Cal.Rptr.3d 98.) **Thus, Declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded.**" [Emphasis added.] (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26, 53 Cal.Rptr.3d 752.)" *Id.* at 663-64.

Since there is no admissible evidence to support Plaintiff's claims because the only evidence that he submits is a Declaration that should be disregarded; it "lacks foundation, personal knowledge, is argumentative, speculative, impermissible opinion, hearsay, *and* conclusory." Any one of these objections, alone, is enough to disregard Plaintiff's evidence. Thus, Plaintiff cannot show a probability of prevailing and his Complaint must be stricken in its entirety.[2]

/ / /

/ / /

/ / /

---

[2] Defendant also objects to Plaintiff's references to unpublished, CA state authority. Unlike unpublished federal cases which can be used (see *Airline Pilots Assn. Internat. v. United Airlines, Inc.*, (2014) 223 Cal. App. 4th 706, 481, fn. 7.), Cal. Rule of Court, Rule 8.1115(a) specifically prohibits courts and parties from relying on unpublished, CA state opinions. Plaintiff does not show that any of the exceptions in Rule 8.1115(b) apply. Thus, his citations to unpublished, CA State cases should be disregarded. (Even if those cases were considered, it would not change the outcome; they are inapposite and do not address the issues in this case. They all concern private disputes between private parties and do not discuss the constitutional protections at issue in this case.)

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

6

# III.

## CONCLUSION.

In sum, all of Plaintiff's causes of action are within the ambit of the anti-SLAPP statute, and he would not prevail on any of them.  Defendant's motion should be granted in its entirety

Dated: December 15, 2020

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 95720
Tel: 559-437-1079
Fax: 559-437-1720

7

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK
BY:_____

Leticia Hernandez-Sandoval

1  Brian D. Whelan, Esq. (SBN 256534)
   WHELAN LAW GROUP, A Professional Corporation
2  1827 East Fir Avenue, Suite 110
   Fresno, California  93720
3  Telephone: (559) 437-1079
   Facsimile: (559) 437-1720
4  E-mail: brian@whelanlawgroup.com

5  Attorneys for: Defendant BENJAMIN PAUL MEREDITH

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          COUNTY OF TULARE

9

10 DEVIN G. NUNES,                        )  Case No. VCU284528
                                          )
11            Plaintiff,                   )  DEFENDANT'S OBJECTIONS TO
                                          )  DECLARATION OF DEVIN G. NUNES IN
12     v.                                  )  OPPOSITION TO DEFENDANT'S
                                          )  MOTION TO STRIKE COMPLAINT
13 BENJAMIN PAUL MEREDITH,                 )
   TWITTER, INC., and DOES 1 to 100,       )  Date:   December 22, 2020
14 Inclusive,                              )  Time:   8:30 a.m.
                                          )  Dept.:  7
15            Defendants.                  )
                                          )  Complaint Filed:   October 5, 2020
16 _____  )  Trial Date:        Not Set

17
          Defendant BENJAMIN PAUL MEREDITH ("Defendants") hereby submits his
18
   objections to the Declaration of Devin G. Nunes filed in support of his opposition to Defendant's
19
   Motion to Strike.
20
   **OBJECTIONS TO STATEMENTS MADE IN THE DECLARATION OF DEVIN G. NUNES**
21

22 | Statement by Devin G. Nunes | Objections | |
   |---|---|---|
23 | 1.   I reviewed the complaint before it was filed, and affirm that the facts stated in the complaint are truthful and accurate. **P2:5-7, Para. 2** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200. | Sustained: _____ Overruled: _____ |
24 | | | |
25 | | (B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720. | |
26 | | | |
27 | | (C) Lacks requisite personal knowledge/lacks foundation. | |

FAXED

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | 2.   For over two (2) years, Meredith has used Twitter to follow, alarm, place me under surveillance, and relentlessly harass me. He uses multiple different Twitter accounts to tweet about me, retweet statements about me, and like posts by third parties about me. **P3:1-3, Para. 5** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | 3.   In September 2019, Meredith threatened my life. He quoted one of my tweets, and then encouraged me to cut my own throat with a razor. Shortly after he posted the threat, he deleted it. The tweet greatly alarmed me. I repotted the matter to the Capitol Police. **P3:4-6, Para. 6** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 4.   Between 2019 and the date of this Declaration, Meredith has published and republished thousands of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about me. His tweets have included hundreds of lewd, lascivious and hateful images of me, including images that pottray me performing criminal acts. Meredith has published hundreds of statements falsely accusing me of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts. **P3:7-14, Para. 7** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

27
28

2

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

| | | |
|---|---|---|
| 5. Meredith targeted me in hundreds of his offensive and demeaning tweets and retweets by "tagging" me. Each time he include "@DevinNunes" in a tweet or retweet, that post came directly to my homepage. In this manner, he intentionally forced his unwanted statements upon me and my followers. The volume of tweets and retweets was (and continues to be) staggering. Meredith publishes incessantly, day and night, which leads me to believe that there are multiple people involved in the harassment campaign. It is very personal, and it causes substantial emotional distress and fear for my safety and the safety of my family and my staff. **P3:15-22, Para. 8** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 6. Meredith frequently included threatening and harassing "#hashtags" in his tweets and retweets in order to encourage third parties to search for me and get Meredith's issues "trending" **P3:23-4:1, Para. 9** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 7. Meredith followed my personal and professional activities a lmost hourly, and routinely threatened to show up at fundraisers and other events and to di srupt my business. He so licited agents to search me out at airports and events, including recently at the Republican National Convention, to watch me, to surreptitiously photograph and videotape me, and my campaign vehicles. He posted the photos and video to Twitter. **P4:2-6, Para. 10** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

3

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | 8.   Meredith has repeatedly doxed my location on airplanes, at airports, and at multiple events.<br>**P4:7-8, Para. 11** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | 9.   During the recent Congressional Election, Meredith repeatedly doxed the location of my campaign vehicles. His tweets incited people to vandalize vehicles and assault one of my staff. In two separate incidents in August 2020, one of my staff members had his car vandalized and severely damaged outside my Visalia office, and another staff member had a bottle thrown at a campaign vehicle - pictures of which Meredith had posted on line - as she drove it.<br>**P4:9-14, Para. 12** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24 | 10.   Meredith has conscripted my name and uses it in his primary Twitter account. He has also organized a GoFundMe campaign in which he uses my name to solicit funds to pay his personal expenses. Meredith has generated substantial funds from this enterprise. Meredith is also using my name and picture to sell merchandise, such as t-shirts and coffee mugs.<br>**P4:15-19, Para. 13** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

25
26
27
28

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

4

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

| | | |
|---|---|---|
| 11.   My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter. On September 16, 2019, sho1tly after Meredith threatened my life, a WordPress.com website appeared on the Internet. The website contains the following information: [https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-formerjanz-intern-fresyas-mendoza-fresno-politics/] . The user of the @EmmettMiche11em Twitter account created the following profile: A review of tweets in which @EmmettMiche 11 em was tagged revealed that she was tagged by Meredith in innumerable tweets about me. **P5:1-6:18, Para. 14** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 12.   After searching for Twitter profiles with similar descriptions, i. e., "Mom, wife, therapist, dog friend", my attorneys came across a Twitter account for a "Michelle Meredith" in Gig Harbor, Washington. [https://twitter.com/michelemeredith?lang=en]. Through the Whitepages, they discovered that she was married to Meredith, the same person who was tagging her in the vile tweets and retweets he published about me. **P6:19-24, Para. 15** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 13.   My attorneys also learned that Meredith has more than one Twitter account by studying the profile pictures that Meredith used in various websites. For instance, he used/uses a picture of a mountain peak in Washington State on multiple profile pages, including one of his Twitter accounts. He also uses a picture of the Seattle skyline. **P6:25-7:1, Para. 16** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

5

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | |
|---|---|---|
| 14.   I have reviewed Meredith's declaration filed in this matter. Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students, but I have first-hand knowledge that he was. I believe that this is the origin of his obsession with me and his desire to harm me. **P7:2-6, Para. 17** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |
| 15.   Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his accounts, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average" number, (c) the identity of the accounts that he controls, ( d) the identity of those with whom he communicates, ( d) the nature of his communications, i.e., "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,4 and (t) the subject matters of the 3.73 daily tweets that Meredith "liked". **P7:7-14, Para. 18** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |

6

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

| | | |
|---|---|---|
| 16.   Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist with an expertise in computer science. Significantly, since the filing of this action, Meredith has altered his LinkedIn profile in an effort to downplay his expettise in computer science. He used to describe himself as a "Data Scientist": Now, he claims to be "Executive Director I Co-Founder at Social Impact Analytics Institute". Meredith also erased any reference to DKE Technologies from his LinkedIn profile. [see https://www.linkedin.com/in/benpm eredith/] and scrubbed any v isible trace of the former website of DKE Technologies from the Internet. For good measure, Meredith also deleted his medium account [see https://medium.com/@benpmeredith ], which contained numerous incriminating statements. **P7:15-8:12, Para. 19** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |
| 17.   Meredith's direct threat on my life, coupled with the quantity, aggressive, inappropriate and abusive statements that saturate his tweets, retweets and likes, and the relentless dloxing of my location at events, at airports and on airplanes, seriously alarms me and has tormented me for years. The tweets serve no legitimate purpose other than to harass me and inflict harm **P8:13-18, Para. 20** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |

7

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

1

2    Dated: December 15, 2020                    WHELAN LAW GROUP,
                                                 A Professional Corporation
3
                                                 _____
4                                                By Brian D. Whelan,
                                                 Attorneys for Defendant BENJAMIN PAUL
5                                                MEREDITH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK

BY:
Leticia Hernandez Sandoval

1   Brian D. Whelan, Esq. (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF TULARE

9

10  DEVIN G. NUNES,                         )   Case No. VCU284528
                                            )
11          Plaintiff,                      )   **REPLY DECLARATION OF BEN**
                                            )   **MEREDITH IN SUPPORT OF**
12      v.                                  )   **DEFENDANT'S SPECIAL MOTION TO**
                                            )   **STRIKE PLAINTIFF'S COMPLAINT**
13  BENJAMIN PAUL MEREDITH,                 )   **PURSUANT TO CALIFORNIA CODE OF**
    TWITTER, INC., and DOES 1 to 100,       )   **CIVIL PROCEDURE SECTION 425.16**
14  Inclusive,                              )   **(ANTI-SLAPP)**
                                            )
15          Defendants.                     )   Date:   December 22, 2020
                                            )   Time:   8:30 a.m.
16                                          )   Dept.:  7
                                            )
17                                          )   Complaint Filed:    October 5, 2020
                                            )   Trial Date:         Not Set
18

19          I, BEN PAUL MEREDITH, declare:

20          1.      I am the one of the Defendants in this case.  The following facts are within my

21  personal  knowledge and, if called as a witness, I can testify competently to each of them.

22          2.      <u>One Twitter Account</u>: I started my one and only twitter account in February 2012.

23  I only have one twitter account.  I do not have multiple twitter accounts, nor have I ever had

24  multiple twitter accounts.

25          3.      <u>No Threats</u>: Again, I have never threatened Nunes' life. I have never tweeted,

26  stated, or written (until now) "that Nunes should slit his throat with a razor." I have never said

27  that Nunes should kill himself or cause himself bodily harm. Again, I have never directly or

28  indirectly threatened Nunes' life, nor have I told anyone directly or indirectly to threaten Nunes'



Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                    1

                    DECLARATION OF BEN MEREDITH

life. I have never threatened bodily harm to Nunes nor said that I would cause bodily harm to Nunes nor have I invited others, including Nunes, to cause bodily harm to Nunes. Since this lawsuit began, I have reviewed twitter posting about Nunes. There are thousands of twitter users that are vehemently opposed to Nunes. Perhaps one of them threatened Nunes, but it was not me. Nunes derides me for not identifying my twitter handle with the suggestion being that if I had only done so he could have or would have tracked down some evidence. Nunes did not identify my twitter handle in the lawsuit or in his opposition to this motion and did not identify anything I ever wrote or published because there is no evidence of any threats. While it is likely I have deleted or edited tweets in last eight years, I can think of none specifically and none that concern Nunes. I have certainly deleted nothing since being sued in this lawsuit and have not "spoliated" evidence – though none existed in the first instance as I never made "true threats" as Nunes and his counsel claim.

4.      Hourly Tracking & other Delusional Claims: In his opposition papers, Nunes accused me of monitoring his movements 24 hours a day, "doxing" him at airports (and elsewhere), along with being a violent criminal. On all points, Nunes is both misguided and deluded. Nunes claims that I am "obsessed" because he was told by an unnamed person something about me that did not happen almost twenty years ago with a student. Like Nunes' other below-the-belt claims, every aspect of this claim is false -- except potentially what some unnamed person may have told Nunes 20 years ago (though I have no way of knowing what that was or could have been it also sounds made up).

5.      Third-Party Activities & Mt. Rainier Pictures: I do not control or conspire with third parties to do anything related to Nunes nor do I control the thousands upon thousands of people that use Mount Raineer in their profile pictures or elsewhere. In the State of Washington, where I live, Mount Rainier is depicted on the state license plate and is an icon of the Seattle/Puget Sound region. Nunes claims that because I used a picture of the iconic mountain as a backdrop on a website therefore others using a similar backdrop are my agents or in fact me. This illogical conclusion is absurd. There are approximately 13 million people living in the Puget Sound region. I have seen many people use the same mountain backdrop on their twitter

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF BEN MEREDITH

1   accounts. I can confidently say under oath that those other people who also like and use the

2   mountain picture are not me nor do I control them – whoever they may be.

3       6.      Merchandise and Go Fund Me Account: I have never sold Devin Nunes

4   merchandise of any kind, including, but not limited to, coffee mugs and/or t-shirts. I do not have

5   a gofundme account nor have I ever organized one or set one up. I have made no money off of

6   Devin Nunes – though I expect him to pay my fees and costs for having to bring this motion. As

7   a joke and expression of my first amendment right, I though about buying a Devin Nunes mug

8   online for my attorney as a Christmas gift after this lawsuit started. Out of respect for Nunes who

9   does not want that to happen, I will not be getting my attorney a gift this year.

10      7.      August 27. 2020 Event: I was not involved in asking Nunes if he had sued any

11  more cows lately on his flight from Salt Lake City, Utah to Washington D.C.. I have looked at

12  the video on twitter. The video appears to have been re-tweeted over eight thousand times,

13  contains over twenty-six thousand likes and was viewed over one million times. All of this

14  information is publicly available on twitter.  Nunes claims that I shared or "doxed" this video

15  even before he even landed. I did not.

16      8.      Nunes advances dozens of other bizarre and factually erroneous claims designed

17  to disparage me. Suffice it to say, Nunes has either willfully perjured himself or been misled by

18  the attorneys that apparently are supplying the "intelligence."

19      I declare under penalty of perjury, under the laws of the State of California, that

20  the foregoing is true and correct.

21      Executed on December 13, 2020.

22

23                          Ben Meredith

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

DECLARATION OF BEN MEREDITH

1    Brian D. Whelan, Esq.  (SBN 256534)
     WHELAN LAW GROUP, A Professional Corporation
2    1827 East Fir Avenue, Suite 110
     Fresno, California   93720
3    Telephone: (559) 437-1079
     Facsimile:  (559) 437-1720
4    E-mail: brian@whelanlawgroup.com

5
     Attorneys for: Defendant BEN PAUL MEREDITH
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          COUNTY OF TULARE

9

10   DEVIN G. NUNES,                    )   Case No. VCU284528
                                        )
11             Plaintiff,               )   DECLARATION OF YASMIN MENDOZA
                                        )   IN SUPPORT OF DEFENDANT'S
12        v.                            )   SPECIAL MOTION TO STRIKE
                                        )   PLAINTIFF'S COMPLAINT PURSUANT
13   BENJAMIN PAUL MEREDITH,            )   TO CALIFORNIA CODE OF CIVIL
     TWITTER, INC., and DOES 1 to 100,  )   PROCEDURE SECTION 425.16
14   Inclusive,                         )   (ANTI-SLAPP)
                                        )
15             Defendants.              )   Date:   December 22, 2020
                                        )   Time:   8:30 a.m.
16                                      )   Dept.:  7
                                        )
17                                      )   Complaint Filed:  October 5, 2020
                                        )   Trial Date:       Not Set
18

19        I, Yasmin Mendoza, declare:

20        1.     The following facts are within my personal knowledge and, if called as a witness,

21   I can testify competently to each of them.

22        2.     In Spring 2019, I started using the twitter handle @fresyas.  Until I changed the

23   @fresyas account handle on January 1, 2020, I was the exclusive user and sole controller of the

24   twitter handle @fresyas. I ultimately had to change the account name because weird non-human

25   bot users would flood my posts and mentions, and then strange twitter accounts started to follow

26   me and cause me a lot of alarm and concern for my own safety.

27        3.     I have reviewed the declaration of "Devin G. Nunes in opposition to Defendant,

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

FAXED

1

DECLARATION OF YASMIN MENDOZA

---

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK
BY: Leticia Hernandez Sandoval

Benjamin Paul Meredith's motion to strike complaint pursuant to CCP 425.16." I see at page five (5) of Mr. Nunes' declaration a tweet that he attributes to me. I recognize my handle @fresyas, and a picture of myself next to the handle. I did not tweet that message at any point in time, nor did anyone on my behalf. I specifically recognize that tweet because I was asked by people about it at the time and I took a screen shot of it because I thought that it would be erased by whoever posted it. The tweet is not mine, and the contents of the tweet are not true. Attached hereto as Exhibit "A" is a true and correct copy of the tweet at issue appearing at page five (5) of Mr. Nunes' declaration.

4       In the Exhibit "A" tweet, I recognize the name of Nancy Gilmore. Nancy worked on the Andrew Janz for Congress campaign in 2018. I know Nancy. I also worked on Mr. Janz' campaign. I do not know who Michelle Emmitt is nor have I met her, to my knowledge. I have never spoken with Nancy Gilmore about Michelle Emmitt, @devincow, trolling Mr. Nunes online,  who set up the @devincow, or any other twitter user allegedly following Devin Nunes or set up to do that.

5.       To be abundantly clear, the tweet seen in Exhibit "A," that Congressman Devin Nunes claims I tweeted, authored, and published is not in fact my tweet. I did not author any of the text appearing in Exhibit "A," nor did anyone do so at my request or with my permission, and the text itself is false.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 10, 2020.

Yasmin Mendoza

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF YASMIN MENDOZA

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

**DEC 1 5 2020**

STEPHANIE CAMERON, CLERK
BY: Leticia Hernandez Sandoval

1  Brian D. Whelan, Esq.  (SBN 256534)
   WHELAN LAW GROUP, A Professional Corporation
2  1827 East Fir Avenue, Suite 110
   Fresno, California  93720
3  Telephone: (559) 437-1079
   Facsimile:  (559) 437-1720
4  E-mail: brian@whelanlawgroup.com

5

6  Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                         COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )  Case No. VCU284528
                                       )
11           Plaintiff,                )  **DECLARATION OF JAMIE CARTER IN**
                                       )  **SUPPORT OF DEFENDANT'S SPECIAL**
12       v.                            )  **MOTION TO STRIKE PLAINTIFF'S**
                                       )  **COMPLAINT PURSUANT TO**
13  BENJAMIN PAUL MEREDITH,            )  **CALIFORNIA CODE OF CIVIL**
    TWITTER, INC., and DOES 1 to 100,  )  **PROCEDURE SECTION 425.16**
14  Inclusive,                         )  **(ANTI-SLAPP)**
                                       )
15           Defendants.               )  Date:   December 22, 2020
                                       )  Time:   8:30 a.m.
16                                     )  Dept.:  7
                                       )
17                                     )  Complaint Filed:  October 5, 2020
                                       )  Trial Date:       Not Set
18  _____

19       I, JAMIE CARTER, declare:

20       1.      The following facts are within my personal knowledge and, if called as a witness,

21  I can testify competently to each of them.

22       2.      I live in Utah. On August 27, 2020, I boarded a flight from Salt Lake City, Utah to

23  Washington D.C. to take part in the march on Washington.  After I boarded the flight, I noticed

24  that Congressman Devin Nunes was seated two rows in front of me. I consider myself politically

25  active and I knew of Devin Nunes at the time I saw him on the plane. I also knew that Mr.

26  Nunes' was suing a twitter user called @devincow.  What I did not know, until I saw Mr. Nunes

27  seated a couple of rows in front of me, was that Mr. Nunes would be on the same flight.

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                    1



DECLARATION OF JAMIE CARTER

3.      After about an hour into the flight, I left my seat and went to the bathroom. After leaving the bathroom, I took my phone out and video recorded Mr. Nunes responding to my question about suing any more cows lately. What I said was "Sued any cows lately ....sued any cow..more cows.. lately ....moo moo." Mr. Nunes did not verbally respond.

4.      I was not encouraged to ask Mr. Nunes if he had sued any more cows lately by anyone. In fact that idea came to me spontaneously as I was leaving the bathroom. Again, I did this myself and not part of some nefarious Antifa plot – which is what Mr. Nunes later professed to the news.  When we landed, the flight attendants blocked everyone from getting off until Nunes had deplaned. I posted the video of Nunes' non-verbal response to my question about suing more cows on twitter and people retweeted it thousands of times.  To be sure, this was also not part of some conspiracy or at the direction of anyone. I did this alone.

5.      I have never heard of Ben Meredith. I have never communicated with Ben Meredith.  It was just good (or bad) luck that I was on the same plane as Devin Nunes at the same time on August 27, 2020.  I have first amendment rights to express my dissatisfaction with political lawsuits against twitter cows, and I exercised my right to ask a sitting Congressman if he was suing any more cows while we were in a public space.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 12, 2020

JAMIE CARTER

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF JAMIE CARTER

1   Brian D. Whelan, Esq. (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile: (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

**DEC 18 2020**

STEPHANIE CAMERON, CLERK

BY: ~~Leticia Hernandez-Sandoval~~

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                           COUNTY OF TULARE

9

10  DEVIN G. NUNES,                          Case No. VCU284528

11         Plaintiff,                        **NOTICE OF ERRATA TO DECLARATION
                                             OF YASMIN MENDOZA IN SUPPORT OF
12         v.                                DEFENDANT'S SPECIAL MOTION TO
                                             STRIKE PLAINTIFF'S COMPLAINT
13  BENJAMIN PAUL MEREDITH,                  PURSUANT TO CALIFORNIA CODE OF
    TWITTER, INC., and DOES 1 to 100,        CIVIL PROCEDURE SECTION 425.16
14  Inclusive,                               (ANTI-SLAPP)**

15         Defendants.

16                                           Date:   December 22, 2020
                                             Time:   8:30 a.m.
                                             Dept.:  7
17

18                                           Complaint Filed:   October 5, 2020
                                             Trial Date:        Not Set
19

20  TO THE COURT AND TO COUNSEL OF RECORD FOR ALL PARTIES:

21          PLEASE TAKE NOTICE that Defendant BEN PAUL MEREDITH, by and through

22  his attorneys hereby respectfully submits this Notice of Errata in the DECLARATION OF YASMIN

23  MENDOZA IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S

24  COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

25  (ANTI-SLAPP), dated December 10, 2020 and previously filed with the Court on December 15,

26  2020.

27  ////

28  ////

**FAXED**

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

1           Due to an oversight Exhibit "A" to the declaration was inadvertently omitted from

2    the filing on December 15, 2020. The proper and complete Declaration of Yasmin Mendoza is

3    respectively attached hereto as Exhibit "A".

4

5    Dated: December 18, 2020          WHELAN LAW GROUP,
                                   A Professional Corporation

6

7                                       By Brian D. Whelan,
                                   Attorneys for Defendant BENJAMIN PAUL

8                                       MEREDITH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1070
Fax: 559-437-1720

2

NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA

EXHIBIT "A"

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile: (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5
    Attorneys for: Defendant BEN PAUL MEREDITH
6

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11            Plaintiff,               )   DECLARATION OF YASMIN MENDOZA
                                       )   IN SUPPORT OF DEFENDANT'S
12       v.                            )   SPECIAL MOTION TO STRIKE
                                       )   PLAINTIFF'S COMPLAINT PURSUANT
13  BENJAMIN PAUL MEREDITH,            )   TO CALIFORNIA CODE OF CIVIL
    TWITTER, INC., and DOES 1 to 100,  )   PROCEDURE SECTION 425.16
14  Inclusive,                         )   (ANTI-SLAPP)
                                       )
15            Defendants.              )   Date:   December 22, 2020
                                       )   Time:   8:30 a.m.
16                                     )   Dept.:  7
                                       )
17                                     )   Complaint Filed:   October 5, 2020
                                       )   Trial Date:        Not Set
18

19       I, Yasmin Mendoza, declare:

20       1.      The following facts are within my personal knowledge and, if called as a witness,

21  I can testify competently to each of them.

22       2.      In Spring 2019, I started using the twitter handle @fresyas.  Until I changed the

23  @fresyas account handle on January 1, 2020, I was the exclusive user and sole controller of the

24  twitter handle @fresyas. I ultimately had to change the account name because weird non-human

25  bot users would flood my posts and mentions, and then strange twitter accounts started to follow

26  me and cause me a lot of alarm and concern for my own safety.

27       3.      I have reviewed the declaration of "Devin G. Nunes in opposition to Defendant,

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

DECLARATION OF YASMIN MENDOZA

Benjamin Paul Meredith's motion to strike complaint pursuant to CCP 425.16." I see at page five (5) of Mr. Nunes' declaration a tweet that he attributes to me. I recognize my handle @fresyas, and a picture of myself next to the handle. I did not tweet that message at any point in time, nor did anyone on my behalf. I specifically recognize that tweet because I was asked by people about it at the time and I took a screen shot of it because I thought that it would be erased by whoever posted it. The tweet is not mine, and the contents of the tweet are not true. Attached hereto as Exhibit "A" is a true and correct copy of the tweet at issue appearing at page five (5) of Mr. Nunes' declaration.

4    In the Exhibit "A" tweet, I recognize the name of Nancy Gilmore. Nancy worked on the Andrew Janz for Congress campaign in 2018. I know Nancy. I also worked on Mr. Janz' campaign. I do not know who Michelle Emmitt is nor have I met her, to my knowledge. I have never spoken with Nancy Gilmore about Michelle Emmitt, @devincow, trolling Mr. Nunes online, who set up the @devincow, or any other twitter user allegedly following Devin Nunes or set up to do that.

5.    To be abundantly clear, the tweet seen in Exhibit "A," that Congressman Devin Nunes claims I tweeted, authored, and published is not in fact my tweet. I did not author any of the text appearing in Exhibit "A," nor did anyone do so at my request or with my permission, and the text itself is false.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 10, 2020.

Yasmin Mendoza

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF YASMIN MENDOZA

EXHIBIT "A"

14.    My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter. On September 16, 2019, shortly after Meredith threatened my life, a WordPress.com website appeared on the Internet. The website contains the following information:

# Michelle Emmett is @devincow reveals former Janz intern @fresyas Mendoza #Fresno #politics

👤 janzinterntruths    🕐 September 16, 2019    📰 Politics    🏷 Fresno

 Yas Mendoza

Michelle Emmitt @EmmettMichellem is @devincow.  She made the account to troll Nunes because Nancy Gilmore asked her to.

29 PM  8 Jul  9

3 Retweets  4 Likes

[https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-former-janz-intern-fresyas-mendoza-fresno-politics/].  The user of the @EmmettMichellem Twitter account created the following profile:

5

DECLARATON OF DEVIN G. NUNES

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On December 18, 2020, I caused to be served the within document(s): **NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 (ANTI-SLAPP)**

( )　　**VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )　　**BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )　　**BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )　　**BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )　　**BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)　　**BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 18, 2020, at Fresno, California.

_____
STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA

1   Derek P. Wisehart, Esq. #178100
    Law Offices of Derek P. Wisehart
2   2330 W. Main Street
    Visalia, California 93291
3   Telephone:    (559) 636-9473
    Facsimile:    (559) 636-9476
4   Email: derek@dwisehartlaw.com

5   Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
6   300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
7   Telephone:  (804) 501-8272
    Facsimile:  (202) 318-4098
8   Email: stevenbiss@earthlink.net
    (*Application for Admission Pro Hac Vice*
9   *Filed*)

10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                         COUNTY OF TULARE

15

16  DEVIN G. NUNES.                      Case No. VCU284528

17              Plaintiff,              **PLAINTIFF'S SUR-REPLY IN**
                                        **OPPOSITION TO DEFENDANT'S REPLY**
18  vs.                                 **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES**
19  BENJAMIN PAUL MEREDITH,
    TWITTER, INC., and                  Date:    December 22, 2020
20  DOES 1 to 100, Inclusive,           Time:    8:30 a.m.
                                        Dept.    7
21              Defendants.

22

23

24

25

26

27

28

1   Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, respectfully

2   submits this Sur-Reply to the reply memorandum of points and authorities in support of motion

3   to strike filed by defendant, Benjamin Paul Meredith ("Meredith").

4   　　　1.　　Meredith does not address _any_ of Plaintiff's cases, and therefore concedes that a

5   cause of action for stalking does not arise from protected activity.  True threats, including veiled

6   or hoax threats, are crimes. [https://www.fbi.gov/news/stories/hoax-threats-awareness-100518].[1]

7   Threats are not "acts in furtherance of a person's right of free speech".  There is also no dispute

8   that thousands upon thousands of lewd, lascivious, obscene, offensive, hateful and degrading

9   tweets, retweets, replies and likes, constantly directed (tagged) at a single person on Twitter

10  (Plaintiff), over a two-year period, constitutes "harassment" within the meaning of § 1708.7 of

11  the California Civil Code.[2]  No Court has ever condoned or excused the use of social media to

12  threaten, intimidate, humiliate and degrade on the scale seen in this case.

13  　　　2.　　Meredith understates the severity of his conduct and completely misses the big

14  picture of stalking.

---

19  　　　[1]　　Meredith threatened Plaintiff in a "reply" to one of Plaintiff's tweets.  A "reply"
    on Twitter is a response to another person's Tweet.  A user, such as Meredith, can reply by
20  clicking or tapping the **reply** icon from a tweet.  When Meredith replied to Plaintiff's tweet,
    threatening Plaintiff's life, the reply showed up on Meredith's profile page timeline and on
21  Plaintiff's homepage.   Plaintiff also received a notification in his Notifications tab.
    [https://help.twitter.com/en/using-twitter/mentions-and-
22  replies#:~:text=%20Reply%20overview%20%201%20A%20reply%20is,follow%20the%20per
    son%20who%20replied%20and...%20More%20].  **Meredith's declarations fail to disclose the
23  number and nature of the "replies" he posted to tweets written about Plaintiff.**

24  　　　[2]　　"'Harass' means a knowing and willful course of conduct directed at a specific
    person which seriously alarms, annoys, torments, or terrorizes the person, and which serves no
25  legitimate purpose.  The course of conduct must be such as would cause a reasonable person to
    suffer substantial emotional distress, and must actually cause substantial emotional distress to the
26  person." _Cal. Civ. Code § 1708.7(b)(5)._

27

28

3.      Meredith's "evidence" consists almost entirely of general denials. His credibility, however, is tainted by his admitted spoliation of evidence, the full extent of which is not yet known to the Court or Plaintiff. The Court will note that Meredith is very careful in his choice of words. In his reply declaration, he represents that he has only one Twitter account. He admits that it is "likely I have deleted or edited tweets[3] in the last eight years", but "none that concern Nunes." Significantly, Meredith claims that he has "deleted nothing since being sued in this lawsuit", **but** Nunes's evidence clearly shows that Meredith changed his LinkedIn profile, scrubbed the DKE Technologies website from the Internet, and deleted his Medium account. Meredith is not being truthful and he is deliberately trying to put blinders on the Court.

4.      In the face of Plaintiff's unequivocal evidence concerning Meredith's threat and his abuse of Twitter over the past two years, Meredith continues to conceal the name of his Twitter account, and he continues to obfuscate on relevant matters, such as (a) the number of tweets he posted in 2019 and 2020, (b) the identity of the accounts that he controls, (c) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.* "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets, retweets and replies, and (f) the subject matters of the 3.73 "average" daily tweets that Meredith "liked".

5.      Meredith's reply declaration, ¶ 5, contains an admission that clearly demonstrates he is using more than one Twitter account. Meredith represents in his reply declaration that "Nunes claims … I used a picture of the iconic mountain [Mt. Rainier] as a backdrop on a website therefore others using a similar backdrop are my agents or in fact me". **Plaintiff in his**

---

[3]      Meredith is a data scientist with an intimate working knowledge of Twitter's architecture. He knows the difference between a "tweet" and a "reply". As stated above, Meredith threatened Plaintiff in a "reply", which Meredith then quickly deleted.

**PLAINTIFF'S SUR-REPLY IN OPPOSITION
TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**Declaration never claimed that Meredith used a picture of "Mt. Ranier"**.  Plaintiff pointed out that Meredith uses "a picture of a mountain peak in Washington State on multiple profile pages, including one of his Twitter accounts."  Plaintiff did not include a picture of the "mountain peak".  Meredith voluntarily supplied the name of the "mountain peak" because *only Meredith knows the picture profile he used on his website and on his alternative Twitter account was a picture of Mt. Ranier*.

6.     It is also striking that Meredith "took the time" to calculate the exact average number of "tweets" and "likes" he posted since the "inception" of his Twitter days in 2012, *but* Meredith refuses to identify the name of his account(s) and refuses to admit the substance of a single one of thousands of tweets, retweets, replies and likes he posted about Plaintiff.[4]

7.     Meredith's reply memorandum includes a declaration by Yas Mendoza, which compounds Meredith's credibility problems.  Ms. Mendoza was an intern for Andrew Janz ("Janz") during Janz's failed campaign against Plaintiff in 2018.  She is pictured in multiple tweets that still appear on Twitter. [https://twitter.com/claraa559/status/1045792382459895810].  In 2018, Ms. Mendoza tweeted from an account called, "@yazmendza".  Her tweets are preserved by the "Wayback Machine", a digital archive of the World Wide Web, founded by the Internet Archive, a nonprofit library based in San Francisco.  Ms. Mendoza states that she started using the twitter handle, "@fresyas", in "Spring 2019", after she was followed by "strange twitter accounts", which, like Plaintiff, caused her "a lot of alarm and concern for my own safety."  Ms.

---

[4]     Obviously, Meredith is hiding material information related to his use of Twitter, including the number of accounts he controls.  In light of Meredith's obfuscation, if the court does not deny this motion at the outset, then good cause exists and Plaintiff alternatively respectfully requests that this hearing be continued, and that the court grant leave to conduct limited SLAPP discovery to pursuant to § 425.16(g) on the issue of reasonable probability of prevailing and to verify the information that Meredith intentionally omitted.

4
**PLAINTIFF'S SUR-REPLY IN OPPOSITION**
**TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Mendoza claims that she did not tweet the message on July 8, 2019, but offers the Court no hypothesis as to how someone hacked her Twitter account and posted the very content specific message about Twitter account, **@devincow**, being an account connected to Meredith's wife. Ms. Mendoza also fails to note that she deleted her old "@fresyas" account in early 2020, and replaced it with an account simply titled, "Yas", with the handle "FresYas". The motive for deleting the old account is unknown without discovery.

8. Finally, the connection to Janz is highly relevant. Janz is the founder of the Voter Protection Project ("VPP"). [https://protectvoting.org/our-team/]. On at least one occasion, as disclosed on VPP's Form 3X filed with the Federal Election Commission ("FEC"), VPP paid Meredith's attorney's fees:

---

Image# 201907269151676268

**SCHEDULE B  (FEC Form 3X)**
**ITEMIZED DISBURSEMENTS**

Use separate schedule(s) for each category of the Detailed Summary Page

FOR LINE NUMBER: (check only one)

PAGE 307 OF 315

[X] 21b  [ ] 22  [ ] 23  [ ] 26  [ ] 27
[ ] 28a  [ ] 28b  [ ] 28c  [ ] 29  [ ] 30b

Any information copied from such Reports and Statements may not be sold or used by any person for the purpose of soliciting contributions or for commercial purposes, other than using the name and address of any political committee to solicit contributions from such committee.

NAME OF COMMITTEE (In Full)
Voter Protection Project

Full Name (Last, First, Middle Initial)
A. The Hawkins Law Firm

Mailing Address 222 Monument Ave

City Richmond    State VA    Zip Code 23220

Purpose of Disbursement
Legal Consulting

Candidate Name

Office Sought: [ ] House [ ] Senate [ ] President
State:    District:

Disbursement For:
[ ] Primary  [ ] General
[ ] Other (specify) ▼

Category/ Type

Date of Disbursement
M M 04   D D 15   Y Y Y Y 2019

FEC Identification Number
C

Transaction ID : VVB53AD6Q)
Amount of Each Disbursement this Period
3000.00

[ ] Memo Item

---

Plaintiff reasonably expects that further connection between Meredith and Janz will be revealed in discovery.

///

///

**PLAINTIFF'S SUR-REPLY IN OPPOSITION**
**TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

1

2          **IV.**    **CONCLUSION AND REQUEST FOR RELIEF**

3       For the reasons stated above, in Plaintiff's Memorandum in Opposition and at the hearing

4 of this matter, Plaintiff respectfully requests that Meredith's motion to strike be **DENIED**.

5

6       *In the alternative*, if Meredith's criminal and civil cyber-stalking, threatening, and

7 harassing course of conduct somehow survives the step-one prong of the court's analysis as an

8 exercise of protected free speech, then good cause exists to continue this hearing and grant leave

9 pursuant to CCP §425.16(g) (upon Noticed Motion if necessary), to conduct limited discovery

10 on the step-two prong of reasonable probability of prevailing.

11

12

13 DATED:     December 18, 2020     LAW OFFICE OF DEREK P. WISEHART

14

15

16                              Derek P. Wisehart, Attorney for Plaintiff.

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S SUR-REPLY IN OPPOSITION**
**TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

1        **<u>PROOF OF SERVICE</u>**

2
        STATE OF CALIFORNIA, COUNTY OF TULARE
3
        I am a citizen of the United States and a resident of the County aforesaid; I am over the
4        age of eighteen years, and not a party to the within action; my business address is 2330
        W. Main Street, Visalia, California  93291.
5
        On December __18__, 2020, I served the foregoing **PLAINTIFF'S SUR-REPLY IN**
6        **OPPOSITION TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND**
        **AUTHORITIES**
7        on all interested parties, by placing a true copy thereof enclosed in a sealed envelope
        and addressed as follows:
8

9        | Brian D. Whelan, Esq. | |
         | WHELAN LAW GROUP, A Professional Corporation | |
10       | 1827 East Fir Ave., Suite 110 | |
         | Fresno, CA  93720 | |
11       | Email:  brian@whelanlawgroup.com | |

12

13       [  ]     **By Personal Service** - I delivered such envelope by hand to the addressee.

14       [  ]     **By Mail** - I deposited such envelope with the United States Postal Service,
         enclosed in a sealed envelope with postage thereon fully prepaid, in the United
15       States Mail at Visalia, California.  I am readily familiar with the business practice at
         my place of business for collection and processing of correspondence for mailing
16       with the United States Postal Service.  Correspondence so collected and processed
         is deposited with the United States Postal Service that same day in the ordinary
17       course of business.

18       [  ]     **By Express Service Carrier** - I deposited in a box or other facility
         regularly maintained by Federal Express, an express service carrier, or delivered to
19       a courier or driver authorized by said express service carrier to receive documents in
         an envelope designated by the said express carrier, with delivery fees paid or
20       provided for.

21       [  ]     **By Facsimile** - I transmitted from a facsimile transmission machine whose
         telephone number is 559/636-9476, the afore-described document(s), and a copy of
22       this declaration to the above interested parties at the listed facsimile transmission
         telephone number.
23

24       [ X ]     **By Electronic Service:**  I sent the afore-described document(s) from
         email address derek@dwisehartlaw.com to the person(s) at the email addresses

25

26

1    listed above.   I did not receive within a reasonable time after transmission any
electronic message or other indication that the transmission was unsuccessful.

2

__X__   **(State)**      I declare under penalty of perjury under the laws of the State of
3    California that the foregoing is true and correct.

4    ____   **(Federal)**   I declare that I am employed in the office of a member of the Bar of
this Court at whose direction the service was made.

5

Executed on December ___18___, at Visalia, California.

6

7

Derek P. Wisehart

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 18 2020

STEPHANIE CAMERON, CLERK
BY:
Leticia Hernandez Sandoval

1  Brian D. Whelan, Esq. (SBN 256534)
   WHELAN LAW GROUP, A Professional Corporation
2  1827 East Fir Avenue, Suite 110
   Fresno, California 93720
3  Telephone: (559) 437-1079
   Facsimile: (559) 437-1720
4  E-mail: brian@whelanlawgroup.com

5

6  Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )  Case No. VCU284528
                                       )
11         Plaintiff,                  )  **DEFENDANT'S OBJECTIONS TO**
                                       )  **PLAINTIFF'S SUR-REPLY IN**
12         v.                          )  **OPPOSITION TO DEFENDANT'S REPLY**
                                       )  **MEMORANDUM OF POINTS AND**
13  BENJAMIN PAUL MEREDITH,            )  **AUTHORITIES**
    TWITTER, INC., and DOES 1 to 100,  )
14  Inclusive,                         )  Date:  December 22, 2020
                                       )  Time:  8:30 a.m.
15         Defendants.                 )  Dept.: 7
                                       )
16  _____)  Complaint Filed:  October 5, 2020
                                          Trial Date:       Not Set
17

18         Defendant BEN PAUL MEREDITH ("Defendant") hereby objects to Plaintiff's sur-

19  reply as it is not authorized by the Code of Civil Procedure. (C.C.P. § 1005.)

20

21  Dated: December 18, 2020          WHELAN LAW GROUP,
                                      A Professional Corporation
22

23

24                                    By Brian D. Whelan,
                                      Attorneys for Defendant BEN PAUL MEREDITH
25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUR-REPLY

FAXED

**PROOF OF SERVICE**

1

2      I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A

3  Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On December 18, 2020, I caused to be served the within document(s): **DEFENDANT'S**

4  **OBJECTIONS TO PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

5

( )      **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to

6  the fax number(s) set forth below on this date.

7  ( )      **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

8

( )      **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and

9  mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the

10  same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope

11  with postage fully paid.

12  ( )      **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

13

( )      **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be

14  deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

15

( X )      **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be

16  electronically mailed to the e-mail addresses listed below.

17      Derek P. Wisehart                       Steven S. Biss
    Law Offices of Derek P. Wisehart           300 West Main Street, Suite 102

18  2330 W. Main Street                         Charlottesville, Virginia 22903
    Visalia, CA 93291                          Tel: (804) 501-8272

19  Tel: (559) 636-9473                         Fax: (202) 318-4098
    Fax: (559) 636-9476                         Email: stevenbiss@earthlink.net

20  Email: derek@dwisehartlaw.com
                                               Counsel for Plaintiff

21  Counsel for Plaintiff

22

23      I declare under penalty of perjury under the laws of the State of California that the

24  foregoing is true and correct.

25      Executed on December 18, 2020, at Fresno, California.

26                                                    _____

27                                                    STACEY VUE

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUR-REPLY

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 28 2020

STEPHANIE CAMERON, CLERK

BY: ~~_____~~

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10  DEVIN G. NUNES,                          )  Case No. VCU284528
                                             )
11            Plaintiff,                      )  **AMENDED** NOTICE OF MOTION AND
                                             )  MOTION TO STRIKE COMPLAINT
12       v.                                   )  PURSUANT TO CALIFORNIA CODE OF
                                             )  CIVIL PROCEDURE SECTION 425.16
13  BENJAMIN PAUL MEREDITH,                  )  (ANTI-SLAPP)
    TWITTER, INC., and DOES 1 to 100,        )
14  Inclusive,                               )  Date:  January 22, 2020
                                             )  Time:  8:30 a.m.
15            Defendants.                     )  Dept.: 10
                                             )
16                                           )
                                             )
17                                           )  Complaint Filed:    October 5, 2020
                                             )  Trial Date:         Not Set
18

19  TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD;

20       **PLEASE TAKE NOTICE THAT** on January 22, 2020, at 8:30 a.m., or as soon thereafter

21  as counsel may be heard in Department 10 of Tulare County Superior Court, located at 221 S.

22  Mooney Blvd, Visalia, CA 93291, Defendant Ben Paul Meredith ("Defendant Meredith"), will and

23  hereby does move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order

24  striking the Complaint filed by Plaintiff Devin G. Nunes ("Plaintiff") as to all of the claims filed

25  against Defendant Meredith and dismissing, in whole or in part, the Complaint with prejudice and

26  without leave to amend.

27       The claims in the Complaint as against Defendant Meredith all stem from Defendant's

28  alleged activity in furtherance of Defendant's right of petition and/or free speech under the United

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

AMENDED NOTICE OF MOTION

FAXED

States Constitution in connection with a public issue. Because Plaintiff's claims, as against Defendant Meredith, all arise from his conduct in furtherance of his exercise of the right of free speech in connection with a public issue and/or issue of public interest, they are subject to a special motion to strike under California's anti-SLAPP statute, C.C.P. § 425.16(e)(3)-(4). Consequently, the burden shifts to Plaintiff to demonstrate a probability of prevailing on each of the claims. *See* Cal. Civ. Proc. Code § 425.16(b)(1).

Further, Plaintiff cannot meet his burden for the following independent reasons:

1.    Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Defendant Meredith's alleged wrongful activity is protected by the First Amendment;

2.    Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Plaintiff does not have any independent corroborating evidence to support this claim (*See* Cal. Civ. Code Section 1708.7(a)(1));

3.    Plaintiff cannot demonstrate a probability of prevailing on his commercial misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is protected by the First Amendment; and

4.    Plaintiff cannot demonstrate a probability of prevailing on his misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is exempt from liability under the Computer Decency Act (CDA), 47 U.S.C.A. § 230.(c)(1), and Civil Code Section 3344(d) because it relates to public affairs within the meaning of that statute and/or on account of immunity afforded thereunder.

This Motion is based on this Amended Notice of Motion along with those documents filed on or about November 19, 2020 (notice of motion, Memorandum of Points and Authorities, Declarations of Ben Meredith and Brian Whelan); upon those documents filed on or about December 15, 2020 (Reply Memorandum of Points and Authorities, Declarations of Ben Meredith, Jamie Carter, and Yasmin Mendoza); on any other matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument and evidence as may be received by this Court at the hearing on this Motion and at the time of the hearing.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Meredith reserves the right to recover his attorney's fees and costs incurred, and in an amount according to proof, through a subsequently noticed motion following the hearing on this motion.

Dated: December 28, 2020

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

AMENDED NOTICE OF MOTION

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On December 28, 2020, I caused to be served the within document(s): <u>**AMENDED NOTICE OF MOTION AND MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16  (ANTI-SLAPP)**</u>

( )   **VIA FAX:**   by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )   **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:**   by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:**   by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)   **BY ELECTRONIC SERVICE:**   by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 28, 2020, at Fresno, California.

Stacey Vue

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

AMENDED NOTICE OF MOTION

# EXHIBIT "C"

1  Derek P. Wisehart, Esq. #178100
   Law Offices of Derek P. Wisehart
2  2330 W. Main Street
   Visalia, California 93291
3  Telephone:   (559) 636-9473
   Facsimile:   (559) 636-9476
4  Email: derek@dwisehartlaw.com

5  Steven S. Biss, Esquire
   (Virginia State Bar No. 32972)
6  300 West Main Street, Suite 102
   Charlottesville, Virginia 22903
7  Telephone: (804) 501-8272
   Facsimile: (202) 318-4098
8  Email: stevenbiss@earthlink.net
   (Application for Admission Pro Hac Vice
9  Filed)

10

11 Attorneys for Plaintiff, DEVIN G. NUNES

12

13                SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                            COUNTY OF TULARE

15

16 DEVIN G. NUNES.                          Case No. VCU284528

17                 Plaintiff,               **PLAINTIFF'S NOTICE OF MOTION AND
                                            MOTION FOR LEAVE TO CONDUCT
18 vs.                                      SPECIFIED DISCOVERY PURSUANT TO
                                            C.C.P. § 425.16(g)**
19 BENJAMIN PAUL MEREDITH,
20 TWITTER, INC., and                       Date:    January 22, 2021
   DOES 1 to 100, Inclusive,                Time:    8:30 a.m.
21                                          Dept.    10
                 Defendants.                **Hon. Gary L. Paden**
22

23

24

25

26

27

28

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED
DISCOVERY PURSUANT TO C.C.P. § 425(g)**

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, pursuant to California Code of Civil Procedure ("C.C.P.") § 425.16(g), for good cause respectfully moves the Court for leave to conduct specified discovery (detailed below) in the event the Court proceeds to step two in its analysis of the anti-SLAPP motion to strike filed by defendant, Benjamin Paul Meredith ("Meredith").

### Notice of Motion and Notice of Hearing

TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 22, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 10 of the Tulare County Superior Court, located at 221 S. Mooney Blvd., Visalia, California 93291, Devin G. Nunes, by counsel, will move the Court pursuant to § 425.16(g) of the California Code of Civil Procedure for leave to conduct specified discovery (detailed below).

Plaintiff has timely filed this motion. Good cause exists to allow him to conduct limited discovery. In his anti-SLAPP motion, Meredith contends that Plaintiff is unable to demonstrate a probability of prevailing on his claims of stalking and common law commercial misappropriation. Meredith is hiding the ball. He possesses evidence that will support Plaintiff's claims. For the reasons stated below, the Court should permit Plaintiff to conduct limited discovery.

### Memorandum of Points and Authorities

1.    The filing of a motion to strike pursuant to C.C.P § 425.16 stays all discovery proceedings in the action. Section 425.26(g) provides that the Court "on noticed motion and for good cause shown, may order that specified discovery be conducted" notwithstanding the automatic stay.

2.      "If the plaintiff makes a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case, the plaintiff must be given the reasonable opportunity to obtain that evidence through discovery before the motion to strike is adjudicated.  The trial court, therefore, must liberally exercise its discretion by authorizing reasonable and specified discovery timely petitioned for by a plaintiff in a case such as this, when evidence to establish a prima facie case is reasonably shown to be held, or known, by defendant or its agents and employees." *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, 868, 44 Cal.Rptr.2d 46 (1995); *see also Ruiz v. Harbor View Community Ass'n*, 134 Cal.App.4th 1456, 1475, 37 Cal.Rptr.3d 133 (2005) (defamation case remanded to the trial court to consider plaintiff's discovery request on the issue of publication); *Garment Workers Center v. Superior Court*, 117 Cal.App.4th 1156, 1162, 12 Cal.Rptr.3d 506 (2004) ("Surely the fact [that] evidence necessary to establish the plaintiff's prima facie case is in the hands of the defendant or a third party goes long way toward showing good cause for discovery.").

3.      In determining whether good cause exists to lift the discovery ban, other relevant factors to consider include: (a) "whether the information the Plaintiff seeks to obtain through formal discovery proceedings is readily available from other sources or can be obtained through informal discovery"; (b) "the Plaintiff's need for discovery in the context of the issues raised in the [anti-] SLAPP motion," and (c) the relative circumstances of the parties and the importance of freezing discovery to protect the Defendant. *Garment Workers Center*, 117 Cal.App.4th at 1162, 12 Cal.Rptr.3d at 509-510.

4.      A court exercising its discretion to grant or deny a motion for discovery under § 425.16(g) should remain mindful that the anti-SLAPP statute was adopted to end meritless suits targeting "protected speech", "*not* to abort potentially meritorious claims due to a lack of

3
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

discovery." *Sweetwater Union High School Dist. v. Gilbane Building Co.*, 6 Cal.5th 931, 949, 243 Ca,Rptr.3d 880 (2019).

5. Here, all of the relevant factors weigh in favor of allowing Plaintiff to conduct limited discovery.

**A.** ***Meredith Possesses Necessary Evidence***

6. Meredith possesses specific information that is necessary to establish a prima facie case of stalking and common law commercial misappropriation, including (a) the name or handle of his Twitter account(s), (b) the number of tweets, retweets, replies and likes Meredith actually posted in 2019 and 2020, (c) the identity of the Twitter accounts that Meredith controls or that he used in 2019 and 2020,[1] (d) the identity of those with whom Meredith communicates, (d) the nature of his communications, *i.e.*, private "direct messages", with those third-parties, (e) the content of Meredith's tweets, retweets, replies and likes, and (f) all sources of income for Meredith in 2019 and 2020.

7. Each of these specific subject matters is relevant to show a pattern of alarming and harassing conduct and credible threats under California's stalking statute – § 1708.7 of the California Civil Code – and commercial misappropriation of Plaintiff's name and likeness.

**B.** ***The Discovery Is Not Available Through Alternate Means***

8. The specified discovery is not available through alternate means.

9. Meredith is in possession, custody and control of his tweets, retweets, replies and likes – to the extent he has not deleted or otherwise spoliated the information.

---

[1] For instance, Meredith slipped up and admitted in his reply declaration that he used the same profile picture ("Mt. Rainier") on one of his websites and on an alternate Twitter account.

10.     Although Meredith quickly deleted the threat at issue in this case, that "reply" tweet remains stored and in the possession of Twitter.

11.     In this case, Twitter can be compelled to produce the "contents" of Meredith's stored communications and all "non-content" records relating to Meredith.

12.     Section 2702(a)(1) of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, prohibits Twitter – an entity providing electronic communications service to the public – from divulging the "contents" of a communication while in electronic storage by Twitter. "Content" is information "concerning the substance, purport, or meaning" of a communication. *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F.Supp.2d 114, 127 (E.D. Va. 2011) (quoting 18 U.S.C. § 2510(8)).

13.     Section 2702(a)(3) prohibits Twitter from divulging non-content records or other information pertaining to a subscriber to or customer of Twitter "to any governmental entity". Plaintiff is clearly not a governmental entity. Thus, he is entitled to production of the non-content records and information without question. *See, e.g., 18 U.S.C. § 2702(c)(6) (Twitter may divulge a non-content record or other information pertaining to a subscriber to or customer of Twitter "(6) to any person other than a governmental entity")*; *Xie v. Lai*, 2019 WL 7020340, at * 1, 5 (N.D. Cal. 2019) (granting application for service of subpoena on Google seeking "all non-content email headers, including the 'to' and 'from' lines and the dates, from the Google email account of Terry Lai", where the applicants alleged that "Mr. Lai is guilty of breach of contract, conspiracy, and misappropriation under Canadian law") (citing *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, 2013 WL 256771, at 3 (N.D. Cal. 2013) (allowing discovery of "[d]ocuments sufficient to show the recipient(s), sender, date sent, date received, date read, and date deleted of emails.")); *Loop AI Labs, Inc. v. Gatti*, 2016 WL 787924, at * 3 (N.D. Cal. 2016) ("Because Loop is not a governmental entity, AT&T may disclose to it the

subscriber information requested by the subpoena"); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at * 3 (N.D. Cal. 2013) (holding that party was entitled to non-content "subscriber information", including phone numbers, email addresses, alternate email addresses, IP addresses used to access the account,[2] dates and times of access to the account, and other user identification information); *see id. Malibu Media, LLV v. Doe*, 2015 WL 4040409, at * 2 (D. Md. 2015) (18 U.S.C. § 2702(c)(6) expressly permits disclosure of a subscriber's "name, address, telephone number, and e-mail address" in response to a Rule 45 subpoena); *Systems Products and Solutions, Inc. v. Scramlin*, 2014 WL 3894385, at * 8 (E.D. Mich. 2014) ("Metadata associated with electronic communications … are not considered to be content protected by the SCA … This … includes a subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity").

14.     Twitter has an ulterior motive and will resist every effort to produce *__any__* content communications relating to Meredith and the Doe Defendants.  Twitter is unlawfully using its platform to aid and abet criminal conduct.

15.     Both Twitter and Meredith can be compelled to turn over Meredith's "content" communications. *See, e.g., In re Akhmedova*, 2020 WL 6891828, at * 3 (N.D. Cal. 2020) ("a service provider may disclose the contents of an account holder's electronic communications with the 'lawful consent' of the account holder"); *Lucas v. Jolin*, 2016 WL 2853576, at * 8 (S.D. Ohio 2016) ("In a personal injury case, when a plaintiff seeks damages for claimed injuries, he or she is often directed to execute a release in order for the defendant to examine his or her

---

[2]     This non-content information is important in a case such as this, where Meredith may be accessing anonymous Twitter accounts registered in his wife's name, *i.e.* **@DevinCow**, or where Meredith's accounts are being accessed from multiple different computers around the country as part of a coordinated stalking campaign aided and abetted by Twitter.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

1   medical records related to the injuries, including medical records that may prove pre-existing

2   injuries or otherwise lend credence to the defense.  In a similar way, Net VOIP will be compelled

3   to request directly from Google the release of certain emails within the relevant time period, so

4   that Plaintiff has some opportunity to discover relevant documents that may undermine the

5   grounds on which Net VOIP seeks summary judgment and help prove Plaintiff's claim"); *Fawcett*

6   *v. Altieri*, 38 Misc.3d 1022, 960 N.Y.S.2d 692, 597 (N.Y. Super. 2013) (private social media

7   posts may be compelled from a user in civil discovery "just as material from a personal diary

8   may be discoverable"); *see also Facebook v. Superior Court*, 4 Cal.5th 1245, 1274, 417 P.3d 725

9   (2018) ("we conclude that communications configured by a social media user to be public fall

10  within section 2702(b)(3)'s lawful consent exception,[3] presumptively permitting disclosure by a

11

12  provider").

13          16.     Since the specified discovery is only available from Meredith and Twitter, this

14  factor clearly militates in favor of allowing the limited discovery.

15

16  **C.     *The Parties Are Equally Situated***

17          17.     In *Garment Workers Center*, the Court of Appeals ruled that the trial court erred

18  in allowing a large retailer to take discovery from a nonprofit group advocating for low-income

19  immigrant workers, absent the finding that there was a reasonable probability that the issue of

20  actual malice would be reached, on the defendant's motion to strike.

21

22

23          [3]      Section 2702(b)(3) of the SCA provides that Twitter "may divulge the contents of
    a communication-- … **(3)** with the lawful consent of the originator or an addressee or intended
24  recipient of such communication, or the subscriber in the case of remote computing service".  In
    this case, Meredith chose to make his communications, tweets, retweets, replies and likes, freely
25  accessible to the public.  Therefore, he necessarily consented to their disclosure.  To the extent
    that section 2702(b)(3)'s lawful consent exception applies to Meredith's tweets, retweets, replies
26  and likes, that provision by itself *compels* Twitter to comply with a subpoena for the content
    communications. *Facebook*, 4 Cal.5th at 1282, 417 P.3d at 750.
27

28
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED
DISCOVERY PURSUANT TO C.C.P. § 425(g)**

18.     Here, Plaintiff is the victim of a stalker who relentlessly posts and reposts disparaging and degrading statements on Twitter.  Unlike in *Garment Workers Center*, the parties to this action are on an equal par.

### Conclusion and Request for Relief

In the context of § 425.16(g), "good cause" requires "a showing that the specified discovery is necessary for the plaintiff to oppose the [anti-SLAPP] motion and is tailored to that end. *Britts v. Superior Court*, 145 Cal.App.4th, 1112, 1125, 52 Cal.Rptr.3d 185 (2006).  Plaintiff has shown the additional facts that he expects to uncover, and how those facts are tailored to his opposition to Meredith's anti-SLAPP motion.   Since Meredith contests that Plaintiff has demonstrated a prima facie case of stalking and commercial misappropriation, and has chosen to lodge a series of general denials, the specified discovery is all the more relevant and important. *Compare, e.g., Tutor-Saliba Corp. v. Herrera*, 136 Cal.App.4th 604, 618, 39 Cal.Rptr.3d 21 (2006) ("the discovery sought by Tutor in its moving papers was purportedly needed to establish a prima facie case for defamation.   However, as noted, Herrera neither denied making the statements attributed to him in the complaint, nor any of the other elements necessary to establish a prima facie claim for defamation against him.  Herrera's position was that, even if Tutor could make out a prima facie claim of defamation, he had affirmative defenses to a prima facie case in the form of the absolute privileges he was asserting … In light of this record, the trial court was well within its discretion in denying discovery.  The request sought discovery in order to prove the elements of a prima facie claim for defamation.  As noted, a prima facie case for defamation was conceded by Herrera").

To be clear, Meredith's motion to strike fails the first step, and it should be denied without more.  In the event that the Court proceeds to step two, however, where Plaintiff must show a probability of prevailing on his claims of stalking and common law commercial

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED
DISCOVERY PURSUANT TO C.C.P. § 425(g)**

1   misappropriation, Plaintiff respectfully requests the Court to grant his motion and permit the

2   specified discovery.

3

4      DATED:     December 29, 2020      LAW OFFICE OF DEREK P. WISEHART

5

6                                     Derek P. Wisehart, Attorney for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

I am a citizen of the United States and a resident of the County aforesaid; I am over the

4

age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California 93291.

5

On December 29, 2020, I served the foregoing **PLAINTIFF'S NOTICE OF MOTION**

6

**AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. §425.16(g)** on all interested parties, by placing a true copy thereof enclosed in a

7

sealed envelope and addressed as follows:

| | |
|---|---|
| 8  Brian D. Whelan, Esq. | |
| WHELAN LAW GROUP, A Professional | |
| 9  Corporation | |
| 1827 East Fir Ave., Suite 110 | |
| 10  Fresno, CA 93720 | |
| Email:  brian@whelanlawgroup.com | |
| 11 | |
| 12  Thomas G. Sprankling | |
| Wilmer Cutler Pickering Hale and Dorr LLP | |
| 13  950 Page Mill Road | |
| Palo Alto, CA 94304 | |
| 14  *Via email only:* | |
| thomas.sprankling@wilmerhale.com | |
| 15 | |

16

17    [  ]    **By Personal Service** - I delivered such envelope by hand to the addressee.

18

19    [ X ]    **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California.  I am readily familiar with the business practice at

20

my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed

21

is deposited with the United States Postal Service that same day in the ordinary course of business.

22

23    [  ]    **By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to

24

a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or

25

provided for.

26

1

      **[   ]**     **By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of this declaration to the above interested parties at the listed facsimile transmission telephone number.

2

3

      **[ X ]**     **By Electronic Service:**  I sent the afore-described document(s) from email address derek@dwisehartlaw.com to the person(s) at the email addresses listed above.  I did not receive within a reasonable time after transmission any electronic message or other indication that the transmission was unsuccessful.

4

5

6

  **X**  **(State)**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7

      **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

8

9

      Executed on December 29, at Visalia, California.

10

11

      Derek P. Wisehart

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Thomas G. Sprankling (SBN 294831)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
thomas.sprankling@wilmerhale.com

Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com
***Attorneys for Defendant Twitter, Inc.***

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF TULARE**

| | |
|---|---|
| DEVIN G. NUNES, | **CASE NO. VCU284528** |
| Plaintiff, | |
| v. | **TWITTER'S OPPOSITION TO PLAINTIFF'S MOTION TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425.16(g)** |
| BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 TO 100, Inclusive, | |
| Defendants. | Date: January 22, 2021 |
| | Time: 8:30 am |
| | Dept.: 10 |
| | Hon. Gary L. Paden |
| | |
| | Complaint Filed:   October 5, 2020 |
| | Trial Date:     Not yet set |

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) ........................................................................................3

*Ben Ezra, Weinstein & Co. v. Am. Online Inc.,*
    1998 WL 896459 (D.N.M. July 16, 1998)........................................................3

*Britts v. Superior Court,*
    145 Cal. App. 4th 1112 (2006) .........................................................................2

*Facebook, Inc. v. Superior Court,*
    4 Cal. 5th 1245 (2018) ......................................................................................4

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) (en banc) ..........................................................3

*Glassdoor, Inc. v. Superior Court of Santa Clara Cty.,*
    9 Cal. App. 5th 623 (2017) ...............................................................................5

*Krinsky v. Doe 6,*
    159 Cal. App. 4th 1154 (2008) .........................................................................5

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995).........................................................................................5

*Moore v. Powell,*
    70 Cal. App. 3d 583 (1977) ..............................................................................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) ............................................................................3

*Nunes v. Twitter, Inc.,*
    Case No. C49-1715 (Va. Cir. Ct. Henrico County 2019).................................1

*Pickwick Stages Sys. v. Superior Court in and for Los Angeles County,*
    138 Cal. App. 448 (1934) .................................................................................3

*Rainsy v. Facebook, Inc.,*
    311 F. Supp. 3d 1101 (N.D. Cal. 2018) .........................................................3, 4

*Shenwick v. Twitter, Inc.,*
    2018 WL 833085 (N.D. Cal. Feb. 7, 2018) ......................................................4

*South Sutter, LLC v. LJ Sutter Partners, L.P.*,
  193 Cal. App. 4th 634 (2011) .................................................................................................3

*Thompson v. Thames*,
  57 Cal. App. 4th 1296 (1997) ..............................................................................................3

*Tutor-Saliba Corp. v. Herrera*,
  136 Cal. App. 4th 604 (2006) ..............................................................................................2

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) ................................................................................................3

**Statutes**

18 U.S.C. § 2702(a)(1) ..............................................................................................................4

47 U.S.C. § 230 ..........................................................................................................................3

18 U.S.C. § 2701 ........................................................................................................................3

**Other Authorities**

Letter from Circuit Court of Henrico County Re: Devin Nunes v. Twitter, Inc.,
  Elizabeth L. "Liz" Mair, Mair Strategies LLC,et al., *Nunes v. Twitter, Inc.*, Case
  No. C19-1715 (Va. Cir. Ct. Henrico County June 24, 2020) ..............................................1

Memorandum in Support of Motion to Quash Subpoena By Non-Party Twitter, Inc.,
  *Fitzgibbon v. Radack*, Case No. 3:20-mc-00003, ECF No. 2 (W.D. Va. Feb. 4,
  2020) .....................................................................................................................................1

Order on Twitter's Motion to Dismiss, *Nunes v. Twitter, Inc.*, Case No. C19-1715
  (Va. Cir. Ct. Henrico County July 9, 2020) ........................................................................1

https://help.twitter.com/en/safety-and-security/how-to-make-twitter-private-and-
  public (last accessed Jan. 4, 2021) ......................................................................................4

1    Without waiving its objection to venue of this action in this Court and its pending request

2    that this action be transferred to the Superior Court for San Francisco County,[1] Defendant Twitter,

3    Inc. ("Twitter") hereby opposes Plaintiff Representative Devin G. Nunes's Notice of Motion and

4    Motion for Leave to Conduct Specified Discovery Pursuant to C.C.P. § 425.16(g) ("Motion"), to the

5    extent such Motion seeks to obtain discovery from Twitter.  As explained below, there are a host of

6    reasons why any discovery from Twitter in its capacity as a putative party to this case should not be

7    permitted at this time.

8        This lawsuit marks the second time in two years that Nunes has sued Twitter and one or more

9    Twitter accountholders for messages criticizing or satirically mocking Nunes that were allegedly

10   authored and posted on the Twitter platform (often anonymously) by those accountholders or other

11   third parties.  *See Nunes v. Twitter, Inc.*, Case No. 19-1715 (Va. Cir. Ct. Henrico County 2019).

12   Neither lawsuit has proceeded past the pleadings stage, and the claim against Twitter in the

13   referenced Virginia suit was dismissed with prejudice about a month before the present suit was

14   filed.[2]  Yet, in both lawsuits, Mr. Nunes has sought—and thus far, been denied—discovery

15   concerning the account information and communications of persons who have criticized him on the

16   Twitter platform.  In addition, one of the lawyers representing Mr. Nunes in both the present suit and

17   the referenced Virginia suit also unsuccessfully sought similar information by issuing a third-party

18   party subpoena to Twitter in an unrelated lawsuit in which that lawyer was representing a different

19   plaintiff.[3]

20       Through the present Motion, it appears that Mr. Nunes may be seeking the same sort of

21       _____

22       [1] *See* Twitter, Inc.'s Notice Of Motion And Motion To Transfer Venue To The Superior
     Court For San Francisco County Pursuant To The Terms Of The Parties' Venue-Selection Clause
23   (Dec. 24, 2020).

24       [2] *See* Letter from Circuit Court of Henrico County Re: Devin Nunes v. Twitter, Inc.,
     Elizabeth L. "Liz" Mair, Mair Strategies LLC, et al., *Nunes v. Twitter, Inc.*, Case No. C19-1715 (Va.
25   Cir. Ct. Henrico County June 24, 2020); Order on Twitter's Motion to Dismiss, *Nunes v. Twitter,
     Inc.*, Case No. C19-1715 (Va. Cir. Ct. Henrico County July 9, 2020).   All out-of-state authority is
26   attached to this brief as Exhibit A.

27       [3] *See* Memorandum In Support of Motion to Quash Subpoena By Non-Party Twitter, Inc.,
28   *Fitzgibbon v. Radack,* Case No. 3:20-mc-00003, ECF No. 2 (W.D. Va. Feb. 4, 2020).  All three suits
     specifically have sought information relating to Twitter accountholders allegedly connected to the
29   account @DevinCow—a Twitter account that purports to belong to "Devin Nunes' Cow," and which
30   frequently posts Tweets critical of Plaintiff Nunes.  As Mr. Nunes's declaration in support of his
     opposition to Meredith's special motion to strike makes clear, Mr. Nunes apparently now believes
31   that Mr. Meredith is in some way connected with the creator of the @DevinCow account.  *See*
32   Nunes Decl. at ¶¶ 14-16.

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

discovery from Twitter.  The Motion asks for a court order authorizing him to immediately begin seeking discovery of several broad categories of information relating to Meredith's alleged use of Twitter: (a) the name or handle of Meredith's Twitter account(s); (b) the number of "tweets, retweets, replies and likes" that Meredith posted in 2019 and 2020; (c) the identity of the Twitter accounts that Meredith "controls or that he used in 2019 or 2020;" (d) the "identity of those with whom Meredith communicates;" (e) the "nature of [Meredith's] communications . . . with those third-parties;" and (f) the "content of Meredith's tweets, retweets, replies, and likes." Mot. at ¶ 6.

While it is not completely clear to which party Plaintiff intends to direct such discovery, to the extent Plaintiff seeks leave to obtain discovery directly from Twitter, the Motion should be denied for several independent reasons, including because this Court may not issue orders against Twitter until first ruling on Twitter's pending motion to transfer, because 47 U.S.C. § 230 ("Section 230") immunizes Twitter from the burdens of litigation (including party discovery) with respect to claims arising from third-party speech on the Twitter platform, because another federal statute, the Stored Communications Act ("SCA") prohibits the Court from ordering Twitter to disclose the contents of any communication without the consent of a party to such communication, and because the First Amendment to the U.S. Constitution and the free speech clause of the California Constitution strictly limit the circumstances in which Twitter may be required to disclose information that could unmask the identities of persons who speak anonymously on its platform.

*First*, and separate from arguments that are specific to any discovery being sought from Twitter, Nunes's Motion suffers from a basic procedural defect: it fails to indicate "what specific discovery [is] needed, and why it [is] needed" (let alone the party from whom the discovery is sought). *Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604, 619 (2006).  Nunes argues that his Motion should be granted so that he can seek "evidence" concerning Meredith's Twitter handle, Meredith's Twitter accounts, Meredith's Tweets, Meredith's communications with third parties, and Meredith's sources of income (Mot. at ¶ 6).  But in order to receive court authorization to take discovery under CCP § 425.16(g), a party must "specif[y] discovery [that] is necessary for the plaintiff to oppose the [Anti-SLAPP] motion and [be] tailored to that end." *Britts v. Superior Court*, 145 Cal. App. 4th 1112, 1125 (2006).  Nunes's Motion fails both prongs of this test.  The Motion does not explain how any of the general categories of discovery that Nunes seeks would assist him in opposing Defendant Meredith's Anti-SLAPP motion.  Nor does the Motion appear to be "tailored" to discovery that would actually address the issues raised in Meredith's Anti-SLAPP motion. *See Britts*, 145 Cal. App. 4th at 1125.  It seeks broad categories of discovery—e.g., "the identity of those

1   with whom Meredith communicates" and "all sources of income for Meredith in 2019 and 2020"

2   (Mot. ¶ 6)—that have no apparent relationship to any of the threshold legal issues that Meredith has

3   raised.

4         *Second*, because Twitter has filed a motion to transfer venue in this case, and that motion

5   remains pending, any order "compel[ing]" (Mot. at ¶ 11) Twitter to provide discovery would be

6   procedurally improper.  A transfer motion "operates as a supersedeas or stay of proceedings, and

7   must be disposed of before any other steps can be taken." *Pickwick Stages Sys. v. Superior Court in*

8   *and for Los Angeles County*, 138 Cal. App. 448, 449 (1934); *accord South Sutter, LLC v. LJ Sutter*

9   *Partners, L.P.*, 193 Cal. App. 4th 634, 655 (2011).  The filing of a transfer motion "'suspends the

10   power of the trial court to act upon any other question until the motion has been determined.'"

11   *Moore v. Powell*, 70 Cal. App. 3d 583, 587 (1977); *see also Thompson v. Thames*, 57 Cal. App. 4th

12   1296, 1303-1304 (1997) ("Generally . . . the court cannot rule on other substantive issues while the

13   motion for change of venue is pending.").

14         *Third*, Section 230 of the federal Communications Decency Act, 47 U.S.C. § 230, prohibits

15   any court order allowing Mr. Nunes to seek discovery from Twitter, at least at this early stage of the

16   case.  Section 230 immunizes providers of online services, such as Twitter, from lawsuits, like this

17   one, that seek to hold them liable for harms allegedly caused by content that appeared on the

18   provider's platform but that was created by third parties.  *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 53

19   (2006) (Section 230 "broadly shield[s] all providers from liability for 'publishing' information

20   received from third parties.").  Section 230 "protect[s] websites not merely from ultimate liability,

21   but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando*

22   *Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc).  For that reason,

23   courts routinely bar all discovery against online services providers until after the provider has had a

24   chance to assert its Section 230 immunity and the Court has had a chance to rule on the immunity.

25   *See, e.g., Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 425-426 (1st Cir. 2007)

26   (affirming lower court's decision not to allow preliminary discovery); *Ben Ezra, Weinstein & Co. v.*

27   *Am. Online Inc.*, 1998 WL 896459, at *2 (D.N.M. July 16, 1998) (granting motion to stay discovery

28   based on congressional intent to "protect[] from the burdens of litigation."); *see also Nemet*

29   *Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (rejecting plaintiff's

30   discovery request and noting that courts "aim to resolve the question of § 230 immunity at the

31   earliest possible stage").

32         *Fourth*, contrary to what Nunes argues (at Mot. ¶ 15), the SCA, 18 U.S.C. § 2701, et seq.

1   prohibits the Court from ordering Twitter to disclose the contents of any communication of
2   Meredith's or any other Twitter accountholder's communications via the Twitter platform unless at
3   least one party to the communication has provided consent—and here Nunes has not established that
4   any such consent presently exists.   As Nunes acknowledges, "Section 2702(a)(1) of the [SCA]
5   prohibits Twitter—an entity providing electronic communications service to the public—from
6   divulging the 'contents' of a communication while in electronic storage by Twitter." Mot. ¶ 12; *see*
7   *also Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018) (holding that the
8   SCA prohibited disclosure of direct Twitter messages).[4]   Nunes attempts to circumvent that
9   restriction by arguing that Meredith gave "lawful consent" to disclose such communications by
10  making his "tweets, retweets, replies and likes, freely accessible to the public." Mot. at n. 3.  For that
11  proposition, Nunes relies on *Facebook, Inc. v. Superior Court*, 4 Cal. 5th 1245 (2018).  But that case
12  held only that the SCA's "lawful consent" requirement was met for purposes of "communications
13  that were configured by the registered user to be public, and that ***remained so configured at the time***
14  ***the subpoenas were issued***." *Facebook*, 4 Cal. 5th at 1250 (emphasis added).  As to other, non-
15  public communications, the California Supreme Court affirmed the lower court's holding that such
16  communications could *not* be disclosed under the SCA.  *Id.*

17       Here, Nunes is obviously not seeking from Twitter merely the disclosure of
18  "communications that were configured by the registered user to be public, and that [have] remained
19  so configured."  The one rationale that Nunes offers for seeking discovery from Twitter (as opposed
20  to just from Meredith) is that some of Meredith's Tweets may have been "deleted," Mot. ¶ 10—in
21  which case any such Tweets that might still remain in Twitter's possession would, by definition, not
22  still be "configured" to be public "at the time the subpoenas" issue.  *Facebook*, 4 Cal. 5th at 1250.
23  And more generally, if Nunes were seeking only public communications, then there would be no
24  need for him to seek discovery at all under CCP § 425.16(g).  Nor is it true that all "tweets, retweets,
25  replies, and likes," are "freely accessible to the public." Mot. at n.3.  Any person may set his or her
26  Twitter account so as to limit the public availability of the information.[5]   The SCA expressly
27  prohibits Twitter from disclosing any such non-public communications, absent consent or some

---

28       [4] Such "content" includes, but is not limited to, the text or other substance of messages sent
29  or received via Twitter, "likes" communicated via Twitter, and the identities of Twitter
    accountholders who issue such "likes." *See Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114-
30  115 (N.D. Cal. 2018).

31       [5] *See* "How to protect and unprotect your Tweets," https://help.twitter.com/en/safety-and-
32  security/how-to-make-twitter-private-and-public (last accessed Jan. 4, 2021).

4

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

1   other applicable exception.  *See* 18 U.S.C. § 2702(a)(1) ("[A] person or entity providing an
2   electronic communication service to the public shall not knowingly divulge to any person or entity
3   the contents of a communication while in electronic storage by that service.").

4       *Finally*, several categories of discovery sought by Nunes seek to unmask individuals who
5   have chosen to speak anonymously on the Twitter platform, including the requests for "the name or
6   handle of [Meredith's] Twitter account(s);" the "identity of the Twitter accounts that Meredith
7   controls or that he used in 2019 and 2020;" and "the identity of those with whom Meredith
8   communicates."  *See* Mot. ¶ 6.  Indeed, Nunes admits in his own declaration that he served these
9   requests in order to unmask certain "anonymous Twitter accounts."  Nunes Decl. at ¶ 14.  Any court
10  order requiring Twitter to produce such information would implicate serious concerns under the First
11  Amendment and the free speech clauses of the California Constitution.  It is well settled that the First
12  Amendment protects the rights of persons to engage in anonymous speech.  *See McIntyre v. Ohio*
13  *Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous, like
14  other decisions concerning omissions or additions to the content of a publication, is an aspect of the
15  freedom of speech protected by the First Amendment.").  As a result, discovery may not be used to
16  try to unmask the identity of persons who communicate anonymously on the Internet, except under
17  very limited circumstances that are not present here.  *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154,
18  1173-1174 (2008) (requiring plaintiff to make a reasonable effort to provide notice to the anonymous
19  speaker, and make a prima facie showing of the elements of libel, before allowing discovery into the
20  speaker's identity); *accord Glassdoor, Inc. v. Superior Court of Santa Clara Cty.*, 9 Cal. App. 5th
21  623, 634 (2017).

22      In light of the foregoing, Twitter respectfully requests that the Court deny Plaintiff's Motion
23  insofar as it seeks a Court order under CCP § 425.16(g) permitting Plaintiff to seek discovery from
24  Twitter.

25                                      Respectfully submitted,
26
27  Dated:  January 8, 2021               WILMER CUTLER PICKERING HALE
                                          AND DORR LLP
28
                                          /s/   Thomas G. Sprankling
29                                        Thomas G. Sprankling (SBN 294831)
                                          WILMER CUTLER PICKERING
30                                           HALE AND DORR LLP
                                          2600 El Camino Real, Suite 400
31                                        Palo Alto, CA  94306
32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
thomas.sprankling@wilmerhale.com

Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

***Attorneys for Defendant Twitter, Inc.***

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

**CALIFORNIA STATE COURT PROOF OF SERVICE**
*Nunes v. Meredith, et al.*
Tulare County Superior Court Case No. VCU284528

At the time of service, I was over the age of 18 and not a party to this action. I am employed in the County of Santa Clara, State of California. My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and my electronic service address is Thomas.Sprankling@wilmerhale.com.

On January 8, 2021, I caused the foregoing document described as:

**TWITTER'S OPPOSITION TO PLAINTIFF'S MOTION TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425.16(g)**

to be electronically served on the interested parties listed below, pursuant to California Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's express written consent to electronic service via emails to myself and my colleagues dated December 23, 2020.

Derek P. Wisehart (SBN: 178100)
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Telephone: (559) 636-9473
Facsimile: (559) 636-9476
derek@dwisehartlaw.com

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
stevenbiss@earthlink.net
*Attorneys for Plaintiff Devin G. Nunes*

Brian D. Whelan (SBN 256534)
Whelan Law Group
1827 East Fir Avenue, Suite 110
Fresno, CA 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
brian@whelanlawgroup.com
*Attorney for Defendant Benjamin Meredith*

1    I declare under penalty of perjury under the laws of the State of California that the foregoing
2    is true and correct.

3

4    Executed on January 8, 2021 at Redwood City, California.

5

6

7    _____

8    Thomas G. Sprankling

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

1  **Brian D. Whelan, Esq.  (SBN 256534)**
   **WHELAN LAW GROUP, A Professional Corporation**
2  **1827 East Fir Avenue, Suite 110**
   **Fresno, California   93720**
3  **Telephone: (559) 437-1079**
   **Facsimile:  (559) 437-1720**
4  **E-mail: brian@whelanlawgroup.com**

5

6  Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          COUNTY OF TULARE

9

10  DEVIN G. NUNES,                     )  Case No. VCU284528
                                        )
11          Plaintiff,                  )  **DEFENDANT'S MEMORANDUM OF**
                                        )  **POINTS AND AUTHORITIES IN**
12          v.                          )  **OPPOSITION TO PLAINTIFF'S MOTION**
                                        )  **FOR LEAVE TO CONDUCT DISCOVERY**
13  BENJAMIN PAUL MEREDITH,             )
    TWITTER, INC., and DOES 1 to 100,   )
14  Inclusive,                          )
                                        )  Date:   December 22, 2020
15          Defendants.                 )  Time:  8:30 a.m.
                                        )  Dept.:  7
16                                      )
                                        )  Complaint Filed:   October 5, 2020
17  _____ )  Trial Date:        Not Set

18

19          Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") hereby submits this

20  opposition to Plaintiff DEVIN NUNES ("Plaintiff" or "NUNES" ) request to conduct discovery.

21                                       **I.**
                                   **INTRODUCTION.**
22
            In his lawsuit, Nunes claims that Meredith used multiple Twitter accounts to harass and
23
    stalk Nunes across thousands of tweets. With his motion to conduct discovery, Nunes
24
    acknowledges he can locate no single statement or Tweet supporting his claims against Meredith.
25
    Indeed, Nunes does not even know Defendant's Twitter name or handle. The California
26
    legislature enacted C.C.P. Section 425.16 to quickly shut down cases like this one, and reject
27
    unlawful fishing expeditions.
28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                        1

                    MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's lawsuit is transparently motivated by an unlawful animus which is underscored by its target of phantom speech.  Defendant has already stated, under oath, that he did not engage in any of the unlawful activities alleged in Plaintiff's Complaint.  And much worse, Plaintiff, the Ranking Member of the United States House Permanent Select Committee on Intelligence, knows this.

Plaintiff's motion fails because he is required to -- but cannot -- establish good cause for relief to conduct discovery.  His motion is based entirely on misguided speculation.  For this reason alone his motion fails (see *Schroeder v. Irvine City Council*, (2002) 97 Cal.App.4th 174).  Plaintiff's motion also fails because it is a transparent attempt to test Defendant's declaration – this is specifically prohibited (see *1-800 Contacts, Inc. v. Steinberg*, (2003) 107 Cal.App.4th 568).

Next, Plaintiff's motion also fails because he cannot show that he can overcome the First Amendment protection for anonymous speech since he fails to (1) identify the alleged account(s) and (2) cannot provide any of the specific statements that are at issue in this case (see *Glassdoor, Inc. v. Superior Court*, (2017) 9 Cal. App. 5th 623).  Since the discovery he seeks is improper and barred under these circumstances, Plaintiff's motion is futile and should be denied on this separate ground.

Last, Nunes filed this motion after the initial anti-SLAPP hearing date had come and gone and then served this motion late. Thus, the motion is procedurally defective and untimely. (The motion was served by e-mail and mail on December 29, 2020, or exactly 16 court days before the hearing. Because both mail service and e-mail service on December 29, 2020 were untimely, the motion itself is defective. See CCP Sections 1005 and 1113, and COVID Rules, Rule 12.)

## II.
## ARGUMENT.

**A.    THE GOAL OF THE ANTI-SLAPP STATUTE IS TO PREVENT PLAINTIFFS FROM ENGAGING IN FISHING EXPEDITIONS, SUCH AS THIS ONE.**

The California Supreme Court explained the reason behind the Legislature's enactment of Code of Civil Procedure section 425.16, the "anti-SLAPP" statute:

"The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

constitutional rights of freedom of speech and petition for the redress of grievances.' § 425.16(a).

**Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources,' the Legislature sought '"to prevent SLAPPs by ending them early and without great cost to the SLAPP target."'** Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.

**In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit.** *See Equilon Enterprises*, at p. 65 (noting that the 'short time frame for anti-SLAPP filings and hearings' *and the 'stay of discovery pending resolution of the motion evidences the Legislature's intent to minimize the litigation costs of SLAPP targets.*)" *Varian Med. Systems, Inc. v. Delfino*, (2005) 35 Cal.4th 180, 192 (emphasis added).

"[T]he [anti-SLAPP] statute is intended to 'provid[e] a fast and inexpensive unmasking and dismissal of SLAPP's.' [Citation.] Obviously, the purpose of the statute would be frustrated if the plaintiff could drag on proceedings for many months by claiming a need to conduct additional investigation. The legislative intent is best served by an interpretation which would require a plaintiff to marshal facts sufficient to show the viability of the action *before* filing a SLAPP suit." *Ludwig v. Superior Court*, (1995) 37 Cal. App. 4th 8, 16.

The anti-SLAPP statute requires an expedited hearing and a stay on discovery in order to serve "the legislative policy of early evaluation and expeditious resolution of claims arising from protected activity." *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294. This statutory stay on discovery was enacted to protect defendants from the burden and expense of discovery until the anti-SLAPP motion has been decided. CCP section 425.16(g). The court can allow limited discovery to address the motion only where the plaintiff has established good cause. *Varian, supra*, 35 Cal.4th at 192. "Section 425.16 was intended to . . . [provide] a fast and inexpensive unmasking and dismissal of SLAPP's . . . Anti-SLAPP legislation, therefore, must be fast, inexpensive and constitutional or it is of no benefit to SLAPP victims, the court or the public." *Wilcox v. Superior Court*, (1994) 27 Cal. App. 4th 809, 823 (emphasis added).

Clearly, the very promise of the anti-SLAPP statute was to limit the plaintiff's ability to "drain" the defendants' resources without good cause.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

MEMORANDUM OF POINTS AND AUTHORITIES

Here, the Plaintiff comes to this Court empty handed, admitting in his moving papers that he does not even know the names of any of the Twitter accounts that he accuses Defendant of operating.  This is very odd.  How, then, can Plaintiff attribute to Defendant the wrongful conduct when he does not even have a name of an account to point to?  Moreover, Plaintiff does not submit any declarations to support his motion.  Under these circumstances, one can only conclude that Plaintiff does not know what he's looking for and just as Defendant maintains there never was any probable cause for the filing of this lawsuit.

**B.    THE PLAINTIFF HAS NOT ESTABLISHED "GOOD CAUSE" FOR OBTAINING LIMITED DISCOVERY.**

**1. Speculation is Insufficient to Justify "Good Cause" for Discovery.**

"The anti-SLAPP legislation in section 425.16 was crafted to provide an efficient means of dispatching a plaintiff's meritless claims at the inception of the lawsuit to promote 'continued participation in matters of public significance.' Accordingly, the filing of a section 425.16 motion to strike stays discovery until the motion is ruled on, **although the court has discretion to permit specified discovery for good cause**." *Schroeder v. Irvine City Council*, (2002) 97 Cal.App.4th 174, 183 (emphasis added).[1]

In *Schroeder*, the court of appeal found that the trial court "did not abuse its discretion in concluding [the Plaintiff] had not shown good cause for a continuance to conduct" discovery, where "[**the Plaintiff] proffered no evidence other than his own speculation**" to support his request for discovery. *Id*. at 192; *see also Paterno v. Superior Court*, (2008) 163 Cal. App. 4th 1342 (Plaintiff in defamation suit must first establish a showing of falsity *before* engaging in discovery). In *Schroeder*, the plaintiff "sought the script for the telephone calls made as part of the Vote 2000 program. He argued the persons placing those telephone calls must have been given a script to follow when speaking to the voter and speculated the script might have included a plea to vote in favor of Measure F." *Id*.  Here, this Court is faced with similar circumstances. The Plaintiff does not know the names of any of the alleged Twitter accounts he claims are

---

[1] "Moreover. . . the reviewing court will not disturb the trial court's decision unless it has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." *Tutor- Saliba Corp. v. Herrera*, (2006) 136 Cal. App. 4th 604, 617.

4

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

associated with Defendant and/or Defendant's alleged accomplices, yet he insists that Defendant's Twitter account must contain illegal statements. This is highlighted by the fact that he does not even supply any declaration to support this motion. Like the plaintiff in *Schroeder*, Plaintiff has nothing other than his own speculation, and such is insufficient to constitute "good cause."

**2. Discovery May Not be Obtained Merely to "Test" the Opponent's Declarations.**

All of the discovery items specified in Plaintiff's motion (i.e. the name of Defendant's Twitter account, the number of Tweets, his Tweets, etc.) are targeted at testing Defendant's declaration; Defendant , under oath, has already declared, among other things, that he has only one Twitter account, identified the average number of his Tweets, and stated that he never threatened Plaintiff. **"Discovery may not be obtained merely to 'test' the opponent's declarations."** *1-800 Contacts, Inc. v. Steinberg*, (2003) 107 Cal.App.4th 568, 593. All of the items identified in Plaintiff's motion are sought simply to test Defendant's declaration. This is not allowed. See also *Sipple v. Foundation for Nat. Progress*, (1999) 71 Cal.App.4th 226, the plaintiff demanded - as Plaintiff now demands - that "he should be permitted to test respondents' self-serving declarations and elicit circumstantial evidence through discovery before being subjected to dismissal for failure to establish a prima facie case." *Sipple* 71 Cal.App.4th at 247. The Court concluded, "that to allow appellant such extensive discovery would subvert the intent of the anti-SLAPP legislation." *Id.*

**C.    IN ADDITION TO FAILING TO SHOW GOOD CAUSE EXISTS, PLAINTIFF FURTHER FAILS TO SATISFY THE REQUISITE LEGAL CRITERIA TO  OVERCOME THE OBJECTIONS TO THE SPECIFIED DISCOVERY.**

Individuals have a right to speak anonymously under the First Amendment.  (See *Krinsky v. Doe 6*, (2008) 159 Cal. App. 4th 1154, 1163: "[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."  Moreover, Twitter has standing to protect the constitutional rights of its users. On this point, the court in *Glassdoor, Inc. v. Superior Court*, (2017) 9 Cal. App. 5th 623 states:

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

MEMORANDUM OF POINTS AND AUTHORITIES

"We do not believe a plaintiff in MZ's position is entitled to compel the disclosure of an anonymous poster's identity without first clearly identifying, on the record, the specific statements claimed to have given rise to liability. It is not sufficient—if in fact it is true—that MZ identified the challenged statements in communications with opposing counsel. It is the court, not counsel, that must determine whether a prima facie showing of actionable statements has been made. It is impossible to perform such a task without knowing the exact statements on which liability is predicated." *Id.* at 636.

Here, Plaintiff fails to identify the names of any of the accounts that he claims are owned by Defendant.  Nor does he provide the language of any of the statements that he claims were allegedly made by Defendant.  Under these circumstances, where he cannot name the alleged accounts nor identify any of the specific statements, Plaintiff cannot overcome the First Amendment objection to the discovery he seeks. <u>And to be certain, Defendant stands on his First Amendment rights</u>.  Defendant's right to anonymous speech cannot be overcome with vague and baseless allegations.

And, this is not some effort by Defendant to "hide the ball;" aside from protecting his constitutional rights, Defendant has a real concern that once the identity of his Twitter account is exposed, fake Tweets wrongfully attributed to his account may begin to surface in this lawsuit or people may also threaten to do harm to Defendant – which is of real concern given the political climate and the recent events in our Nation's Capitol Building.  (Threats and harassment has already occurred with another Twitter user tangentially involved in this case: see the declaration of Yasmin Mendoza filed in support of Defendant's anti-SLAPP motion.)  Given that Plaintiff cannot identify any of the exact statements allegedly made, nor any of the  names of the Twitter accounts that he claims are associated with Defendant, he cannot overcome the objections to this discovery.  Plaintiff's motion should be denied on this separate ground.

### III.
### CONCLUSION.

For the reasons discussed at length above, Defendant respectfully requests that this Court deny Plaintiff's request for limited discovery.

Dated: January 7, 2021

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

6

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**PROOF OF SERVICE**

       I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On January 7, 2021, I caused to be served the within document(s): **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY**

( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)   **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

Thomas G. Sprankling (SBN 294831)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: (650) 858-6000
Fax: (650) 858-6100
Email:
thomas.sprankling@wilmerhale.com

Counsel for Defendant Twitter, Inc.

Patrick J. Carome (pro hac vice pending)
Ari Holtzblatt (pro hac vice pending)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
Email: patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

Counsel for Defendant Twitter, Inc.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

7

MEMORANDUM OF POINTS AND AUTHORITIES

1         I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3         Executed on January 7, 2021, at Fresno, California.

4                    STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

8

MEMORANDUM OF POINTS AND AUTHORITIES

EXHIBIT "D"

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 178100 | FOR COURT USE ONLY |
|---|---|---|

NAME: Derek P. Wisehart, Esq.
FIRM NAME: Law Offices of Derek P. Wisehart
STREET ADDRESS: 2330 W. Main Street
CITY: Visalia    STATE: CA    ZIP CODE: 93291
TELEPHONE NO.: (559) 636-9473    FAX NO.: (559) 636-9476
E-MAIL ADDRESS:
ATTORNEY FOR (Name): Plaintiff, DEVIN G. NUNES

SUPERIOR COURT OF CALIFORNIA, COUNTY OF TULARE
STREET ADDRESS: 221 S. Mooney Blvd.
MAILING ADDRESS: 221 S. Mooney Blvd.
CITY AND ZIP CODE: Visalia, CA 93291
BRANCH NAME:

Plaintiff/Petitioner: DEVIN G. NUNES
Defendant/Respondent: BENJAMIN PAUL MEREDITH, ET AL.

| REQUEST FOR DISMISSAL | CASE NUMBER: VCU284528 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice   (2) ☒ Without prejudice
   b. (1) ☐ Complaint   (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name):                on (date):
      (4) ☐ Cross-complaint filed by (name):                on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* Without prejudice as to Defendant, TWITTER, INC. only, and as to Counts 2 and 4 only. Each party to bear their own fees and costs. Plaintiff preserves all claims and issues as to Defendant, BENJAMIN PAUL MEREDITH.

2. (Complete in all cases except family law cases.)
   The court ☐ did ☐ did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: January 14, 2021

Derek P. Wisehart, Esq.
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

                                                    (SIGNATURE)
*If dismissal requested is of specified parties only of specified causes of action only,   Attorney or party without attorney for:
or of specified cross-complaints only, so state and identify the parties, causes of         ☒ Plaintiff/Petitioner   ☐ Defendant/Respondent
action, or cross-complaints to be dismissed.                                                ☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

                                                    (SIGNATURE)
** If a cross-complaint – or Response (Family Law) seeking affirmative   Attorney or party without attorney for:
relief – is on file, the attorney for cross-complainant (respondent) must sign   ☐ Plaintiff/Petitioner   ☐ Defendant/Respondent
this consent if required by Code of Civil Procedure section 581 (i) or (j).      ☐ Cross Complainant

(To be completed by clerk)
4. ☐ Dismissal entered as requested on (date):
5. ☐ Dismissal entered on (date):                as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
         ☐ a copy to be conformed   ☐ means to return conformed copy

Date:                                 Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CIV-110

| | |
|---|---|
| Plaintiff/Petitioner: DEVIN G. NUNES<br>Defendant/Respondent: BENJAMIN PAUL MEREDITH, ET AL. | CASE NUMBER:<br>VCU284528 |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name)*:

2. The person named in item 1 is *(check one below)*:
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one)*:      Yes      No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

▶

_____        _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California  93291.

4

5

On January __14__, 2021, I served the foregoing **REQUEST FOR DISMISSAL** on all interested parties, as follows:

6

7

| | |
|---|---|
| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA  93720<br>Email: brian@whelanlawgroup.com<br>***Attorneys for Defendant, BENJAMIN PAUL MEREDITH*** | Thomas G. Sprankling, Esq.<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA  94306<br>Email:<br>Thomas.sprankling@wilmerhale.com<br>***Attorneys for Defendant, TWITTER, INC.*** |
| Patrick J. Carome, Esq. (*pro hac vice* pending)<br>Ari Holtzblatt, Esq. (*pro hac vice* pending)<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Ave. NW<br>Washington, DC  20006<br>Email:  Patrick.carome@wilmerhale.com<br>Ari.holtzblatt@wilmerhale.com<br>***Attorneys for Defendant, TWITTER, INC.*** | |

8

9

10

11

12

13

14

15

16

17

[ ]      **By Personal Service** - I delivered such envelope by hand to the addressee.

18

[ ]      **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

19

20

21

22

[ ]      **By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or provided for.

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**[ ]**      **By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of this declaration to the above interested parties at the listed facsimile transmission telephone number.

**[ X ]**      **By Electronic Service:**  I sent the afore-described document(s) from email address dnorys@dwisehartlaw.com to the person(s) at the email addresses listed above.  I did not receive within a reasonable time after transmission any electronic message or other indication that the transmission was unsuccessful.

  **X**   **(State)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____ **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on January   14  , 2021, at Visalia, California.

Deborah M. Norys

Deborah M. Norys

# EXHIBIT "E"

1   Thomas G. Sprankling (SBN: 294831)
    Wilmer Cutler Pickering Hale and Dorr LLP
2   2600 El Camino Real, Suite 400
    Palo Alto, CA 94306
3   Telephone: (650) 858-6000
    Facsimile: (650) 858-6100
4   thomas.sprankling@wilmerhale.com

5
    Patrick J. Carome (*pro hac vice* pending)
6   Ari Holtzblatt (*pro hac vice* pending)
    Wilmer Cutler Pickering Hale and Dorr LLP
7   1875 Pennsylvania Avenue, NW
    Washington, DC 20006
8   Telephone: (202) 663-6000
    Facsimile:  (202) 663-6363
9   patrick.carome@wilmerhale.com
    ari.holtzblatt@wilmerhale.com
10
11  *Attorneys for Defendant Twitter, Inc.*

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                      **FOR THE COUNTY OF TULARE**

15

16   DEVIN G. NUNES,                            **CASE NO. VCU284528**

17                      Plaintiff,              Hon. Judge Gary L. Paden

18          vs.

19   BENJAMIN PAUL MEREDITH, TWITTER, INC.,     **TWITTER, INC.'S NOTICE OF**
     and DOES 1 TO 100, Inclusive,             **MOTION AND  MOTION TO**
20                                             **TRANSFER VENUE TO THE**
                        Defendants.             **SUPERIOR COURT FOR SAN**
21                                             **FRANCISCO COUNTY PURSUANT**
                                                **TO THE TERMS OF THE PARTIES'**
22                                             **VENUE-SELECTION CLAUSE**

23
                                                DATE: January 22, 2021
24                                              TIME: 8:30 AM
                                                DEPT: 10
25

26                                              Complaint Filed: October 5, 2020

27

28

1

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO TRANSFER VENUE ........................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

ARGUMENT ...........................................................................................................................2

I.     THE PARTIES' VENUE-SELECTION CLAUSE GOVERNS NUNES'S CLAIMS
       AGAINST TWITTER ................................................................................................2

II.    THE COURT SHOULD ENFORCE THE PARTIES' VENUE-SELECTION
       CLAUSE AND TRANSFER THIS ACTION TO SAN FRANCISCO COUNTY .....4

CONCLUSION .......................................................................................................................5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER
VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY

2

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Battaglia Enterprises, Inc. v. Superior Court of San Diego*
  (2013) 215 Cal.App.4th 309 ..........................................................................................2, 4

*Brown v. Superior Court of Alameda*
  (1984) 37 Cal.3d 477 ...................................................................................................2, 5

*Goodwin v. Bruggeman-Hatch*
  (D. Colo. July 7, 2014), No. 13-cv-02973-REB-MEH, 2014 WL 3057198......................4

*Mechanix Wear, Inc. v. Performance Fabrics, Inc.*
  (C.D. Cal. Jan. 31, 2017), No. 2:16-cv-09152-ODW (SS), 2017 WL 417193...................4

*Rudgayzer v. Google, Inc.*
  (E.D.N.Y. 2013) 986 F.Supp.2d 151 ...............................................................................4

*Shaw v. Delta Air Lines, Inc.*
  (1983) 463 U.S. 85...........................................................................................................3

**STATUTES**

Cal. Code of Civ. Proc. § 395.5 ...............................................................................1, 2, 4, 5

Cal. Code of Civ. Proc. § 396b ...........................................................................................1

Cal. Code of Civ. Proc. § 397 .............................................................................................1

Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. .............................2, 3

**OTHER AUTHORITIES**

Black's Law Dictionary (5th ed. 1979)...............................................................................3

1

## NOTICE OF MOTION AND MOTION TO TRANSFER VENUE

2      **PLEASE TAKE NOTICE** that on January 22, 2021 at 8:30 AM, in Department 10 of the

3 Tulare County Superior Court, located at 221 S. Mooney Blvd., Visalia, CA 93291, the Honorable

4 Judge Gary L. Paden presiding, Defendant Twitter, Inc. ("Twitter") will, and hereby does, move for

5 an Order transferring this action to the Superior Court for the County of San Francisco.  This motion

6 is made under Sections 395.5, 396b, and 397 of the Code of Civil Procedure, as well as the venue-

7 selection clause in the agreement under which the Plaintiff has sued and which Plaintiff has

8 incorporated by reference into the Complaint.

9      This motion is based upon this notice of motion and motion, the Plaintiff's complaint, the

10 accompanying Memorandum of Points and Authorities, and the attached Declaration of Thomas G.

11 Sprankling and supporting exhibit.

12      In advance of filing this motion, counsel for Twitter met and conferred with Plaintiff's

13 counsel, but could not come to an agreement on the relief sought herein.  Counsel for Twitter also met

14 and conferred with counsel for Defendant Benjamin Meredith, who advised that Mr. Meredith neither

15 supports nor opposes this motion.

16

## MEMORANDUM OF POINTS AND AUTHORITIES

17      This case should be transferred to the Superior Court for the County of San Francisco, pursuant

18 to the venue-selection clause in Twitter's User Agreement.  As Plaintiff Representative Devin G.

19 Nunes acknowledges throughout the Complaint, prior to using the Twitter platform, all Twitter

20 accountholders must agree to abide by the Twitter User Agreement, which comprises the Twitter

21 Terms of Service ("Terms"), Twitter Rules, and Twitter Privacy Policy, and which is incorporated by

22 reference into the Complaint.  *See* Compl. ¶¶ 12, 13, 14.  Both Nunes and co-Defendant Benjamin

23 Meredith are Twitter accountholders who have agreed to abide by the User Agreement.  *See* Compl.

24 p. 12 n. 8 (referencing Nunes's Twitter account); Compl. ¶ 1 (referencing Meredith's).  The Terms

25 contain a venue-selection clause that states:  "All disputes related to these Terms or the Services will

26 be brought solely in the federal or state courts located in San Francisco County, California, United

27 States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum."[1]

28

---

[1] *See* https://twitter.com/en/tos (cited at Compl. ¶ 13) at p. 9.

1    The two claims that Nunes asserts against Twitter fall within the plain terms of this venue-

2    selection clause.  Count 2 alleges that Twitter violated the Terms by allegedly allowing Meredith to

3    publish threatening Tweets, thereby aiding and abetting Meredith's alleged stalking of Nunes.

4    Compl. ¶ 28.  And Count 4 alleges that Twitter provided allegedly false assurances in its Terms

5    about the types of content that Twitter would allow on the Twitter platform, while allegedly

6    "censor[ing]" what Nunes and others posted on the platform, thereby violating California's Unfair

7    Competition Law ("UCL").  Compl. ¶¶ 28-30, 47.  Nunes's claims against Twitter thus relate both

8    to the "Terms" and to the "Services" that Twitter provided to Nunes and to Meredith.

9    Where, as here, the parties have entered into a contract with a venue-selection clause that

10   provides for litigation in a statutorily permissible venue, California courts will enforce that clause.

11   *Battaglia Enters., Inc. v. Superior Court of San Diego*, (2013) 215 Cal. App. 4th 309, 318.  In

12   addition, if a "defendant is entitled to a change of venue on any one cause of action," then "a motion

13   for change of venue must be granted on the entire complaint."  *Brown v. Superior Court of Alameda*,

14   (1984) 37 Cal. 3d 477, 488.  The venue designated in the Terms (San Francisco County) is plainly

15   proper because it is the location of Twitter's principal place of business. *See* Cal. Code of Civ. Proc.

16   § 395.5; Sprankling Decl. at ¶ 4.  Accordingly, the Court should transfer the entire case to the

17   Superior Court for the County of San Francisco.

18                                                **ARGUMENT**

19   I.    **THE PARTIES' VENUE-SELECTION CLAUSE GOVERNS NUNES'S CLAIMS
           AGAINST TWITTER**

20

21   Nunes's claims against Twitter in this action fall within the scope of the Terms' venue-

22   selection clause because all of the claims "relate[] to" the Twitter "Terms," and to the use of

23   Twitter's "Services."  This is true for three reasons.

24   *First*, Nunes's theory of liability against Twitter is based on his allegations that Twitter

25   violated the Terms.  In Count 2, Nunes asserts claims against Twitter for allegedly aiding and

26   abetting Meredith's "stalking" of Nunes based on allegations that: (1) Twitter "intentionally

27   abandon[ed] and refus[ed] to enforce its Terms of Service and Rules against Meredith and others

28

1   who harass Plaintiff with the express purpose to facilitate stalking"; (2) Twitter "completely

2   ignore[ed] lawful complaints about Meredith's repeated violations of the Twitter Terms of Service

3   and Rules"; and (3) Twitter "misrepresent[ed] that Twitter is accountable for its actions and for the

4   enforcement of its Terms of Service, Rules, and policies." Compl. ¶ 29. Nunes further asserts that

5   Twitter "is guilty of oppression, fraud and malice," because "Twitter's Terms of Service and Rules

6   intentionally misrepresent that Twitter forbids stalking, harassment and abuse." Compl. ¶ 30.

7   Similarly, in Count 4, where Nunes asserts claims against Twitter for alleged violation of the UCL,

8   he alleges that Twitter "made multiple untrue and deceptive statements to the public and in its Terms

9   of Service and Rules, and misrepresented that it uniformly enforces its Terms of Service and Rules."

10   Compl. ¶ 47. Plainly, these allegations "relate[] to" the Terms, as they directly reference those

11   terms and allege that they were violated. *See Shaw v. Delta Air Lines, Inc.*, (1983) 463 U.S. 85, 96-

12   97 ("A law 'relates to' [a document], in the normal sense of the phrase, if it has a connection with

13   or reference to [the document].") (citing Black's Law Dictionary 1158 (5th ed. 1979)).

14     *Second*, the claims against Twitter also "relate[] to" Nunes's own use of Twitter's

15   "Services." Count 4 (Plaintiff's UCL claim) asserts that Twitter violated the UCL because it

16   "implemented a policy of institutional censorship of conservative viewpoints, shadow-banned users,

17   including Plaintiff, and suspended users . . . whose viewpoints or ideology did not fall in line with

18   the agenda of Twitter." Compl. ¶ 47; *see also* Compl. ¶ 5 (alleging Twitter "has even gone so far

19   as to censor and shadow-ban [Nunes]"); Compl. ¶ 11 (alleging "Twitter and its CEO, Jack Dorsey,

20   actively censor and discriminate against [Nunes]"). This supposed "censorship," Nunes alleges,

21   violated the UCL because Twitter "misrepresented that it uniformly enforces its Terms of Service

22   and Rules," when in reality, "Twitter selectively enforces its Terms of Service and Rules." Compl.

23   ¶ 47. And Nunes's claim against Twitter for aiding and abetting Meredith's alleged "stalking" is

24   based on his belief that Twitter allowed Meredith to interfere with Nunes's ability to use Twitter.

25   *See* Compl. ¶ 9 and n.7 (alleging that Meredith engaged in harassing conduct through "tag[ging]"

26   Nunes on Twitter); Decl. of Devin G. Nunes in Opposition to Motion to Strike Complaint at ¶ 8

27   ("Meredith targeted me in hundreds of his offensive and demeaning tweets and retweets by 'tagging'

28

1    me."). Because these allegations relate to Nunes's own use of Twitter's "Services;" namely, the

2    content that Twitter permitted Nunes to post and disseminate on Twitter, they fall within the scope

3    of the TOS's venue-selection clause.

4        *Third*, even if Nunes had brought no allegations relating to Twitter's disregard of its Terms

5    as to him, the claims against Twitter would still constitute a "dispute[] related to the[] [Twitter] . . .

6    Services," because they relate to how another Twitter accountholder (Meredith) used the Twitter

7    platform. *See, e.g.*, Compl. ¶ 17 ("In spite of its own Terms and Rules and public representations,

8    Twitter consciously ignored Meredith's abuse and harassment."). The term "Services" in the TOS

9    "is not cabined to *plaintiff's* use of the Services," but is rather "sufficiently expansive" to reach

10   claims that another person used those services to injure the plaintiff. *Goodwin v. Bruggeman-Hatch*

11   (D. Colo. July 7, 2014), No. 13-cv-02973-REB-MEH, 2014 WL 3057198, at *1 (construing the

12   same forum and venue-selection provision at issue here).

13       In short, Nunes's claims in this case are based on allegations about how Twitter applied the

14   Terms to both Nunes's Tweets and his use of Twitter and to Meredith's Tweets and Meredith's use

15   of Twitter. As a result, Nunes's claims against Twitter fall squarely within the scope of the Terms'

16   venue-selection clause.

17   **II.   THE COURT SHOULD ENFORCE THE PARTIES' VENUE-SELECTION CLAUSE**
18   **AND TRANSFER THIS ACTION TO SAN FRANCISCO COUNTY**

19       Under California law, venue-selection clauses should be enforced, so long as they select a

20   venue that is statutorily permissible under California's venue statutes. *See Battaglia Enters.*, 215

21   Cal. App. 4th at 318 (affirming trial court's decision that parties should be "held to their agreement"

22   containing a venue-selection clause, where "[t]he venue-selection clause at issue here does not fix

23   venue in a location other than that allowed by statute, and thus cannot reasonably be deemed to

24   disrupt the statutory venue scheme); *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, (C.D. Cal.

25   Jan. 31, 2017), No. 2:16-cv-09152-ODW (SS), 2017 WL 417193 at *7 ("Venue selection clauses

26   remain valid to the extent they limit venue to one of the three counties enumerated in California

27   Civil Code section 395.5"); *Rudgayzer v. Google, Inc.*, (E.D.N.Y. 2013), 986 F. Supp. 2d 151, 155

28

TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER
VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY
4

1   (applying California law and stating that "[t]he only relevant limitation on venue-selection clauses

2   is that they may not specify a county outside of those provided for in the state's venue laws."). This

3   is true even when the initial venue that the Plaintiff selects would (in the absence of a venue-

4   selection clause) be a proper venue under California's venue statutes. *See Battaglia Enters*, 215

5   Cal. App. 4th at 313-14.

6         Here, Plaintiff Nunes has agreed, as a Twitter accountholder, to abide by Twitter's Terms,

7   which state that "all disputes" relating to the Terms or Twitter's Services shall be filed in San

8   Francisco County. Nunes has not asserted that the Terms are invalid; to the contrary, the Complaint

9   quotes them liberally and relies on them as a basis of its claims. *See* Compl. ¶ 13. And venue is

10  clearly proper in San Francisco County. California Code of Civil Procedure Section 395.5 states

11  that when a suit is filed against a corporation, venue is proper in "the county where the principal

12  place of business of such corporation is situated." Cal. Code of Civ. Proc. § 395.5. Twitter's

13  principal place of business is located in San Francisco County. Sprankling Decl. at ¶ 4.[2] Thus,

14  enforcing the parties' venue-selection clause in this case will both align with the parties' contractual

15  expectations and transfer the case to a county where venue is unquestionably proper. Finally,

16  because some of the claims are subject to transfer under the parties' venue-selection clause, it is

17  appropriate for the Court to transfer the entire action to the venue that the parties previously

18  selected—especially because Defendant Meredith likewise agreed to the Terms' venue-selection

19  clause as a condition of becoming a Twitter user. *See Brown*, 37 Cal. 3d at 488.

20                                    **CONCLUSION**

21        The Court should enforce the parties' venue-selection clause and transfer venue to San

22  Francisco County.

23

24

---

25  [2] Though the basis of Twitter's motion to transfer venue is the venue-selection clause in the
    contract that all of the parties signed, Twitter notes that Defendant Meredith does not reside in
26  Tulare County and that transferring this case to San Francisco will situate the case in a place that
    is both closer in proximity to Meredith's present residence (in Gig Harbor, Washington) and more
27  easily accessible to Meredith and any witnesses who live near him. *See* Compl. ¶ 4. As noted
    above, Meredith does not oppose this motion.
28

TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER
VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY
5

1   December 24, 2020                                 Respectfully Submitted,

2

3                                                     /s/    Thomas G. Sprankling
                                                      Thomas G. Sprankling (SBN: 294831)
4                                                     Wilmer Cutler Pickering Hale and Dorr LLP
                                                      2600 El Camino Real, Suite 400
5                                                     Palo Alto, CA 94306
                                                      Telephone: (650) 858-6000
6                                                     Facsimile: (650) 858-6100
                                                      thomas.sprankling@wilmerhale.com
7

8                                                     Patrick J. Carome (*pro hac vice* pending)
                                                      Ari Holtzblatt (*pro hac vice* pending)
9                                                     Wilmer Cutler Pickering Hale and Dorr LLP
                                                      1875 Pennsylvania Avenue NW
10                                                    Washington, DC 20006
                                                      Telephone: (202) 663-6000
11                                                    Facsimile: (202) 663-6363
                                                      patrick.carome@wilmerhale.com
12                                                    ari.holtzblatt@wilmerhale.com
13                                                    ***Attorneys for Defendant Twitter, Inc.***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CALIFORNIA STATE COURT PROOF OF SERVICE
*Nunes v. Meredith, et al.*

2

Tulare County Superior Court Case No. VCU284528

3

    At the time of service, I was over the age of 18 and not a party to this action. I am

4

employed in the County of Santa Clara, State of California. My business address is Wilmer Cutler
Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and

5

my electronic service address is Thomas.Sprankling@wilmerhale.com.

6

    On December 24, 2020, I caused the foregoing document described as:

7

**TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO
THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY PURSUANT TO THE**

8

**TERMS OF THE PARTIES' VENUE-SELECTION CLAUSE**

9

        to be electronically served on the interested parties listed below, pursuant to California

10

        Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's
        express written consent to electronic service via emails to myself and my colleagues dated

11

        December 23, 2020.

12

Derek P. Wisehart (SBN: 178100)

13

Law Offices of Derek P. Wisehart
2330 W. Main Street

14

Visalia, CA 93291
Telephone: (559) 636-9473

15

Facsimile: (559) 636-9476
derek@wisehartlaw.com

16

17

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102

18

Charlottesville, VA 22903
Telephone: (804) 501-8272

19

Facsimile: (202) 318-4098
stevenbiss@earthlink.net

20

*Attorneys for Plaintiff Devin G. Nunes*

21

Brian D. Whelan (SBN 256534)

22

Whelan Law Group
1827 East Fir Avenue, Suite 110

23

Fresno, CA 93720
Telephone: (559) 437-1079

24

Facsimile: (559) 437-1720
brian@whelanlawgroup.com

25

*Attorney for Defendant Benjamin Meredith*

26

27

    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

28

1    Executed on December 24, 2020 at Long Beach, California.

2

3

4                                              _____
                                                    Thomas G. Sprankling
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Thomas G. Sprankling (SBN: 294831)
Wilmer Cutler Pickering Hale and Dorr LLP

2   2600 El Camino Real, Suite 400
Palo Alto, CA 94306

3   Telephone: (650) 858-6000

4   Facsimile: (650) 858-6100
thomas.sprankling@wilmerhale.com

5

6   Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)

7   Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave. NW

8   Washington, DC 20006
Telephone: (202) 663-6000

9   Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com

10  ari.holtzblatt@wilmerhale.com

11  **Attorneys for Defendant Twitter, Inc.**

12

13       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14           **FOR THE COUNTY OF TULARE**

15

16  DEVIN G. NUNES,                  **CASE NO. VCU284528**

17            Plaintiff,        Hon. Judge Gary L. Paden

18      vs.

19  BENJAMIN PAUL MEREDITH, TWITTER, INC.,  **DECLARATION OF THOMAS G.**
and DOES 1 TO 100, Inclusive,         **SPRANKLING IN SUPPORT OF**

20                       **TWITTER, INC.'S NOTICE OF**
              Defendants.    **MOTION AND MOTION TO**

21                       **TRANSFER VENUE TO THE**
                       **SUPERIOR COURT FOR SAN**

22                       **FRANCISCO COUNTY PURSUANT**
                       **TO THE TERMS OF THE PARTIES'**

23                       **VENUE-SELECTION CLAUSE**

24                     DATE: January 22, 2021

25                     TIME: 8:30 AM
                     DEPT: 10

26                     Complaint Filed: October 5, 2020

27

28

## DECLARATION OF THOMAS G. SPRANKLING

I , Thomas G. Sprankling, declare as follows:

1.  I am an attorney duly licensed to practice before all courts of the State of California.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.  I am an attorney and counsel with the law firm Wilmer Cutler Pickering Hale and Dorr LLP, counsel for Defendant Twitter, Inc. ("Twitter") in the above-captioned civil matter.

3.  I submit this Declaration in support of Twitter's Motion To Transfer Venue To The Superior Court For San Francisco County Pursuant To The Terms Of The Parties' Venue-Selection Clause, and regarding the attached Exhibit, which is incorporated into the Complaint by reference.

4.  Twitter operates an Internet communications platform that allows hundreds of millions of people around the world to share views and track current events by reading and posting "Tweets"—short messages limited to 280 characters.  Twitter's headquarters, and principal place of business, is 1355 Market St., Suite 900, San Francisco, CA 94103.  Most members of Twitter's senior management work in this office, and decisions related to Twitter's overall business are made in this office.

5.  Exhibit A is a true and correct copy of the Twitter Terms of Service ("Terms"), which are incorporated into the Complaint by reference in paragraphs 12-14.  Exhibit A is publicly available and may be found at the following website: https://twitter.com/en/tos.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct and that this Declaration was executed as of the date shown below at Long Beach, California.

Dated: December 23, 2020                     By:  _____

                                                  Thomas G. Sprankling

# EXHIBIT A

Twitter Terms of Service



# Twitter Terms of Service

**If you live outside the European Union, EFTA States, or the United Kingdom, including if you live in the United States,** the Twitter User Agreement comprises these Terms of Service, our Privacy Policy (https://twitter.com/privacy), the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules), and all incorporated policies

**If you live in the European Union, EFTA States, or the United Kingdom,** the Twitter User Agreement comprises these Terms of Service, our Privacy Policy (https://twitter.com/privacy), the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules), and all incorporated policies.

## Twitter Terms of Service

### If you live outside the European Union, EFTA States, or the United Kingdom, including if you live in the United States

These Terms of Service ("Terms") govern your access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates) (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates)) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

# 1. Who May Use the Services

You may use the Services only if you agree to form a binding contract with Twitter and are not a person barred from receiving services under the laws of the applicable jurisdiction. In any case, you must be at least 13 years old, or in the case of Periscope 16 years old, to use the Services. If you are accepting these Terms and using the Services on behalf of a company, organization, government, or other legal entity, you represent and warrant that you are authorized to do so and have the authority to bind such entity to these Terms, in which case the words "you" and "your" as used in these Terms shall refer to such entity.

# 2. Privacy

Our Privacy Policy (https://twitter.com/privacy) (https://www.twitter.com/privacy (https://www.twitter.com/privacy)) describes how we handle the information you provide to us when you use our Services. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information, including the transfer of this information to the United States, Ireland, and/or other countries for storage, processing and use by Twitter and its affiliates.

# 3. Content on the Services

You are responsible for your use of the Services and for any Content you provide, including compliance with applicable laws, rules, and regulations. You should only provide Content that you are comfortable sharing with others.

Any use or reliance on any Content or materials posted via the Services or obtained by you through the Services is at your own risk. We do not endorse, support, represent or guarantee the completeness, truthfulness, accuracy, or reliability of any Content or communications posted via the Services or endorse any opinions expressed via the Services. You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

We reserve the right to remove Content that violates the User Agreement, including for example, copyright or trademark violations or other intellectual property misappropriation, impersonation, unlawful conduct, or harassment. Information regarding specific policies and the process for reporting or appealing violations can

be found in our Help Center (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations) and https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts (https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts)).

If you believe that your Content has been copied in a way that constitutes copyright infringement, please report this by visiting our Copyright reporting form (https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)) or contacting our designated copyright agent at:

Twitter, Inc.
Attn: Copyright Agent
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)
Email: copyright@twitter.com
(for content on Twitter)

Twitter, Inc.
Attn: Copyright Agent – Periscope
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca
(https://help.twitter.com/forms/dmca)Email: copyright@pscp.tv
(for content on Periscope)

# Your Rights and Grant of Rights in the Content

You retain your rights to any Content you submit, post or display on or through the Services. What's yours is yours — you own your Content (and your incorporated audio, photos and videos are considered part of the Content).

By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of

the world and to let others do the same. You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by Twitter, or other companies, organizations or individuals, is made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services as the use of the Services by you is hereby agreed as being sufficient compensation for the Content and grant of rights herein.

Twitter has an evolving set of rules for how ecosystem partners can interact with your Content on the Services. These rules exist to enable an open ecosystem with your rights in mind. You understand that we may modify or adapt your Content as it is distributed, syndicated, published, or broadcast by us and our partners and/or make changes to your Content in order to adapt the Content to different media.

You represent and warrant that you have, or have obtained, all rights, licenses, consents, permissions, power and/or authority necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services. You agree that such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission or are otherwise legally entitled to post the material and to grant Twitter the license described above.

# 4. Using the Services

Please review the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) (and, for Periscope, the Periscope Community Guidelines (https://www.pscp.tv/content) at https://www.pscp.tv/content (https://www.pscp.tv/content)), which are part of the User Agreement and outline what is prohibited on the Services. You may use the Services only in compliance with these Terms and all applicable laws, rules and regulations.

Our Services evolve constantly. As such, the Services may change from time to time, at our discretion. We may stop (permanently or temporarily) providing the Services or any features within the Services to you or to users generally. We also retain the right to create limits on use and storage at our sole discretion at any time. We may also

remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users, and reclaim usernames without liability to you.

In consideration for Twitter granting you access to and use of the Services, you agree that Twitter and its third-party providers and partners may place advertising on the Services or in connection with the display of Content or information from the Services whether submitted by you or others. You also agree not to misuse our Services, for example, by interfering with them or accessing them using a method other than the interface and the instructions that we provide. You may not do any of the following while accessing or using the Services: (i) access, tamper with, or use non-public areas of the Services, Twitter's computer systems, or the technical delivery systems of Twitter's providers; (ii) probe, scan, or test the vulnerability of any system or network or breach or circumvent any security or authentication measures; (iii) access or search or attempt to access or search the Services by any means (automated or otherwise) other than through our currently available, published interfaces that are provided by Twitter (and only pursuant to the applicable terms and conditions), unless you have been specifically allowed to do so in a separate agreement with Twitter (NOTE: crawling the Services is permissible if done in accordance with the provisions of the robots.txt file, however, scraping the Services without the prior consent of Twitter is expressly prohibited); (iv) forge any TCP/IP packet header or any part of the header information in any email or posting, or in any way use the Services to send altered, deceptive or false source-identifying information; or (v) interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of Content in such a manner as to interfere with or create an undue burden on the Services. We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to (i) satisfy any applicable law, regulation, legal process or governmental request, (ii) enforce the Terms, including investigation of potential violations hereof, (iii) detect, prevent, or otherwise address fraud, security or technical issues, (iv) respond to user support requests, or (v) protect the rights, property or safety of Twitter, its users and the public. Twitter does not disclose personally-identifying information to third parties except in accordance with our Privacy Policy (https://twitter.com/privacy).

If you use developer features of the Services, including but not limited to Twitter for Websites (https://developer.twitter.com/docs/twitter-for-websites/overview) (https://developer.twitter.com/docs/twitter-for-websites/overview (https://developer.twitter.com/docs/twitter-for-websites/overview)), Twitter Cards

(https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started)
**(https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started**
(https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started)), Public API
(https://developer.twitter.com/en/docs)**(https://developer.twitter.com/en/docs**
(https://developer.twitter.com/en/docs)), or Sign in with Twitter
(https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter)
**(https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter**
(https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter)), you agree to our
Developer Agreement (https://developer.twitter.com/en/developer-terms/agreement)
**(https://developer.twitter.com/en/developer-terms/agreement**
(https://developer.twitter.com/en/developer-terms/agreement)) and Developer Policy
(https://developer.twitter.com/en/developer-terms/policy)
**(https://developer.twitter.com/en/developer-terms/policy**
(https://developer.twitter.com/en/developer-terms/policy)). If you want to reproduce, modify,
create derivative works, distribute, sell, transfer, publicly display, publicly perform,
transmit, or otherwise use the Services or Content on the Services, you must use the
interfaces and instructions we provide, except as permitted through the Twitter
Services, these Terms, or the terms provided on
https://developer.twitter.com/en/developer-terms (https://developer.twitter.com/en/developer-
terms). If you are a security researcher, you are required to comply with the rules of
the Twitter Vulnerability Reporting Program (https://hackerone.com/twitter)
**(https://hackerone.com/twitter** (https://hackerone.com/twitter)). The requirements set out in
the preceding paragraph may not apply to those participating in Twitter's Vulnerability
Reporting Program.

If you use advertising features of the Services, you must agree to our Twitter Master
Services Agreement (https://ads.twitter.com/terms) **(https://ads.twitter.com/terms**
(https://ads.twitter.com/terms)).

If you use Super Hearts, Coins, or Stars on Periscope, you must agree to our Super
Hearts Terms (https://legal.twitter.com/en/periscope/super/terms.html)
**(https://legal.twitter.com/en/periscope/super/terms.html**
(https://legal.twitter.com/en/periscope/super/terms.html)).

# Your Account

You may need to create an account to use some of our Services. You are
responsible for safeguarding your account, so use a strong password and limit its use
to this account. We cannot and will not be liable for any loss or damage arising from
your failure to comply with the above.

You can control most communications from the Services. We may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your account, and you may not be able to opt-out from receiving them. If you added your phone number to your account and you later change or deactivate that phone number, you must update your account information to help prevent us from communicating with anyone who acquires your old number.

# Your License to Use the Services

Twitter gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software provided to you as part of the Services. This license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner permitted by these Terms.

The Services are protected by copyright, trademark, and other laws of both the United States and other countries. Nothing in the Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, other distinctive brand features, and other proprietary rights. All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors. Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and without any obligation to you.

# Ending These Terms

You may end your legal agreement with Twitter at any time by deactivating your accounts and discontinuing your use of the Services. See https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account (https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account) (and for Periscope, https://help.pscp.tv/customer/portal/articles/2460220 (https://help.pscp.tv/customer/portal/articles/2460220)) for instructions on how to deactivate your account and the Privacy Policy for more information on what happens to your information.

We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) or Periscope Community Guidelines (https://www.pscp.tv/content), (ii) you create risk or possible legal exposure for

us; (iii) your account should be removed due to unlawful conduct, (iv) your account should be removed due to prolonged inactivity; or (v) our provision of the Services to you is no longer commercially viable. We will make reasonable efforts to notify you by the email address associated with your account or the next time you attempt to access your account, depending on the circumstances. In all such cases, the Terms shall terminate, including, without limitation, your license to use the Services, except that the following sections shall continue to apply: II, III, V, and VI. If you believe your account was terminated in error you can file an appeal following the steps found in our Help Center (https://help.twitter.com/forms/general?subtopic=suspended) (https://help.twitter.com/forms/general?subtopic=suspended (https://help.twitter.com/forms/general?subtopic=suspended)). For the avoidance of doubt, these Terms survive the deactivation or termination of your account.

# 5. Disclaimers and Limitations of Liability

# The Services are Available "AS-IS"

Your access to and use of the Services or any Content are at your own risk. You understand and agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE" basis. The "Twitter Entities" refers to Twitter, its parents, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors. Without limiting the foregoing, to the maximum extent permitted under applicable law, THE TWITTER ENTITIES DISCLAIM ALL WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. The Twitter Entities make no warranty or representation and disclaim all responsibility and liability for: (i) the completeness, accuracy, availability, timeliness, security or reliability of the Services or any Content; (ii) any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services or any Content; (iii) the deletion of, or the failure to store or to transmit, any Content and other communications maintained by the Services; and (iv) whether the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from the Twitter Entities or through the Services, will create any warranty or representation not expressly made herein.

# Limitation of Liability

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE TWITTER ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES; (ii) ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY DEFAMATORY, OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES; (iii) ANY CONTENT OBTAINED FROM THE SERVICES; OR (iv) UNAUTHORIZED ACCESS, USE OR ALTERATION OF YOUR TRANSMISSIONS OR CONTENT. IN NO EVENT SHALL THE AGGREGATE LIABILITY OF THE TWITTER ENTITIES EXCEED THE GREATER OF ONE HUNDRED U.S. DOLLARS (U.S. $100.00) OR THE AMOUNT YOU PAID TWITTER, IF ANY, IN THE PAST SIX MONTHS FOR THE SERVICES GIVING RISE TO THE CLAIM. THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND WHETHER OR NOT THE TWITTER ENTITIES HAVE BEEN INFORMED OF THE POSSIBILITY OF ANY SUCH DAMAGE, AND EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

# 6. General

We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at twitter.com/tos (https://twitter.com/en/tos), will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

The laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and Twitter. All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum.

If you are a federal, state, or local government entity in the United States using the Services in your official capacity and legally unable to accept the controlling law, jurisdiction or venue clauses above, then those clauses do not apply to you. For such U.S. federal government entities, these Terms and any action related thereto will be governed by the laws of the United States of America (without reference to conflict of laws) and, in the absence of federal law and to the extent permitted under federal law, the laws of the State of California (excluding choice of law).

In the event that any provision of these Terms is held to be invalid or unenforceable, then that provision will be limited or eliminated to the minimum extent necessary, and the remaining provisions of these Terms will remain in full force and effect. Twitter's failure to enforce any right or provision of these Terms will not be deemed a waiver of such right or provision.

These Terms are an agreement between you and Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103 U.S.A. If you have any questions about these Terms, please contact us (https://help.twitter.com/forms).

**Effective:** June 18, 2020

Archive of Previous Terms

# Twitter Terms of Service

## If you live in the European Union, EFTA States, or the United Kingdom

These Terms of Service ("Terms") govern your access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates)) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

# 1. Who May Use the Services

You may use the Services only if you agree to form a binding contract with Twitter and are not a person barred from receiving services under the laws of the applicable jurisdiction. In any case, you must be at least 13 years old, or in the case of Periscope 16 years old, to use the Services. If you are accepting these Terms and using the Services on behalf of a company, organization, government, or other legal entity, you represent and warrant that you are authorized to do so and have the authority to bind such entity to these Terms, in which case the words "you" and "your" as used in these Terms shall refer to such entity.

# 2. Privacy

Our Privacy Policy (https://twitter.com/privacy) (https://www.twitter.com/privacy (https://www.twitter.com/privacy)) describes how we handle the information you provide to us when you use our Services. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information, including the transfer of this information to the United States, Ireland, and/or other countries for storage, processing and use by Twitter and its affiliates.

# 3. Content on the Services

You are responsible for your use of the Services and for any Content you provide, including compliance with applicable laws, rules, and regulations. You should only provide Content that you are comfortable sharing with others.

Any use or reliance on any Content or materials posted via the Services or obtained by you through the Services is at your own risk. We do not endorse, support, represent or guarantee the completeness, truthfulness, accuracy, or reliability of any Content or communications posted via the Services or endorse any opinions expressed via the Services. You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

We reserve the right to remove Content that violates the User Agreement, including for example, copyright or trademark violations or other intellectual property misappropriation, impersonation, unlawful conduct, or harassment. Information regarding specific policies and the process for reporting or appealing violations can be found in our Help Center (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations) and https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts (https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts)).

If you believe that your Content has been copied in a way that constitutes copyright infringement, please report this by visiting our Copyright reporting form (https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)) or contacting our designated copyright agent at:

Twitter, Inc.
Attn: Copyright Agent
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)
Email: copyright@twitter.com
(for content on Twitter)

Twitter, Inc.
Attn: Copyright Agent – Periscope
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca
(https://help.twitter.com/forms/dmca)Email: copyright@pscp.tv
(for content on Periscope)

# Your Rights and Grant of Rights in the Content

You retain your rights to any Content you submit, post or display on or through the Services. What's yours is yours — you own your Content (and your incorporated audio, photos and videos are considered part of the Content).

By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of the world and to let others do the same. You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by Twitter, or other companies, organizations or individuals, is made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services as the use of the Services by you is hereby agreed as being sufficient compensation for the Content and grant of rights herein.

Twitter has an evolving set of rules for how ecosystem partners can interact with your Content on the Services. These rules exist to enable an open ecosystem with your rights in mind. You understand that we may modify or adapt your Content as it is distributed, syndicated, published, or broadcast by us and our partners and/or make changes to your Content in order to adapt the Content to different media.

You represent and warrant that you have, or have obtained, all rights, licenses, consents, permissions, power and/or authority necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services. You agree that such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission or are otherwise legally entitled to post the material and to grant Twitter the license described above.

# 4. Using the Services

Please review the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) (and, for Periscope, the Periscope Community Guidelines (https://www.pscp.tv/content) at https://pscp.tv/content (https://www.pscp.tv/content)), which are part of the User Agreement and outline what is prohibited on the Services. You may use the Services only in compliance with these Terms and all applicable laws, rules and regulations.

Our Services evolve constantly. As such, the Services may change from time to time, at our discretion. We may stop (permanently or temporarily) providing the Services or any features within the Services to you or to users generally. We also retain the right to create limits on use and storage at our sole discretion at any time. We may also remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users, and reclaim usernames without liability to you.

In consideration for Twitter granting you access to and use of the Services, you agree that Twitter and its third-party providers and partners may place advertising on the Services or in connection with the display of Content or information from the Services whether submitted by you or others. You also agree not to misuse our Services, for example, by interfering with them or accessing them using a method other than the interface and the instructions that we provide. You may not do any of the following while accessing or using the Services: (i) access, tamper with, or use non-public areas of the Services, Twitter's computer systems, or the technical delivery systems of Twitter's providers; (ii) probe, scan, or test the vulnerability of any system or network or breach or circumvent any security or authentication measures; (iii) access or search or attempt to access or search the Services by any means (automated or otherwise) other than through our currently available, published interfaces that are provided by Twitter (and only pursuant to the applicable terms and conditions), unless you have been specifically allowed to do so in a separate agreement with Twitter (NOTE: crawling the Services is permissible if done in accordance with the provisions of the robots.txt file, however, scraping the Services without the prior consent of Twitter is expressly prohibited); (iv) forge any TCP/IP packet header or any part of the header information in any email or posting, or in any way use the Services to send altered, deceptive or false source-identifying information; or (v) interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of Content in such a manner as to interfere with or create an undue burden on the Services. We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to (i) satisfy any applicable law, regulation, legal process or governmental request, (ii) enforce the Terms, including investigation of potential violations hereof, (iii) detect, prevent, or otherwise address fraud, security or technical issues, (iv) respond to user support requests, or (v) protect the rights, property or safety of Twitter, its users and the public. Twitter does not disclose personally-identifying information to third parties except in accordance with our Privacy Policy (https://twitter.com/privacy).

If you use developer features of the Services, including but not limited to Twitter for Websites (https://developer.twitter.com/docs/twitter-for-websites/overview) (https://developer.twitter.com/docs/twitter-for-websites/overview (https://developer.twitter.com/docs/twitter-for-websites/overview)), Twitter Cards (https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started) (https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started (https://developer.twitter.com/docs/tweets/optimize-with-cards/guides/getting-started)), Public API (https://developer.twitter.com/en/docs)(https://developer.twitter.com/en/docs (https://developer.twitter.com/en/docs)), or Sign in with Twitter (https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter) (https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter (https://developer.twitter.com/docs/basics/authentication/guides/log-in-with-twitter)), you agree to our Developer Agreement (https://developer.twitter.com/en/developer-terms/agreement) (https://developer.twitter.com/en/developer-terms/agreement (https://developer.twitter.com/en/developer-terms/agreement)) and Developer Policy (https://developer.twitter.com/en/developer-terms/policy) (https://developer.twitter.com/en/developer-terms/policy (https://developer.twitter.com/en/developer-terms/policy)). If you want to reproduce, modify, create derivative works, distribute, sell, transfer, publicly display, publicly perform, transmit, or otherwise use the Services or Content on the Services, you must use the interfaces and instructions we provide, except as permitted through the Twitter Services, these Terms, or the terms provided on https://developer.twitter.com/en/developer-terms (https://developer.twitter.com/en/developer-terms). If you are a security researcher, you are required to comply with the rules of the Twitter Vulnerability Reporting Program (https://hackerone.com/twitter) (https://hackerone.com/twitter (https://hackerone.com/twitter)).  The requirements set out in the preceding paragraph may not apply to those participating in Twitter's Vulnerability Reporting Program.

If you use advertising features of the Services, you must agree to our Twitter Master Services Agreement (https://ads.twitter.com/terms) (https://ads.twitter.com/terms (https://ads.twitter.com/terms)).

If you use Super Hearts, Coins, or Stars on Periscope, you agree to our Super Hearts Terms (https://legal.twitter.com/en/periscope/super/terms.html) (https://legal.twitter.com/en/periscope/super/terms.html (https://legal.twitter.com/en/periscope/super/terms.html)).

# Your Account

You may need to create an account to use some of our Services. You are responsible for safeguarding your account, so use a strong password and limit its use to this account. We cannot and will not be liable for any loss or damage arising from your failure to comply with the above.

You can control most communications from the Services. We may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your account, and you may not be able to opt-out from receiving them. If you added your phone number to your account and you later change or deactivate that phone number, you must update your account information to help prevent us from communicating with anyone who acquires your old number.

# Your License to Use the Services

Twitter gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software provided to you as part of the Services. This license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner permitted by these Terms.

The Services are protected by copyright, trademark, and other laws of both the United States and other countries. Nothing in the Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, other distinctive brand features, and other proprietary rights. All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors. Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and without any obligation to you.

# Ending These Terms

You may end your legal agreement with Twitter at any time by deactivating your accounts and discontinuing your use of the Services. See https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account (https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account) (and for Periscope, https://help.pscp.tv/customer/portal/articles/2460220 (https://help.pscp.tv/customer/portal/articles/2460220)) for instructions on how to deactivate your account and the Privacy Policy for more information on what happens to your information.

We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) or Periscope Community Guidelines (https://www.pscp.tv/content), (ii) you create risk or possible legal exposure for us; (iii) your account should be removed due to unlawful conduct, (iv) your account should be removed due to prolonged inactivity; or (v) our provision of the Services to you is no longer commercially viable. We will make reasonable efforts to notify you by the email address associated with your account or the next time you attempt to access your account, depending on the circumstances. In all such cases, the Terms shall terminate, including, without limitation, your license to use the Services, except that the following sections shall continue to apply: II, III, V, and VI. If you believe your account was terminated in error you can file an appeal following the steps found in our Help Center (https://help.twitter.com/forms/general?subtopic=suspended) (https://help.twitter.com/forms/general?subtopic=suspended (https://help.twitter.com/forms/general?subtopic=suspended)). For the avoidance of doubt, these Terms survive the deactivation or termination of your account.

# 5. Limitations of Liability

By using the Services you agree that Twitter, its parents, affiliates, related companies, officers, directors, employees, agents representatives, partners and licensors, liability is limited to the maximum extent permissible in your country of residence.

# 6. General

We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at twitter.com/tos (https://twitter.com/en/tos), will govern our relationship with you. Other than for changes addressing new functions or made for legal reasons, we will notify you 30 days in advance of making effective changes to these Terms that impact the rights or obligations of any party to these Terms, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

In the event that any provision of these Terms is held to be invalid or unenforceable, then that provision will be limited or eliminated to the minimum extent necessary, and the remaining provisions of these Terms will remain in full force and effect. Twitter's failure to enforce any right or provision of these Terms will not be deemed a waiver of such right or provision.

These Terms are an agreement between you and Twitter International Company (Co. number 503351, VAT number IE9803175Q), an Irish company with its registered office at One Cumberland Place, Fenian Street Dublin 2, D02 AX07 Ireland. If you have any questions about these Terms, please contact us (https://help.twitter.com/forms).

**Effective:** June 18, 2020

Archive of Previous Terms

© 2020 Twitter, Inc.
Cookies (https://help.twitter.com/rules-and-policies/twitter-cookies)
Privacy (https://twitter.com/privacy)
Terms and Conditions (https://twitter.com/tos)

**CALIFORNIA STATE COURT PROOF OF SERVICE**
*Nunes v. Meredith, et al.*
Tulare County Superior Court Case No. VCU284528

At the time of service, I was over the age of 18 and not a party to this action.  I am employed in the County of Santa Clara, State of California.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and my electronic service address is Thomas.Sprankling@wilmerhale.com.

On December 24, 2020, I caused the foregoing document described as:

**DECLARATION OF THOMAS G. SPRANKLING**

to be electronically served on the interested parties listed below, pursuant to California Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's express written consent to electronic service via emails to myself and my colleagues dated December 23, 2020.

Derek P. Wisehart (SBN: 178100)
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Telephone: (559) 636-9473
Facsimile:  (559) 636-9476
derek@wisehartlaw.com

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile:  (202) 318-4098
stevenbiss@earthlink.net
*Attorneys for Plaintiff Devin G. Nunes*

Brian D. Whelan (SBN 256534)
Whelan Law Group
1827 East Fir Avenue, Suite 110
Fresno, CA 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
brian@whelanlawgroup.com
*Attorney for Defendant Benjamin Meredith*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DECLARATION OF THOMAS G. SPRANKLING
3

1    Executed on December 24, 2020 at Long Beach, California.

2

3

4                                                    _____

5                                                    Thomas G. Sprankling

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THOMAS G. SPRANKLING
4

Derek P. Wisehart, Esq. #178100
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, California 93291
Telephone:   (559) 636-9473
Facsimile:   (559) 636-9476
Email: derek@dwisehartlaw.com

Steven S. Biss, Esquire
(Virginia State Bar No. 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Application for Admission Pro Hac Vice
Filed*)

Attorneys for Plaintiff, DEVIN G. NUNES

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF TULARE

| | |
|---|---|
| DEVIN G. NUNES. <br><br> Plaintiff, <br><br> vs. <br><br> BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 to 100, Inclusive, <br><br> Defendants. | Case No. VCU284528 <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE** <br><br> Date:   January 22, 2021 <br> Time:   8:30 a.m. <br> Dept.   10 |

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, respectfully submits this Memorandum in Opposition to the motion to transfer venue filed by defendant, Twitter, Inc. ("Twitter").

## I.   TULARE COUNTY IS THE PROPER VENUE

1.    Without doubt, Twitter transacts substantial business in Tulare County.  It's customers include Tulare County [https://twitter.com/CountyofTulare], the Sheriff's Office https://twitter.com/TulareSheriff], the District Attorney [https://twitter.com/TulareDA], and the Tulare County Superior Court. [https://twitter.com/TulareCourt].

2.    In this case, Plaintiff states claims against Twitter for aiding and abetting stalking (Count II) and unfair competition in violation of § 17200 of the California Bus. & Prof. Code (Count IV).   Because this action is for personal injuries suffered by Plaintiff as a result of Twitter's tortious conduct, venue is proper in Tulare County – where Plaintiff suffered the injuries. [*Complaint*, ¶¶ *3, 7*]; California Code of Civil procedure ("C.C.P.") § 395(a); *see also* C.C.P. § 395.5 ("A corporation … may be sued in the county where the … liability arises").

3.    Plaintiff's choice of venue is presumptively correct. *Bechtel Corp. v. Superior Court*, 33 Cal.App.3d 405, 407 fn. 1, 109 Cal.Rept. 138 (1973) (citing *Hearne v. De Young*, 111 Cal. 373, 43 P. 1108 (1896)).  The burden rests on Twitter – the only party seeking a change of venue[1] – to defeat Plaintiff's presumptively correct choice of court. *Buran Equip. Co. v. Superior Court*, 190 Cal.App.3d 1662, 1666, 236 Cal.Rptr. 171 (1987).

///

---

[1]    It is well-established that venue is proper in a cyberstalking case, such as this, where the victim receives the threats and harassing tweets. *See, e.g., United States v. Hagar*, 822 Fed.Appx. 361, 370 (6th Cir. 2020) (venue was proper in Ohio because the emails were sent from Oregon to the victim in Ohio).

## II.  TWITTER'S MOTION SHOULD BE DENIED

4.      Under California law, liability may be imposed on one who aids and abets the commission of an intentional tort if the person "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1118 (C.D. Cal. 2003) (quoting *Fiol v. Doellstedt*, 50 Ca.App.4th 1318, 1325-1326, 58 Cal.Rptr. 308 (1996)); *see id. American Master Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451, 1475, 171 Cal.Rptr.3d 548 (2014); *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846, 33 Cal.Rptr.2d 438 (1994); Restatement (Second) of Torts § 876.

5.      Contrary to Twitter's suggestion, *Notice of Motion*, ¶ *1*, Plaintiff did not "sue" Twitter "under" any "agreement".  Rather, Plaintiff sued Twitter because Twitter aided and abetted a two-year campaign of stalking by Meredith and the Doe Defendants, a campaign that continues in spite of the pendency of this action.  This case involves one of the darkest and most disturbing sides of Twitter's business practices:   Twitter knowingly provides substantial assistance and encourages certain users to follow, alarm and harass others, such as Plaintiff. [*Complaint, ¶¶ 5, 6, 28, 29, 31*].

6.      Twitter's Terms of Service ("TOS") are a small ***part*** of the evidence that demonstrates Twitter had actual knowledge of Meredith and the Doe Defendant's stalking and provided substantial assistance and encouragement. [*Compl., ¶¶ 28, 29*].

7.      Twitter suggests that a forum selection clause buried in an electronic form that Plaintiff never saw and never agreed to should be enforced in this case.  It should not.  First, the version of "Terms of Service" attached as Exhibit A to Twitter's counsel's declaration are

1   effective "June 18, 2020".  There is no evidence that these are the "Terms" applied during the

2   period of the stalking campaign in 2019, and specifically when Meredith threatened Plaintiff's

3   life.  Second, **the "forum selection clause" is irrelevant.  The dispute in this case does not**

4   **relate to "<u>these</u> Terms or the Services" (emphasis added):  that is, to services provided by**

5   **Twitter _to Plaintiff_.**[2]  **To the contrary, Plaintiff is suing Twitter for aiding and abetting**

6   **stalking and unlawful, unfair and fraudulent acts and practices. [_Compl., ¶ 47_].  The duties**

7   **breached by Twitter do not arise under any "agreement".  Rather, Twitter breached the**

8   **common law duty set forth in the Restatement (Second) of Torts § 876 and the statutory**

9   **duties set forth in 17200 _et seq._ of the California Bus. & Prof. Code**.  In 2019, in a lawsuit in

10

11  Virginia between Plaintiff and Twitter, the Court rejected Twitter's argument that the same forum

12  selection clause required transfer to California.  On page 3 of its letter opinion, the Virginia Court

13  ruled as follows:

14

15      The negligence claim of the Plaintiff against Twitter here arises from the Defendants use of
        twitter not the Plaintiff's use of twitter.  The use of twitter by the Defendants to post allegedly
16      defamatory statements cannot subject the Plaintiff to the terms of use agreement and the
        forum selection clause as it would not subject a plaintiff who did not have a twitter account to
17      the terms of use agreement.  The court finds the terms of use agreement does not apply to the
        Plaintiff here.
18

19  The Virginia Court's Letter Opinion is attached as _Exhibit "A"_.  Third, the clause dug up by

20  Twitter and disputed by Plaintiff is, at best, ambiguous.  A well-settled maxim states the general

21  rule that ambiguities in a form contract are resolved "most strongly" against the drafter. _See, e.g._,

22  _California Civil Code § 1654_; _Victoria v. Superior Court_, 40 Cal.3rd 734, 739, 222 Cal.Rptr. 1

23

24

25      [2]    This case does not relate in any way to Plaintiff's Twitter accounts, @DevinNunes
        and @RepDevinNunes.  The fact that Twitter intentionally ignored the TOS and knowingly
26      allowed Meredith and the Doe Defendants to stalk Plaintiff does not transform this case into a
        dispute about Plaintiff's Twitter accounts.
27

28
                                                    4
                **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
                        **TO TWITTER'S MOTION TO TRANSFER VENUE**

(1985). **Accordingly, the clause should be most strictly construed against Twitter, *not***

**Plaintiff**. Finally, the "forum selection clause" is unconscionable, unfair, unreasonable, and is

affected by fraud and unequal bargaining power. It should not be enforced against Plaintiff or

any other unwitting user of Twitter. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10

(1972); Restatement (Second) of Conflict of Laws (1988 Revisions) § 80 (Supp. 1989). The

foreign selection clause is an unconscionable adhesion contract, forced upon users of Twitter

without explanation or an ability to negotiate. "A standard-form contract prepared by one party,

to be signed by another party in a weaker position" is referred to as an "adhesion contract."

*Black's Law Dictionary* 390 (10th ed. 2014). Here, the forum selection clause is intrinsically

unfair. Plaintiff did not bargain for this. The forum selection clause is also affected by fraud

since it was intentionally buried by Twitter. There can be no dispute that the parties are of

completely unequal bargaining power. Plaintiff had no ability to negotiate with Twitter and,

indeed, there is no other comparable service to the Twitter public forum. Plaintiff had no choice

and did not "select", in any meaningful sense of the word, a California forum for the resolution

of disputes relating to *his* use of Twitter. Twitter's hidden "forum selection clause" is a

"GOTCHA" clause, calculated to deprive its users of a fair forum for litigation. *Compare Swain*

*v. LaserAway Medical Group, Inc.*, 57 Cal.App.5th 59, 270 Cal.Rptr.3d 276 (2020) (arbitration

agreement buried in form was unconscionable).

8.      Although Twitter invokes § 397 of the Code of Civil Procedure in its Notice of

Motion, Twitter offers no argument and, importantly, no evidence to suggest that an impartial

trial cannot be held in Tulare County. However, there is very good reason to believe that *Plaintiff*,

a prominent Republican Congressman, ***cannot*** and indeed ***will not*** receive an impartial trial in

San Francisco County. Dominated by "big tech", whose political and financial allegiance to the

Democratic Party is so extreme that it led to censorship of the New York Post prior to the 2020

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO TWITTER'S MOTION TO TRANSFER VENUE**

1   Presidential Election, there is no question that Plaintiff will never receive a fair trial in San

2   Francisco County. The widespread animosity towards Plaintiff in San Francisco is a matter of

3   public record. [*See, e.g.*, https://sanfrancisco.cbslocal.com/2021/01/04/central-valley-rep-devin-

4   nunes-trump-impeachment-ally-medal-of-freedom/ ("President Donald Trump awarded the

5   Medal of Freedom to one of his most vocal political allies who defended him throughout his

6   impeachment ... Trump has often used the Medal of Freedom to reward his allies, whether they

7   be financial, political or just old friends"); https://bipartisanreport.com/2020/09/02/senate-

8   investigation-devastates-devin-nunes-by-exposing-neo-nazi-ties/ ("Representative Devin Nunes

9   (R-CA) is one of Donald Trump's government fixers ... When Cohen testified before a

10  Congressional committee, Trump sent Nunes up to the Hill to intimidate his former attorney of

11  15 years"); https://sfist.com/2020/06/25/devin-nunes-loses-lawsuit-over-twitter-cow-is-now-

12  telling-everyone-to-get-on-parler/ ("Like so many Republicans these days, Nunes is thin-skinned

13  and can't take any of the jokes or needling that occur every second on social media");

14  https://www.rawstory.com/2020/02/emasculated-pissant-devin-nunes-scorched-by-talk-radio-

15  host-for-media-threats/ (Talk show host in San Francisco made the following statements about

16  Plaintiff: "Hostile? You ain't seen hostile yet, you emasculated pissant. After you lose your

17  seat, I will make it my life's mission to harass any and all businesses who offer you work. I

18  know your type; you fold like a discounted lawn chair. Tick tock f*ck-knuckle.");

19  https://www.sfchronicle.com/politics/article/Even-as-Trump-changes-coronavirus-message-

20  Devin-15172908.php; https://www.politico.com/story/2019/06/06/democratic-challenge-devin-

21  nunes-2020-1355523 ("SAN FRANCISCO — Rep. Devin Nunes — the lightning rod House

22  Intelligence Committee member"); https://americanindependent.com/devin-nunes-attacks-begs-

23  fundraises-san-francisco/ ("Devin Nunes can beg all he wants, but his constant attacks on

24  California show he doesn't deserve support from his own district, or San Francisco, or anywhere

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO TWITTER'S MOTION TO TRANSFER VENUE**

else"). Significantly, Representative Nancy Pelosi (who represents California's 12th District covering San Francisco) has widely and repeatedly defamed and disparaged Plaintiff in the both the press and to her constituents. Pelosi's misconduct ensures there will not be an impartial trial in San Francisco. [*See, e.g.,* https://www.sfgate.com/politics/article/Nancy-Pelosi-Devin-Nunes-removal-RemoveNunes-12544967.php].

9.    In accordance with § 397, the Court should keep the case in Tulare to avoid the extreme prejudice that will result from a transfer. *See People v. Ocean Shore R.R.*, 24 Cal.App.2d 420, 427-428, 75 P.2d 560 (1938) (there was a "widespread feeling of prejudice extending over a long period of years [against one of the parties] ..., such as would at least make it extremely doubtful whether an impartial trial could be had before a jury in that county").

### III.    CONCLUSION AND REQUEST FOR RELIEF

Because the Tulare County Superior Court is "the court designated as the proper court for the trial" of this matter, the Court has no jurisdiction to transfer the case and Twitter's motion must be denied. *C.C.P. § 396b(a)*. Because Plaintiff could never get an impartial trial in progressive San Francisco County, the case should stay in Tulare, where both parties can get a fair shake.

For the reasons stated, Plaintiff respectfully requests that Twitter's motion to transfer venue be denied.

DATED:      January 8, 2021          LAW OFFICE OF DEREK P. WISEHART

Derek P. Wisehart, Attorney for Plaintiff.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO TWITTER'S MOTION TO TRANSFER VENUE

# EXHIBIT A

# COMMONWEALTH OF VIRGINIA
## FOURTEENTH JUDICIAL CIRCUIT

L.A. HARRIS, JR., JUDGE

JAMES S. YOFFY, JUDGE

RICHARD S. WALLERSTEIN, JR., JUDGE

JOHN MARSHALL, JUDGE

RANDALL G. JOHNSON, JR., JUDGE



GOVERNMENT COMPLEX
4301 E. PARHAM ROAD

MAILING ADDRESS:
P.O. BOX 90775
HENRICO, VA 23273-0775

TELEPHONE: (804) 501-4750
FACSIMILE: (804) 501-5505

## CIRCUIT COURT OF HENRICO COUNTY

October 2, 2019

Steven S. Biss, Esquire
300 West Main Street, Suite 102
Charlottesville, VA  22903

Charles K. Seyfarth, Esquire
O'Hagan Meyer
411 East Franklin Street, Suite 500
Richmond, VA  23219

Patrick J. Carome, Esquire
Wilmer Cutler Pickering Hale & Door, LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006

Amy Neuhardt, Esquire
Boies Schiller Flexner, LLP
1401 New York Avenue, NW
Washington, DC   20005

Benjamin Margo, Esquire
Kaplan Hecker & Fink, LLP
350 Fifth Avenue, Suite 7110
New York, NY   10118

Re: Devin Nunes v. Twitter, Inc., Elizabeth L. "Liz" Mair, Mair Strategies, LLC, et al.,
    Case No.: CL19-1715-00

Dear Mr. Biss, Mr. Seyfarth, Mr. Carome, Ms. Neuhardt, and Mr. Margo,

This matter came before the court on the motions to dismiss without prejudice pursuant to Virginia Code Section 8.01-265 filed by Twitter, Inc., Elizabeth A. Mair and Mair Strategies, LLC. The court makes the following rulings based on the documents filed in the case, the arguments presented at the hearing on August 23, 2019 and the information submitted by Twitter to the court under seal by letter dated September 11, 2019.

The court has been asked to decide whether Virginia or California is the proper venue for the causes of action brought by the Plaintiff in the Bill of Complaint. The Plaintiff's claims are for defamation against Elizabeth A. Mair and Mair Strategies, LLC and for negligence against Twitter. A significant factor for the court to consider in its rulings is that the negligence claim against Twitter is totally dependent upon the defamation claim. If there is no finding of defamation, there is no negligence and if there is defamation there may or may not be negligence. Though the defamation claim is not against Twitter, the negligence claim against Twitter rises and falls with the defamation case.

The court will first address Elizabeth A. Mair's and Mair Strategies, LLC's motion to dismiss on grounds of forum non conveniens pursuant to Virginia Code Section 8.01-265 based on the cause of action for defamation arising outside of Virginia.

At the time of the filing of the Bill of Complaint defendant Elizabeth A. Mair resided in Virginia and defendant Mair Strategies, LLC was a Virginia limited liability company.(Hereinafter referred to as "Defendants") The Plaintiff is not a resident of the Commonwealth and alleges that Defendants had twitter accounts and that the Defendants' postings in Virginia to the internet concerning him were defamatory.

The court recognizes that the Virginia Supreme Court has continued to use "lex loci delicti", the place of the wrong, to tort actions. McMillan v. McMillan, 219 VA 1127. The Plaintiff argues that the postings on the internet occurred in Virginia, so the cause of action arose in Virginia and Virginia Code Section 8.01-265 does not apply making Virginia the appropriate venue for the defamation claim to be heard.

The Honorable Henry E. Hudson in Cockrum v. Donald J. Trump for President, Inc., 365 F. Supp. 3d 668-669 in applying the "lex loci delicti" principle stated "that it remains far from clear how the Supreme Court of Virginia would apply lex loci in situations where defamatory content is published in multiple jurisdictions, such as …. a website that can be accessed worldwide". (citing Kyline Network (Bejing) Movie & Culture Media Co., Ltd. V. Fidlow, 2017 WL 2385343, at *3 n.2(E.D. Va. June 1, 2017). The facts in this case concern use of social media and the alleged defamatory postings were published in multiple jurisdictions at the same time and the court concurs that venue issues have yet to be decided by the Virginia Supreme Court.

This court will apply the "lex loci delicti" principle in this case and rejects the arguments by the Defendants to adopt the significant harm test. The Honorable Bruce D. White has addressed the use of "lex loci delicti" with the posting of alleged defamatory content onto a publication's internet website in the Depp v. Heard case. Judge White used the place of publication to determine where the cause of action arose. This court will attempt to address the place of publication for where the cause of action arose in this case through the posting of alleged defamatory statements on social media platforms.

2

There are numerous cases in Virginia dealing with publication. Publication is uttering the slanderous words to some third person so as to be heard and understood by such person. Thalhimer Bros. v. Shaw, 156 VA 863,871. Publication occurs when a third person reads the slanderous words. Davis v. Heflin, 130 VA 169, 172. Today most communication is done with devices that use technology that relies on digital platforms. Information and messages are sent and received in fractions of a second.

The Defendants argue that the provisions of Virginia Code Section 8.01-265 apply because the cause of action arose outside of the Commonwealth. The arguments in the filings to substantiate this claim center around how once a person posts on twitter the message travels over airwaves to devices in California before they go up on social media and therefore the cause of action arose in California. The time measurement for how fast this occurs is something this court would have to have expert testimony to quantify. If the court accepted this argument, the cause of action for next door neighbors in Virginia who posted defamatory statements on social media about each other in their homes in Virginia would arise in California since the publication occurred there.

The court rejects this argument and finds in this case that the posts to social media were made in Virginia and therefore the publication occurred in Virginia and the cause of action for defamation arose in Virginia. Virginia Code Section 8.01-265 requires that the cause of action arise outside of Virginia and the court denies the Defendants' motion to dismiss without prejudice or transfer to California based on venue and forum non conveniens.

The court now addresses Plaintiff's negligence claim against Twitter and the motion to dismiss for improper venue and forum non conveniens filed by Twitter. The court acknowledges that forum selection clauses like those in the terms of use agreement used by Twitter carry great weight and have been upheld by Virginia Courts. Twitter argues that the forum selection clause in the terms of use agreement for twitter should be applied here making California the proper venue because the Plaintiff has twitter accounts and is therefore subject to the terms of use agreement.

The negligence claim of the Plaintiff against Twitter here arises from the Defendants use of twitter not the Plaintiff's use of twitter. The use of twitter by the Defendants to post allegedly defamatory statements cannot subject the Plaintiff to the terms of use agreement and the forum selection clause as it would not subject a plaintiff who did not have a twitter account to the terms of use agreement. The court finds the terms of use agreement does not apply to the Plaintiff here.

The court next examines the arguments made by Twitter that the court does not have general personal jurisdiction over Twitter. Twitter has registered to do business in Virginia, has a registered agent in Virginia, derives a large amount of advertising revenue from Virginia and has large numbers of Virginia citizens that agree to its terms of use agreement and use its social media platform. There are sufficient minimum contacts with Virginia to confer jurisdiction.

3

Plaintiff relies on the ruling by the Virginia Supreme Court in Witt v. Reynolds Metals, 240 Va. 452, 456 involving "a cause of action arising out of events unrelated to the business conducted in the Commonwealth" where the court found personal jurisdiction over the corporation based on the contacts that existed.  Here the Plaintiff is alleging that Twitter's business is related to the cause of action.  The Witt case involved a plaintiff who resided in Virginia unlike this case where the Plaintiff resides in California but this case involves two defendants in Virginia.

Twitter relies on the U.S. Supreme Court decision in BNSF Railway Co. v. Tyrell, 137 S. Ct. 1549 (2017).  The facts of that case the same as this case involved an out of state Plaintiff and a corporation that did not have its principal place of business in the state, was not incorporated in the state and had employees and business operations in the state.  The Supreme court found there was no personal jurisdiction on the facts in that case.  The Court in BNSF cited Daimler AG v. Bauman 134 S.Ct. 746, 761-762 and stated that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." "Rather, the inquiry calls for an appraisal of a corporation's activities in their entirety"," a corporation that operates in many places can scarcely be deemed at home in all of them." BNSF Railway Co. v. Tyrell, 137 S. Ct. 1549, 1559.

The factual difference in the BNSF case and here is that there was no injury claimed in the state where the suit was filed.  The Plaintiff claims damage to his reputation here but that is primarily based on the defamation claim against the Defendants not the negligence claim against Twitter, though Plaintiff claims the negligence of Twitter allowed the damage to continue.  The Supreme court went on to state in the BNSF case that "In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on claims related to the business it does in Montana. But in-state business, we clarified in Daimler and Goodyear, does not suffice to permit assertions of general jurisdiction over claims...that are unrelated to any activity occurring in Montana." BNSF Railway Co. v. Tyrell 137 S. Ct. 1549,1559.

The Plaintiff has alleged that the tweets by the Virginia Defendants while in Virginia damaged his reputation in Virginia once they were posted on the twitter social media platform and the damage continued as Twitter negligently allowed them to remain on the twitter social media platform.  The damage would be wherever they were read and initially would appear on Defendants' electronic devices.  The business Twitter is engaged in Virginia through its recruitment of users in Virginia to use its social media platform and its generation of advertising revenue from Virginia based on the Virginia citizens using twitter makes the cause of action for defamation and the continued damage from the alleged negligence of Twitter in this case related to Twitter's activity occurring in Virginia.

The negligence claim against Twitter is based on twitter's failing to remove the alleged defamatory comments by Defendants and twitter asserts that any decision regarding that would take place at its offices in California and any actions regarding that would have to be accomplished through the servers in California.  Therefore, Twitter argues the negligence

4

alleged had to occur in California. Based on the ruling in BNSF case the court believes an important issue is whether twitter's business activities and contacts in Virginia are related to the claims for damages for both defamation and negligence.

The Court finds based on the facts alleged in this case and the rulings in both the Witt and BNSF cases that the Court does have general personal jurisdiction over Twitter as even though the negligence for not removing the alleged defamatory comments occurred in California not Virginia, alleged damages from that negligence occurred in Virginia and are directly related to the business activities of Twitter in Virginia.

The Court next examines specific personal jurisdiction pursuant to Virginia's long arm statute contained in Virginia Code Section 8.01-328.1. Plaintiff argues that 8.01-328.1(A)(1), (A)(3), and (A)(4) allows the court to exercise jurisdiction over Twitter. The provisions of (A)(1) applies if the cause of action arose from Twitter's transacting business in the Commonwealth. The court has ruled that the negligence occurred in California so (A)(1) does not confer jurisdiction over the matter to the court as to Twitter.

The provisions of (A)(3) applies if tortious injury is caused by an act or omission in the Commonwealth. The court has ruled the alleged negligence of not removing the comments occurred in California so (A)(3) does not confer jurisdiction over the matter to the court as to Twitter.

The provisions of (A)(4) applies if tortious injury occurs in the Commonwealth by an act or omission outside of the Commonwealth if the entity does or solicits business in the Commonwealth, or engages in any other persistent course of conduct, or derives substantial revenue from...services rendered, in the Commonwealth. Twitter as previously noted does business in the Commonwealth, has a large amount of advertising revenue from that business and regularly recruits users to use its social media platform that is used on a constant basis by the users in Virginia. The court has ruled the act of negligence occurred in another state and Plaintiff alleges damage to reputation in the Commonwealth. The provisions of (A)(4) apply to the facts in this case and subjects Twitter to the jurisdiction of this court.

The court is mindful of the decision in BNSF, but here unlike BNSF the Defendants are in the state where the suit has been filed, there are claims of damage to reputation in Virginia based on the use of Twitter's social media platform in Virginia by the Defendants and the claims against the Defendants and Twitter are interdependent.

The decision by the court that the negligence claim arose outside of the Commonwealth but alleged damages from that negligence occurred in Virginia requires the court to address the forum non conveniens and motion to dismiss arguments by Twitter pursuant to Virginia Code Section 8.01-265. Twitter argues that California is where the Plaintiff resides, where the principal place of business for Twitter is located, where most of the witnesses for both the Plaintiff and Twitter are located and that California law would apply to the claims against Twitter.                    5

Pursuant to Virginia Code Section 8.01-265 one of the considerations is whether there is a more convenient forum that has jurisdiction over all the parties. Defendants as part of their filings have by affidavit consented to California having jurisdiction over them. There has been no argument that California has jurisdiction over the Defendants without the affidavit. The court has ruled that at the time of filing of the case the Defendants were located in Virginia and that jurisdiction is proper for them in Virginia. The court recognizes that the affidavit of Defendants may provide another forum that has jurisdiction over all the parties but at the time of filing there has been no showing that California had jurisdiction over all the parties.

Today, video testimony is the norm in most civil cases to avoid the inconvenience of coming to court. Discovery is also conducted regularly by video depositions. These factors limit inconvenience. The court has considered the fact that the cause of action against Defendants is for defamation and the cause of action against Twitter is for negligence could allow the court to separate the claims and grant one motion to dismiss and deny the other motion to dismiss. Twitter argues based on the inconvenience to Twitter to try the case in Virginia to separate the claims as California is the more convenient forum.

The court refuses to do so as the litigation over the defamation claim will necessarily involve Twitter as the claim relates to the use of Twitter's social media platform and the fact that the negligence claim against Twitter is totally dependent upon the success or failure of the defamation claim. The court has ruled that the Defendants' cases are properly raised in Virginia. The Plaintiff came from California to Virginia to pursue claims that arose in Virginia against Defendants who were in Virginia. The causes of action in this case are interdependent and for the other reasons in this opinion the court will not dismiss the action against Twitter based on forum non conveniens.

The court for the reasons stated in this opinion finds that Virginia is the proper venue for the claims against the Defendants and the interdependent claim against Twitter.

I thank you all for the presentation of the issues and for all the information that was provided to me. Mr. Biss please prepare the order.

Sincerely,

John Marshall, Judge

6

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California 93291.

4

5

On January 8 , 2021, I served the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TWITTER'S MOTION TO TRANSFER VENUE** on all interested parties, addressed as follows:

6

7

| | |
|---|---|
| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA 93720<br>Email: brian@whelanlawgroup.com<br>***Attorneys for Defendant, BENJAMIN PAUL MEREDITH***<br><br>***Via email only*** | Thomas G. Sprankling, Esq.<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Email:<br>Thomas.sprankling@wilmerhale.com<br>***Attorneys for Defendant, TWITTER, INC.***<br><br>***Via email only*** |
| Patrick J. Carome, Esq. (*pro hac vice* pending)<br>Ari Holtzblatt, Esq. (*pro hac vice* pending)<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Ave. NW<br>Washington, DC 20006<br>Email: Patrick.carome@wilmerhale.com<br>Ari.holtzblatt@wilmerhale.com<br>***Attorneys for Defendant, TWITTER, INC.***<br><br>***Via email only*** | |

8

9

10

11

12

13

14

15

16

17

18

19

[  ]   **By Personal Service** - I delivered such envelope by hand to the addressee.

20

21

[  ]   **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California. I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

22

23

24

25

26

1   **[ ]      By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to
2   a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or
3   provided for.

4   **[ ]      By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of
5   this declaration to the above interested parties at the listed facsimile transmission telephone number.

6

7   **[ X ]      By Electronic Service:** I sent the afore-described document(s) from email address derek@dwisehartlaw.com to the person(s) at the email addresses listed above.  I did not receive within a reasonable time after transmission any
8   electronic message or other indication that the transmission was unsuccessful.

9   **X   (State)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

10

11   ____   **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

12   Executed on January 8 , 2021, at Visalia, California.

13

14                                            Derek P. Wisehart

15

16

17

18

19

20

21

22

23

24

25

26

1   Thomas G. Sprankling (SBN: 294831)
     Wilmer Cutler Pickering Hale and Dorr LLP
2   2600 El Camino Real, Suite 400
     Palo Alto, CA 94306
3   Telephone: (650) 858-6000
     Facsimile: (650) 858-6100
4   thomas.sprankling@wilmerhale.com
5
     Patrick J. Carome (*pro hac vice* pending)
6   Ari Holtzblatt (*pro hac vice* pending)
     Wilmer Cutler Pickering Hale and Dorr LLP
7   1875 Pennsylvania Avenue, NW
     Washington, DC 20006
8   Telephone: (202) 663-6000
     Facsimile:  (202) 663-6363
9   patrick.carome@wilmerhale.com
     ari.holtzblatt@wilmerhale.com
10

11  *Attorneys for Defendant Twitter, Inc.*

12

13         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14               **FOR THE COUNTY OF TULARE**

15

| | |
|---|---|
| 16  DEVIN G. NUNES, | **CASE NO. VCU284528** |
| 17          Plaintiff, | Hon. Judge Gary L. Paden |
| 18    v. | **TWITTER, INC.'S REPLY IN** |
| 19  BENJAMIN PAUL MEREDITH, TWITTER, INC., | **SUPPORT OF MOTION TO TRANSFER VENUE TO THE** |
| 20  and DOES 1 TO 100, Inclusive, | **SUPERIOR COURT FOR SAN FRANCISCO COUNTY PURSUANT** |
| 21          Defendants. | **TO THE TERMS OF THE PARTIES' VENUE-SELECTION CLAUSE** |
| 22 | |
| 23 | DATE:  January 22, 2021 |
| 24 | TIME:  8:30 AM DEPT:  10 |
| 25 | |
| 26 | Complaint Filed: October 5, 2020 |

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.    The Venue-Selection Clause Should Be Enforced Regardless Of Whether Venue Is Otherwise Proper In Tulare County ................................................................................1

II.   The Venue-Selection Clause Governs Nunes's Claims Against Twitter.....................2

III.  The Venue-Selection Clause Is Enforceable...............................................................5

CONCLUSION ...............................................................................................................6

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### Cases

4

*Amin v. Superior Court,*
    237 Cal. App. 4th 1392 (2015) ..................................................................................5, 6

5

6

*Battaglia Enters, Inc. v. Superior Court of San Diego County,*
    215 Cal. App. 4th 309 (2013) .......................................................................................1

7

*Brown v. Superior Court of Alameda County,*
    37 Cal. 3d 477 (1984) ...................................................................................................5

8

9

*Goodwin v. Bruggeman-Hatch,*
    2014 WL 3057198 (D. Colo. July 7, 2014) ..............................................................3, 4

10

11

*Intershop Commc'ns v. Superior Court of the City & County of San Francisco,*
    104 Cal. App. 4th 191 (2002) .......................................................................................5

12

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459 (1992) ....................................................................................................2

13

14

*Olinick v. BMG Entmt.,*
    138 Cal. App. 4th 1286 (2006) .....................................................................................2

15

16

*Shaw v. Delta Air Lines, Inc.*
    463 U.S. 85 (1983).........................................................................................................3

17

*Stewart v. Preston Pipeline Inc.,*
    134 Cal. App. 4th 1565 (2005) .....................................................................................5

18

19

### Statutes

20

Cal. Bus. & Prof. Code § 17200 .........................................................................................3

21

CCP § 395(a)....................................................................................................................1, 2

22

CCP § 395.5 .....................................................................................................................1, 2

23

24

25

26

27

28

1    Nothing set forth in Plaintiff Nunes's opposition to Twitter's transfer motion alters the

2    conclusion that this case should be transferred to the Superior Court for the County of San Francisco.

3    Nunes does not dispute that by signing up for, and continuing to use, Twitter's online platform, he

4    agreed to abide by Twitter's User Agreement, including Twitter's Terms of Service ("Terms").  Mot.

5    1.  As Twitter has explained (Mot. at 1), the Terms expressly require that "[a]ll disputes" "related" to

6    the "Terms" or to Twitter's "Services" will be brought "solely" in San Francisco County.  Mot. Ex. A

7    at p. 9.  Nunes provides no persuasive reason why this contractual provision does not apply to him and

8    this lawsuit.  The crux of his claims against Twitter is that Twitter failed to abide by those Terms when

9    it allegedly neglected to remove certain content that Nunes did not like (allegedly authored by

10   Defendant Meredith) while allegedly engaging in "censorship" of content that Nunes preferred

11   (authored by Nunes or others who share his political views).  *See* Compl. ¶¶ 13, 15-17, 28-30, 47-48.

12   The lawsuit thus "relate[s]" to the "Terms" and Twitter's "Services," including the use of those

13   Services both by Nunes himself and by Meredith.  Moreover, the venue-selection provision is clearly

14   stated and plainly visible within the Terms.  And even if Nunes had somehow missed the venue-

15   selection provision during his prior review of the Terms, Twitter explicitly drew his attention to the

16   provision in a May 2019 motion to dismiss a different lawsuit filed by Nunes, *see* Second Sprankling

17   Decl. at ¶ 9, and Nunes's continued use of the Twitter Services since then eliminates any possible

18   doubt about his obligation to comply with it.

19                              **ARGUMENT**

20   **I.    THE VENUE-SELECTION CLAUSE SHOULD BE ENFORCED REGARDLESS OF
         WHETHER VENUE IS OTHERWISE PROPER IN TULARE COUNTY**
21

22       Nunes first argues that transfer should be rejected because venue is proper in Tulare County

23   under both CCP § 395(a) and CCP § 395.5.  Opp. 2.  But whether venue is otherwise proper in Tulare

24   County is irrelevant.  As the Court of Appeal has recognized, where the parties have entered into a

25   valid contract containing a venue-selection clause, the court should enforce that clause so long as it

26   provides for venue in a location that is permissible under California's venue statutes.  *See Battaglia*

27   *Enters, Inc. v. Superior Court of San Diego County*, 215 Cal. App. 4th 309, 318 (2013).  That is true

28   even where, as in *Battaglia*, the initial venue that the plaintiff selects would otherwise be a proper

     venue under California's venue statutes.  *Id.* at 313-314.  Here, venue in San Francisco County is

1    statutorily permissible, *see* Mot. 5, which Nunes does not dispute.  As such, CCP §§ 395(a) and

2    395.5 pose no barrier to this Court enforcing the venue-selection clause and transferring this case.[1]

3    **II.   THE VENUE-SELECTION CLAUSE GOVERNS NUNES'S CLAIMS AGAINST**
       **TWITTER**
4

5           Nunes next argues that the Twitter Terms' venue-selection clause does not govern *this*

6    lawsuit, because he is not suing Twitter "under" the parties' contract.  Opp. 3.  But the Court of

7    Appeal has rejected the argument that venue-selection clauses can be enforced only in cases

8    involving "contractual disputes."  *Olinick v. BMG Entmt.*, 138 Cal. App. 4th 1286 (2006) (applying

9    venue and forum selection clause to Fair Employment and Housing Act claim and claim for

10   wrongful termination).  And Twitter's venue-selection clause is broadly written, encompassing "*all*

11   disputes *related to* these [i.e., Twitter's] Terms or the [i.e., Twitter's] Services."  Mot. Ex. A at p. 9

12   (emphasis added).  In *Olinick*,  the Court of Appeal held that even a significantly narrower forum

13   and venue-selection clause than the one at issue here "encompasse[d] all causes of action arising

14   from or related to that agreement, regardless of how they are characterized."  *Olinick*, 138 Cal. App.

15   4th at 1299 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 468-470 (1992)).[2]  There

16   is no basis to read Twitter's venue-selection clause any less broadly.

17          Nunes further errs in arguing that his claims are not "related to" the Twitter "Terms" or

18   Twitter's "Services."  *See* Opp. 3.  His Opposition attempts to gloss over the significance to this

19   case of Twitter's Terms and Services by asserting that he is suing Twitter because Twitter "aided

20   and abetted a two-year campaign of stalking."  *Id.*  But even he is forced to concede that Twitter's

21   Terms are "part of the evidence" on which he intends to rely to "demonstrate[] [that] Twitter had

22   actual knowledge of Meredith and the Doe Defendant's stalking and provided substantial assistance

23

24          [1] In fact, both CCP § 395(a) and CCP § 395.5 explicitly provide that a court may opt to
       transfer a case to a different venue.  *See* CCP § 395(a) (providing for venue "subject to the power
25   of the court to transfer actions or proceedings as provided in this title"); CCP § 395.5 (providing
       for venue "subject to the power of the court to change the place of trial as in other cases").
26
            [2] By its terms, the venue and forum selection clause considered in *Olinick* covered "all
27   disputes *arising under* [the] Agreement."  *Olinick*, 138 Cal. App. 4th at 1296.  Twitter's clause
       provides for venue in San Francisco County for "all disputes *related to* these Terms or the
28   Services."  *See* Mot. Ex. A at 9.

       TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE
       2

1   and encouragement." *Id.*  And the Complaint makes clear that his aiding-and-abetting claim is

2   closely tied to both Twitter's Terms and the provision of Twitter's Services.  The fourth paragraph

3   in the Complaint's section labeled "aiding and abetting," for example, states as follows:

4       Twitter provided substantial assistance and encouragement . . . by . . . (c)

5       ***intentionally abandoning and refusing to enforce its Terms of Service and Rules***
        against Meredith and others who harass Plaintiff with the express purpose to facilitate

6       the stalking, (d) completely ignoring lawful complaints about Meredith's repeated
        ***violations of the Twitter Terms of Service and Rules***, . . . and (i) by misrepresenting

7       that Twitter is ***accountable for its actions and for the enforcement of its Terms of
        Service, Rules and policies***.

8

9   Compl. ¶ 29 (emphasis added).  In other words, Nunes aims to satisfy the legal test for "aiding and

10  abetting" (the provision of "substantial assistance and encouragement" to Mr. Meredith's alleged

11  stalking) by showing that Twitter violated its Terms when it allegedly refused to block Meredith

12  from using Twitter's Services.  These allegations, which both reference the Terms and rely on them,

13  clearly "relate to" to the Terms.  *See Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 96-97 (1983) ("A

14  law 'relates to' [a document], in the normal sense of the phrase, if it has a connection with or

15  reference to [the document].").  Nunes's allegations also "relate to" his use of Twitter's "Services,"

16  as he asserts that Twitter wrongfully permitted Defendant Meredith to "harass" Nunes "on Twitter."

17  Compl. ¶ 29.  And the allegations obviously relate to Meredith's use of Twitter's "Services" to

18  allegedly "stalk" and "harass" Nunes, *id.*, which is itself a sufficient basis for the Court to hold that

19  the Terms' venue-selection provision governs here. Mot. 4; *Goodwin v. Bruggeman-Hatch*, 2014

20  WL 3057198, at *1 (D. Colo. July 7, 2014) (the term "Services" in Twitter's Terms "is not cabined

21  to *plaintiff*'s use of the Services," but is rather "sufficiently expansive" to reach claims that another

22  person used those services to injure the plaintiff).[3]

23      The same is also true of Nunes's other claim against Twitter—for alleged violation of

24  California's Unfair Competition Law ("UCL").  The UCL prohibits "unfair competition," meaning

25  "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; *see*

26  *also* Compl. ¶ 40.  Twitter's alleged "acts" and "practices" that Nunes claims are "unlawful, unfair,

27

28      [3] Exhibit 1 to this Reply is a compendium of out-of-state authority cited in Twitter's
    opening motion and reply.

1   or fraudulent" include: (1) Twitter allegedly making "multiple untrue and deceptive statements . . .

2   in its Terms of Service and Rules;" (2) Twitter allegedly "misrepresent[ing] that it uniformly

3   enforces its Terms and Rules;" (3) Twitter's "policy of institutional censorship of conservative

4   viewpoints [and] shadow-bann[ing] users, including Plaintiff . . . whose viewpoints or ideology did

5   not fall in line with the agenda of Twitter;" and (4) Twitter's "aid[ing] and abet[ing] Meredith's

6   stalking." Compl. ¶ 47.   These allegations, like the aiding-and-abetting allegations, rely on and

7   incorporate Twitter's Terms, and are based on Twitter's provision of its "Services" to both Nunes

8   and others, including Meredith.

9        The 2019 decision from Virginia's Circuit Court of Henrico County that Nunes cites (Opp.

10   4) provides no basis to avoid the venue-selection clause, for three reasons. *First*, Nunes bases his

11   entire theory of liability in the present case on Twitter's alleged inconsistent enforcement of the

12   Twitter Terms. *See supra* 2-3. The Virginia decision did not grapple with any such allegations.

13   *Second*, the Virginia decision was premised on that court's belief that the negligence claim against

14   Twitter in that case was based on "[another] Defendant's use of twitter not the Plaintiff's use of

15   twitter." Opp. 4; Opp. Ex. A at 3. Here, both of Nunes's claims against Twitter are based, at least

16   in part, on *Nunes's* use of Twitter.   Specifically, Nunes's stalking claim is based in part on

17   allegations that Twitter allowed Meredith to interfere with Nunes's own ability to use Twitter. *See*

18   Compl. ¶ 9 and n.7 (alleging that Meredith engaged in harassing conduct through "tag[ging]" Nunes

19   on Twitter).   And his UCL claim is based on allegations that Twitter "implemented a policy of

20   institutional censorship" that included "shadow-bann[ing]" some Twitter accountholders, including

21   Nunes himself. Compl. ¶ 47; *see also* Compl. ¶ 5 (alleging Twitter "has even gone so far as to

22   censor and shadow-ban [Nunes]"); Compl. ¶ 11 (alleging "Twitter and its CEO, Jack Dorsey,

23   actively censor and discriminate against [Nunes]"). *Finally*, the Virginia decision neglected to

24   consider cases such as *Goodwin v. Bruggeman-Hatch*, 2014 WL 3057198, at *1, which have applied

25   Twitter's venue-selection clause to claims that are based on a third party's (such as Meredith's) use

26   of Twitter.

27        As a last-ditch effort, Nunes suggests that the 2019 Twitter Terms, rather than the 2020

28   Twitter Terms that Twitter attached to its Motion, are the relevant Terms for the Court to consider.

1    Opp. 3-4. But the 2019 Terms (as well as all prior versions of Twitter's Terms since September

2    2016) contain the same venue-selection clause. *See* Second Sprankling Declaration at ¶ 4. Thus,

3    even if it is proper for the Court to treat the 2019 Terms as governing for purposes of this case,

4    doing so does not alter the conclusion that this case should be transferred to San Francisco.

5          Finally, as Twitter has explained (Mot. 2), transfer of all claims is required so long as "any

6    one cause of action" should be transferred. *Brown v. Superior Court of Alameda County*, 37 Cal.

7    3d 477, 488 (1984). Here, it is clear that *both* the aiding-and-abetting claim *and* the UCL claim

8    "relate to" the Twitter Terms and Services. Transfer of the entire action (or, at a minimum, all

9    claims against Twitter) is therefore warranted.

10    **III.   THE VENUE-SELECTION CLAUSE IS ENFORCEABLE**

11          Nunes is also wrong in arguing that the venue-selection clause can simply be disregarded.

12    His contention that the clause is "unconscionable" because Twitter's Terms are an "adhesion

13    contract" (Opp. 5) is meritless. Under the law of this state, "a contract of adhesion is nonetheless a

14    valid and existing contract." *Intershop Commc'ns v. Superior Court of the City & County of San*

15    *Francisco*, 104 Cal. App. 4th 191, 201 (2002). And any forum (or venue) selection provision in

16    such a contract will be enforced "as long as the clause provided adequate notice to the [party] that

17    he was agreeing to the jurisdiction cited in the contract." *Id.* 201-202. Here, Twitter's venue-

18    selection clause is centrally located in the contract and spells out in plain language that "[a]ll

19    disputes related to these Terms or the Services will be brought solely in the federal or state courts

20    located in San Francisco County, California, United States." Mot. Ex. A at p. 9. The Terms also

21    prominently provide that, by agreeing to the Terms, "you consent to personal jurisdiction and waive

22    any objection as to inconvenient forum." *Id.*

23          Even if Nunes had somehow not noticed the venue-selection provision during his initial

24    review of the contract (Opp. 5), and even if (contrary to California law[4]) such unawareness could

---

26        [4] It is well-established that failure to read a contract before assenting to it is not a defense against the contract's enforcement. *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588

27    (2005) ("one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."); *Amin v. Superior Court*, 237 Cal. App. 4th 1392,

28    1406 (2015) ("one who agrees to a contract is generally presumed to know its contents and cannot

excuse his non-compliance with the provision, that argument too would be unavailing.  In May of 2019, in its first of two motions to dismiss Nunes's prior lawsuit in Virginia against Twitter and other Twitter accountholders, Twitter directly confronted Nunes and his counsel with the same venue-selection provision.  *See* Second Sprankling Declaration at ¶ 9; Opp. Ex. A at 3.  That motion to dismiss also explicitly spelled out that the Twitter Terms provide that by continuing to use Twitter's Services, a person agrees to be bound by the Terms.  Second Sprankling Declaration at ¶ 9; *see also* Ex. B at p. 1.  That fact, together with Nunes's continued personal use of Twitter's Services since May 2019, further confirms that he is bound by the Terms, including the venue-selection provision.  *See* Second Sprankling Decl. at ¶ 10.

Finally, Nunes also errs in suggesting that transfer should be denied because he supposedly cannot receive an impartial trial in San Francisco County due to the purported "domina[nce]" of "big tech" and Congresswoman Nancy Pelosi.  Opp. 6-7.  Should this case proceed past the motion to dismiss and summary judgment stages, Nunes would have every right to strike any jurors in San Francisco County who he believed were so politically biased against him that they could not give his claims fair consideration—just as he would have such a right to strike such jurors in Tulare County.  And of course, there is no reason to believe that a state court judge in San Francisco will be unable to adjudicate the claims in this case fairly.

## CONCLUSION

For the foregoing reasons, the Court should enforce the parties' venue-selection clause and transfer venue to San Francisco County.

---

escape its terms simply by contending he or she did not read them.").

1    January 14, 2021                              Respectfully Submitted,

2

3                                                  /s/ Thomas G. Sprankling
                                                   Thomas G. Sprankling (SBN: 294831)
4                                                  Wilmer Cutler Pickering Hale and Dorr LLP
                                                   2600 El Camino Real, Suite 400
5                                                  Palo Alto, CA 94306
                                                   Telephone: (650) 858-6000
6                                                  Facsimile: (650) 858-6100
                                                   thomas.sprankling@wilmerhale.com
7

8                                                  Patrick J. Carome (*pro hac vice* pending)
                                                   Ari Holtzblatt (*pro hac vice* pending)
9                                                  Wilmer Cutler Pickering Hale and Dorr LLP
                                                   1875 Pennsylvania Avenue NW
10                                                 Washington, DC 20006
                                                   Telephone: (202) 663-6000
11                                                 Facsimile: (202) 663-6363
                                                   patrick.carome@wilmerhale.com
12                                                 ari.holtzblatt@wilmerhale.com
                                                   ***Attorneys for Defendant Twitter, Inc.***
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE
7

## CALIFORNIA STATE COURT PROOF OF SERVICE
*Nunes v. Meredith, et al.*
Tulare County Superior Court Case No. VCU284528

At the time of service, I was over the age of 18 and not a party to this action.  I am employed in the County of Santa Clara, State of California.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and my electronic service address is Thomas.Sprankling@wilmerhale.com.

On January 14, 2021, I caused the foregoing document described as:
**TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY PURSUANT TO THE TERMS OF THE PARTIES' VENUE-SELECTION CLAUSE**

to be electronically served on the interested parties listed below, pursuant to California Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's express written consent to electronic service via emails to myself and my colleagues dated December 23, 2020.

Derek P. Wisehart (SBN: 178100)
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Telephone: (559) 636-9473
Facsimile:  (559) 636-9476
derek@dwisehartlaw.com

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile:  (202) 318-4098
stevenbiss@earthlink.net
*Attorneys for Plaintiff Devin G. Nunes*

Brian D. Whelan (SBN 256534)
Whelan Law Group
1827 East Fir Avenue, Suite 110
Fresno, CA 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
brian@whelanlawgroup.com
*Attorney for Defendant Benjamin Meredith*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE

8

1   Executed on January 14, 2021 at Redwood City, California.

2

3

4   _____

Thomas G. Sprankling

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

# Compendium of out of state authority

*Goodwin v. Bruggeman-Hatch*, No. 13-cv-02973-REB-MEH, 2014 WL 3057198 (D. Colo. July 7, 2014)

*Rudgayzer v. Google, Inc.*, 986 F.Supp.2d 151 (E.D.N.Y. 2013)

2014 WL 3057198

2014 WL 3057198
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Jon A. GOODWIN, an individual, directly
and derivatively in the right of and for
the benefit of Barra Partners, LLC, a
Delaware limited liability company, Plaintiff,
v.
Marcia Ann BRUGGEMAN–HATCH,
an individual, et al. Defendants.

Civil Action No. 13–cv–02973–REB–MEH
|
Signed July 7, 2014

**Attorneys and Law Firms**

Jon A. Goodwin, Denver, CO, pro se.

Alex C. Myers, Frederick J. Baumann, Lewis Roca Rothgerber LLP, Kathryn Reed Debord, Peter John Korneffel, Jr., Bryan Cave LLP, Terry Cipoletti, Fennemore Craig, P.C., Michael Alex Sink, Perkins Coie LLP, Peter W. Ito, Ito Law Group LLC, Denver, CO, Robert Jack Buccieri, Long & Levit LLP, William Fields Alderman, Orrick, Herrington & Sutcliffe, LLP, Joshua David Nelson Hess, Dechert LLP, San Francisco, CA, Jonathan B. Boonin, Hutchinson, Black and Cook, LLC, Boulder, CO, Christopher Brian Little, Michael Robert McCormick, Montgomery Little & Soran, P.C., Greenwood Village, CO, Anthony William Gomez, Crowell & Moring, LLP, Irvine, CA, Ronald Harry Nemirow, Christopher Phillips Brown, Nemirow Perez P.C., Lakewood, CO, Todd H. Master, Howard Rome Martin & Ridley, Redwood City, CA, J. Lucas McFarland, Evans & McFarland, LLC, Golden, CO, for Defendants.

Michael Douglas Bock, Centennial, CO, pro se.

**ORDER RE: RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Blackburn, United States District Judge

*\*1* The matters before me are (1) the **Recommendation of United States Magistrate Judge** [# 308],[1] filed May 28, 2014; and (2) **Plaintiff's Objection to Magistrate Judge Hegarty's Recommendation [# 308] To Grant Twitter,**

**Inc.'s Motion To Dismiss** [# 320], filed June 11, 2014. I sustain the objection in part, overrule it in part, and grant the underlying motion to dismiss.

1   "[# 308]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Plaintiff is proceeding *pro se.* Thus, I have construed his pleadings more liberally and held them to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Andrews v. Heaton,* 483 F.3d 1070, 1076 (10th Cir.2007); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)).

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the recommendation to which objections have been filed. Thus, I have considered carefully the recommendation, objections, and applicable caselaw.

Plaintiff's claims against Twitter arise from two separate sets of factual allegations. In the first, plaintiff alleges causes of action arising from Twitter's 2010 response to a subpoena issued by the California state court in the underlying defamation action. The second arises from Twitter's removal of a threatening tweet that purportedly originated from plaintiff's Twitter account. The magistrate judge recommends that the motion to dismiss be granted on the basis of a valid forum-selection clause contained within Twitter's Terms of Service, which provides, relevantly, that

> [a]ll claims, legal, proceedings or litigation arising in connection with the Services shall be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum.

(**Def. Motion App.**, Exh. 1 at 5.)

I agree with the magistrate judge that this language is sufficiently comprehensive to encompass plaintiff's claims

Goodwin v. Bruggeman-Hatch, Not Reported in Fed. Supp. (2014)

2014 WL 3057198

emanating from the tweet that ostensibly was posted by a third party from plaintiff's account. Although plaintiff alleges that he did not post the tweet, the forum-selection clause is not cabined to *plaintiff's* use of the Services.[2] The language encompassing "all claims ... arising in connection with the Services" is sufficiently expansive to bring plaintiff's allegations within the ambit of the forum-selection clause. To that extent, therefore, I approve and adopt the recommendation.

[2]    "Services" is defined, tautologically, to include "the services and Twitter's websites." (**Def. Motion App.,** Exh. 1 at 1.)

However, I do not grant the motion to dismiss on the ground of *forum non conveniens* because the magistrate judge's analysis fails to account further for plaintiff's allegations regarding Twitter's response to the subpoena. These allegations do not implicate Twitter's Services at all, and thus the forum-selection clause is irrelevant to such claims. To that extent, therefore, I must respectfully reject the magistrate judge's recommendation.

**\*2** Nevertheless, I agree with Twitter that the amended complaint fails to plausibly allege valid RICO, COCCA, or state law claims for relief.[3] Assuming *arguendo* that the amended complaint adequately asserts the other elements of a RICO[4] and COCCA[5] claim—an assumption not at all borne out by perusal of the pleading—plaintiff plainly has failed to allege adequate facts (as opposed to mere conclusions) to plausibly suggest the existence of a RICO enterprise. *See* 18 U.S.C. § 1961(4) (RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"); *Gottstein v. National Association for Self Employed,* 53 F.Supp.2d 1212, 1219 (D.Kan.1999) ("A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making.") (citations and internal quotation marks omitted). The vague allusions in the amended complaint to "relationships" between Twitter and other defendants is completely unsubstantiated by any fact that might even hint at the existence of a RICO enterprise. I therefore find and conclude that these claims must be dismissed pursuant to Rule 12(b)(6).[6]

[3]    Twitter's invocation of the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701 *et seq,* as prohibiting claims based on its response to the subpoena is unavailing. The safe harbor provided by the Act applies to court-ordered disclosures in criminal investigations. *See* 18 U.S.C. § 2703(d).

[4]    The elements of a cause of action under RICO are (1) that defendant participated in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Tal v. Hogan,* 453 F.3d 1244, 1269 (10th Cir.2006). The existence of an enterprise requires proof (1) of an ongoing organization with a decision-making framework or mechanism for controlling the group; (2) that the various associates function as a continuing unit; and (3) that the enterprise exists separate and apart from the pattern of racketeering activity. *United States v. Sanders,* 928 F.2d 940, 943–44 (10th Cir.1991), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991); *Internet Archive v. Shell,* 505 F.Supp.2d 755, 769 (D.Colo.2007).

[5]    The elements of a claim under COCCA mirror those of a RICO claim. *See* §§ 18–17–103(2) & 18–17–103(3), C.R.S. Because plaintiff's RICO and COCCA claims thus are coextensive with one another, failure to plead a plausible RICO claim is fatal to any COCCA claim as well. *See Brooks v. Bank of Boulder,* 891 F.Supp. 1469, 1478 (D.Colo.1995).

[6]    Plaintiff's request for leave to amend his complaint —both in his response to the motion and in his objections to the recommendation—to attempt to assert valid claims is procedurally improper. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate document."); *Health Grades, Inc. v. MDX Medical, Inc.,* 2012 WL 4351601 at \*1 (D.Colo. Sept. 24, 2012) (in regard to party's request for relief made in objections to recommendation of magistrate judge, "[t]he merits of any such request was [sic] not before the Court, as plaintiff had not filed a motion requesting any court action.").

Likewise, plaintiff has failed to adequately plead any facts supporting his purported state law claims as against Twitter specifically. Instead, plaintiff alleges these claims globally

Case 1:21-cv-00078-NONE-BAM  Document 1  Filed 01/20/21  Page 264 of 295
Goodwin v. Bruggeman–Hatch, Not Reported in Fed. Supp. (2014)
2014 WL 3057198

against "defendants" or "the RICO defendants." Such group pleading is insufficient to meet satisfy plaintiff's pleadings burden. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir.2008) ("[I]t is particularly important in such circumstances [where multiple defendants are sued] that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."); *Chambers v. Cooper,* 2014 WL 561371 at *1 (D. Colo. Feb. 12, 2014). These claims therefore also are properly dismissed pursuant to Rule 12(b)(6) as well.

**\*3  THEREFORE, IT IS ORDERED** as follows:

1. That the **Recommendation of United States Magistrate Judge** [# 308], filed May 28, 2014, is **APPROVED AND ADOPTED** in part and respectfully **REJECTED IN PART,** as follows:

   a. That the recommendation is **APPROVED AND ADOPTED** as an order of this court insofar as it recommends dismissal of plaintiff's claims relating to the alleged posting by a third party under plaintiff's Twitter account; and

   b. That in all other respects, the recommendation is respectfully **REJECTED** as more fully detailed in this Order;

2. That the objections stated in **Plaintiff's Objection to Magistrate Judge Hegarty's Recommendation [# 308] To Grant Twitter, Inc.'s Motion To Dismiss** [# 320], filed June 11, 2014, are **SUSTAINED IN PART** and **OVERRULED IN PART** as follows:

   a. That the objection is **SUSTAINED** insofar as it implicates plaintiff's claims relating to Twitter's compliance with the subpoena issued by the California state court; and

   b. That in all other respects, the objection is **OVERRULED;**

3. That **Twitter, Inc's Motion To Dismiss** [# 19], filed November 26, 2013, is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

   a. That the motion is **GRANTED:**

      (1) On the basis of the forum selection clause, with respect to plaintiff's claims relating to the alleged posting by a third party under plaintiff's Twitter account based on the application of a valid forum selection clause; and

      (2) For failure to state a claim on which relief may be granted, with respect to plaintiff's claims relating to Twitter's compliance with the subpoena issued by the California state court; and

   b. That in all other respects, the motion is **DENIED AS MOOT;**

4. That plaintiff's claims against Twitter, Inc., are **DISMISSED WITHOUT PREJUDICE;**

5. That at the time judgment enters, judgment without prejudice **SHALL ENTER** on behalf of defendant, Twitter, Inc., against plaintiff, Jon A. Goodwin, as to all claims and causes of action asserted against this defendant herein; and

6. That defendant, Twitter, Inc., is **DROPPED** as a named party to this action, and the case caption **AMENDED** accordingly.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 3057198

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

986 F.Supp.2d 151
United States District Court,
E.D. New York.

RUDGAYZER, et al., Plaintiff,

v.

GOOGLE, INC., Defendant.

No. 13 CV 120(ILG)(RER).
|
Nov. 15, 2013.

**Synopsis**
**Background:** E-mail account holders brought action against provider of Internet-related services and products, alleging that provider violated the Stored Communications Act (SCA) by making public their private information without their consent. Provider moved to dismiss or, in the alternative, to transfer venue.

**Holdings:** The District Court, Glasser, J., held that:

[1] venue and forum selection clause in parties' agreement was valid, and

[2] forum selection clause was enforceable.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss.

West Headnotes (12)

[1]     **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses
Clause in agreement between e-mail account holders and provider of Internet-related services and products providing that parties agreed "to submit to the exclusive jurisdiction of the courts located within the county of Santa Clara, California to resolve any legal matter arising from the Terms" was both a valid venue selection clause and a forum selection clause, where it limited litigation to a particular county within state of California, and it complied with

California's venue laws by providing for venue in county of provider's principal place of business. West's Ann.Cal.C.C.P. § 395.5.

1 Cases that cite this headnote

[2]     **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses
Under California law, courts distinguish between forum selection clauses, which concern the place of jurisdiction and are valid, and venue selection clauses, which concern the specific location within that jurisdiction where a case may be heard and are invalid.

[3]     **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses
Under California law, venue selection clauses may not specify a county outside of those provided for in the state's venue laws. West's Ann.Cal.C.C.P. § 395.5.

[4]     **Contracts** ⬅ Legal remedies and proceedings
A choice-of-law clause governs only substantive law, not procedural law.

[5]     **Federal Courts** ⬅ Agreement as to place of bringing suit; forum selection clauses
Questions of venue and forum are procedural, and, thus, the enforceability of a forum selection clause is governed by federal law.

2 Cases that cite this headnote

[6]     **Contracts** ⬅ Legal remedies and proceedings
**Federal Courts** ⬅ Waiver, estoppel, and consent
An enforceable forum selection clause is grounds for dismissal for improper venue. Fed.Rules Civ.Proc.Rule 12(b)(3), 28 U.S.C.A.

1 Cases that cite this headnote

Rudgayzer v. Google, Inc., 986 F.Supp.2d 151 (2013)

**[7]** **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses

**Contracts** ⬅ Legal remedies and proceedings

A forum selection clause is presumed enforceable if: (1) the moving party shows that the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory under state contract law; and (3) the claims and parties involved in the suit are subject to the clause under state contract law.

**[8]** **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses

The nonmoving party may rebut presumption of enforceability of a forum selection clause by demonstrating that enforcement would be unreasonable or unjust.

2 Cases that cite this headnote

**[9]** **Federal Courts** ⬅ Evidence; Affidavits

The court accepts facts alleged in the complaint as true, and may rely on facts outside of, as well as within, the pleadings when addressing a motion to dismiss for improper venue. Fed.Rules Civ.Proc.Rule 12(b)(3), 28 U.S.C.A.

**[10]** **Contracts** ⬅ Agreement as to place of bringing suit; forum selection clauses

**Contracts** ⬅ Legal remedies and proceedings

Forum selection clause in clickwrap agreement between e-mail account holders and provider of Internet-related services and products was enforceable, where it was reasonably communicated to holders, it was plainly mandatory in that it required suits to be brought in the selected forum and venue, holders' claims that provider violated the Stored Communications Act (SCA) by making public their private information without their consent were within scope of the clause, which specified a particular forum and venue for resolution of any legal matter arising from agreement, and enforcement of the clause would be reasonable and just. 18 U.S.C.A. § 2701 et seq.

1 Cases that cite this headnote

**[11]** **Copyrights and Intellectual Property** ⬅ Contracts

"Clickwrap" agreements, which require a user's assent as a prerequisite for using the services, are considered reasonably communicated.

1 Cases that cite this headnote

**[12]** **Federal Civil Procedure** ⬅ In general; injury or interest

**Federal Courts** ⬅ Necessity of Objection; Power and Duty of Court

**Federal Courts** ⬅ Necessity of Objection; Power and Duty of Court

Jurisdictional questions, such as standing, usually must be addressed before merits questions, but a court may bypass jurisdictional questions and dispose of an action on the ground of improper venue if considerations of convenience, fairness, and judicial economy so warrant.

**Attorneys and Law Firms**

*152 Todd C. Bank, Law Office of Todd C. Bank, Kew Gardens, NY, for Plaintiff.

Dennis C. Hopkins, Perkins Coie LLP, New York, NY, Rebecca S. Engrav, Susan D. Fahringer, Perkins Coie LLP, Seattle, WA, for Defendant.

MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiffs Albert Rudgayzer, Michael Amalfitano, and Lillian Ganci ("Plaintiffs") bring this action against Google, Inc. ("Google"), alleging violations of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712, for purportedly making public their private information without their consent.

Two motions are before the court. First, Google has moved to dismiss this action for improper venue, or in the alternative to transfer it to the Northern District of California for more convenient venue. Second, Google has moved to dismiss the complaint for lack of standing and failure to state a claim. Google's venue motion is GRANTED to the extent it requests dismissal and DENIED as moot to the extent it requests transfer. Google's motion to dismiss for lack of standing and failure to state a claim is DENIED as moot.

## BACKGROUND

The following facts are taken from the Plaintiffs' complaint as well as from extrinsic documents that the Court may consider in ruling on these motions. *See Serdarevic v. Centex Homes, LLC,* 760 F.Supp.2d 322, 328 (S.D.N.Y.2010). Google launched Buzz, a social networking tool, on February 9, 2010. Complaint dated January 8, 2013 [Dkt. No. 1] ("Compl.") at ¶ 12. For those Gmail users who had previously created public Google profiles for themselves, Buzz automatically made public a list of people with whom the user had frequently emailed or chatted. *Id.* at ¶¶ 12, 16, 20. The plaintiffs had Gmail accounts when Buzz was launched, though they do not say **\*153** whether they had public profiles at that time. *Id.* at ¶ 23.

On July 30, 2010, a group of named plaintiffs filed a consolidated and amended class-action complaint in the Northern District of California, for a class consisting of all Gmail users, alleging that Buzz violated federal and state privacy laws by making Gmail users' contact lists public without consent. Memorandum in Support of Google's Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction [Dkt. No. 11–1] ("Def.'s State a Claim Mem.") at Ex. A. All three plaintiffs in this case were part of the putative class in the 2010 case. Compl. at ¶ 1. The parties agreed to settle on September 2, 2010; Google's primary concessions were to make Buzz opt-in rather than opt-out and to pay $8.5 million to nonprofit organizations promoting internet privacy. Def.'s State a Claim Mem. at Ex. B. The district court preliminarily approved the settlement on October 7, 2010, and gave putative class members 60 days to request exclusion. *Id.* at Ex. C. Rudgayzer successfully excluded himself from the class. Compl. at ¶ 32. Amalfitano's request for exclusion was deemed late, which he attributes to an inconsistent deadlines in the settlement agreement and class notice. *Id.* at ¶¶ 25–29, 34. Ganci did not attempt to exclude herself from the class, but says she would have if she had

been aware of inconsistencies between the class notice and settlement agreement regarding the deadline for exclusion, criteria for opting out, and the definition of the class. *Id.* at ¶¶ 30, 36. One class member challenged the settlement agreement on the basis of these inconsistencies. Def.'s State a Claim Mem. at Ex. F. The district court rejected the challenge and finally approved the class on June 2, 2011. *Id.* at Ex. E.

The Plaintiffs filed their complaint in this court on January 8, 2013. Dkt. No. 1. Google filed two motions on February 19, one to dismiss or transfer the action on the basis of improper or inconvenient venue and one to dismiss the complaint for lack of standing and failure to state a claim. Def.'s State a Claim Mem.; Memorandum in Support of Google's Motion to Dismiss or Transfer for Improper Venue [Dkt. No. 12] ("Def.'s Venue Mem."). The Plaintiffs filed responses in opposition to both of Google's motions on June 10. Plaintiffs' Opposition to Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Standing [Dkt. No. 27] ("Pls.' State a Claim Opp'n"); Plaintiffs' Opposition to Defendant's Motion to Dismiss or Transfer for Improper Venue [Dkt. No. 22] ("Pls.' Venue Opp'n"). Google filed replies in support of both of its motions on July 31. Reply in Support of Google's Motion to Dismiss for Failure to State a Claim and Lack of Standing [Dkt. No. 30] ("Def.'s State a Claim Reply"); Reply in Support of Google's Motion to Dismiss or Transfer for Improper Venue [Dkt. No. 29] ("Def.'s Venue Reply").

## DISCUSSION

### I. Motion to Dismiss or Transfer for Improper or Inconvenient Venue

Google argues that this action should be dismissed under Federal Rule of Civil Procedure 12(b)(3) for contravening a forum-selection clause that sets venue in Santa Clara County, California. Def.'s Venue Mem. at 7–18. The forum-selection clause reads: "You and Google agree to submit to the exclusive jurisdiction of the courts located within the county of Santa Clara, California to resolve any legal matter arising from the Terms." Declaration of Marc S. Crandall in Support of Google's Motion to Dismiss or Transfer for Improper Venue [Dkt. No. 12–10] ("Crandall Decl.") at **\*154** Ex. B ¶ 20.7. [1] The agreement also contains a separate choice-of-law clause, which provides that the agreement "shall be governed by the laws of the State of California." *Id.*

1     An earlier version of the clause read: "Any claims, legal proceeding or litigation arising in connection with the Service will be brought solely in Santa Clara County, California, and you consent to the jurisdiction of such courts." *Id.* at Ex. A ¶ 13. It's unclear when the plaintiffs signed up for their Gmail accounts and first agreed to this clause, but it doesn't matter; the earlier version provides that a user would be bound by future changes to the terms, *id.* at Ex. A, and such contract provisions are enforceable. *See TradeComet.com LLC v. Google Inc.,* 693 F.Supp.2d 370, 376 (S.D.N.Y.2010); *MySpace, Inc. v. The Globe.com, Inc.,* No. 06-CV–3391, 2007 U.S. Dist. LEXIS 44143, at \*31–32, 2007 WL 1686966, at \*10 (C.D.Cal. Feb. 27, 2007). Hence, no matter when plaintiffs signed up for their Gmail accounts, they are bound by the clause in effect at the time that Buzz launched in 2010.

Google argues in the alternative that transfer to the Northern District of California is appropriate under 28 U.S.C. § 1404(a). Def.'s Venue Mem. at 18–24. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Plaintiffs respond by asserting that Google's forum-selection clause is in fact a venue-selection clause. Pls.' Venue Opp'n at 5–6 (citing *Alexander v. Superior Court,* 114 Cal.App.4th 723, 8 Cal.Rptr.3d 111, 113 (2003)). Plaintiffs argue that the clause is therefore invalid, reasoning that under *Alexander,* venue can only be determined by California's venue laws, CAL.CIV.PROC.CODE § 395.5, and not by a contractual provision. Pls.' Venue Opp'n at 6–11. Plaintiffs do not contest that they agreed to the forum-selection clause, that the clause is reasonable, and that the clause applies their claims in this case. In response to Google's alternative argument, plaintiffs argue that the case should not be transferred under § 1404(a). *Id.* at 11–16

### a. Plaintiffs' Arguments Regarding California Law

**[1]**     The Court first addresses plaintiffs' argument that the clause is invalid under California law. Plaintiffs contend that the clause is not a forum-selection clause, which is valid in California, but a venue-selection clause, and that it is therefore invalid because venue can only be determined by

California's venue laws, CAL.CIV.PROC.CODE § 395.5. Plaintiffs' argument is entirely incorrect.

**[2]**     First, plaintiffs are incorrect that the clause at issue is not a forum-selection clause. *See* Pls.' Venue Opp'n at 5. California case law does distinguish between forum-selection clauses, which concern the place of jurisdiction, and venue-selection clauses, which concern the specific location within that jurisdiction where a case may be heard. *See Alexander v. Superior Court,* 114 Cal.App.4th 723, 8 Cal.Rptr.3d 111, 113 (2003). But the clause here functions as *both* a venue-selection clause and a forum-selection clause, as it limits litigation to a particular county—a venue—within the state of California—a forum. Plaintiffs assert that "the clauses at issue refer only a [sic] particular county" and not to a particular state, and that the clause therefore only applies "*if* Plaintiffs had brought the action in California." Pls.' Venue Opp'n at 6 (emphasis in original). Plaintiffs are simply wrong. The clause clearly limits all suits to a particular jurisdiction, as it provides for exclusive **\*155** jurisdiction in Santa Clara County, in the state of California.

**[3]**     Second, plaintiffs are incorrect about the validity of venue-selection clauses under California law. The only relevant limitation on venue-selection clauses is that they may not specify a county outside of those provided for in the state's venue laws. *Battaglia Enters., Inc. v. Superior Court,* 215 Cal.App.4th 309, 154 Cal.Rptr.3d 907, 912–13 (2013); *Global Packaging, Inc. v. Superior Court,* 196 Cal.App.4th 1623, 127 Cal.Rptr.3d 813, 816 (2011). California's venue laws provide that a corporation may be sued in (among other places) the county of the corporation's principal place of business. CAL.CIV.PROC.CODE § 395.5. Mountain View, where Google's headquarters are located, is in Santa Clara County. Compl. at ¶ 8. The clause here therefore complies with California's venue laws and so is a valid venue-selection clause under California law.

### b. Enforceability of the Forum–Selection Clause

**[4]**     **[5]**     As noted *supra,* the agreement contains a choice-of-law clause, separate from the forum-selection clause, which provides that the agreement "shall be governed by the laws of the State of California." Crandall Decl. at Ex. B ¶ 20.7. A choice-of-law clause governs only substantive law, not procedural law. *Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 384–85 (2d Cir.2007); *see Cronin v. Family Educ. Co.,* 105 F.Supp.2d 136, 139 (E.D.N.Y.2000). Questions of venue and forum are procedural, so the enforceability of the forum-selection clause is governed by federal law. *Phillips,* 494

F.3d at 384–85; *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990); *BNY AIS Nominees Ltd. v. Quan,* 609 F.Supp.2d 269, 274 (D.Conn.2009); *Schlessinger v. Holland America,* 120 Cal.App.4th 552, 16 Cal.Rptr.3d 5, 9 (2004). In light of the choice-of-law clause, the Court will look to California law when federal law references state contract law. *See Phillips,* 494 F.3d at 384–85; *Prod. Res. Grp. v. Martin Prof'l, A/S,* 907 F.Supp.2d 401, 409–10 (S.D.N.Y.2012). *See generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187, 205 (1971).

### i. Legal Standard

The standard governing a motion to dismiss on the basis of a forum-selection clause is in flux. A majority of circuits, including the Second Circuit, address the enforceability of a forum-selection clause under one of the subsections of Federal Rule of Civil Procedure 12(b), and apply the holding announced in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that a "forum clause should control absent a strong showing that it should be set aside." *See TradeComet.com LLC v. Google, Inc.,* 647 F.3d 472, 476–77 & n. 6 (2d Cir.2011) (collecting cases); *Salovaara v. Jackson Nat'l Life Ins. Co.,* 246 F.3d 289, 298–300 (3d Cir.2001); *Security Watch, Inc. v. Sentinel Sys.,* 176 F.3d 369, 374–75 (6th Cir.1999). Last year, however, the Fifth Circuit held that the enforceability of a forum-selection clause should be addressed under 28 U.S.C. § 1404(a), and accordingly that the existence of such a clause was only one factor among many that a court must consider in deciding whether to transfer a case. *In re Atl. Marine Constr. Co.,* 701 F.3d 736 (5th Cir.2012). The Fifth Circuit acknowledged that it was siding with a minority of the circuits. *Id.* at 739; *see Kerobo v. Southwestern Clean Fuels, Corp.,* 285 F.3d 531 (6th Cir.2002); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir.1995). The Supreme Court granted a certiorari request in *Atlantic Marine Construction* and recently heard argument to resolve this circuit split. *Cert. granted* **\*156** *sub nom. Atl. Marine Constr. Co. v. United States Dist. Court,* —— U.S. ——, 133 S.Ct. 1748, 185 L.Ed.2d 784 (2013). This Court will apply the law that currently controls in the Second Circuit.

**[6]   [7]   [8]**   In this circuit, an enforceable forum-selection clause is grounds for dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3). *TradeComet.com LLC,* 647 F.3d at 478. A forum-selection clause is presumed enforceable if (1) the moving party shows that the clause

was reasonably communicated to the party challenging enforcement, (2) the clause is mandatory under state contract law, and (3) the claims and parties involved in the suit are subject to the clause under state contract law. *Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221, 224 & n. 3 (2d Cir.2011); *Phillips,* 494 F.3d at 383; *Prod. Res. Grp.,* 907 F.Supp.2d at 409. The nonmoving party may rebut this presumption by demonstrating that enforcement would be unreasonable or unjust. *Phillips,* 494 F.3d at 383–84. Because the parties chose to be bound by California law in their choice-of-law clause, California law applies when federal law references state contract law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187, 205 (1971).

**[9]**   The Court accepts facts alleged in the complaint as true. *Zaltz v. JDATE,* 952 F.Supp.2d 439, 447 (E.D.N.Y.2013). The Court may rely on facts outside of, as well as within, the pleadings when addressing a Rule 12(b)(3) motion. *See Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.,* 572 F.3d 86, 89 (2d Cir.2009); *TradeComet.com, LLC,* 693 F.Supp.2d at 375 n. 3

### ii. Analysis

**[10]   [11]**   The forum-selection clause is enforceable. First, the forum-selection clause was reasonably communicated to the plaintiffs. Google requires all users, after seeing a screen listing the terms or a link to the terms, to agree to the terms of use before creating an email account. Crandall Decl. at ¶ 6 & Ex. B ¶ 2.1. Agreements such as this —that require a user's assent as a prerequisite for using the services and are known as "clickwrap" agreements— are considered reasonably communicated. *5381 Partners, LLC v. Shareasale.com, Inc.,* No. 12–CV–4263, 2013 U.S. Dist. LEXIS 136003, at \*21–22, 2013 WL 5328324, at \*6 (E.D.N.Y. Sept. 23, 2013); *Person v. Google, Inc.,* 456 F.Supp.2d 488, 496–97 (S.D.N.Y.2006).

Second, the forum-selection clause is plainly mandatory. It states that Santa Clara County is the "exclusive jurisdiction" for bringing actions arising from the agreement. Crandall Decl. at ¶ 5 & Ex. B. ¶ 20.7. The clause therefore requires —rather than simply permits—suits to be brought in the selected forum and venue. *Phillips,* 494 F.3d at 383; *see also Intershop Commc'ns AG v. Superior Court,* 104 Cal.App.4th 191, 127 Cal.Rptr.2d 847, 850–52 (2002) (concluding that language specifying one place for jurisdiction made clause mandatory); *Berg v. MTC Elec. Techs. Co.,* 61 Cal.App.4th

349, 71 Cal.Rptr.2d 523, 528–30 (1998) (citing cases in which clauses using "shall" or "exclusive" were considered mandatory).

Third, the claims in this case are within the scope of the clause. The clause specifies a particular forum and venue for the resolution of "any legal matter arising from the Terms." Crandall Decl. at Ex. B ¶ 20. California courts read forum-selection clauses very broadly. In *Nedlloyd Lines B.V. v. Superior Court,* the Supreme Court of California held that a choice-of-law clause providing that, "This agreement shall be governed and construed in accordance with Hong Kong law," applied not only to contract disputes but to "all **\*157** causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1150, 1153–55 (1992). The court explained

> Our conclusion in this regard comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship.

*Id.,* 11 Cal.Rptr.2d 330, 834 P.2d at 1154. The Supreme Court of California later clarified that *Nedlloyd* applied not only to agreements between businesses, but also to contracts of adhesion between a business and a consumer. *Washington Mut. Bank v. Superior Court,* 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1079 (2001). And the California Appellate

Court confirmed that the reasoning in *Nedlloyd* applies equally to forum-selection clauses in *Cal–State Business Products & Services, Inc. v. Ricoh,* 12 Cal.App.4th 1666, 16 Cal.Rptr.2d 417, 423–24 (1993). Indeed, the court in *Nedlloyd* had noted that choice-of-law and forum-selection clauses are "closely related." *Nedlloyd,* 11 Cal.Rptr.2d 330, 834 P.2d at 1150. In *Ricoh,* an office-machine dealership sued an office-machine manufacturer for restraint of trade, unfair trade practices, breach of contract, fraud, and negligent misrepresentation, after their business relationship soured. *Ricoh,* 16 Cal.Rptr.2d at 421. The Court concluded that a clause requiring that "any case or controversy arising under or in connection with the Agreement" be brought in New York encompassed all of the claims at issue: "The entire gist of the complaint in the present action relates to allegedly false promises made in the course of negotiations ... and the subsequent conduct of the relationship between the parties created by the contract. All the causes of action are consequently within the scope of the forum-selection clauses." *Id.* These cases counsel that the forum-selection clause covers plaintiffs' claim of a violation of the SCA. Plaintiffs' claim arises from the parties' "contract-based relationship," and so is governed by the forum-selection clause. *See Nedlloyd,* 11 Cal.Rptr.2d 330, 834 P.2d at 1154.

Finally, the plaintiffs have not shown that enforcing the forum-selection clause would be unreasonable or unjust. The plaintiffs failed to contest Google's argument that enforcement of the clause would be reasonable and just, and have accordingly failed to demonstrate that there is any reason to not enforce the clause.

Given the enforceability of the clause, the Court may either dismiss the action, as Google requests, or "if it be in the interest of justice," transfer it to an appropriate court. *See* 28 U.S.C. § 1406(a). The Court concludes that dismissal is appropriate.[2]

2    The "the interest of justice" does not compel transferring this case. The Second Circuit has made clear that an action should be transferred if it "would be time-barred on refiling in the proper forum." *Gonzalez v. Hasty,* 651 F.3d 318, 324 (2d Cir.2011). This reasoning is not controlling here. Although this action would be time-barred if the plaintiffs had to re-file the action, as the two-year statute of limitations passed last year, *see* 18 U.S.C. § 2707(f), it was also time-barred when it was initially filed in January of this year. The

Rudgayzer v. Google, Inc., 986 F.Supp.2d 151 (2013)

Court will not dismiss the action with prejudice for untimeliness because Google did not raise this affirmative defense and a court is discouraged from raising it sua sponte. *See Pino v. Ryan,* 49 F.3d 51, 53–54 (2d Cir.1995).

**\*158  c. Transfer Under 28 U.S.C. § 1404(a)**

Google has also argued that, in the alternative, the action should be transferred to the Northern District of California under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice. Mem. at 18–25. Because the court has concluded that the action should be dismissed based on the forum-selection clause, this portion of the motion is DENIED as moot.

**II. Motion to Dismiss for Lack of Standing and Failure to State a Claim**

Google argues that the plaintiffs do not have standing because they failed to allege they were actually injured. Def.'s State a Claim Mem. at 8–10. Google also argues that the plaintiffs did not state a claim because they did not plausibly allege that Google made their information public or that it did so without their consent. *Id.* at 10–12.

**[12]**   Jurisdictional questions, such as standing, usually must be addressed before merits questions. But a court may bypass jurisdictional questions and dispose of an action on the ground of improper venue if considerations of convenience, fairness, and judicial economy so warrant. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 550 (4th Cir.2006); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano,* 818 F.Supp.2d 597, 620–21 (E.D.N.Y.2011); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 432, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (concluding that a court may avoid question of jurisdiction and dispose of action based on forum non conveniens). Here, these considerations counsel in favor of bypassing the question of subject matter

jurisdiction and disposing of this case on the basis of improper venue. The issue of venue is completely apart from the merits of the case, whereas Google's contention that the plaintiffs haven't sufficiently alleged actual injury is closely related to the merits of the case (as the caption for their motion suggests). Moreover, Google is entitled to the benefit of the forum-selection clause at the earliest possible moment. *Magi XXI, Inc.,* 818 F.Supp.2d at 621.

Since this court may avoid deciding the question of standing, and the action is adequately disposed of on the basis of the forum-selection clause, Google's motion to dismiss for lack of standing and failure to state a claim is DENIED as moot.

**III. Status of Plaintiff Rudgayzer**

Mr. Rudgayzer passed away in May. Suggestion of Death [Dkt. No. 31]. The parties have not addressed whether he may continue to be a party. *See United States v. Callard,* No. 11–CV–4819, 2013 U.S. Dist. LEXIS 68797, at *11–12, 2013 WL 2022870, at *4 (E.D.N.Y. May 14, 2013). Given the disposition of this case, this Court need not resolve this issue.

**CONCLUSION**

For the foregoing reasons, Google's motion to dismiss or transfer on grounds of venue is GRANTED to the extent it requests dismissal and DENIED to the extent it requests transfer, and Google's motion to dismiss for lack of standing and  **\*159**  failure to state a claim is DENIED. Plaintiffs' claims are dismissed without prejudice.

SO ORDERED.

**All Citations**

986 F.Supp.2d 151

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Thomas G. Sprankling (SBN: 294831)
Wilmer Cutler Pickering Hale and Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
thomas.sprankling@wilmerhale.com

Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

***Attorneys for Defendant Twitter, Inc.***

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF TULARE

| | |
|---|---|
| DEVIN G. NUNES, | **CASE NO. VCU284528** |
| Plaintiff, | Hon. Judge Gary L. Paden |
| v. | |
| BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 TO 100, Inclusive, | **SECOND DECLARATION OF THOMAS G. SPRANKLING IN SUPPORT OF TWITTER, INC.'S MOTION TO TRANSFER VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY PURSUANT TO THE TERMS OF THE PARTIES' VENUE-SELECTION CLAUSE** |
| Defendants. | |
| | DATE: January 22, 2021 TIME: 8:30 AM DEPT: 10 |
| | Complaint Filed: October 5, 2020 |

1                              **DECLARATION OF THOMAS G. SPRANKLING**

2    I , Thomas G. Sprankling, declare as follows:

3    1.    I am an attorney duly licensed to practice before all courts of the State of California.  I have

4          personal knowledge of the matters stated herein and, if called upon, I could and would

5          competently testify thereto.

6    2.    I am an attorney and counsel with the law firm Wilmer Cutler Pickering Hale and Dorr LLP,

7          counsel for Defendant Twitter, Inc. ("Twitter") in the above-captioned civil matter.

8    3.    I submit this Declaration in support of Twitter's Reply In Support of Twitter, Inc.'s Motion

9          To Transfer Venue To The Superior Court For San Francisco County Pursuant To The Terms

10          Of The Parties' Venue-Selection Clause, and regarding the attached Exhibit B.

11    4.    At all times since September 2016, Twitter has had a venue-selection clause in its Terms of

12          Service ("Terms") that reads as follows:

13                  *"All disputes related to these Terms or the Services will be brought solely in the*

14                  *federal or state courts located in San Francisco County, California, United States,*

15                  *and you consent to personal jurisdiction and waive any objection as to inconvenient*

16                  *forum."*

17    5.    Exhibit B to this declaration is a true and correct copy of the Twitter Terms dated May 25,

18          2018 (Version 13 of the Terms), which were in effect from May 25, 2018 until December 31,

19          2019.  Exhibit B is a publicly available document and can also be found at the following web

20          address: https://twitter.com/en/tos/previous/version_13.   The venue-selection clause quoted

21          above appears in Exhibit B at page 9.

22    6.    The venue-selection clause quoted above was also part of the two immediately prior versions

23          of Twitter's Terms (Versions 11 and 12 of the Terms, dated September 30, 2016, and October

24          2, 2017, respectively).  It was also part of the January 1, 2020 version of Twitter's Terms

25          (Version 14), which was the version of the Terms that immediately preceded the current

26

27

28

1      version of the Terms (Version 15).[1]

2   7.   All prior versions of Twitter's Terms are publicly available and can be found at the following

3      web address: https://twitter.com/en/tos/previous.  As review of those prior versions confirms,

4      the versions of the Twitter Terms that were operative from May 17, 2012 until September 29,

5      2016 (Versions 6-10 of the Terms) contained the following venue-selection clause:

6          *"All claims, legal proceedings or litigation arising in connection with the Services*

7          *will be brought solely in the federal or state courts located in San Francisco County,*

8          *California, United States, and you consent to the jurisdiction of and venue in such*

9          *courts and waive any objection as to inconvenient forum."*

10   8.   The versions of the Twitter Terms that were operative from September 10, 2009 until May

11      16, 2012 (Versions 2-5 of the Terms) contained the following venue-selection clause:

12          *"All claims, legal proceedings or litigation arising in connection with*

13          *the Services will be brought solely in San Francisco County, California,*

14          *and you consent to the jurisdiction of and venue in such courts and*

15          *waive any objection as to inconvenient forum."*

16   9.   On May 9, 2019, Twitter filed a motion to dismiss in the case *Nunes v. Twitter, Inc. et al.*,

17      Case No. CL 19-1715-00, in the Circuit Court for the County of Henrico, Virginia. In its

18      memorandum in support of that motion to dismiss, Twitter established—including by

19      submitting as an exhibit its then-current Terms (the same document that is attached hereto as

20      Exhibit B) and by prominently quoting in full the venue-selection clause itself—that the

21      Twitter Terms contain the venue-selection clause quoted in paragraph 4 of this declaration.

22      That Twitter memorandum also explained that the Twitter Terms (*see, e.g.,* Exhibit B to this

23      declaration, at page 1) state that "by using the [Twitter] Services, a user agrees to be bound

24      by the Terms."

25

26

27

28

---

[1] The current version of the Twitter Terms (Version 15) was attached as Exhibit A to the December 23, 2020 Declaration of Thomas G. Sprankling In Support of Twitter, Inc.'s Notice Of Motion And Motion To Transfer Venue To The Superior Court For San Francisco County Pursuant To The Terms Of The Parties' Venue-Selection Clause.

1  10.   Since May 2019, Plaintiff Representative Devin G. Nunes has maintained two publicly
2       available Twitter accounts: @DevinNunes and @RepDevinNunes.  Based on my review of
3       the publicly available information posted on those accounts as of January 13, 2021, the
4       @DevinNunes account contains hundreds of Tweets and Retweets that indicate they were
5       posted since May 8, 2019.  The @RepDevinNunes account contains several dozen Tweets
6       and Retweets that indicate they were posted since May 8, 2019.

7  11.   I declare under penalty of perjury under the laws of California and the United States that the
8       foregoing is true and correct and that this Declaration was executed as of the date shown
9       below at Redwood City, California.

Dated: January 14, 2021            By: _____

                                       Thomas G. Sprankling

## CALIFORNIA STATE COURT PROOF OF SERVICE
*Nunes v. Meredith, et al.*
Tulare County Superior Court Case No. VCU284528

At the time of service, I was over the age of 18 and not a party to this action.  I am employed in the County of Santa Clara, State of California.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and my electronic service address is Thomas.Sprankling@wilmerhale.com.

On January 14, 2021, I caused the foregoing document described as:

**SECOND DECLARATION OF THOMAS G. SPRANKLING IN SUPPORT OF TWITTER, INC.'S MOTION TO TRANSFER VENUE TO THE SUPERIOR COURT FOR SAN FRANCISCO COUNTY PURSUANT TO THE TERMS OF THE PARTIES' VENUE-SELECTION CLAUSE**

to be electronically served on the interested parties listed below, pursuant to California Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's express written consent to electronic service via emails to myself and my colleagues dated December 23, 2020.

Derek P. Wisehart (SBN: 178100)
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Telephone: (559) 636-9473
Facsimile:  (559) 636-9476
derek@dwisehartlaw.com

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile:  (202) 318-4098
stevenbiss@earthlink.net
*Attorneys for Plaintiff Devin G. Nunes*

Brian D. Whelan (SBN 256534)
Whelan Law Group
1827 East Fir Avenue, Suite 110
Fresno, CA 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
brian@whelanlawgroup.com
*Attorney for Defendant Benjamin Meredith*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

SECOND DECLARATION OF THOMAS G. SPRANKLING
5

1

2      Executed on January 14, 2021 at Redwood City, California.

3

4

5                                          _____

6                                          Thomas G. Sprankling

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B



# Twitter Terms of Service

**If you live in the United States**, the Twitter User Agreement comprises these Terms of Service, our Privacy Policy (https://twitter.com/privacy), the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules), and all incorporated policies

**If you live in the European Union or otherwise outside the United States**, the Twitter User Agreement comprises these Terms of Service, our Privacy Policy (https://twitter.com/privacy), the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules), and all incorporated policies.

## Twitter Terms of Service

### If you live in the United States

These Terms of Service ("Terms") govern your access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates) (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates)) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

# 1. Who May Use the Services

You may use the Services only if you agree to form a binding contract with Twitter and are not a person barred from receiving services under the laws of the applicable jurisdiction. In any case, you must be at least 13 years old, or in the case of Periscope 16 years old, to use the Services. If you are accepting these Terms and using the Services on behalf of a company, organization, government, or other legal entity, you represent and warrant that you are authorized to do so and have the authority to bind such entity to these Terms, in which case the words "you" and "your" as used in these Terms shall refer to such entity.

## 2. Privacy

Our Privacy Policy (https://twitter.com/privacy) (https://www.twitter.com/privacy (https://www.twitter.com/privacy)) describes how we handle the information you provide to us when you use our Services. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information, including the transfer of this information to the United States, Ireland, and/or other countries for storage, processing and use by Twitter and its affiliates.

## 3. Content on the Services

You are responsible for your use of the Services and for any Content you provide, including compliance with applicable laws, rules, and regulations. You should only provide Content that you are comfortable sharing with others.

Any use or reliance on any Content or materials posted via the Services or obtained by you through the Services is at your own risk. We do not endorse, support, represent or guarantee the completeness, truthfulness, accuracy, or reliability of any Content or communications posted via the Services or endorse any opinions expressed via the Services. You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

We reserve the right to remove Content that violates the User Agreement, including for example, copyright or trademark violations, impersonation, unlawful conduct, or harassment. Information regarding specific policies and the process for reporting or appealing violations can be found in our Help Center

(https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations)) and https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts (https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts)).

If you believe that your Content has been copied in a way that constitutes copyright infringement, please report this by visiting our Copyright reporting form (https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)) or contacting our designated copyright agent at:

Twitter, Inc.
Attn: Copyright Agent
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)
Email: copyright@twitter.com
(for content on Twitter)

Twitter, Inc.
Attn: Copyright Agent - Periscope
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)Email: copyright@pscp.tv
(for content on Periscope)

# Your Rights and Grant of Rights in the Content

You retain your rights to any Content you submit, post or display on or through the Services. What's yours is yours — you own your Content (and your incorporated audio, photos and videos are considered part of the Content).

By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods (now known or later developed). This license authorizes us to make your Content available to the rest of the world and to let others do the same. You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content

submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by Twitter, or other companies, organizations or individuals, may be made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services.

Twitter has an evolving set of rules for how ecosystem partners can interact with your Content on the Services. These rules exist to enable an open ecosystem with your rights in mind. You understand that we may modify or adapt your Content as it is distributed, syndicated, published, or broadcast by us and our partners and/or make changes to your Content in order to adapt the Content to different media.

You represent and warrant that you have, or have obtained, all rights, licenses, consents, permissions, power and/or authority necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services. You agree that such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission or are otherwise legally entitled to post the material and to grant Twitter the license described above.

# 4. Using the Services

Please review the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) (and, for Periscope, the Periscope Community Guidelines (https://www.pscp.tv/content) at https://www.pscp.tv/content (https://www.pscp.tv/content)), which are part of the User Agreement and outline what is prohibited on the Services. You may use the Services only in compliance with these Terms and all applicable laws, rules and regulations.

Our Services evolve constantly. As such, the Services may change from time to time, at our discretion. We may stop (permanently or temporarily) providing the Services or any features within the Services to you or to users generally. We also retain the right to create limits on use and storage at our sole discretion at any time. We may also remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you.

In consideration for Twitter granting you access to and use of the Services, you agree that Twitter and its third-party providers and partners may place advertising on the Services or in connection with the display of Content or information from the Services whether submitted by you or others. You also agree not to misuse our Services, for example, by interfering with them or accessing them using a method other than the interface and the instructions that we provide. You may not do any of the following while accessing or using the Services: (i) access, tamper with, or use non-public areas of the Services, Twitter's computer systems, or the technical delivery systems of Twitter's providers; (ii) probe, scan, or test the vulnerability of any system or network or breach or circumvent any security or authentication measures; (iii) access or search or attempt to access or search the Services by any means (automated or otherwise) other than through our currently available, published interfaces that are provided by Twitter (and only pursuant to the applicable terms and conditions), unless you have been specifically allowed to do so in a separate agreement with Twitter (NOTE: crawling the Services is permissible if done in accordance with the provisions of the robots.txt file, however, scraping the Services without the prior consent of Twitter is expressly prohibited); (iv) forge any TCP/IP packet header or any part of the header information in any email or posting, or in any way use the Services to send altered, deceptive or false source-identifying information; or (v) interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of Content in such a manner as to interfere with or create an undue burden on the Services. We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to (i) satisfy any applicable law, regulation, legal process or governmental request, (ii) enforce the Terms, including investigation of potential violations hereof, (iii) detect, prevent, or otherwise address fraud, security or technical issues, (iv) respond to user support requests, or (v) protect the rights, property or safety of Twitter, its users and the public. Twitter does not disclose personally-identifying information to third parties except in accordance with our Privacy Policy.

If you use developer features of the Services, including but not limited to Twitter for Websites (https://dev.twitter.com/web/overview) (https://dev.twitter.com/web/overview (https://dev.twitter.com/web/overview)), Twitter Cards (https://dev.twitter.com/cards/overview) (https://dev.twitter.com/cards/overview (https://dev.twitter.com/cards/overview)), Public API (https://dev.twitter.com/streaming/public)https://dev.twitter.com/streaming/public (https://dev.twitter.com/streaming/public)), or Sign in with Twitter (https://dev.twitter.com/web/sign-in) (https://dev.twitter.com/web/sign-in (https://dev.twitter.com/web/sign-in)), you agree to our Developer Agreement (https://dev.twitter.com/overview/terms/agreement)

(https://dev.twitter.com/overview/terms/agreement (https://dev.twitter.com/overview/terms/agreement)) and Developer Policy (https://dev.twitter.com/overview/terms/agreement) (https://dev.twitter.com/overview/terms/policy (https://dev.twitter.com/overview/terms/policy)). If you want to reproduce, modify, create derivative works, distribute, sell, transfer, publicly display, publicly perform, transmit, or otherwise use the Services or Content on the Services, you must use the interfaces and instructions we provide, except as permitted through the Twitter Services, these Terms, or the terms provided on dev.twitter.com (https://dev.twitter.com/).

If you use advertising features of the Services, you must agree to our Twitter Master Services Agreement (https://ads.twitter.com/terms) (https://ads.twitter.com/terms (https://ads.twitter.com/terms)).

If you use Super Hearts, Coins, or Stars on Periscope, you agree to our Super Hearts Terms (https://legal.twitter.com/en/periscope/super/terms.html) (https://legal.twitter.com/en/periscope/super/terms.html (https://legal.twitter.com/en/periscope/super/terms.html)).

# Your Account

You may need to create an account to use some of our Services. You are responsible for safeguarding your account, so use a strong password and limit its use to this account. We cannot and will not be liable for any loss or damage arising from your failure to comply with the above.

You can control most communications from the Services. We may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your account, and you may not be able to opt-out from receiving them. If you added your phone number to your account and you later change or deactivate that phone number, you must update your account information to help prevent us from communicating with anyone who acquires your old number.

# Your License to Use the Services

Twitter gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software provided to you as part of the Services. This license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner permitted by these Terms.

The Services are protected by copyright, trademark, and other laws of both the United States and foreign countries. Nothing in the Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features. All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors. Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and without any obligation to you.

# Ending These Terms

You may end your legal agreement with Twitter at any time by deactivating your accounts and discontinuing your use of the Services. See https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account (https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account) (and for Periscope, https://help.pscp.tv/customer/portal/articles/2460220 (https://help.pscp.tv/customer/portal/articles/2460220)) for instructions on how to deactivate your account and the Privacy Policy for more information on what happens to your information.

We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) or Periscope Community Guidelines (https://www.pscp.tv/content), (ii) you create risk or possible legal exposure for us; (iii) your account should be removed due to prolonged inactivity; or (iv) our provision of the Services to you is no longer commercially viable. We will make reasonable efforts to notify you by the email address associated with your account or the next time you attempt to access your account, depending on the circumstances. In all such cases, the Terms shall terminate, including, without limitation, your license to use the Services, except that the following sections shall continue to apply: II, III, V, and VI.

# 5. Disclaimers and Limitations of Liability

## The Services are Available "AS-IS"

Your access to and use of the Services or any Content are at your own risk. You understand and agree that the Services are provided to you on an "AS IS" and "AS AVAILABLE" basis. The "Twitter Entities" refers to Twitter, its parents, affiliates,

related companies, officers, directors, employees, agents, representatives, partners, and licensors. Without limiting the foregoing, to the maximum extent permitted under applicable law, THE TWITTER ENTITIES DISCLAIM ALL WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. The Twitter Entities make no warranty or representation and disclaim all responsibility and liability for: (i) the completeness, accuracy, availability, timeliness, security or reliability of the Services or any Content; (ii) any harm to your computer system, loss of data, or other harm that results from your access to or use of the Services or any Content; (iii) the deletion of, or the failure to store or to transmit, any Content and other communications maintained by the Services; and (iv) whether the Services will meet your requirements or be available on an uninterrupted, secure, or error-free basis. No advice or information, whether oral or written, obtained from the Twitter Entities or through the Services, will create any warranty or representation not expressly made herein.

# Limitation of Liability

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE TWITTER ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES; (ii) ANY CONDUCT OR CONTENT OF ANY THIRD PARTY ON THE SERVICES, INCLUDING WITHOUT LIMITATION, ANY DEFAMATORY, OFFENSIVE OR ILLEGAL CONDUCT OF OTHER USERS OR THIRD PARTIES; (iii) ANY CONTENT OBTAINED FROM THE SERVICES; OR (iv) UNAUTHORIZED ACCESS, USE OR ALTERATION OF YOUR TRANSMISSIONS OR CONTENT. IN NO EVENT SHALL THE AGGREGATE LIABILITY OF THE TWITTER ENTITIES EXCEED THE GREATER OF ONE HUNDRED U.S. DOLLARS (U.S. $100.00) OR THE AMOUNT YOU PAID TWITTER, IF ANY, IN THE PAST SIX MONTHS FOR THE SERVICES GIVING RISE TO THE CLAIM. THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND WHETHER OR NOT THE TWITTER ENTITIES HAVE BEEN INFORMED OF THE POSSIBILITY OF ANY SUCH DAMAGE, AND EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE.

# 6. General

We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at twitter.com/tos (https://twitter.com/en/tos), will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

The laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and Twitter. All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum.

If you are a federal, state, or local government entity in the United States using the Services in your official capacity and legally unable to accept the controlling law, jurisdiction or venue clauses above, then those clauses do not apply to you. For such U.S. federal government entities, these Terms and any action related thereto will be governed by the laws of the United States of America (without reference to conflict of laws) and, in the absence of federal law and to the extent permitted under federal law, the laws of the State of California (excluding choice of law).

In the event that any provision of these Terms is held to be invalid or unenforceable, then that provision will be limited or eliminated to the minimum extent necessary, and the remaining provisions of these Terms will remain in full force and effect. Twitter's failure to enforce any right or provision of these Terms will not be deemed a waiver of such right or provision.

These Terms are an agreement between you and Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103 U.S.A. If you have any questions about these Terms, please contact us (https://help.twitter.com/forms).

**Effective:** May 25, 2018

Archive of Previous Terms (https://twitter.com/en/tos/previous)

# Twitter Terms of Service

**If you live outside of the United States**

These Terms of Service ("Terms") govern your access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates (https://help.twitter.com/en/rules-and-policies/twitter-services-and-corporate-affiliates)) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

# 1. Who May Use the Services

You may use the Services only if you agree to form a binding contract with Twitter and are not a person barred from receiving services under the laws of the applicable jurisdiction. In any case, you must be at least 13 years old, or in the case of Periscope 16 years old, to use the Services. If you are accepting these Terms and using the Services on behalf of a company, organization, government, or other legal entity, you represent and warrant that you are authorized to do so and have the authority to bind such entity to these Terms, in which case the words "you" and "your" as used in these Terms shall refer to such entity.

# 2. Privacy

Our Privacy Policy (https://twitter.com/privacy) (https://www.twitter.com/privacy (https://www.twitter.com/privacy)) describes how we handle the information you provide to us when you use our Services. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information, including the transfer of this information to the United States, Ireland, and/or other countries for storage, processing and use by Twitter and its affiliates.

# 3. Content on the Services

You are responsible for your use of the Services and for any Content you provide, including compliance with applicable laws, rules, and regulations. You should only provide Content that you are comfortable sharing with others.

Any use or reliance on any Content or materials posted via the Services or obtained by you through the Services is at your own risk. We do not endorse, support, represent or guarantee the completeness, truthfulness, accuracy, or reliability of any

Content or communications posted via the Services or endorse any opinions expressed via the Services. You understand that by using the Services, you may be exposed to Content that might be offensive, harmful, inaccurate or otherwise inappropriate, or in some cases, postings that have been mislabeled or are otherwise deceptive. All Content is the sole responsibility of the person who originated such Content. We may not monitor or control the Content posted via the Services and, we cannot take responsibility for such Content.

We reserve the right to remove Content that violates the User Agreement, including for example, copyright or trademark violations, impersonation, unlawful conduct, or harassment. Information regarding specific policies and the process for reporting or appealing violations can be found in our Help Center (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations (https://help.twitter.com/en/rules-and-policies/twitter-report-violation#specific-violations)) and https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts (https://help.twitter.com/en/managing-your-account/suspended-twitter-accounts)).

If you believe that your Content has been copied in a way that constitutes copyright infringement, please report this by visiting our Copyright reporting form (https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)) or contacting our designated copyright agent at:

Twitter, Inc.
Attn: Copyright Agent
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)
Email: copyright@twitter.com
(for content on Twitter)

Twitter, Inc.
Attn: Copyright Agent - Periscope
1355 Market Street, Suite 900
San Francisco, CA 94103
Reports: https://help.twitter.com/forms/dmca (https://help.twitter.com/forms/dmca)Email: copyright@pscp.tv
(for content on Periscope)

# Your Rights and Grant of Rights in the Content

You retain your rights to any Content you submit, post or display on or through the Services. What's yours is yours — you own your Content (and your incorporated audio, photos and videos are considered part of the Content).

By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods (now known or later developed). This license authorizes us to make your Content available to the rest of the world and to let others do the same. You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use. Such additional uses by Twitter, or other companies, organizations or individuals, may be made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services.

Twitter has an evolving set of rules for how ecosystem partners can interact with your Content on the Services. These rules exist to enable an open ecosystem with your rights in mind. You understand that we may modify or adapt your Content as it is distributed, syndicated, published, or broadcast by us and our partners and/or make changes to your Content in order to adapt the Content to different media.

You represent and warrant that you have, or have obtained, all rights, licenses, consents, permissions, power and/or authority necessary to grant the rights granted herein for any Content that you submit, post or display on or through the Services. You agree that such Content will not contain material subject to copyright or other proprietary rights, unless you have necessary permission or are otherwise legally entitled to post the material and to grant Twitter the license described above.

# 4. Using the Services

Please review the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) (and, for Periscope, the Periscope Community Guidelines (https://www.pscp.tv/content) at https://pscp.tv/content (https://www.pscp.tv/content)), which are part of the User Agreement and outline what is prohibited on the Services. You may use the Services only in compliance with these Terms and all applicable laws, rules and regulations.

Our Services evolve constantly. As such, the Services may change from time to time, at our discretion. We may stop (permanently or temporarily) providing the Services or any features within the Services to you or to users generally. We also retain the right to create limits on use and storage at our sole discretion at any time. We may also remove or refuse to distribute any Content on the Services, suspend or terminate users, and reclaim usernames without liability to you.

In consideration for Twitter granting you access to and use of the Services, you agree that Twitter and its third-party providers and partners may place advertising on the Services or in connection with the display of Content or information from the Services whether submitted by you or others. You also agree not to misuse our Services, for example, by interfering with them or accessing them using a method other than the interface and the instructions that we provide. You may not do any of the following while accessing or using the Services: (i) access, tamper with, or use non-public areas of the Services, Twitter's computer systems, or the technical delivery systems of Twitter's providers; (ii) probe, scan, or test the vulnerability of any system or network or breach or circumvent any security or authentication measures; (iii) access or search or attempt to access or search the Services by any means (automated or otherwise) other than through our currently available, published interfaces that are provided by Twitter (and only pursuant to the applicable terms and conditions), unless you have been specifically allowed to do so in a separate agreement with Twitter (NOTE: crawling the Services is permissible if done in accordance with the provisions of the robots.txt file, however, scraping the Services without the prior consent of Twitter is expressly prohibited); (iv) forge any TCP/IP packet header or any part of the header information in any email or posting, or in any way use the Services to send altered, deceptive or false source-identifying information; or (v) interfere with, or disrupt, (or attempt to do so), the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, mail-bombing the Services, or by scripting the creation of Content in such a manner as to interfere with or create an undue burden on the Services. We also reserve the right to access, read, preserve, and disclose any information as we reasonably believe is necessary to (i) satisfy any applicable law, regulation, legal process or governmental request, (ii) enforce the Terms, including investigation of potential violations hereof, (iii) detect, prevent, or otherwise address fraud, security or technical issues, (iv) respond to user support requests, or (v) protect the rights, property or safety of Twitter, its users and the public. Twitter does not disclose personally-identifying information to third parties except in accordance with our Privacy Policy.

If you use developer features of the Services, including but not limited to Twitter for Websites (https://dev.twitter.com/web/overview) (https://dev.twitter.com/web/overview (https://dev.twitter.com/web/overview)), Twitter Cards (https://dev.twitter.com/cards/overview) (https://dev.twitter.com/cards/overview (https://dev.twitter.com/cards/overview)), Public API (https://dev.twitter.com/streaming/public)(https://dev.twitter.com/streaming/public (https://dev.twitter.com/streaming/public)), or Sign in with Twitter (https://dev.twitter.com/web/sign-in) (https://dev.twitter.com/web/sign-in (https://dev.twitter.com/web/sign-in)), you agree to our Developer Agreement (https://dev.twitter.com/overview/terms/agreement) (https://dev.twitter.com/overview/terms/agreement (https://dev.twitter.com/overview/terms/agreement)) and Developer Policy (https://dev.twitter.com/overview/terms/policy) (https://dev.twitter.com/overview/terms/policy (https://dev.twitter.com/overview/terms/policy)). If you want to reproduce, modify, create derivative works, distribute, sell, transfer, publicly display, publicly perform, transmit, or otherwise use the Services or Content on the Services, you must use the interfaces and instructions we provide, except as permitted through the Twitter Services, these Terms, or the terms provided on dev.twitter.com (https://dev.twitter.com/).

If you use advertising features of the Services, you must agree to our Twitter Master Services Agreement (https://ads.twitter.com/terms) (https://ads.twitter.com/terms (https://ads.twitter.com/terms)).

If you use Super Hearts, Coins, or Stars on Periscope, you agree to our Super Hearts Terms (https://legal.twitter.com/en/periscope/super/terms.html) (https://legal.twitter.com/en/periscope/super/terms.html (https://legal.twitter.com/en/periscope/super/terms.html)).

# Your Account

You may need to create an account to use some of our Services. You are responsible for safeguarding your account, so use a strong password and limit its use to this account. We cannot and will not be liable for any loss or damage arising from your failure to comply with the above.

You can control most communications from the Services. We may need to provide you with certain communications, such as service announcements and administrative messages. These communications are considered part of the Services and your account, and you may not be able to opt-out from receiving them. If you added your phone number to your account and you later change or deactivate that phone number, you must update your account information to help prevent us from communicating with anyone who acquires your old number.

Twitter Terms of Service

# Your License to Use the Services

Twitter gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software provided to you as part of the Services. This license has the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Twitter, in the manner permitted by these Terms.

The Services are protected by copyright, trademark, and other laws of both the United States and foreign countries. Nothing in the Terms gives you a right to use the Twitter name or any of the Twitter trademarks, logos, domain names, and other distinctive brand features. All right, title, and interest in and to the Services (excluding Content provided by users) are and will remain the exclusive property of Twitter and its licensors. Any feedback, comments, or suggestions you may provide regarding Twitter, or the Services is entirely voluntary and we will be free to use such feedback, comments or suggestions as we see fit and without any obligation to you.

# Ending These Terms

You may end your legal agreement with Twitter at any time by deactivating your accounts and discontinuing your use of the Services. See https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account (https://help.twitter.com/en/managing-your-account/how-to-deactivate-twitter-account) (and for Periscope, https://help.pscp.tv/customer/portal/articles/2460220 (https://help.pscp.tv/customer/portal/articles/2460220)) for instructions on how to deactivate your account and the Privacy Policy for more information on what happens to your information.

We may suspend or terminate your account or cease providing you with all or part of the Services at any time for any or no reason, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or the Twitter Rules and Policies (https://help.twitter.com/en/rules-and-policies#twitter-rules) or Periscope Community Guidelines (https://www.pscp.tv/content), (ii) you create risk or possible legal exposure for us; (iii) your account should be removed due to unlawful conduct, (iv) your account should be removed due to prolonged inactivity; or (v) our provision of the Services to you is no longer commercially viable. We will make reasonable efforts to notify you by the email address associated with your account or the next time you attempt to access your account, depending on the circumstances. In all such cases, the Terms shall terminate, including, without limitation, your license to use the Services, except that the following sections shall continue to apply: II, III, V, and VI. If you believe your account was terminated in error you can file an appeal following the steps found in

our Help Center (https://help.twitter.com/forms/general?subtopic=suspended)
(https://help.twitter.com/forms/general?subtopic=suspended
(https://help.twitter.com/forms/general?subtopic=suspended)).

# 5. Limitations of Liability

By using the Services you agree that Twitter, its parents, affiliates, related companies, officers, directors, employees, agents representatives, partners and licensors, liability is limited to the maximum extent permissible in your country of residence.

# 6. General

We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at twitter.com/tos (https://twitter.com/en/tos), will govern our relationship with you. Other than for changes addressing new functions or made for legal reasons, we will notify you 30 days in advance of making effective changes to these Terms that impact the rights or obligations of any party to these Terms, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

In the event that any provision of these Terms is held to be invalid or unenforceable, then that provision will be limited or eliminated to the minimum extent necessary, and the remaining provisions of these Terms will remain in full force and effect. Twitter's failure to enforce any right or provision of these Terms will not be deemed a waiver of such right or provision.

These Terms are an agreement between you and Twitter International Company, an Irish company with its registered office at One Cumberland Place, Fenian Street Dublin 2, D02 AX07 Ireland. If you have any questions about these Terms, please contact us (https://help.twitter.com/forms).

**Effective:** May 25, 2018

Archive of Previous Terms (https://twitter.com/en/tos/previous)

© 2021 Twitter, Inc.
Cookies (https://help.twitter.com/rules-and-policies/twitter-cookies)
Privacy (https://twitter.com/privacy)

Twitter Terms of Service

Terms and conditions (https://twitter.com/tos)