## INDEX OF PLEADINGS FILED FOR TWO PENDING MOTIONS

| Exhibits | Document | Date Filed |
|---|---|---|
| 1 | Notice of Motion and Motion to Strike Complaint | 11/19/20 |
| 2 | Memorandum of Points and Authorities in Support of Motion to Strike Complaint | 11/19/20 |
| 3 | Declaration of Ben Meredith in Support of Defendant's Special Motion to Strike Plaintiff's Complaint | 11/19/20 |
| 4 | Declaration of Brian D. Whelan in Support of Motion to Strike Complaint | 11/19/20 |
| 5 | Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Strike Complaint | 12/09/20 |
| 6 | Declaration of Devin G. Nunes in Opposition to Defendant Benjamin Paul Meredith's Motion to Strike | 12/09/20 |
| 7 | Reply Memorandum of Points and Authorities in Support of Motion to Strike Complaint | 12/15/20 |
| 8 | Defendant's Objections to Declaration of Devin G. Nunes in Opposition to Defendant's Motion to Strike Compliant | 12/15/20 |
| 9 | Reply Declaration of Ben Meredith in Support of Defendant's Motion to Strike | 12/15/20 |
| 10 | Declaration of Jamie Carter in Support of Defendant's Special Motion to Strike Complaint | 12/15/20 |
| 11 | Declaration of Yasmin Mendoza in Support of Defendant's Motion to Strike Complaint | 12/15/20 |
| 12 | Proof of Service | 12/15/20 |
| 13 | Plaintiff's Sur-Reply in Opposition to Defendant's Reply to Memorandum of Points and Authorities | 12/18/20 |
| 14 | Notice of Errata to Declaration of Yasmin Mendoza in Support of Defendant's Motion to Strike Plaintiff's Complaint | 12/18/20 |
| 15 | Defendant's Objections to Plaintiff's Sur-Reply in Opposition to Defendant's Reply Memorandum of Points and Authorities | 12/18/20 |
| 16 | Notice of Motion and Motion for Leave to Conduct Specific Discovery to C.C.P. § 425.16(g) | 12/29/20 |
| 17 | Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Leave to Conduct Discovery | 01/07/21 |
| 18 | Twitter's Opposition to Plaintiff's Motion to Conduct Specific Discovery Pursuant to C.C.P § 425.16(g) | 01/08/21 |

# EXHIBIT "1"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

NICOLE BENT~~~~
STEPHANIE CAMERON, CLERK
BY: _____

1   Brian D. Whelan, Esq.  (SBN 256534)
2   WHELAN LAW GROUP, A Professional Corporation
    1827 East Fir Avenue, Suite 110
3   Fresno, California   93720
    Telephone: (559) 437-1079
    Facsimile: (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5
6   Attorneys for Defendant BEN PAUL MEREDITH

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            COUNTY OF TULARE

9

10  DEVIN G. NUNES,                          )   Case No. VCU284528
                                             )
11              Plaintiff,                   )   NOTICE OF MOTION AND MOTION TO
                                             )   STRIKE COMPLAINT PURSUANT TO
12         v.                                )   CALIFORNIA CODE OF CIVIL
                                             )   PROCEDURE SECTION 425.16
13  BENJAMIN PAUL MEREDITH,                  )   (ANTI-SLAPP)
    TWITTER, INC., and DOES 1 to 100,        )
14  Inclusive,                               )   Date:   December 22, 2020
                                             )   Time:   8:30 a.m.
15              Defendants.                  )   Dept.:  7
                                             )
16                                           )
                                             )
17                                           )   Complaint Filed:   October 5, 2020
                                             )   Trial Date:        Not Set
18  _____ )

19
20  TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD;

21         PLEASE TAKE NOTICE THAT on December 22, 2020, at 8:30 a.m., or as soon thereafter

22  as counsel may be heard in Department 7 of Tulare County Superior Court, located at 221 S. Mooney

23  Blvd, Visalia, CA 93291, Defendant Ben Paul Meredith ("Defendant Meredith"), will and hereby

24  does move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking

25  the Complaint filed by Plaintiff Devin G. Nunes ("Plaintiff") as to all of the claims filed against

26  Defendant Meredith and dismissing, in whole or in part, the Complaint with prejudice and without

27  leave to amend.

28         The claims in the Complaint as against Defendant Meredith all stem from Defendant's

    alleged activity in furtherance of Defendant's right of petition and/or free speech under the United

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                              1

X - 11 X 19 - 20

States Constitution in connection with a public issue.  Because Plaintiff's claims, as against Defendant Meredith, all arise from his conduct in furtherance of his exercise of the right of free speech in connection with a public issue and/or issue of public interest, they are subject to a special motion to strike under California's anti-SLAPP statute, C.C.P. § 425.16(e)(3)-(4).  Consequently, the burden shifts to Plaintiff to demonstrate a probability of prevailing on each of the claims. *See* Cal. Civ. Proc. Code § 425.16(b)(1).

Further, Plaintiff cannot meet his burden for the following independent reasons:

1.    Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Defendant Meredith's alleged wrongful activity is protected by the First Amendment;

2.    Plaintiff cannot demonstrate a probability of prevailing on his stalking claim (First Cause of Action) because Plaintiff does not have any independent corroborating evidence to support this claim (*See* Cal. Civ. Code Section 1708.7(a)(1));

3.    Plaintiff cannot demonstrate a probability of prevailing on his commercial misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is protected by the First Amendment; and

4.    Plaintiff cannot demonstrate a probability of prevailing on his misappropriation claim (Third Cause of Action) because Defendant Meredith's alleged use of Plaintiff's name, likeness, and/or identity is exempt from liability under the Computer Decency Act (CDA), 47 U.S.C.A. § 230.(c)(1), and Civil Code Section 3344(d) because it relates to public affairs within the meaning of that statute and/or on account of immunity afforded thereunder.

This Motion is based on this Notice of Motion; Memorandum of Points and Authorities filed concurrently herewith; on the concurrently-filed Declarations of Ben Meredith and Brian Whelan; on any other matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument and evidence as may be received by this Court at the hearing on this Motion and at the time of the hearing.

/ / /

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

NOTICE OF MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Meredith reserves the right to recover his attorney's fees and costs incurred, and in an amount according to proof, through a subsequently noticed motion following the hearing on this motion.

Dated: November 19, 2020

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

NOTICE OF MOTION

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On November 19, 2020, I caused to be served the within document(s): **NOTICE OF MOTION AND MOTION TO STRIKE COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16  (ANTI-SLAPP)**

( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )   **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

| | |
|---|---|
| Derek P. Wisehart<br>Law Offices of Derek P. Wisehart<br>2330 W. Main Street<br>Visalia, CA 93291<br>Tel: (559) 636-9473<br>Fax: (559) 636-9476<br>Email: derek@dwisehartlaw.com<br><br>Counsel for Plaintiff | Steven S. Biss<br>300 West Main Street, Suite 102<br>Charlottesville, Virginia 22903<br>Tel: (804) 501-8272<br>Fax: (202) 318-4098<br>Email: stevenbiss@earthlink.net<br><br>Counsel for Plaintiff |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

_____
STACEY VUE

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

4

# EXHIBIT "2"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMERON, CLERK
BY:     NICOLE RENTERIA

1  **Brian D. Whelan, Esq.  (SBN 256534)**
   **WHELAN LAW GROUP, A Professional Corporation**
2  **1827 East Fir Avenue, Suite 110**
   **Fresno, California  93720**
3  **Telephone: (559) 437-1079**
   **Facsimile:  (559) 437-1720**
4  **E-mail: brian@whelanlawgroup.com**

5

6  Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                         COUNTY OF TULARE

9

10  DEVIN G. NUNES,                     )   Case No. VCU284528
                                        )
11              Plaintiff,              )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES IN SUPPORT OF MOTION**
12         v.                           )   **TO STRIKE COMPLAINT**
                                        )
13  BENJAMIN PAUL MEREDITH,             )
    TWITTER, INC., and DOES 1 to 100,   )   Date:   December 22, 2020
14  Inclusive,                          )   Time:   8:30 a.m.
                                        )   Dept.:  7
15              Defendants.             )
                                        )
16                                      )
                                        )
17                                      )   Complaint Filed:   October 5, 2020
                                        )   Trial Date:        Not Set
18  _____

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  /////

26  ////

27  ////

28  /////

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

FAXED

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A. POLITICAL HISTORY BETWEEN MEREDITH AND NUNES. . . . . . . . . . . 1

   B. NUNES' FALSE (AND HYPOCRITICAL) CLAIMS . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND/MATERIAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A. Twitter Is a Public Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B. Congressman Nunes Is a Public Figure . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   C. Plaintiff Complains of Constitutionally Protected Speech . . . . . . . . . . . . . . . . 5

III. LAW AND DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A. Defendant Meredith's Anti-SLAPP Motion Is Timely . . . . . . . . . . . . . . . . . . . . 5

   B. The Anti-SLAPP Statute Broadly Applies To Claims That Target The Exercise Of Free Speech About Issues Of Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   C. Plaintiff's Claims Fall Within the Scope of the Anti-SLAPP Statute . . . . . . . . . 7

      1. All of Defendant Meredith's Alleged Wrongful Conduct Involves the Exercise of Free-Speech Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2. Meredith's Speech Relates to An Issue of Public Interest. . . . . . . . . . . . . 8

   D. Plaintiff Cannot Demonstrate a Probability of Prevailing on His Claims Against Meredith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      1. The First Amendment Bars Plaintiff's Stalking and Misappropriation Claims as does the Computer Decency Act . . . . . . . . . . . . . . . . . . . . . . . 10

      2. Civil Code Section 3344(d) Also Defeats Plaintiff's Misappropriation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      3. Plaintiff's Stalking Claim Also Fails Because He Has No Independent Corroborating Evidence to Support It. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

i

1

2

## TABLE OF AUTHORITIES

**CASE**                                                                                                    **PAGE**

*Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barrett v. Rosenthal*, 40 Cal.4th 33, 41, fn. 4 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036, 1042 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cardtoons*, 95 F.3d at 969 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996) . . . . . . . . . . . . . . 7, 10

*C.B.C. Distribution*, 505 F.3d at 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) . . . . . . . . . . . . . . . 8

*Doe No. 14 v. Internet Brands, Inc.*, 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dora*, 15 Cal. App. 4th at 1545-1546. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 572 (2000) . . . . . . . . . . . . . 10

*Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421 (1983) . . . . . . . . . . . . . . . . . . . . . . . 14

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th

Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Gionfriddo*, 94 Cal. App. 4th at 410-411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Guglielmi*, 25 Cal. 3d at 867-868 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1347 (2007) . . . . . . . . . . . . . . . . . . . . . . . 9

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) . . . . . . . . . . . 8

*Hilton*, 599 F.3d at 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ingels v. Westwood One Broad. Serv.*, 129 Cal. App. 4th 1050, 1059, 1075, 28 Cal. Rptr. 3d 933

(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1254 (2017) . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Kaiser Foundation Hospitals v. Superior Court*, 49 Cal.App.3d 523, 525 (1975) . . . . . . . . . . 6

*Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998) . . . . . . . . . . 11

*Montana*, 34 Cal. App. 4th at 795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

*Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 10

*Navellier v. Sletten*, 29 Cal. 4th 82, 88, (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

ii

*New Kids*, 971 F.2d at 310 n.10 .............................................. 14, 15

*Nygard v. Uusi- Kerttula,* 159 Cal. App. 4th 1027, 1042, (2008) ...................... 8

*Paulsen v. Personality Posters, Inc.,* 299 N.Y.S.2d 501, 507 (1968) ................... 12

*Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359 (1995) ......................... 10

*Seelig v. Infinity Broadcasting,* 97 Cal. App. 4th 798, 807-808 (2002) ............... 8

*Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ..................................... 10

*Stewart v. Rolling Stone,* 181 Cal. App. 4th 664, 669, 105 Cal. Rptr. 3d 98 (2010) ....... 7, 12

*United States v. Cassidy*, (D. Md. 2011) 814 F. Supp. 2d 574, 576-78 .............. 4, 10, 11

*Wong v. Armstrong World Industries, Inc.*, 232 Cal.App.3d 1032, 1034 (1991) ........... 6

**STATUTES**

Cal. Civ. Code § 1708.7 ................................................. 7, 11, 12, 15

Cal. Civ. Code § 3344(d) ...................................................... 14

Cal. Civ. Proc. Code § 425.16 ............................................... 6, 7, 10

C.C.P. § 425.16. .......................................................... 1, 6, 7, 15

C.C.P. § 583.110(f) ............................................................. 6

3 Witkin, Cal.Procedure (3d ed. 1985) Actions, § 814, p. 801 ........................... 6

Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1). ........................... 2, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1   Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") submits the following

2   in support of his motion for an order striking the causes of action alleged against him by Plaintiff

3   DEVIN NUNES ("Plaintiff" or "NUNES" ) pursuant to C.C.P. § 425.16.

## I.
## INTRODUCTION.

5   Congressman NUNES sued MEREDITH because he does not like what MEREDITH is

6   allegedly saying about him online, i.e. protected speech. Plaintiff has artfully crafted his complaint

7   to try to convert digital speech into a physical stalking and commercial misappropriation conspiracy

8   in order to censor unflattering commentary – largely, if not entirely, made by other people.

9   ### A.   POLITICAL HISTORY BETWEEN MEREDITH AND NUNES.

10   From 2001 through 2005, MEREDITH lived in Visalia, CA. Through involvement in

11   Republican-party politics, MEREDITH came to know NUNES. In fact, NUNES approached

12   MEREDITH to run for the Tulare County Republican Central Committee ("Central Committee").

13   With NUNES' help, MEREDITH won the election and held elected office from 2000 until 2002.

14   (MEREDITH Decl. Para. 5.)

15   In 2002, MEREDITH opposed the Central Committee's endorsement of NUNES' candidacy

16   for United States Congress. MEREDITH did not believe the then twenty-something-year old was

17   qualified. (MEREDITH Decl. Para. 6.) NUNES harbored a grudge (and still does, apparently).

18   Thereafter, NUNES was elected to *serve* in the United States Congress, and MEREDITH

19   chose to leave the Central Committee. (MEREDITH Decl. Para. 7.) At or around that time,

20   MEREDITH, who holds a doctorate in education, had held multiple positions in colleges and

21   universities in California, Washington and Oklahoma, and had risen to the rank of Dean, left

22   Porterville College in good standing to take a job at San Joaquin Valley College. (MEREDITH

23   Decl. Para. 7.) From there, MEREDITH moved onto Washington State to pursue career

24   opportunities, though never becoming "a network engineer or cyber security expert" as claimed in

25   the lawsuit. (MEREDITH Decl. Paras. 3, 7.)

26   ### B.   NUNES' FALSE (AND HYPOCRITICAL) CLAIMS.

27   Over the course of the last two years, NUNES has sued a number of people and organizations

28   throughout the country. (Whelan Decl. Para. 2.) Of the more famous lawsuits, is one against a

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

MEMORANDUM OF POINTS AND AUTHORITIES

1    parody Twitter account user, @DevinCow. In that lawsuit, Nunes seeks 250 million dollars for

2    reputation damages. The Virginia-based lawsuit against "a twitter cow" has generated a tremendous

3    following and its own satirical "mooovement." ("Cow Lawsuit") (Whelan Decl. Para. 3.)

4        In this lawsuit, the singular event NUNES identified concerned a claimed [but non-existent]

5    association with an unnamed "political activist" and an incident on August 27, 2020. According to

6    the Complaint, NUNES was on a flight where he "was harassed by a political activist...working with

7    Meredith." (Complaint, Para. 1.) The incident was videotaped and a matter of news record. The

8    report and video are available online in an article titled "Exclusive: What Really Happened on the

9    "Plane   Full   of   Anarchists."(https://demcastusa.com   /2020/09/03/   exclusive-what-

10   really-happened-on-the-plane- full-of-anarchists/; Whelan Decl. Para. 4.)

11       The incident involves an empty plane and a request from the "activist" who calmly (but

12   unexpectedly)  asked NUNES if he " Sued any cows lately ....sued any cow..more cows.. lately

13   ....moo moo." ("Plane Event") (Whelan Decl. Para. 4.) NUNES claims MEREDITH's after-the-fact

14   approval of the Plane Event somehow violates the law. It does not. The video, in a public place, is

15   a common, accepted, and encouraged form of "political tracking" and importantly protected activity

16   – which MEREDITH incontrovertibly did <u>not</u> engage in. (MEREDITH Decl. Para. 8.) [1]

17       Indeed, NUNES knows that such "political tracking" is accepted campaign protocol. In fact,

18   the National Republican Congressional Committee ("NRCC") asks its candidates, like NUNES, to

19   emulate the Plane Event as it may "be very embarrassing if used correctly" and when done "FULL

20   TIME" can lead to a "win." The NRCC's video tracking guide states:

21       "In the YouTube, flipcam, reality TV era, voters are predisposed to believe messages
         that they can see with own eyes rather than something that is merely described to
22       them. The only way to do that effectively is to create a tracking program in your
         campaign <u>that relentlessly gathers footage of your opponent. Only after</u>
23       <u>dedicating the resources to tracking them FULL TIME will you eventually yield</u>
         <u>the video that you need to win</u>... [Emphasis Added.]

24       ....

25       It is extremely important that you pay close attention while you are filming. You
         should make mental notes (or written notes, if possible) of things that your subject
26

27   _____

28       [1] If a party only passively displays content that is created entirely by third parties, then it is
     only a "service provider" with respect to that content and thus shielded from liability under the
     Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1).

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

may do that could be of use at a later point. Unusual facial expressions, whether they be angry, goofy, etc., fall into this category. So do comments that are either factually inaccurate, outlandish, or contradictory to other statements the candidate has made. **These are things that can prove to be very embarrassing if used correctly**." [Emphasis Added.] (Whelan Decl. Para. 5, Exhibit "B" .)

The NRCC video tracking guide addresses a policy on "honesty" and "legal issues" – all conforming with what happened with the tongue-in-cheek question about NUNES "suing more cows." With regards to the Plane Event, MEREDITH was not even alleged to have been present nor was he present nor did he conspire to be present or have questions about cow lawsuits asked. (Complaint Para. 1; MEREDITH Decl. Para. 8.)

The lawsuit is long on histrionics and hyperbole and short on facts and specifics.  In brief, MEREDITH did not conspire with "animal enterprise terrorists" to "stalk" NUNES. And on average, MEREDITH tweeted 2-3 times per day – a far cry from the thousands as claimed and without regard to first amendment right protections. (MEREDITH Decl. Para. 9.) MEREDITH lives in Washington State and has never threatened to physically harm NUNES (MEREDITH Decl. Para. 8-9), nor has MEREDITH ever been contacted by the District of Columbia Capitol Police in any way for any reason. Ever. (MEREDITH Decl. Para. 9.)  Moreover, Meredith did not misappropriate NUNES' likeness nor generated money or otherwise from NUNES.  (MEREDITH Decl. Para. 8.)  Plaintiff's claims all fail because they violate MEREDITH's First Amendment rights.  Moreover, Plaintiff has no evidence to support his claims because the events simply did not happen or happened and were protected speech. Since Plaintiff's complaint is a classic SLAPP lawsuit, Defendant has filed this motion to strike all of Plaintiff's claims against him.

## II.
## BACKGROUND/MATERIAL FACTS.

### A.    Twitter Is a Public Forum.

This case involves allegations, described in greater detail below, that a wrong was committed through Defendant's use of a relatively recent phenomenon of the internet age, "Twitter."  Essential to the analysis of the legal issues in this case is an understanding of this phenomenon, which has become almost ubiquitous.

Twitter is a real-time information network that connects users to "what's happening in the

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

MEMORANDUM OF POINTS AND AUTHORITIES

world and what people are talking about right now."  At the heart of Twitter are small bursts of information called Tweets.  Each Tweet is 140 characters in length.  Twitter users may choose to "follow" other users.  If user No. 1 decides to "follow" user No. 2, Twitter messages (Tweets) posted by user No. 2 will show up on the home page of user No. 1 where they can be read.

A Twitter user may choose to block someone, e.g., someone whose messages are deemed offensive, in which case the offending user will be unable to follow the offended user or add that user to his or her lists, and the blocked user's Tweets will not be delivered to the other user's home page.  Twitter provides detailed instructions for blocking Tweets from another user as well as for "unfollowing" another user, i.e. blocking Tweets from a user that one used to follow.

A Direct Message ("DM") is a private message sent from one Twitter user to another, but such messages can only be sent to another user who is a "follower."  All Twitter users are provided with the ability to block other users, in which case one user cannot follow another and neither their "Tweets" nor their Direct Messages will be delivered.  Thus, any Twitter user has the ability to "turn off" ("block" or "unfollow") communications from another user.

"[A] Twitter user [does not] have to see what is posted on another person's … Twitter account.  This is in sharp contrast to a telephone call, letter or e-mail specifically addressed to and directed at another person, and that difference, as will be seen, is fundamental to the First Amendment analysis in this case."  *United States v. Cassidy*, (D. Md. 2011) 814 F. Supp. 2d 574, 576-78.

**B.**     **Congressman Nunes Is a Public Figure.**

There is no disputing NUNES status as a public figure. Indeed, on NUNES' wikipedia page, NUNES advertises that he is an American politician serving as the U.S.  Representative for California's 22nd congressional district since 2003. A member of the Republican Party, NUNES was Chair of the House Intelligence Committee from 2015 to 2019. He was also a member of President Donald Trump's transition team. NUNES' district, numbered as the 21st from 2003 to 2013 and as the 22nd after redistricting, is in the San Joaquin Valley and includes most of western Tulare County and much of eastern Fresno County.

In March 2017, the U.S. House intelligence committee, which NUNES chaired at the time,

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

MEMORANDUM OF POINTS AND AUTHORITIES

1  launched an investigation into possible Russian interference in the 2016 United States elections. On

2  April 6, 2017, he temporarily stepped aside from leading that investigation while the Office of

3  Congressional Ethics investigated allegations (which NUNES denied) that he had improperly

4  disclosed classified information to the public. In December 2017 the Republican-majority U.S.

5  House Committee on Ethics closed its investigation without taking any action against NUNES.

6       In February 2018, NUNES publicly released the NUNES memo, a four-page memorandum

7  alleging an FBI conspiracy against Donald Trump. NUNES subsequently began an investigation of

8  the FBI and the Justice Department for allegedly abusing their powers in an attempt to hurt Trump.

9  (Source: https://en.wikipedia.org/wiki/Devin_Nunes)

10       **C.    Plaintiff Complains of Constitutionally Protected Speech.**

11       Plaintiff claims that Defendant MEREDITH is liable for the torts of stalking and commercial

12  misappropriation (First and Third causes of action.)  (See Plaintiff's Complaint, Para. 2, Lines

13  10-12.) These claims are all based on constitutionally protected speech.  Plaintiff's entire complaint

14  is directed at Defendant MEREDITH's alleged use of multiple Twitter accounts.  Specifically,

15  Plaintiff takes issue with the content of statements that Defendant MEREDITH allegedly "Tweeted"

16  and "re-Tweeted" on accounts that were allegedly associated with Defendant MEREDITH.  With the

17  exception of one instance, Plaintiff does not provide any information in his complaint to indicate that

18  there are any exceptions to these constitutionally protected statements.  With regards to the single

19  instance where Defendant allegedly made a threat on Plaintiff's life, Plaintiff's own characterization

20  of that threat demonstrates that it was not a "true threat." (See footnote 1 of Plaintiff's Complaint

21  where he characterizes the alleged threat on his life as a "hoax threat.")  Aside from the fact Plaintiff

22  admits this statement was not a "true threat," the fact is, Defendant never threatened Plaintiff's life.

23  (MEREDITH Decl. Para. 8.) Thus, all of the comments and statements allegedly made by Defendant

24  are constitutionally protected by the First Amendment.

25                          **III.**
                   **LAW AND DISCUSSION.**

26       **A.    Defendant Meredith's Anti-SLAPP Motion Is Timely.**

27       A special motion to strike must be filed within 60 days after service of the complaint on the

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

MEMORANDUM OF POINTS AND AUTHORITIES

1  defendant, unless the trial court exercises its discretion to consider a later-filed motion. C.C.P. §

2  425.16(f) (emphasis supplied). "Service" consists of serving the summons and complaint and

3  effecting return of summons. C.C.P. § 583.110(f) ("Service" includes return of summons); *Wong v.*

4  *Armstrong World Industries, Inc.*, 232 Cal.App.3d 1032, 1034 (1991). A return of summons is

5  required to inform the court that the defendant has received jurisdictional notice. *Kaiser Foundation*

6  *Hospitals v. Superior Court*, 49 Cal.App.3d 523, 525 (1975); 3 Witkin, Cal.Procedure (3d ed. 1985)

7  Actions, § 814, p. 801; *Wong* at 1035. Here, the complaint was served on October 7, 2020. Thus,

8  this motion is timely.

9            **B.**    **The Anti-SLAPP Statute Broadly Applies To Claims That Target The Exercise Of Free Speech About Issues Of Public Interest.**

10      In 1992, the California Legislature enacted Code of Civil Procedure § 425.16 "to nip SLAPP

11  litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights.

12  *Braun v. Chronicle Publ'g*, 52 Cal. App. 4th 1036, 1042 (1997). Under the statute, any "cause of

13  action against a person arising from any act ... in furtherance of the person's right of ... free speech

14  ... in connection with a public issue shall be subject to a special motion to strike, unless the court

15  determines that the plaintiff has established that there is a probability that the plaintiff will prevail

16  on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). Reacting to court rulings that interpreted the

17  statute too narrowly, the Legislature amended Section 425.16 in 1997 to ensure that it "shall be

18  construed broadly." Cal. Civ. Proc. Code § 425.16(a).

19      In *Navellier v. Sletten*, 29 Cal. 4th 82, 88, (2002), the Supreme Court outlined the two-step

20  process for determining whether an action must be stricken under Section 425.16. "First, the court

21  decides whether the defendant has made a threshold showing that the challenged cause of action is

22  one arising from protected activity." *Id.* at 88. To make this showing, the defendant must

23  demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the

24  categories spelled out ... in section 425.16, subdivision (e)." *Id.* Under subdivision (e)(4), the

25  Legislature has extended the statutes protection to "any" conduct "in furtherance of the exercise of

26  the constitutional right ... of free speech in connection with ... an issue of public interest." Second,

27  if the claim arises from protected conduct, the court "must then determine whether the plaintiff has

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

6

MEMORANDUM OF POINTS AND AUTHORITIES

1   demonstrated a probability of prevailing on the claim." *Id.* If the plaintiff cannot meet this burden,

2   then the claim must be stricken. *Id.*

3      To prevent plaintiffs from using artful pleading to evade the anti-SLAPP statute, courts have

4   emphasized that Section 425.16 applies to any claim arising from protected conduct, regardless of

5   how the claim is labeled. *Navellier*, 29 Cal. 4th at 92. "[T]he nature ... of the action is not what is

6   critical"; if it arises from protected conduct, it is subject to an anti-SLAPP motion. *Church of*

7   *Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996), disapproved on other grounds, 29 Cal.

8   4th 53 (2002). Thus, courts have held that the statute applies to a variety of claims, including

9   right-of-publicity (*Stewart v. Rolling Stone*, 181 Cal. App. 4th 664, 669, 105 Cal. Rptr. 3d 98

10  (2010)), and unfair business practices (*Ingels v. Westwood One Broad. Serv.*, 129 Cal. App. 4th

11  1050, 1059, 1075, 28 Cal. Rptr. 3d 933 (2005)). And, since the stalking claim is predicated entirely

12  on constitutionally protected speech, there is no doubt that the anti-SLAPP statute applies to that

13  claim as well. In fact, the stalking statute cited by Plaintiff also supports this conclusion: "This

14  section shall not be construed to impair any constitutionally protected activity, including, but not

15  limited to, speech, protest, and assembly." Cal. Civ. Code § 1708.7(f).

16   **C.   Plaintiff's Claims Fall Within the Scope of the Anti-SLAPP Statute.**

17      **1.   All of Defendant Meredith's Alleged Wrongful Conduct Involves the Exercise of Free-Speech Rights.**

18      Protected activity includes any "written or oral statement or writing made in a place open to

19  the public or a public forum in connection with an issue of public interest" or "any other conduct in

20  furtherance of the exercise . . . of the constitutional right of free speech in connection with a public

21  issue or an issue of public interest." C.C.P. § 425.16(e)(3)-(4). MEREDITH exercised his

22  constitutional right of free speech by posting a "written statement" on Twitter, a "public forum." Web

23  sites accessible to the public are "public forums" for purposes of the anti-SLAPP statute. *Barrett v.*

24  *Rosenthal*, 40 Cal.4th 33, 41, fn. 4 (2006); *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576

25  (2005). Not surprisingly, websites like Twitter have been specifically recognized as a "public forum"

26  for purposes of the anti-SLAPP statute. *Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1254 (2017)

27  (*Jackson*).

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

7

MEMORANDUM OF POINTS AND AUTHORITIES

And, with regards to the [untrue/false] allegations that Defendant MEREDITH sold products with Plaintiff's image and likeness, the fact that expressive works are sold for a profit does not in any way diminish their First Amendment protection. *See, e.g., Guglielmi*, 25 Cal. 3d at 867-868; *Gionfriddo*, 94 Cal. App. 4th at 412. As long as the work does "not merely advertise another unrelated product," it enjoys full constitutional protection. *Cardtoons*, 95 F.3d at 969. See also *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("[i]f a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels").   The allegations in the complaint make it quite clear that Defendant was not using Plaintiff's image to endorse ideas, statements, or products made by Defendant - quite the opposite.   To the extent Plaintiff's image was in fact used, it was used as expressive, constitutionally protected speech.

## 2.   Meredith's Speech Relates to An Issue of Public Interest.

All of the alleged wrongful activity plainly relates to an "issue of public interest" for purposes of Section 425.16. In fact, "[t]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society[.]" *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). The case law underscores how broadly "public interest" has been defined under the statute. In *Seelig v. Infinity Broadcasting*, 97 Cal. App. 4th 798, 807-808 (2002), for example, the court held that a radio host's on-air criticism of a contestant from the reality show *Who Wants To Marry A Multi-Millionaire* related to a matter of public interest. The court noted that the show had been of "significant interest to the public" because of "what its advent signified about the condition of American society." *Id. In Nygard v. Uusi- Kerttula*, 159 Cal. App. 4th 1027, 1042, (2008), the court reiterated that an issue of public interest "is any issue in which the public is interested," including in that case an article about a Finnish businessman's vacation home in the Bahamas. "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute - it is enough that it is one in which the public takes an interest." *Id.* And in *Hilton*, the Ninth Circuit instructed that courts "must construe ... issue of public interest' ... broadly" to include any "topic of widespread, public interest" or "person ... in the public eye." 599 F.3d at 906-907. Applying

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

8

MEMORANDUM OF POINTS AND AUTHORITIES

those definitions, the court held that a greeting card poking fun at Paris Hilton's reality-television persona met the statutes public-interest requirement. *Id.*

In analogous contexts, courts have recognized a substantial public interest in biographical information about historical figures, including their names and images and descriptions of their failures and achievements. *Dora v. Frontline Video* is instructive. There, the court found that a film about surfing in Southern California in the 1950s, which included images and audio of surfing pioneer Mickey Dora, concerned a matter of public interest. 15 Cal. App. 4th at 542-543. In *Gionfriddo*, the court reiterated that "the public interest is not limited to current events; the public is also entitled to be informed and entertained about our history." 94 Cal. App. 4th at 416. Thus, the court held that baseball-game programs that used retired players' names, likenesses, and biographical information concerned a matter of public interest. See also *Hilton*, 599 F.3d at 912 ("[p]ublic interest attaches to people who by their accomplishments ... create a bona fide attention to their activities'). And, for better or worse, celebrity gossip is an issue of public interest. *Jackson*, 10 Cal.App.5th at 1254. ("Jackson's pregnancy, its termination and her cosmetic surgery, were 'celebrity gossip' properly considered, under established [anti-SLAPP case law], as statements in connection with an issue of public interest. . . ."); see also, *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1347 (2007) (public interest in the personal life of Marlon Brando).

Plaintiff cannot reasonably dispute that the alleged tweets referring to Plaintiff, as well as the alleged content containing his images, relate to an issue of public interest, both in their broad focus on a prominent figure and events in American history and in their specific focus that touch on current political issues. Plaintiff acknowledges that he is a public figure and also acknowledges that his complaint "**is enforcing an important right affecting the public interest**." [Emphasis added.] (See fn. 12 of Plaintiff's Complaint.) If a greeting card about Paris Hilton, a deejay's rant about a reality-show contestant, an article about a businessman's vacation home, and gossip about the personal lives of celebrities relate to matters of public interest under Section 425.16, then the alleged Tweets, etc. challenging Plaintiff's character and qualifications as a political leader obviously satisfy that test. Accordingly, Plaintiff's claims are subject to a special motion to strike.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

9

MEMORANDUM OF POINTS AND AUTHORITIES

**D.** **Plaintiff Cannot Demonstrate a Probability of Prevailing on His Claims Against Meredith.**

Because MEREDITH's alleged conduct falls within the scope of the anti-SLAPP statute, the burden shifts to Plaintiff to establish a probability that he will prevail on his claims. See Cal. Civ. Proc. Code § 425.16(b)(1). This burden is substantial. As the court explained in *DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 572 (2000), to satisfy [his] burden under the second prong of the anti-SLAPP statute, it is not sufficient that [the plaintiff's] complaint survive a demurrer or motion to dismiss. A plaintiff cannot simply rely on the allegations set forth in the complaint, nor can a court accept those allegations. *Church of Scientology*, 42 Cal. App. 4th at 656. Instead, the plaintiff must adduce competent, admissible evidence showing that he has a legally sufficient claim, *Mindys Cosmetics v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (citations omitted), and must meet the defendant's constitutional defenses[.]" *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359 (1995).

Because Plaintiff cannot do so, MEREDITH's Motion should be granted.

1.  **The First Amendment Bars Plaintiff's Stalking and Misappropriation Claims as does the Computer Decency Act.**

The United States Supreme Court recently reaffirmed that "speech on public issues occupies *the highest rung of the hierarchy of First Amendment values*, and is entitled to *special protection*." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (emphasis added) (barring state-law tort claim based on speech concerning matters of public import). The Court highlighted guiding principles that accord broad protection to speech to ensure that courts themselves do not become inadvertent censors. *Id.* It instructed that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (citations and quotation marks omitted). And the Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern." *United States v. Cassidy*, 814 F. Supp. 2d 574, 582 (D. Md. 2011) "This is because 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate "breathing space" to the freedoms protected by the First Amendment." ' [Citations.]" *Id.*

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

10

MEMORANDUM OF POINTS AND AUTHORITIES

Reflecting these principles, courts have found that under the First Amendment, "no cause of action [for violation of the right of publicity] will lie for the publication of matters in the public interest[.]" *Montana*, 34 Cal. App. 4th at 795.  Also, in a case similar to this one, a Court found that an indictment, based on a cyberstalking statute (containing language similar to Cal. Civ. Code Section 1708.7), which was directed at speech "challenging [the complaining party's] character and qualifications as a religious leader," should be dismissed because it was clearly directed at protected speech.  *Cassidy*, 814 F.Supp.2d at 583.

Like the public interest prong of the anti-SLAPP statute, the constitutional public-interest defense is to be construed broadly, and is not limited to news in the narrow sense of reports of current events.  *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998).  It applies equally to the dissemination of information in various media, ranging from online fantasy-sports games (*C.B.C. Distribution*, 505 F.3d at 823) and parody trading cards (*Cardtoons*, 95 F.3d at 969) to baseball-game programs (*Gionfriddo*, 94 Cal. App. 4th at 410-411) and posters (*Montana*, 34 Cal. App. 4th at 795).  The court in *Gionfriddo* expressly declared that [e]ntertainment features receive the same constitutional protection [against right-of-publicity claims] as factual news reports. 94 Cal. App. 4th at 410. The Tenth Circuit echoed this principle in *Cardtoons*, making clear that [s]peech that entertains, like speech that informs, is protected by the First Amendment because the line between informing and entertaining is too elusive for the protection of that basic right. 95 F.3d at 969 (citations omitted).

Regarding Plaintiff's stalking claim, *Cassidy* provides helpful guidance.  In *Cassidy*, the court dismissed a criminal indictment because the complaint violated the defendant's First Amendment rights of free speech.  There, the defendant used Twitter and Internet blogs to wage a campaign of harassment against the leader of a Buddhist sect.  Finding the victim to be a "well-known religious figure" who was the subject of a "critical non-fiction book" written by a *Washington Post* journalist, and that the defendant's speech "challenge[d] her character and qualifications as a religious leader," the Court held that the Government's indictment based on a cyberstalking statute was clearly directed at protected speech and did not fall within one of the recognized exceptions. *Cassidy*, 814 F.Supp.2d at 583.  Here, as in *Cassidy*, the alleged Tweets are challenging Plaintiff's character and

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

11

MEMORANDUM OF POINTS AND AUTHORITIES

qualifications as a political leader and deserve special protection under the First Amendment.  See also Cal. Civ. Code § 1708.7(f).

As for Plaintiff's common law misappropriation claim, "our Supreme Court has cautioned: 'Giving broad scope to the right of publicity has the potential of allowing a celebrity to accomplish through the vigorous exercise of that right the censorship of unflattering commentary that cannot be constitutionally accomplished through defamation actions.' [Citation.]"  *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 682 (2010).  Here, *Montana* and *C.B.C. Distribution* are instructive.  In *Montana*, a newspaper produced a poster commemorating the San Francisco 49ers' Super Bowl victories, which featured a photograph of quarterback Joe Montana with scant accompanying text.  34 Cal. App. 4th at 795-798.  Although the newspaper sold copies of the poster, the court concluded that it was a form of public interest presentation to which [First Amendment] protection must be extended.  34 Cal. App. 4th at 795 (quoting *Paulsen v. Personality Posters, Inc.*, 299 N.Y.S.2d 501, 507 (1968)).  The court also reaffirmed that the public-interest test is not restricted to current events but may extend to the reproduction of past events.  *Id.* at 793.

Similarly, in *C.B.C. Distribution*, the plaintiff offered online fantasy-baseball games incorporating Major League Baseball players' actual names, nicknames, likenesses, signatures, pictures, statistics, and other biographical information.  505 F.3d at 823.  The plaintiff initially licensed this information from the Major League Baseball Players Association.  *Id.* at 821.  But when the Players Association declined to renew the license, the plaintiff sought a judicial declaration that it had a First Amendment right to use the information without a license.  *Id.*  The Eighth Circuit agreed, holding that the First Amendment protected the plaintiff's right to use athletes' names, likenesses, and biographical information in an online game.  As the court declared, "the information used in CBC's fantasy baseball games is all readily available in the public domain, and it would be strange law that a person would not have a first amendment right to use information that is available to everyone."  *Id.* at 823.  On those grounds, the court held that the First Amendment "trump[ed] the players' right of publicity."  *Id.* at 822-824.

Furthermore, and though it is unclear what exactly constitutes Plaintiff's complaints, to the extent they are solely comprised of Defendant's re-publishing of other twitter posts, absolute

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

12

MEMORANDUM OF POINTS AND AUTHORITIES

1   immunity applies under Computer Decency Act (CDA), 47 U.S.C.A. § 230(c)(1). As the Ninth

2   Circuit has explained, "Section 230 of the CDA immunizes providers of interactive computer

3   services against liability arising from content created by third parties." *Fair Hous. Council of San*

4   *Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir.2008) (en banc). Section

5   230 was enacted to "protect[ ] websites from liability for material posted on the website by someone

6   else." *Doe No. 14 v. Internet Brands, Inc.*, 767 F.3d 894, 897 (9th Cir.2014). Specifically, section

7   230 states: "No provider or user of an interactive computer service shall be treated as the publisher

8   or speaker of any information provided by another information content provider." 47 U.S.C. §

9   230(c)(1). Importantly, section 230's "grant of immunity applies only if the interactive computer

10  service provider is not also an 'information content provider,' which is defined as someone who is

11  'responsible, in whole or in part, for the creation or development of the offending content."

12  *Roommates.Com*, 521 F.3d at 1162 (quoting 47 U.S.C. § 230(f)(3)). CDA immunity, thus, does not

13  apply to "the creation of content" by a website. Id. at 1163. Because a "website operator can be both

14  a service provider and a content provider," it "may be immune from liability for some of the content

15  it displays to the public but be subject to liability for other content." Id. at 1162–63.

16      The California Supreme Court addressed this issue of user liability in the case of *Barrett v.*

17  *Rosenthal*, (2006) 40 Cal. 4th 33 when it held: "We granted review to decide whether section 230

18  confers immunity on 'distributors.' Because this case involves the liability of an individual rather

19  than a service provider, we asked the parties to address the definition of the statutory term "user."

20  We also requested briefing on whether the immunity analysis is affected if a user engages in active

21  rather than passive conduct. We conclude that section 230 prohibits "distributor" liability for Internet

22  publications. We further hold that section 230(c)(1) immunizes individual "users" of interactive

23  computer services, and that no practical or principled distinction can be drawn between active and

24  passive use" . . . "We acknowledge that recognizing broad immunity for defamatory republications

25  on the Internet has some troubling consequences. Until Congress chooses to revise the settled law

26  in this area, however, plaintiffs who contend they were defamed in an Internet posting may only seek

27  recovery from the original source of the statement." *Id.* 39-40

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

13

MEMORANDUM OF POINTS AND AUTHORITIES

1    If the public-interest defense bars right-of-publicity claims arising from the use of an athletes'

2    name and likeness in a game program, on a poster, or in an online fantasy game, Defendant's alleged

3    use of Plaintiff's name and likeness in connection with a public debate about the quality and

4    character of our Nation's political leaders must be afforded the same protection.  Further, and as

5    discussed by the California Supreme Court, the mere republication of anything on Twitter is

6    absolutely privileged – unless and until Congress changes it.

7            2.    **Civil Code Section 3344(d) Also Defeats Plaintiff's Misappropriation Claim.**

8    When the California Legislature enacted Section 3344, it expressly exempted from liability

9    any use of an individual's likeness in an expressive work that relates to public affairs. Cal. Civ. Code

10   § 3344(d). That exemption affords such works even broader protection against statutory

11   misappropriation claims than the First Amendment does; in fact, it is designed to avoid First

12   Amendment questions in the area of misappropriation by providing extra breathing space for the use

13   of a person s name in connection with matters of public interest. *New Kids*, 971 F.2d at 310 n.10.

14   Both the Ninth Circuit and the California Supreme Court have observed that Section 3344(d)

15   provides a complete defense to statutory **and common-law right-of-publicity claims**. *Id.* at

16   309-310; *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421 (1983).

17   Consistent with the legislative purpose, courts have interpreted the "public affairs" exemption

18   expansively, and have recognized that it applies to much more than just traditional news reports. In

19   *Dora*, for example, the court rejected the plaintiff's argument that the defendants' film about early

20   surf culture did not relate to "public affairs" within the meaning of Section 3344(d). 15 Cal. App.

21   4th at 545-546. Noting that "Civil Code section 3344, subdivision (d) distinguishes between news

22   and public affairs," the court held that "the Legislature intended that the category of public affairs

23   would include things that would not necessarily be considered news." *Id.* at 545. Because "the public

24   is interested in and constitutionally entitled to know about things, people, and events that affect it,"

25   the court concluded that "we cannot limit the term 'public affairs' to topics that might be covered on

26   public television or public radio." *Id.* at 546. Turning to the defendants' film, the court observed that

27   "surfing has created a lifestyle that influences speech, behavior, dress, and entertainment," and "has

28   also had a significant influence on the popular culture, and in that way touches many people." *Id.*

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

14

For those reasons, the court found that early surf culture satisfied the public-affairs test, and that the film was exempt from liability under Section 3344(d).

Like the works at issue in *Dora*, *Montana*, and *New Kids*, the content at issue in this case falls within the public-affairs exemption. These decisions recognize that the exemption shields works whether informative, entertaining, or both that relate to "popular culture" and to "real-life occurrences." *Dora*, 15 Cal. App. 4th at 1545-1546. As set forth in detail above, all of the material alleged in Plaintiff's complaint relates to issues of public interest, and thus to "public affairs" within the meaning of Section 3344(d). Plaintiff's misappropriation claim fails for this additional reason.

3.   **Plaintiff's Stalking Claim Also Fails Because He Has No Independent Corroborating Evidence to Support It.**

Cal. Civ. Code Section 1708.7(a)(1) requires Plaintiff to provide "independent corroborating evidence" of his stalking claim. Plaintiff cannot provide any independent corroborating evidence that Defendant was working with individuals to physically stock and surveil Plaintiff to cause Plaintiff to fear for his safety. Plaintiff's entire complaint is based on wild speculation and on constitutionally protected speech. His claim of stalking fails for this reason alone. Moreover, it is unreasonable for Plaintiff to claim that the alleged Tweets caused him to feel harassed, etc. when all he had to do to ignore Defendant MEREDITH's alleged harassing comments was to click "unfollow" or "block." Plaintiff simply could have turned off the communications and blocked the comments from Defendant's alleged accounts.

**IV.**
**CONCLUSION.**

California's SLAPP statute provides for the early dismissal of meritless actions, like this one as against MEREDITH, which arise from the exercise of free speech rights. C.C.P. § 425.16. Accordingly, Defendant MEREDITH respectfully requests that this Court strike from Plaintiff's Complaint all of the causes of action against Defendant MEREDITH with prejudice (the First and Third Causes of Action), and award him attorney's fees and costs incurred in defending against this meritless lawsuit. C.C.P. § 425.16(c).

Dated: November 18, 2020

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

15

MEMORANDUM OF POINTS AND AUTHORITIES

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On November 19, 2020, I caused to be served the within document(s): **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE COMPLAINT**

( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )   **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

16

MEMORANDUM OF POINTS AND AUTHORITIES

# EXHIBIT "3"

1   Brian D. Whelan, Esq.  (SBN 256534)                    FILED
    WHELAN LAW GROUP, A Professional Corporation   TULARE COUNTY SUPERIOR COURT
2   1827 East Fir Avenue, Suite 110                        VISALIA DIVISION
    Fresno, California  93720
3   Telephone:  (559) 437-1079                             NOV 19 2020
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com              STEPHANIE CAMERON, CLERK

5                                                 BY:   NICOLE RENTERIA

6   Attorneys for: Defendant BEN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11            Plaintiff,               )   DECLARATION OF BEN MEREDITH IN
                                       )   SUPPORT OF DEFENDANT'S SPECIAL
12        v.                           )   MOTION TO STRIKE PLAINTIFF'S
                                       )   COMPLAINT PURSUANT TO
13  BENJAMIN PAUL MEREDITH,            )   CALIFORNIA CODE OF CIVIL
    TWITTER, INC., and DOES 1 to 100,  )   PROCEDURE SECTION 425.16
14  Inclusive,                         )   (ANTI-SLAPP)
                                       )
15            Defendants.              )   Date:   December 22, 2020
                                       )   Time:   8:30 a.m.
16                                     )   Dept.:  7
                                       )
17  _____)   Complaint Filed:   October 5, 2020
                                           Trial Date:        Not Set
18

19  I, BEN PAUL MEREDITH, declare:

20       1.     I am the one of the Defendants in this case.  The following facts are within my

21  personal  knowledge and, if called as a witness, I can testify competently to each of them.

22       2.     I hold a doctorate in education. I have held multiple positions in colleges and

23  universities in California, Washington and Oklahoma. I rose to the rank of Dean.  In 2002, I left

24  Porterville College in good standing to take a job at San Joaquin Valley College.  Ultimately,  I

25  moved to Washington State to pursue a career opportunity, and not because I was "pushed" out

26  of California, as Mr. Nunes claims.

27

28

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                           1
              DECLARATION OF BEN MEREDITH

3.      Among other positions I now hold, I am the Chief Technology Officer and Co-Founder of DKE Technologies (dketechnologies.com), which is a search engine development company. I am also the Chief Technology Officer and Co-Founder of NoSchoolViolence.org (noschoolviolence.org), a federally registered 501(c)(3) non-profit, that uses machine learning to uncover insights to reduce school violence.  I am not a network engineer or cyber security expert as claimed in the lawsuit.

4.      I do not have a business or interest in a business that makes use of Mr. Nunes' image or likeness nor have I generated any moneys directly or indirectly from Mr. Nunes or his likeness.

5.      <u>HISTORY WITH DEVIN NUNES</u>: From 2001 through 2005, I lived in Visalia, California. Through my involvement in Central Valley Republican politics, I came to know Devin Nunes. In fact, Devin Nunes and his friend, Johnny Amaral, approached me to run for the Tulare County Republican Central Committee. With their help, I won the election. I held elected office from 2000 until I left the position in 2002.

6.      In 2002, I vocally opposed the Central Committee's endorsement of Devin Nunes' candidacy for United States Congress. Though Mr. Nunes had helped me with my election, I did not believe the twenty-something-year old was qualified to represent us in the United States Congress. The endorsement was very aggressively pushed by then-Representative Bill Thomas of Bakersfield.  I was grateful for Mr. Nunes' help to elect me to the position, but I felt that it was my duty and obligation, based on what I had come to know of Nunes, to resist his candidacy and thus the endorsement. This of course did not go over well, and has apparently resulted in Mr. Nunes' grudge against me for the better part of two decades.  From my experience on the Tulare County Republican Central Committee, I held no ill will against Mr. Nunes -- though, of course, now I am displeased to be named me in another one of his frivolous lawsuits.

7.      In 2002, I left the Central Committee and other posts in the California GOP of my own free-will as a result of my disagreement with the direction of the California GOP and the Tulare County Central Committee.

/ / /

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF BEN MEREDITH

8.   <u>MR. NUNES' FALSE CLAIMS</u>: Mr. Nunes makes many false statements about me in his lawsuit. I will address those that are relevant to this motion (in other words, I am not going to hunt down all of the false and irrelevant smears bandied about in the lawsuit):

A)   I have not deployed "thousands of incendiary and hateful comments" against Mr. Nunes as alleged in the lawsuit;

B)   I have not coordinated with "violent extremists" to "attack" Mr. Nunes;

C)   I only have one twitter account (and not many as claimed);

D)   I have never threatened Mr. Nunes' life;

E)   I have never been contacted by District of Columbia Capitol Police in any way for any reason. Ever;

F)   I do not know the CEO of Twitter;

G)   I have never met the CEO of Twitter nor coordinated with Twitter for any purpose;

H)   I have not received any money from the Voter Protection Project;

I)   I have not received any monies from any person with respect to any activities related to or connected to any activity of mine on Twitter;

J)   I have never accused Plaintiff of "assassination" or "murder;"

K)   I have never solicited any agent or any person to physically harm Mr. Nunes;

L)   I have never threatened Mr. Nunes with bodily harm;

M)   I had nothing to do with the August 27, 2020 "incident." I was not there and I did not tell someone to record what happened;

N)   Since 2002, I cannot recall a single time where I was anywhere near Mr. Nunes nor have I "stalked" Mr. Nunes in any fashion or as claimed in the first cause of action.

O)   I have not used Mr. Nunes' image and/or likeness for commercial activities;

P)   I have not used Mr. Nunes' image and/or likeness to sell merchandise;

Q)   I have not used Mr. Nunes' image and/or likeness to make any money (again, I have not made any money off of Mr. Nunes or his image and/or likeness);

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1721

3

DECLARATION OF BEN MEREDITH

R)   I have not used Mr. Nunes' name to "solicit money and on or in porducts, merchandise or goods (t-shirts, coffee mugs and other paraphernilia[sic]) offered for sale to the public."  (Plaintiff's Complaint at para. 35.)

S)   I have not done any business that involves Mr. Nunes or his image and likeness, nor have I "unfairly competed" with Mr. Nunes for his name, image, or likeness as he claims in his fourth cause of action; and

T)   My name is Ben and has never been Benjamin.

9)   Prompted by this lawsuit, and after having been credited for an "unprecedented" number of tweets, I took the time to see how many twitter messages I sent,  tweeted, or liked. Since the inception of my account, I average 2.19 tweets per day and 3.73 "likes" per day. Objectively, this is not an unprecedented number by any stretch of the imagination.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on November 12, 2020

Ben Meredith

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559 437-1079
Fax: 559-437-1720

4

DECLARATION OF BEN MEREDITH

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California. I am over the age of 18 years and not a party to this action. My business address is: Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720. On November 19, 2020, I caused to be served the within document(s): **DECLARATION OF BEN MEREDITH IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 (ANTI-SLAPP)**

( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )   **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

DECLARATION OF BEN MEREDITH

# EXHIBIT "4"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 19 2020

STEPHANIE CAMACHO-CRENTERIA

BY:

1   Brian D. Whelan, Esq. (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile: (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5

6   Attorneys for Defendant BEN PAUL MEREDITH

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11          Plaintiff,                 )   DECLARATION OF BRIAN D. WHELAN
                                       )   IN SUPPORT OF MOTION TO STRIKE
12          v.                         )   COMPLAINT
                                       )
13  BENJAMIN PAUL MEREDITH,            )
    TWITTER, INC., and DOES 1 to 100,  )   Date:  December 22, 2020
14  Inclusive,                         )   Time:  8:30 a.m.
                                       )   Dept.: 7
15          Defendants.                )
                                       )
16                                     )
                                       )
17                                     )   Complaint Filed:  October 5, 2020
                                       )   Trial Date:        Not Set
18

19          I, Brian D. Whelan, declare:

20          1.      I am an attorney at law, duly authorized and licensed to practice before all

21  of the courts in the State of California, and I am the attorney for Defendant Ben Paul Meredith

22  ("Defendant").

23          2.      Over the course of the last two years, NUNES has sued a number of people

24  and organizations throughout the United States.  I represented three individuals that NUNES sued

25  in Tulare County in August 2019 (Paul Buxman, Daniel O'Connell, and Hope Nisly in Case No.

26  279766.)  In that case, NUNES took exception with my clients' involvement in their unsuccessful

27  ballot designation lawsuit challenging NUNES' designation as a "farmer." Consequently, NUNES

28  sued my clients for interference with his "prospective economic advantage," and for engaging in "a

                                       1

    Whelan Law Group,
    A Professional Corporation
    1827 East Fir Avenue, Suite 110
    Fresno, California 93720
    Tel: 559-437-1079
    Fax: 559-437-1720

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

FAXED

1   civil conspiracy." NUNES dismissed the case before a motion to strike was filed but within an hour

2   after my call to his then local counsel to discuss a date for the motion to strike.

3          3.      In preparing this motion, I have reviewed multiple lawsuits where NUNES

4   is the Plaintiff and Mr. Biss is one of the attorneys – as is the case here and as was the case with the

5   lawsuit I mentioned in the preceding paragraph. Of the more newsworthy lawsuits, is the lawsuit

6   against a parody Twitter account user @DevinCow venued in Virginia in the Circuit Court of the

7   County of Henrico (Case No. CL19-1715-00).  In that lawsuit, NUNES is claiming $250 million

8   dollars in damages to his reputation on account of statements made by the twitter user with the

9   handle @DevinCow along with the other defendants. Naturally, the lawsuit has generated national

10  attention from late night talk shows hosts (Jimmy Kimmel, and Stephen Colbert) and celebrities. The

11  twitter handle @DevinCow now has over seven hundred thousand followers and its own satirical

12  "mooovement;" as described on Twitter by the "followers" who post satirical videos dressed like

13  cows poking fun at the lawsuit and the Plaintiff in that lawsuit, NUNES.

14         4.      In this lawsuit, NUNES claims an unnamed "political activist" engaged him

15  on August 27, 2020 on a flight. (Complaint para. 1.) The incident was itself videotaped and is a

16  matter of news record and is available online in an article titled "Exclusive: What Really Happened

17  on the "Plane Full of Anarchists."(https://demcastusa.com /2020/09/03/ exclusive-what-

18  really-happened-on-the-plane- full-of-anarchists/. Attached as Exhibit "A" is a true and correct copy

19  of the print out of the relevant portions of the webpage where the article was located and printed as

20  of November 18, 2020 at 9:18 p.m. (The article is visible online as is the video, but the advertising

21  on the article obscures portions of the text when it is printed).  The video that is described in the

22  article and embedded in the article depicts a woman who asked NUNES on an empty plane and with

23  a phone camera if he " Sued any cows lately ....sued any cow..more cows.. lately ....moo moo."

24         5.      Indeed, NUNES knows that "political tracking," such as what he experienced

25  with the above described event, is an accepted and encouraged part of congressional campaigns. In

26  2012, just like NUNES, I ran as a Republican candidate for United States Congress here in the

27  Central Valley. During my candidacy, the National Republican Congressional Committee ("NRCC")

28  supplied candidates, such as myself, with written guides to assist with the campaign. Attached as

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

1  Exhibit "B" is a true and correct copy of the March 26, 2012 email I received from the NRCC with

2  a "Video Tracking Guide" – less redactions of the telephone numbers. (Aside from the "video

3  tracking guide," I am not supplying the other lengthy attachments attached to the Exhibit "B" email.)

4  After I won the primary election, the NRCC invited United States Congressional candidates from

5  across this country to Washington D.C. to attend "candidate school." I attended and the NRCC

6  reinforced and repeated (in writing) that video tracking your opponent, around the clock, was

7  expected of the candidates. (I chose not to, and lost the election – though I am sure that's not why

8  I lost the election.) During a break in the "candidate school," I also met with NUNES and the

9  director of the NRCC. I know that all of the NRCC materials, like the ones I attach here, were

10  supplied or made available to all candidates and their campaigns, including NUNES.

11       6.      Attached as Exhibit "C" is a true and correct copy of the NUNES wikipedia

12  page referenced in the accompanying brief.

13       I declare under penalty of perjury, under the laws of the State of California, that

14  the foregoing is true and correct.

15       Executed on November 18, 2020.

16

17                                              Brian D. Whelan

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

Exhibit "A"



# Exclusive: What Really Happened on the "Plane Full of Anarchists"

SEPTEMBER 3, 2020 · NATIONAL / OP-ED · BY JAMIE CARTER · 9 MINS READ



I attended the 2020 March on Washington last weekend, flying all the way from Salt Lake City to join with my fellow activists and demand an end to police brutality against Black Americans. It was a thrilling experience. The day I got back, exhausted from the DC heat and weekend events, imagine how surprised I was to hear the President talking about me.

"The person on the plane said there were about six people like that person or more less and what happened is the entire plane filled up with the looters, the anarchists, rioters—people looking for trouble."

YOU MIGHT BE INTERESTED IN   ✕      

e "anarchists" in question were on a plane from SLC to DC,

n Devin Nunes.

it is so beyond ridiculous that the President characterized it

nounced (the day of George Floyd's funeral), I immediately called Lori Coleman, a friend and coworker at DemCast Usa. and we booked tickets and a hotel that very day. We knew this would be an important moment in history, and we wanted to be there – to be a witness and to stand in solidarity with the Black Lives Matter movement.

This was my first trip to the DC area, and when the day of the trip finally arrived, I woke up early for my 10am flight. The plane I boarded was on layover from the LA area. As I waited to board, I talked to many people that were also heading to the March on Washington. The atmosphere brimmed with excitement, anger over what had been happening, and a feeling of solidarity among those that were going.

Early on, I recognized that Devin Nunes was on the plane. As you may recall, Nunes – a well known Trump propagandist and enabler – has such a low tolerance for criticism that he famously sued a Twitter user masquerading as "Devin Nunes' cow" because of how relentlessly the cow pointed out his treasonous activities on the platform.

In that light, everything that followed makes perfect sense.

About an hour into the flight, I went to the restroom, and on the way back I decided to have a little fun with Nunes. Having long been a supporter of @devincow, I pulled out my phone and hit record. Stopping at his seat, I asked him "Have you sued any cows lately?"

He just stared, so I asked again: "Have you sued any more cows latey?"

YOU MIGHT BE INTERESTED IN        ✕



**eorgiaOnMyMind**



thugs and anarchist mooing at
'A rep.

I'm shocked he survived the angry mob.

I would also like to ask who paid for the 1st class flight ticket and why he was wearing the mask around his neck?

2:21 PM · Sep 1, 2020 from Salt Lake City, UT

♡ 4.7K    ⚡ See the latest COVID-19 information on Twitter

(BTW – nice mask etiquette, Devin.)

YOU MIGHT BE INTERESTED IN ✕  GO TO TOP

...my seat. That was the entire exchange.

...ummoned two flight attendants, speaking to them for ...t class, and allowed no one else to use the restroom at the ...t. When the flight landed, once again, two flight attendants ...ited the plane before everyone else could moo at him.

A narrow escape! What a snowflake.

A 12 second exchange has now led to days of news coverage over the "antifa thug protestors that descended on DC to disrupt the RNC convention." In reality, there were no thugs – just this white suburban mom who mooed at him.

I like to picture the moment that Devin went crying to uncle Donald to tell him about all the scary people on that plane. It's hard to even fathom the intense fragility of this Twitter-cow-suing, suburban-mom-fearing man who turned a moo into a near-death narrative.

While this story is funny on its face, in reality this incident and its aftermath showcase the intensely dangerous games that Trump and his enablers play with the truth. This isn't a one-off event, and we all know it. This administration is only concerned with holding on to power, and they take every opportunity to twist and squeeze facts until they fit snugly into a narrative that suits them.

They've been doing this on a much grander scale with the entire Black Lives Matter movement since the death of George Floyd – painting protestors as anarchists who want to finish off the cities and then take their urban violence to your doorstep in suburban and rural America. It's pure fear-mongering and distortion, aimed at churning the white fragility that delivered him the White House in 2016.

Reality doesn't matter to them. Just the narrative.

YOU MIGHT BE INTERESTED IN                    ✕                                  GO TO
                                                                                                      TOP


on, I attended the protests outside of the White House as

for the Republican nomination. There was music & dancing –

ere was no violence, no anarchy, no destruction. Nothing.

**eorgiaOnMyMind**                                                         🐦
@JCTheResistance

In the midst of the violent mob that @realDonaldTrump
is so terrified of he had to barricade himself in.

6:35 PM · Aug 27, 2020                                                      ⓘ

♡ 198      💬 102 people are Tweeting about this

**Jamie Carter - #GeorgiaOnMyMind**                                        🐦
@JCTheResistance

Bigger than Trump's inauguration.

#RNCConvention2020
#TrumpChaos

YOU MIGHT BE INTERESTED IN        ×

GO TO
**TOP**

Carter - #GeorgiaOnMyMind's other Tweets

As Trump was getting ready to speak, we headed over to the South Side of the White House. There were sirens, blow horns, pots and pans and air horns. And a LOT of laughter.



**Jamie Carter - #GeorgiaOnMyMind**
@JCTheResistance

Outside the South gates of the WH giving @realDonaldTrump his termination papers.

#RNC2020
#TrumpChaos

YOU MIGHT BE INTERESTED IN       ✕





ⓘ

e are Tweeting about this

of the United States is calling "thugs". Everyday people who

l who have the gall to exercise their First Amendment right to engage in peaceful protest.

The next day, the march itself was transformative for me: powerful speakers, raw emotions and people of all races, ethnicities, ages, genders, orientations and identities coming together to say, in one voice: "No more."

YOU MIGHT BE INTERESTED IN    ✕        

This is my America and I reject the narrative that Donald Trump and Devin Nunes are weaving.

Do we now live in a country where you are not allowed to even speak to (ok, ok – and poke fun at) elected officials? A country that if you try to change the status quo so that equality is finally achieved, you are labeled "antifa"? A country that if you disagree with those in power you are a thug?

If so, I will proudly bear that label. I'll be a 'thug'.

Exhibit "B"

**brian@whelanlawgroup.com**

| | |
|---|---|
| **From:** | Allison Coccia <acoccia@NRCC.org> |
| **Sent:** | Monday, March 26, 2012 9:17 AM |
| **To:** | Brian@whelanlawgroup.com |
| **Cc:** | Jon Reedy |
| **Subject:** | Young Guns Step 2 - On the Radar -Brian Whelan |
| **Attachments:** | 6. Young Guns Campaign Contacts.xlsx; 7. Sample Finance Plan.docx; 8. VIDEO TRACKING GUIDE.docx; Step 2 - On the Radar 5_2_11.pptx |

Brian:

How are you?

Please find attached an electronic version of the "On the Radar" package for the 2011-2012 Young Guns Program.

Please review the attached powerpoint document entitled Step 2 On the Radar.  It includes all of the benchmarks to complete this level.  The additional attachments are the corresponding templates we would like your campaign  to complete as well as other helpful documents.  Once you complete these benchmarks, we will review what you have submitted and let you know whether you have achieved the "On the Radar" level.

Please feel free to call me any time with any questions you might have at                  ˋ (cell.)

Allison Coccia
Young Guns
NRCC

_( Redacted )_

_( Redacted )_

1

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

Form #8

# VIDEO TRACKING GUIDE
## On the Radar

Video tracking is an essential tactic that can make or break your campaign. You not only need to explain to the voters why you should be elected, you need to explain why your opponent should be replaced – particularly if you are running against a sitting incumbent. In the YouTube, flipcam, reality TV era, voters are predisposed to believe messages that they can see with own eyes rather than something that is merely described to them.  The only way to do that effectively is to create a tracking program in your campaign that relentlessly gathers footage of your opponent. Only after dedicating the resources to tracking them FULL TIME will you eventually yield the video that you need to win. And remember, you are raising tremendous amounts of money to put into television advertising – a visual medium. You need visual content to be successful.

For the tracker: You will be put into uncomfortable, high stress environments. However, yours is a position where a motivated individual will excel, and your services are an invaluable asset. Here are some things you should keep in mind when tracking your candidate:

***Safety: First, a word on safety: if at any time you ever feel that your safety is threatened, simply leave. As important as gathering footage is, it is never more important than your safety.***

**The Importance of Gathering Footage:** If gathering footage and obtaining field research on our opponents were not of paramount importance, the video research program would not exist. Consequently, the video you will obtain, even video that may not initially seem important or extraordinary in any way, may turn out to be of invaluable use. There are two major reasons that we collect footage:

1) To hold politicians accountable for their words and actions. By filming politicians, we are able to make sure that they do not flip-flop, make promises they cannot keep, overstate or exaggerate their past achievements and their record or tell outright lies. Everyone remembers the Virginia 2006 U.S. Senate race, when Republican Sen. George Allen was caught on tape ridiculing an opponent's tracker, leading to the famous "Macaca" moment. That single clip of shaky, low-quality video footage went a long way toward defeating a very powerful incumbent. While these types of "silver bullet" moments are rare, they are certainly possible, and they can be game-changers.

2) In addition to holding politicians accountable, field video is used to gather production-quality video for online web and television ads. Your footage could be the difference between winning and losing a seat in an important national election.

**Finding Events**
As obvious as this seems, the most important part of your work as video researcher (aside from

1

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

the actual filming) will be to find events. Finding events can be difficult, but it is essential in gathering footage. You will soon find that events can be found through a variety of sources and channels.

## Bookmarks
There are many sources to access to seek out events that the candidate will be attending. A strong suggestion would be to create bookmarks of these pages by creating separate folders inside your bookmarks to keep various categories of web pages (Newspapers, Television Stations, Blogs, etc.) This will save you much needed time and an immense amount of unnecessary frustration.

## Sources
1.) *Candidate Web Sites.* The first and most obvious place to start your events search is the opposing candidate's website. Almost all candidates will have an "Events" tab or page on their website where they will post upcoming events. This method of event-finding will have varying degrees of success, depending on which particular candidate you track. Some candidates post everything they do on their website, while others are much more secretive. If you are following an incumbent, be sure to also check their official House site in addition to their campaign site.

2.) *News Searches.* Most of your events will be found through online news searches. The most frequently used of these is Google News. Be sure to make this process easier by setting up your Google Alerts and having them sent to your email. You can do this by going to <u>Google Alerts</u> and typing your search term in the search bar. Then select "comprehensive" as your alert type, as this will cover news, blogs, web, video, and groups. In the "how often" drop-down menu, you will want to select "as-it-happens." Include in your news searches a search of the state you are researching (Example: "Ohio"). This will keep you updated on all state news, in addition to helping you find important upcoming political events that your candidate may attend.

3.) *Blogs.* Every state has its own political blogs that will provide you with tips, rumors, and information to help you find events. If your race is one that is discussed commonly in the national news, check some of the more informative blogs regularly. Reading liberal blogs such as the Daily Kos can come in handy when they write about your race. In order to streamline this potentially cumbersome process, you should subscribe to Bloglines (<u>http://www.bloglines.com</u>). Bloglines is a fast, easy, and user-friendly RSS newsreader. It requires no software installation, which means that it can be accessed from any device (including phones) with internet. To sign up, simply enter your e-mail address, create a password, and then reply to an e-mail confirmation. Bloglines organizes all your information into "read" and "unread" blog entries, which quickly allows you to see which entries are old and which are new.

4.) *Email Lists.* Being on email lists is one of the most important ways of locating events. Start out by subscribing to all email lists put out by the candidate you are researching. These

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

5.) *Facebook and MySpace*. As odd as it may sound, virtually every legitimate candidate will have a Facebook page and probably a MySpace page. Check these daily as valuable information can be obtained this way.

6.) *Our Candidate's Campaigns and State GOP Officials.* Finding events does not have to be a one person job. Inevitably, the campaigns of our candidates will find out about some events either before you or that you were not able to find. It is important to have at least one contact person at the campaign that you can email or check in with on a regular basis to see if they know of any upcoming events. Oftentimes, members of the media will contact the campaign when they get press releases from the opposing campaign. Be ready to take advantage of this.

7.) *All Newspapers, TV Stations, and Radio Stations in or Around Your Area.* Scanning all local and state newspapers will be extremely important, as will keeping up with all the local TV news. To a lesser extent, this is also true of radio. To find an exhaustive list of newspapers, TV stations, and radio stations in your state, visit <u>SGH Resources State Handbook & Guide</u>.[1] Scroll down, select your state, and then you will get a list of all the listings in your state, along with the URL for each of them. Add these to your bookmarks. Do not neglect small town newspapers. These papers are usually the lifeblood of their small communities and a campaign stop from a candidate is sure to make news.

**Setting Up and Getting Into Events**

Once you have found an event, send a quick email to your national contact highlighting the date and time of the event, location, source, and a short description (if applicable). Some events will require you to purchase a ticket, such as a banquet being put on by a local chamber of commerce where our opponent is the speaker, but do not purchase tickets to campaign fundraisers.

Make sure you have current and accurate directions to all of your events. Be sure to have updated maps in your car and try to utilize things like Google Maps and MapQuest, as well as internet on your cell phone or blackberry.

*Preparation:* Make sure you have current and accurate directions to all of your events and ensure that you allow plenty of time to make it to your event. Allow for special considerations such as rush-hour traffic, off-peak public transportation hours, weather, and unforeseen emergencies. Arriving 15-30 minutes early should afford you the opportunity to scope out the venue and decide where the best location is for you to shoot. Attempt to be as inconspicuous as possible in the time leading up to the arrival of the candidate. Be prepared.

*Removal from Events:* Candidates and campaigns will sometimes try to have you removed from events because they do not want you to film them (for obvious reasons). This may be as simple as a campaign staffer asking you to leave or may involve police officers requesting your personal information. The best policy in this situation is to explain to the officer who you are and that you

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

are there for political purposes and that you have a right to be there. Almost all officers will allow you to stay, but if they do not, you should follow their instructions. The last thing anyone wants is for you to be hauled off to jail. Simply ask the officer for his/her name, badge number, and name and phone number of their supervisor, and then leave the scene. Finally, you are under no obligation to explain your purpose or identity except upon request by a law enforcement officer.

*Legal Issues:* While attending certain events, it's important to know that you are acting within the law. As a general rule, you should always be polite and respectful and never attempt to harass, alarm, or frighten those around you. There are a few standard rules to follow to ensure you're on the right side of the law:

1) You may record anyone in a public place, on public property.

2) You may record the exterior of private property as long as you are on public property.

3) You may record private property that is generally open to the public, unless told otherwise.

4) You may not film the interior of private property from anywhere, without consent of the property owner.

5) Members of the public have a very limited scope of privacy rights when they are in public places. Basically, anyone can be photographed without their consent except when they have secluded themselves in places where they have a reasonable expectation of privacy such as dressing rooms, restrooms, medical facilities, and inside their homes.

6) Public officials and private citizens voluntarily involved in newsworthy incidences are defined as public figures. Public figures have fewer rights to privacy than an "ordinary person." Public officials, and their staffers and family members are still entitled to freedom from harassment. This means that, when filming events, you should avoid behavior such as hounding, following, intruding, frightening, terrorizing, or ambushing your subjects.

7) Public places include, but are not limited to: sidewalks, roads, city halls, courthouses, or other city buildings, public parks, pavilions, and other such places. You have a right to be in these areas and cannot be legally made to leave.

*Dealing with Politicians:* As a public figure, their beliefs on issues of public policy as well as personal indiscretions are of general interest to the public and subsequently, 'fair game'. You have the unique opportunity to keep politicians honest and restore accountability. There is always a chance that the candidate you're following will lose his or her temper, become angry that he or she is being filmed, shove your camera, or become aggressive with you in some other manner. There are a few things to remember in these scenarios. **The first and foremost is to be concerned for your personal safety.** If, however, a candidate does confront you **and you are**

4

PETE SESSIONS
Chairman

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
Executive Director

**Form #8**

**safe**, do your best to get a good, steady shot, and remember to keep the camera rolling. That type of footage may only come about once every couple of years and it would be a shame to lose it, if safety is not an issue.

*Honesty:* One of the first things you will find out about going to opposing events is that you will almost always be asked at least once who you are and what you are doing. People naturally get curious when someone with a camera is filming. It is your prerogative to keep that information to yourself, but **do not pretend to be someone you are not.** There are a number of ways to approach the situation. You can tell them that you would rather not disclose who you are or what you are doing. You can also answer in vague but true generalities, such as "I work for a political organization and I am here for political purposes."

## Filming Events
*Equipment*: In most cases, you will need a video camera and tripod. In absence of a tripod, it is best to cross one arm across your waist and rest your other arm on top of it, which will provide some stability for the camera. In general, you will not need expensive equipment such as telephoto lenses and high-powered microphones. Simple video cameras are not only easier to operate but also are less obtrusive. Be sure to experiment with the equipment until you are comfortable with it.

*Camera Shots:* Because it is important to obtain production-quality video, you must take every step to obtain a good shot. When possible, record for 5 seconds before and after filming the subject. While not completely necessary, this makes editing easier. In order to obtain the best possible shot, always employ the **rule of thirds.** Mentally divide the shot into thirds (both horizontally and vertically), as seen in the following picture of the bee. Always try to place your subject in the middle third of the shot.



You should also be mindful of **headroom**. It seems obvious not to cut off the head of the subject that you are filming, but also pay attention to providing too much headroom. Again, the rule of thirds comes in handy here.

PETE SESSIONS
CHAIRMAN

# NATIONAL REPUBLICAN
★ ★ ★
## CONGRESSIONAL COMMITTEE

GUY HARRISON
EXECUTIVE DIRECTOR

**Form #8**

Every action and shooting situation is different; some will require you to move fast or to stay still, to let the subjects know that they are being filmed or to stay hidden.

*Watching for Things of Interest:* It is extremely important that you pay close attention while you are filming. You should make mental notes (or written notes, if possible) of things that your subject may do that could be of use at a later point. Unusual facial expressions, whether they be angry, goofy, etc., fall into this category. So do comments that are either factually inaccurate, outlandish, or contradictory to other statements the candidate has made. These are things that can prove to be very embarrassing if used correctly. Once you are done filming each event, write a comprehensive but brief synopsis of the event and send to your contact for the event. Be sure to make them aware of anything unusual or exceptional in your footage. Also, include the names and positions, if applicable, of other people in the footage. Remember, you are the person who saw the event firsthand, and you are in the best position to tell the story of what happened.

*B-Roll:* B-Roll is supplemental footage inserted into ads, interviews, or documentaries and used to fill in gaps where a visual image is needed. You should shoot this footage before or after the candidate arrives to the event if possible. If you do shoot B-Roll, you should look for landmarks and sites that are unique to the location of the event, such as a restaurant or bar façade or recognizable monuments. When shooting B-Roll, hold each shot for approximately 12-15 seconds, and be sure to make several shots of each image. Include various camera techniques such as a pan (side-to-side), tilt (up-and-down), and a zoom in and zoom out shot of each subject.

[1] *This can be viewed at http://www.shgresources.com/resources/newspapers/.*

Exhibit "C"

WIKIPEDIA

# Devin Nunes

**Devin Gerald Nunes** (/ˈnuːnɛs/;[1] born October 1, 1973) is an American politician and former dairy farmer serving as the U.S. Representative for California's 22nd congressional district since 2003. A member of the Republican Party, Nunes was Chair of the House Intelligence Committee from 2015 to 2019. He was also a member of President Donald Trump's transition team.[2] Nunes's district, numbered as the 21st from 2003 to 2013 and as the 22nd after redistricting, is in the San Joaquin Valley and includes most of western Tulare County and much of eastern Fresno County.

In March 2017 the U.S. House intelligence committee, which Nunes chaired at the time, launched an investigation into possible Russian interference in the 2016 United States elections. On April 6, 2017, he temporarily stepped aside from leading that investigation while the Office of Congressional Ethics investigated allegations (which Nunes denied) that he had improperly disclosed classified information to the public.[3][4] In December 2017 the Republican-majority U.S. House Committee on Ethics closed its investigation without taking any action against Nunes.[5]

In February 2018, Nunes publicly released the Nunes memo, a four-page memorandum alleging an FBI conspiracy against Donald Trump. Nunes subsequently began an investigation of the FBI and the Justice Department for allegedly abusing their powers in an attempt to hurt Trump.[6][7]

## Contents

**Early life, education and early career**

**U.S. Congress**
   Elections
   Committees and caucuses
      112th Congress
      114th Congress

**Political positions**
   Energy
   Environment
   Fiscal policy

**Devin Nunes**



**Ranking Member of the House Intelligence Committee**

**Incumbent**

**Assumed office**
January 3, 2019

| | |
|---|---|
| Preceded by | Adam Schiff |

**Chair of the House Intelligence Committee**

**In office**
January 3, 2015 – January 3, 2019

| | |
|---|---|
| Preceded by | Mike Rogers |
| Succeeded by | Adam Schiff |

**Member of the U.S. House of Representatives from California**

**Incumbent**

**Assumed office**
January 3, 2003

| | |
|---|---|
| Preceded by | Constituency established |
| Constituency | 21st district (2003–2013) 22nd district (2013–present) |

**Personal details**

| | |
|---|---|
| Born | Devin Gerald Nunes October 1, 1973 |

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On November 19, 2020, I caused to be served the within document(s): **DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT**

( )   **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )   **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

(X)   **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )   **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )   **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

( )   **BY ELECTRONIC SERVICE:** by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 19, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

DECLARATION OF BRIAN D. WHELAN IN SUPPORT OF MOTION TO STRIKE COMPLAINT

# EXHIBIT "5"

1  Derek P. Wisehart, Esq. #178100
   Law Offices of Derek P. Wisehart
2  2330 W. Main Street
   Visalia, California 93291
3  Telephone:     (559) 636-9473
   Facsimile:      (559) 636-9476
4  Email: derek@dwisehartlaw.com

5  Steven S. Biss, Esquire
   (Virginia State Bar No. 32972)
6  300 West Main Street, Suite 102
   Charlottesville, Virginia 22903
7  Telephone: (804) 501-8272
8  Facsimile: (202) 318-4098
   Email: stevenbiss@earthlink.net
9  (*Application for Admission Pro Hac Vice*
   *To Be Filed*)
10

11 Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                          COUNTY OF TULARE

15

16  DEVIN G. NUNES.                          Case No. VCU284528

17                  Plaintiff,               **PLAINTIFF'S MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
18  vs.                                      **OPPOSITION TO DEFENDANT'S**
                                             **MOTION TO STRIKE COMPLAINT**
19  BENJAMIN PAUL MEREDITH,                  **PURSUANT TO CCP § 425.16**
    TWITTER, INC., and
20  DOES 1 to 100, Inclusive,                Date:    December 22, 2020
                                             Time:    8:30 a.m.
21                  Defendants.              Dept.    7

22

23

24

25

26

27

28

----

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

1

## TABLE OF CONTENTS

2

**PAGE**

3

I.   MEREDITH'S CONDUCT IS NOT PROTECTED FREE SPEECH ............................ 2

4

II.   PLAINTIFF'S EVIDENCE ....................................................................................... 5

5

III.   MEREDITH'S DECLARATION AND SPOLIATION OF EVIDENCE..................... 7

6

7

IV.  DISCUSSION  9

8

    A.  MEREDITH COMMITED THE TORT OF STALKING.................................. 9

9

        1. Meredith's Motion To Strike Is Meritless  ................................................ 10

10

            a.       Meredith Fails The First Step ................................................. 11

11

            b.       There Is A Reasonable Probability That Plaintiff
                     Will Prevail ........................................................................... 12

12

    B.  PLAINTIFF STATES A CLAIM OF COMMON LAW
        MISAPPROPRIATION........................................................................ 14

13

14

V.CONCLUSION AND REQUEST FOR RELIEF........................................................ 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                                                                    **PAGE**

3

*Albert v. Seal*, 2018 WL 1163852, at * 10 (Cal.App. 2018) ...............................................11

4

*Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014)                                                                3

5

*Buchanan v. Crisler*, 323 Mich.App. 163, 922 N.W.2d 886, 895-896 (2018)                      6

6

*City of Costa Mesa v. D'Alessio Inv., LLC*, 214 Cal.App.4th 358, 371-372 (2013) ..............  10

7

*City of Cotati v. Cashman*, 29 Cal.4th 69, 76, 80-81, 124 Cal.Rptr.2d 519 (2002)...............  11

8

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387,
  106 Cal.Rptr.2d 126 (2001) ....................................................................... 13

9

*Commonwealth v. Walters*, 472 Mass. 680, 37 N.E.3d 980, 995-996 (2015)  ...................... 4

10

*Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal.App.4th 1237,
  1244-1245 (2013)............................................................................... 10

11

*Eastwood v. Superior Court*, 149 Cal.App.3rd 409, 416-417,
  198 Cal.Rptr. 342 (1983) ...................................................................... 13

12

*Equilon Enters. V. Consumer Cause, Inc.*, 29 Cal.4th 53, 67,
  124 Cal.Rptr.2d 507 (2002) ...............................................................9. 10

13

*Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013) .........................................10

14

*Khan v. 7-Eleven, Inc.*, 2014 WL 12601018, at * 4 (C.D. Cal. 2014)..................................9

15

*Krapacs v. Bacchus*, 301 So.3d 976, 979 (Fla. 4th DCA 2020) ......................................2

16

*Logue v. Book*, 297 So.3d 605, 612 (Fla. 4th DCA 2020) .........................................13

17

*Madsen v. Buffum*, 2013 WL 12139139, at * 2 (C.D. Cal. 2013)..........................................9

18

*Matter of Welfare of A.J.B.*, 910 N.W.2d 941, 501 (Minn.App. 2018) ................................2

19

*McNally v. Bredemann*, 30 N.E.2d 557, 563 (Ill.App. 2015) .............................................3

20

*No Doubt v. Activision Publishing Co.*, 192 Cal.App.4th 1018, 1034,
  122 Cal.Rptr.3d 397 (2011) .................................................................14

21

*People v. Borelli*, 77 Ca.App.4th 703, 716, 91 Cal.Rptr.2d 851 (2000)...............................1

22

23

24

25

26

27

ii

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP §425.16**

*People v. Carboy*, 37 Misc.3d 83, 955 N.Y.S.2d 473 (N.Y. Super. 2012)...........................3

*People v. Gonzalez*, 2 Cal.5th 1138, 1143, 394 P.3d 1074 (2017) ........................................4

*People v. Lenio*, 2019 WL 637814 @ *3 (Mich.App. 2019)..................................................13

*Piester v. Escobar*, 36 N.E.3d 344, 348 (Ill. App. 2015).......................................................2

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal.App.4th 464, 476, 39
Cal.Rptr.3d 43 (2006) ..........................................................................................................12

*Purifoy v. Mafa*, 556 S.W.3d 170, 192 (Tenn.App. 2017).....................................................2

*Thunder Studios, Inc. v. Kazal*, 2018 WL 5099726, at * (C.D. Cal. 2018) ...........................8

*United Artists Corporation v. United Artist Studios, LLC*, 2019 WL 6917918,
at * 10 (C.D. Cal. 2019).........................................................................................................1

*United States v. Feng Ling Liu*, 69 F.Supp.3d 374, 377 (S.D.N.Y. 2014) ............................6

*United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) ................................................2

*Wallace v. McCubbin*, 196 Ca.App.4th 1169, 1182-1184 (2011) ........................................10

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 572, 576 (1977) ..........................14

## STATUTES

California Code of Civil Procedure § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . .2, 9, 10, 11, 12

California Civil Code § 1708.7.............................................................................................4, 8

## SECONDARY SOURCES

### Unpublished Cases:

*The following cases are cited and intended to be persuasive only pursuant to California Rule of Court, Rule 8.1115 (b)(1), which states:  An unpublished opinion may be cited or relied on: (1) When the opinion is relevant under the doctrines of law of the case….*

*Armstrong v. Parker*, 2013 WL 6795409, at * 4 (Cal.App. 2013) (unpublished) .................1

*Emerson v. Powers*, 2016 WL 7368641, at * 1 (Cal.App. 2016) (unpublished) ...................11

iii

1  *Gibson v. Swingle*, 2010 WL 2136655, at * 6 (Cal.App. 2010) (unpublished) .....................12

2  *Hi-Land Mountain Homes, Inc. v. McEntyre*, 2019 WL 3335176, at ** 1,

3  12 (Cal.App. 2019) (unpublished) .........................................................................11

4  *Levy v. Pearson*, 2009 WL 891032, at * 6 (Cal.App. 2009) (unpublished) ...........................12

5  *People v. Crittenden*, 2020 WL 3026340, * 9 (Cal.App. 2020) (unpublished) .....................9

6  *R.B.T. v. Taub*, 2020 WL 2744579, at * 5 (Cal.App. 2020) (unpublished) ...........................9

7  *Ratto v. Son*, 2007 WL 1244323, at * 8 (Cal.App. 2007) (unpublished)...............................12

8  *Santsche v. Hopkins*, 2019 WL 1353295, at ** 5-6 (Cal.App. 2019) (unpublished) ............11

9

10  **Other Secondary Sources:**

11
12  Fraser, Olsen, Lee, Southworth, & Tucker, The New Age of Stalking: Technological
Implications for Stalking, 61 Juv. & Fam. Ct. J. 39, 41, 46–48 (Fall 2010).........................4

13  https://www.merriam-webster.com/dictionary/dox .................................................6

14

15  **OTHER SOURCES**

16  Complaint
17  https://help.twitter.com/en/using-twitter/types-of-tweets ......................................6

18  https://help.twitter.com/en/using-twitter/retweet-faqs...........................................6

19  https://help.twitter.com/en/using-twitter/liking-tweets-and-moments...................................7

20
21  https://www.linkedin.com/in/benpmeredith/ ......................................................8

22  https://medium.com/@benpmeredith.................................................................8

23  https://www.howtogeek.com/326159/can-other-people-see-the-tweets-ive-liked/ ..............7

24
25
26
27
28

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, respectfully submits this Memorandum in Opposition to the motion to strike pursuant to California Civil Code § 425.16 filed by defendant, Benjamin Paul Meredith ("Meredith").

## I. MEREDITH'S CONDUCT IS NOT PROTECTED FREE SPEECH

1.        When words are part of a pattern of stalking or harassing behavior, they do not constitute protected speech. *See, e.g., People v. Borelli*, 77 Cal.App.4th 703, 716, 91 Cal.Rptr.2d 851 (2000) ("While the right to free speech guarantees a powerful right to express oneself, it does not include the right to repeatedly invade another person's constitutional rights of privacy and the pursuit of happiness through the use of acts and threats that evidence a pattern of harassment designed to inflict substantial emotional distress.");[1] *United Artists Corporation v. United Artist Studios, LLC*, 2019 WL 6917918, at * 10 (C.D. Cal. 2019) ("Schramm's online postings and his alleged advertising campaign are not protected under the First Amendment so long as the posts are threatening, harassing, or defamatory to Flores, Plaintiff's employees, or Plaintiff's counsel … [T]he First Amendment does not protect offensive and threatening messages and posts on public or semi-public websites, and such postings can be considered a harassing course of conduct.") (citing *Armstrong v. Parker*, 2013 WL 6795409, at * 4 (Cal.App. 2013) (unpublished) (finding harassment where the defendant posted comments on Facebook which either stated or strongly implied that the harassee was on welfare, has been promiscuous since a young age, was afflicted with sexually transmitted infections, wanted to rape little boys, and made threats of

---

[1]      Stalking statutes do not regulate the *content* of speech inasmuch as the *manner* in which the communication is made (*i.e.*, through repeated unconsented contact reasonably causing the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested). *See Borelli*, 77 Cal.App.4th at 716, 91 Cal.Rptr.2d at 851.

1
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

violence)); *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (the defendant was "unrelenting in his pursuit and harassment" of the victim, including sending threatening text messages, impersonating the victim on Facebook, and posting sexually explicit photographs of her – "Any expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress" to the victim); *id. Krapacs v. Bacchus*, 301 So.3d 976, 979 (Fla. 4th DCA 2020) (the act of retagging plaintiff in defendant's social media posts "for four hours" constitutes one example of cyberstalking – "This conduct, by itself, is akin to an attempt to force unwanted speech upon Bacchus and therefore 'crosses the line' in terms of First Amendment protection.") (citation and quotation omitted); *Matter of Welfare of A.J.B.*, 910 N.W.2d 941, 501 (Minn.App. 2018) ("engaging in a pattern of harassing conduct [tweets directed towards the victim's autism] is not protected by the First Amendment simply because it is carried out by means of speech … The fact that A.J.B. engaged in this conduct in part by means of speech does not entitle this activity to First Amendment protection. The fact that speech was employed as the mechanism for causing the victim distress does not insulate the actor from punishment if the speech was integral to the commission of the crime itself."); *Purifoy v. Mafa*, 556 S.W.3d 170, 192 (Tenn.App. 2017) ("Here, Dr. Mafa's repeated video and written postings to and about Ms. Purifoy were part of his course of conduct of stalking. His repeated posts were clearly meant to harass, degrade, intimidate, threaten, and humiliate Ms. Purifoy, and they had the desired effect of causing her fear and emotional distress. This was not protected free speech that was exempt from the stalking statute's definition of harassment."); *Piester v. Escobar*, 36 N.E.3d 344, 348 (Ill. App. 2015) ("Escobar's social media postings and other online comments were part of a course of conduct of stalking. For example, screen saves attached to the addendums show Escobar monitoring Piester's daily activities and making degrading, threatening and harassing

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

1  comments about her.  This speech is not protected under the First Amendment."); *McNally v.*

2  *Bredemann*, 30 N.E.2d 557, 563 (Ill.App. 2015) ("words surrounding surveiling, interfering, or

3  harassing a person to intimidate are not constitutionally protected.  While stalking does contain

4  an element of speech, that speech does not fall within the protections of the first amendment.

5  Bredemann's Internet postings, under his various aliases, were a transparent part of

6  his stalking conduct.") (citations omitted); *Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014)

7  ("The United States and Indiana Constitutions afford sweeping protections to speech about public

8  officials or issues of public or general concern, even if the speech is intemperate or caustic.  But

9

10  there is no such protection for "true threats"—including veiled or implied threats, when the

11  totality of the circumstances shows that they were intended to put the victims in fear for their

12  safety.  Fear for one's *reputation* is often the price of being a public figure, or of involvement in

13  public issues.  But fear for one's *safety* is not … Defendant's conduct, including showing his

14  victims against a backdrop of obsessive and volatile behavior that he knew where they lived, was

15  clearly intended to place them in fear—not fear of merely being ridiculed, but fear for their homes

16  and safety, the essence of an unprotected 'true threat.'  Causing that fear is unlawful in itself, and

17  all the more damaging when, as here, it aims to interfere with these victims' lawful obligations

18  of being a neutral judicial officer or a truthful witness—both of which are at the core of our

19  justice system") (emphasis in original); *People v. Carboy*, 37 Misc.3d 83, 955 N.Y.S.2d 473

20  (N.Y. Super. 2012) (in stalking cases, the "defendant's right to free speech is permissibly

21

22  subordinated to the complainant's right to be free of repetitive, unwanted verbal and non-verbal

23  communications which are likely to instill in the complainant a reasonable fear of

24  harm.") (quotation omitted).

25

26

27

28

2.     "There is no question that new technology has created increasing opportunities for stalkers to monitor, harass, and instill fear in their victims, including through use of Web sites. *Commonwealth v. Walters*, 472 Mass. 680, 37 N.E.3d 980, 995-996 (2015) (citing Fraser, Olsen, Lee, Southworth, & Tucker, The New Age of Stalking: Technological Implications for Stalking, 61 Juv. & Fam. Ct. J. 39, 41, 46–48 (Fall 2010) (discussing uses of Internet to cause physical harm, threaten, or post damaging information about a victim)). "Cyberstalking is a new high-tech version of stalking.  At its worst, cyberstalking can become 'real world' stalking, with potentially dangerous and even deadly consequences.  Cyberstalking can take the form of threatening, obscene, or hateful e-mail; pages; faxes; and voice mail messages". *People v. Gonzalez*, 2 Cal.5th 1138, 1143, 394 P.3d 1074 (2017).

3.     This is a civil action for stalking in violation of § 1708.7 of the California Civil Code and for common law commercial misappropriation.[2]  The matter is before the Court on Meredith's motion to strike.  For the reasons stated below, the motion should be DENIED.

## II.   PLAINTIFF'S EVIDENCE[3]

4.     Plaintiff is married with three daughters.  He lives with his family in Tulare County.   Plaintiff is a United States Congressman.   He represents California's 22nd Congressional District. He has an office in Visalia and Washington, D.C., and a staff that assist him in the performance of his Congressional duties.  Plaintiff serves as Ranking Member of the House Permanent Select Committee on Intelligence.  As a member of the House Intelligence

---

[2]     Plaintiff also asserts claims of aiding and abetting (COUNT II) and unfair competition (COUNT IV) against Twitter.  This Memorandum addresses only the claims against Meredith.

[3]     *See* Declaration of Devin G. Nunes, filed herewith and incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

Committee, he participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.

5.     For over two (2) years, Meredith has used Twitter to follow, alarm, place under surveillance and relentlessly harass Plaintiff.   Meredith has committed multiple acts of cyberstalking, including

- Meredith threatened Plaintiff's life in September 2019 by posting a tweet that encouraged Plaintiff to cut his throat with a razor;

- Using multiple fake accounts that he created or operates for the purpose of stalking Plaintiff, Meredith has published and republished ***thousands*** of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about Plaintiff, including

  ▶ lewd, lascivious and hateful images of Plaintiff, including images that portray Plaintiff performing criminal acts;

  ▶ statements accusing Plaintiff of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts;[4]

- Meredith incessantly tags @DevinNunes in tweets, forcing Meredith's unwanted speech upon Plaintiff and his followers;

- Meredith's tweets routinely employ threatening, harassing and vile #hashtags, which Meredith encourages third parties to "get trending";

- Meredith relentlessly monitors and follows Plaintiff's personal and professional activities almost hourly, and routinely threatens to show up at fundraisers and other events and to disrupt Plaintiff's business;

- Meredith solicited agents to search Plaintiff out at airports and events, including recently at the Republican National Convention, to watch Plaintiff, to surreptitiously photograph and videotape Plaintiff, his campaign vehicles, etc., and to post the photos and video to Twitter and incite third parties to harass Plaintiff;

---

[4]     Meredith admits publishing the inciteful statements, but denies in his declaration using the words "assassination" and "murder".

5

- Meredith has repeatedly doxed[5] Plaintiff's location on airplanes, at airports, and at multiple events;

- Meredith has repeatedly doxed the location of Plaintiff's campaign vehicles, inciting people to vandalize and assault Plaintiff's staffers – In two separate incidents in August 2020, one of Plaintiff's staff members had his car vandalized and severely damaged outside Plaintiff's Visalia office, and another staff member had a bottle thrown at a campaign vehicle – pictures of which Meredith had posted online – as she drove it;

- Meredith conscripted Plaintiff's name and uses it in his primary Twitter account;

- Meredith organized a GoFundMe campaign in which he uses Plaintiff's name to solicit funds to pay his personal expenses.  Meredith has generated substantial funds from this enterprise.

In addition to cyberstalking, Meredith's conduct constitutes "cyberstalking by proxy.[6]

## III.   MEREDITH'S DECLARATION AND SPOLIATION OF EVIDENCE

6.      Meredith's declaration admits that he ***now*** operates at least one Twitter account.

Meredith claims that since the inception of this account, he "average[s]" 2.19 tweets[7] per day and

---

5      "Dox" means to publicly identify or publish private information about a particular individual on the Internet with malicious intent, especially as a form of punishment or revenge. [https://www.merriam-webster.com/dictionary/dox].

6      *See Buchanan v. Crisler*, 323 Mich.App. 163, 922 N.W.2d 886, 895-896 (2018) ("cyberstalking by proxy" described a situation in which it is not the postings themselves that are harassing to the victim; rather, it is the unconsented contacts arising from the postings that harass the victim.  In particular, the stalker "posts a message about the victim, without the victim's consent, and as a result of the posting, others initiate unconsented contacts with the victim.  These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim.  In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim.").

7      "A tweet is a short text post … delivered through Internet or phone-based text systems to the author's subscribers". *United States v. Feng Ling Liu*, 69 F.Supp.3d 374, 377 (S.D.N.Y. 2014); https://help.twitter.com/en/using-twitter/types-of-tweets (in general, a "tweet" is a "message posted to Twitter containing text, photos, a GIF, and/or video").  A "retweet" is simply a repost of another Twitter user's tweet on a user's own profile to show to that user's own followers. [https://help.twitter.com/en/using-twitter/retweet-faqs].

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

3.73 "likes"[8] every day. This supports Plaintiff's position that Meredith has had, since inception, an obsession with Plaintiff and, given the volume of tweets, that Meredith's attacks are "relentless". Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students. Meredith admits that he has a "HISTORY WITH DEVIN NUNES", although Meredith suggests that it is Plaintiff who holds a "grudge against me for the better part of two decades".

7.      Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his account, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average", (c) the identity of the accounts that he controls, (d) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.*, "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,[9] and (f) the subject matters of the 3.73 daily tweets that Meredith "liked".

8.      Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist

---

    [8]      On Twitter, "likes" are represented by a small heart and are used to show appreciation for a tweet or retweet. [https://help.twitter.com/en/using-twitter/liking-tweets-and-moments]. When a user "likes" a tweet, the person who wrote the tweet finds out instantly, thanks to Twitter's notification feature. In addition, people can see "likes" from the user's profile page, where there is a "Likes" tab. Anyone who wants to can click on the Likes tab and scroll through every tweet that the user has ever liked. [https://www.howtogeek.com/326159/can-other-people-see-the-tweets-ive-liked/].

    [9]      Meredith's declaration fails to disclose that, in addition to his tweets and likes, Meredith regularly retweets other users' content multiple times every day.

with an expertise in computer science.  Significantly, since the filing of this action, Meredith has

altered his LinkedIn profile in an effort to downplay his expertise in computer science.  He used

to describe himself as a "Data Scientist".  Now, he claims to be "Executive Director | Co-Founder

at Social Impact Analytics Institute".  Meredith also erased any reference to DKE Technologies

from his LinkedIn profile. [*see* https://www.linkedin.com/in/benpmeredith/] and scrubbed any

visible trace of the former website of DKE Technologies from the Internet.  For good measure,

Meredith also deleted his medium account [*see* https://medium.com/@benpmeredith], which

contained numerous incriminating statements.  **Meredith's spoliation of evidence is extremely**

**serious.  Meredith's conduct speaks volumes about his lack of credibility.  The Court should**

**deny his motion without more because of his obstruction and misconduct.**

## IV.   DISCUSSION

**A.      *MEREDITH COMMITTED THE TORT OF STALKING***

9.      California Civil Code § 1708.7 creates a civil cause of action for stalking.

10.      Under California Civil Code § 1708.7, a plaintiff must allege three elements to

plead the tort of stalking.  First, the "defendant engaged in a pattern of conduct the intent of which

was to follow, alarm, place under surveillance, or harass the plaintiff." *Cal. Civ. Code §*

*1708.7(a)(1)*.  Second, as a result of the defendant's conduct, the plaintiff either: (1) "reasonably

feared for his or her safety, or the safety of an immediate family member"; or (2) "suffered

substantial emotional distress, and the pattern of conduct would cause a reasonable person to

suffer substantial emotional distress." *Id. at § 1708.7(a)(2)*.  Third, the defendant made a credible

threat intending to place plaintiff in "reasonable fear for his or her own safety" or with reckless

disregard of plaintiff's safety, and the defendant persisted despite the fact that on at least one

occasion, plaintiff made clear that the "defendant cease and abate his or her pattern of conduct."

*Id. at § 1708.7(a)(3)*. *Thunder Studios, Inc. v. Kazal*, 2018 WL 5099726, at * (C.D. Cal. 2018)

(plaintiff stated a claim of stalking, where he alleged that the defendants carried "signs with disparaging statements" about plaintiff, which they displayed at plaintiff's workplace); *Khan v. 7-Eleven, Inc.*, 2014 WL 12601018, at * 4 (C.D. Cal. 2014) (the "menacing and unrelenting following" of plaintiff and repeated conduct of defendants' employees or agents was "sufficient to show that 7-Eleven acted with the intent to follow, alarm, or harass Khan"); *Madsen v. Buffum*, 2013 WL 12139139, at * 2 (C.D. Cal. 2013) (defendants' creation of a website named after plaintiffs' last names—Madsen and Coker—("www.stopmadsencoker.com"), and use of email communications to monitor plaintiffs' business activities was enough to infer defendants had acted with the intent to harass); *see People v. Crittenden*, 2020 WL 3026340, * 9 (Cal.App. 2020) (unpublished) (evidence supporting the stalking conviction against the defendant consisted solely of the defendant's speech in the form of web banners and his e-mails directed at the victim (a Deputy Sheriff) and others. The defendant's repeated harassment was not protected speech. The emails seriously alarmed, annoyed, tormented, or terrorized the victim, and served no legitimate purpose); *R.B.T. v. Taub*, 2020 WL 2744579, at * 5 (Cal.App. 2020) (unpublished) ("Substantial evidence supports the restraining order. Defendant sent 75 emails and a letter to a minor in a six-month period … [A]ggressive and inappropriate statements saturate these documents.").

      1.   ***Meredith's Motion To Strike Is Meritless***

      11.   California Code of Civil Procedure § 425.16 is called the "anti-SLAPP" statute because it allows a defendant to gain early dismissal of claims that are designed primarily to chill the exercise of First Amendment rights. Section 425.16(b)(1) provides as follows:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim."

In ruling on an anti-SLAPP motion, the Court engages in a two-step process. *Equilon Enters. V.*

*Consumer Cause, Inc.*, 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507 (2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action "arises from" acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.*

>           a.    ***Meredith Fails The First Step***

12.    For the first part of the test, a defendant must make a prima-facie showing that the claim "arises from" his conduct "in furtherance of" his exercise of free speech or petition rights as defined in § 425.16(e). *Equilon*, 20 Cal.4th at 61, 124 Cal.Rptr.2d at 514. "For purposes of the anti-SLAPP statute, a cause of action 'arises from' conduct that it is 'based on.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal.App.4th 1237, 1244-1245 (2013)). Thus, the Court must ask what activities form the basis for each of the plaintiff's claims. *Id.* The court then must ask whether those activities are "protected" and thereby bring the claim within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Ca.App.4th 1169, 1182-1184 (2011)). Arguments about the merits of the plaintiff's claims or the defendant's defenses are irrelevant in the first step of the anti-SLAPP analysis: for example, in a defamation case, it does not matter whether defendant actually made the statements he or she is alleged to have made, whether the statements were true or not, or whether they were defamatory or not. *See, e.g., City of Costa Mesa v. D'Alessio Inv., LLC*, 214 Cal.App.4th 358, 371-372 (2013). The "first step" only determines whether § 425.16's procedural protection applies to the alleged activities in question. *Id.* at 372.

13.    **For purposes of the first prong of the anti-SLAPP analysis, the question is not what the defendant did, it is what the plaintiff accuses him of doing.** If the plaintiff's

1    cause of action against the defendant does not meet the threshold criterion (of protected speech),

2    it is not subject to a motion to strike and the court never reaches the issue of whether the plaintiff

3    can show a probability of success on the merits. *City of Cotati v. Cashman*, 29 Cal.4[th] 69, 76, 80-

4    81, 124 Cal.Rptr.2d 519 (2002).

5        14.    Meredith's anti-SLAPP motion fails at the gate.   Plaintiff's claim of stalking[10]

6    involves Meredith's conduct, not his speech.   **California Civil Code § 425.16 does not apply**.

7    *See, e.g., Hi-Land Mountain Homes, Inc. v. McEntyre*, 2019 WL 3335176, at ** 1, 12 (Cal.App.

8    2019) (unpublished) (plaintiffs alleged that defendant "posted negative comments on Facebook

9    and commented in newspaper articles in order to ruin their reputation and business."   The trial

10   court denied defendant's SLAPP motion finding that, plaintiff's cause of action for stalking

11   "involved conduct, not speech."   The Court of Appeals affirmed.); *Santsche v. Hopkins*, 2019

12   WL 1353295, at ** 5-6 (Cal.App. 2019) (unpublished) (the defendant engaged in activities that

13   were *not* protected under section 425.16, including "relentlessly" submitting postings on social

14   media sites about plaintiff and creating a website that included plaintiff's personal address.

15   "Antagonistic acts, deliberate infliction of emotional distress, and intrusion and trespass onto

16   someone's property are not forms of speech that are constitutionally protected."); *Albert v. Seal*,

17

18   2018 WL 1163852, at * 10 (Cal.App. 2018) ("The stalking allegation survives Albert's anti-

19   SLAPP, since it is not itself litigation-related or an exercise of free speech.   It makes no difference

20   that it might have been a ground for a restraining order, the actual allegation is independent of

21   any litigation or issue of public interest."); *Emerson v. Powers*, 2016 WL 7368641, at * 1

22

23   (Cal.App. 2016) (unpublished) ("We conclude the trial court properly denied the motion to strike

24

25

26       10     Anti-SLAPP motions are traditionally filed in defamation cases, where the cause
27   of action is based on the defendant's "speech".

28

because appellant's alleged conduct does not qualify as protected activity under the anti-SLAPP statute. Accordingly, we affirm."); *Gibson v. Swingle*, 2010 WL 2136655, at * 6 (Cal.App. 2010) (unpublished) (where the defendant posted messages on Craigslist.org and created a blog through Google, accusing plaintiff of breaking laws, using illegal drugs, harassing and stalking people, frequently using profanity, being mentally ill, threatening people with violence, accusing plaintiff of threatening to blow up someone's car, expressing contempt for the Bible, making racist remarks directed at Mexican-Americans, and being a "perv", anti-SLAPP motion was denied because the suit did not arise from, and was not based on, defendant's political speech *or* any other speech of public interest. Rather, as the complaint made clear, the claims were based on Internet posts describing plaintiff's "alleged character flaws and his alleged illegal or otherwise improper conduct … Here, [plaintiff's] claims are based on defendant's alleged derogatory Internet posts, not on political statements."); *Levy v. Pearson*, 2009 WL 891032, at * 6 (Cal.App. 2009) (unpublished) (inappropriate contact and stalking does not qualify for anti-SLAPP treatment); *Ratto v. Son*, 2007 WL 1244323, at * 8 (Cal.App. 2007) (unpublished) ("The stalking claim was not based on constitutionally protected activities and the trial court properly denied the special motion to strike under section 425.16.").

     **b.** ***There Is A Reasonable Probability That Plaintiff Will Prevail***

15.     Even if a claim of stalking did arise from constitutionally protected speech – which it does not – Plaintiff has established a reasonable probability that he will prevail.

16.     To establish a probability of prevailing, a plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima-facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal.App.4th 464, 476, 39 Cal.Rptr.3d 43 (2006). In deciding the question of potential merit, the trial court considers the pleadings and evidentiary

1   submissions of both the plaintiff and the defendant.  The Court does not *weigh* the credibility or

2   comparative probative strength of competing evidence.

3       17.    Meredith's self-serving and conclusory denials in his declaration do not, as a

4   matter of law, defeat Plaintiff's evidence that Meredith engaged in multiple egregious acts of

5   stalking over a two-year period. *See Logue v. Book*, 297 So.3d 605, 612 (Fla. 4th DCA 2020)

6   ("social media postings that are not sent directly to an individual may nonetheless be directed at

7   an individual in a number of ways, including by 'tagging' that person in a post … Accordingly,

8   a credible threat made on social media can be actionable under the statute even if that post was

9   not sent directly to the person targeted."); *People v. Lenio*, 2019 WL 637814, at * 3 (Mich.App.

10  2019) ("defendant specifically targeted the victim in this case by tagging him … A rational jury

11  could find that defendant intended to disturb the victim's peace and quiet by sending the victim

12  four tweets in which defendant used offensive, ethnoreligious slurs and threatened violence").

**B.    *PLAINTIFF STATES A CLAIM OF COMMON LAW MISAPPROPRIATION***

14      18.    The tort of misappropriation of name or likeness originated as a branch of

15  the common law right of privacy.  To prove a misappropriation, a plaintiff must show "(1) the

17  defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to

18  defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."

19  *Eastwood v. Superior Court*, 149 Cal.App.3rd 409, 416-417, 198 Cal.Rptr. 342 (1983).  "What

20  the right of publicity holder possesses is … a right to prevent others from misappropriating the

21  economic value generated … through the merchandising of the 'name, voice, signature,

23  photograph, or likeness' of the [holder]." *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25

24  Cal.4th 387, 106 Cal.Rptr.2d 126 (2001).

26      19.    The merchandizing or misappropriation of a person's name or likeness is not

27  protected expression under the First Amendment. *Comedy III Productions*, 25 Cal.4th at 400, 106

28

13

Cal.Rptr. at 136 (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 572, 576 (1977) ("[T]he rationale for [protecting the right of publicity] is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay.'")); *No Doubt v. Activision Publishing Co.*, 192 Val.App.4th 1018, 1034, 122 Cal.Rptr.3d 397 (2011) ("the context in which [defendant had] use[d] the literal likenesses of No Doubt's members d[id] not qualify ... for First Amendment protection.").

20.    Meredith offers no facts to support any "transformative use" defense. Meredith is also not using Plaintiff's name in connection with any news, public affairs, or sports broadcast or account, or any political campaign. Meredith is using Plaintiff's name on or in products, merchandise or goods (t-shirts, coffee mugs and other paraphernalia) offered for sale to the public. He is also using Plaintiff's name to solicit money to pay his personal bills.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

Meredith's **stalking conduct** amounts to unprotected "true threats" and harassment in violation of both civil and criminal law (e.g. PC §646.9). Such conduct falls outside the scope of protected speech, and, therefore, Meredith's motion fails on the first step, and must be denied. We live in times where violence occurs all too frequently and an ordinary day may turn into a horrific tragedy. There are already too many examples in this country where failure to act has resulted in significant harm. Courts are, and must be, vigilant in reviewing complaints of stalking, such as the one filed in this case, and must not be fooled by the stalker's plea of SLAPP protection.

Plaintiff respectfully requested that Meredith's motion to strike be denied.

DATED:        December 9, 2020          LAW OFFICE OF DEREK P. WISEHART

                                        Derek P. Wisehart, Attorney for Plaintiff.

14

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP 425.16**

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

I am a citizen of the United States and a resident of the County aforesaid; I am over the
age of eighteen years, and not a party to the within action; my business address is 2330
W. Main Street, Visalia, California  93291.

4

5

On December __9__, 2020, I served the foregoing **PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO
STRIKE COMPLAINT PURSUANT TO CCP §426.16** on all interested parties, by
placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

6

7

| Brian D. Whelan, Esq. WHELAN LAW GROUP, A Professional Corporation 1827 East Fir Ave., Suite 110 Fresno, CA  93720 Email:  brian@whelanlawgroup.com | |
|---|---|

8

9

10

11

12   **[  ]     By Personal Service** - I delivered such envelope by hand to the
addressee.

13

14   **[ X ]     By Mail** - I deposited such envelope with the United States Postal Service,
enclosed in a sealed envelope with postage thereon fully prepaid, in the United
States Mail at Visalia, California.  I am readily familiar with the business practice at
my place of business for collection and processing of correspondence for mailing
with the United States Postal Service.  Correspondence so collected and processed
is deposited with the United States Postal Service that same day in the ordinary
course of business.

15

16

17

18   **[  ]     By Express Service Carrier** - I deposited in a box or other facility
regularly maintained by Federal Express, an express service carrier, or delivered to
a courier or driver authorized by said express service carrier to receive documents in
an envelope designated by the said express carrier, with delivery fees paid or
provided for.

19

20

21   **[  ]     By Facsimile** - I transmitted from a facsimile transmission machine whose
telephone number is 559/636-9476, the afore-described document(s), and a copy of
this declaration to the above interested parties at the listed facsimile transmission
telephone number.

22

23   **[ X ]     By Electronic Service:**  I sent the afore-described document(s) from
email address dnorys@dwisehartlaw.com to the person(s) at the email addresses
listed above.  I did not receive within a reasonable time after transmission any
electronic message or other indication that the transmission was unsuccessful.

24

25

26

1
   **X**  **(State)**     I declare under penalty of perjury under the laws of the State of

2
California that the foregoing is true and correct.

3
   _____  **(Federal)**  I declare that I am employed in the office of a member of the Bar of

this Court at whose direction the service was made.

4
        Executed on December  _9_ , at Visalia, California.

5

6
                           _Deborah M. Norys_

                           Deborah M. Norys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT "6"

1  Derek P. Wisehart, Esq. #178100
   Law Offices of Derek P. Wisehart
2  2330 W. Main Street
   Visalia, California 93291
3  Telephone:    (559) 636-9473
   Facsimile:    (559) 636-9476
4  Email: derek@dwisehartlaw.com

5  Steven S. Biss, Esquire
   (Virginia State Bar No. 32972)
6  300 West Main Street, Suite 102
   Charlottesville, Virginia 22903
7  Telephone:  (804) 501-8272
   Facsimile:  (202) 318-4098
8  Email: stevenbiss@earthlink.net
   (Application for Admission Pro Hac Vice
9        To be Filed)

10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF TULARE

15

16  DEVIN G. NUNES.                          Case No. VCU284528

17              Plaintiff,                   **DECLARATION OF DEVIN G. NUNES
                                             IN OPPOSITION TO DEFENDANT,**
18  vs.                                      **BENJAMIN PAUL MEREDITH'S
                                             MOTION TO STRIKE COMPLAINT**
19  BENJAMIN PAUL MEREDITH,                  **PURSUANT TO CCP 425.16**
    TWITTER, INC., and
20  DOES 1 to 100, Inclusive,

21              Defendants.

22

23      I, DEVIN G. NUNES, declare as follows:

24      1.    I am over 21 years of age and otherwise competent to make this Declaration.  I

25  have personal knowledge of the statements contained herein based upon (a) documents and

26  information in my possession and control, (b) my personal observations, memory, and

27  experiences, (c) public information and statements by the defendant, Benjamin Paul Meredith

28

─────────────────────────────────────────────
            DECLARATION OF PLAINTIFF, DEVIN G. NUNES

("Meredith"), on the Internet and on Twitter, and (d) documents known or reasonably believed to be in the possession, custody and control of others, including Michelle Meredith.   The statements in this Declaration are true and accurate to the best of my knowledge, information and belief.

2.      I am the Plaintiff in this action.  I authorized my counsel to file this case.  I reviewed the complaint before it was filed, and affirm that the facts stated in the complaint are truthful and accurate.

3.      I am married with three daughters.  I live with my family in Tulare County.  I am a United States Congressman, representing California's 22nd Congressional District.  I have an office in Visalia and Washington, D.C., and a staff that assist me in the performance of my Congressional duties.  I serve as Ranking Member of the House Permanent Select Committee on Intelligence.  As a member of the House Intelligence Committee, I participate in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.  My official website is https://nunes.house.gov/].

4.      I have a personal Twitter account, https://twitter.com/DevinNunes.  The name of my homepage or profile is "Devin Nunes".  The link to my personal profile is @DevinNunes.  I use my personal Twitter account to tweet, retweet and "like" information of interest.[1]

---

[1]      A tweet is a short text post or message delivered my followers. [https://help.twitter.com/en/using-twitter/types-of-tweets (in general, a "tweet" is a "message posted to Twitter containing text, photos, a GIF, and/or video").  A "retweet" is a repost of another Twitter user's tweet on my profile.  I retweet information to share it with my followers. [https://help.twitter.com/en/using-twitter/retweet-faqs].  On Twitter, "likes" are represented by a small   heart   and   are   used   to   show   appreciation   for   a   tweet   or   retweet. [https://help.twitter.com/en/using-twitter/liking-tweets-and-moments].   When I "like" a tweet, the person who wrote the tweet finds out instantly, thanks to Twitter's notification feature. People can see "likes" from my profile page, where there is a "Likes" tab.

2
**DECLARATON OF DEVIN G. NUNES**

5.  For over two (2) years, Meredith has used Twitter to follow, alarm, place me under surveillance, and relentlessly harass me. He uses multiple different Twitter accounts to tweet about me, retweet statements about me, and like posts by third parties about me.

6.  In September 2019, Meredith threatened my life. He quoted one of my tweets, and then encouraged me to cut my own throat with a razor. Shortly after he posted the threat, he deleted it. The tweet greatly alarmed me. I reported the matter to the Capitol Police.

7.  Between 2019 and the date of this Declaration, Meredith has published and republished *thousands* of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about me. His tweets have included hundreds of lewd, lascivious and hateful images of me, including images that portray me performing criminal acts. Meredith has published hundreds of statements falsely accusing me of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts.

8.  Meredith targeted me in hundreds of his offensive and demeaning tweets and retweets by "tagging" me. Each time he include "@DevinNunes" in a tweet or retweet, that post came directly to my homepage. In this manner, he intentionally forced his unwanted statements upon me and my followers. The volume of tweets and retweets was (and continues to be) staggering. Meredith publishes incessantly, day and night, which leads me to believe that there are multiple people involved in the harassment campaign. It is very personal, and it causes substantial emotional distress and fear for my safety and the safety of my family and my staff.

9.  Meredith frequently included threatening and harassing "#hashtags" in his tweets and retweets in order to encourage third parties to search for me and get Meredith's issues

**DECLARATON OF DEVIN G. NUNES**

"trending".[2]

10.    Meredith followed my personal and professional activities almost hourly, and routinely threatened to show up at fundraisers and other events and to disrupt my business. He solicited agents to search me out at airports and events, including recently at the Republican National Convention, to watch me, to surreptitiously photograph and videotape me, and my campaign vehicles. He posted the photos and video to Twitter.

11.    Meredith has repeatedly doxed[3] my location on airplanes, at airports, and at multiple events.

12.    During the recent Congressional Election, Meredith repeatedly doxed the location of my campaign vehicles. His tweets incited people to vandalize vehicles and assault one of my staff. In two separate incidents in August 2020, one of my staff members had his car vandalized and severely damaged outside my Visalia office, and another staff member had a bottle thrown at a campaign vehicle – pictures of which Meredith had posted online – as she drove it.

13.    Meredith has conscripted my name and uses it in his primary Twitter account. He has also organized a GoFundMe campaign in which he uses my name to solicit funds to pay his personal expenses. Meredith has generated substantial funds from this enterprise. Meredith is also using my name and picture to sell merchandise, such as t-shirts and coffee mugs.

---

2    A hashtag is a keyword or a phrase used to describe a topic or a theme, which is immediately preceded by the pound sign (#). Hashtags target a subject and help other users find the topic. A hashtag automatically becomes a clickable link when it is tweeted. Anyone who sees the hashtag can click on it and be brought to a page featuring the feed of all the most recent tweets that contain that particular hashtag.

3    "Dox" means to publicly identify or publish private information about a particular individual on the Internet with malicious intent, especially as a form of punishment or revenge. [https://www.merriam-webster.com/dictionary/dox].

4
DECLARATON OF DEVIN G. NUNES

14.    My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter.  On September 16, 2019, shortly after Meredith threatened my life, a WordPress.com website appeared on the Internet.    The website contains the following information:



[https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-former-janz-intern-fresyas-mendoza-fresno-politics/].    The user of the @EmmettMiche11em Twitter account created the following profile:

**GIVING THANKS TODAY FOR THE COMPASSIONATE PEOPLE; THE LOVERS, HELPERS, GIVERS, AND HEALERS, WHO [...] MORE THAN JUST THEMSELVES,**

Follow

**Michelle** 🔒
@EmmettMiche11em

Mom, wife, therapist, dog friend.

🗓 Joined May 2009

**5,467** Following   **4,977** Followers

**These Tweets are protected**

Only approved followers can see @EmmettMiche11em's Tweets. To request access, click Follow. Learn more

A review of tweets in which @EmmettMiche11em was tagged revealed that she was tagged by Meredith in innumerable tweets about me.

15.    After searching for Twitter profiles with similar descriptions, *i.e.,* "Mom, wife, therapist, dog friend", my attorneys came across a Twitter account for a "Michelle Meredith" in Gig Harbor, Washington. [https://twitter.com/michelemeredith?lang=en].    Through the Whitepages, they discovered that she was married to Meredith, the same person who was tagging her in the vile tweets and retweets he published about me.

16.    My attorneys also learned that Meredith has more than one Twitter account by studying the profile pictures that Meredith used in various websites.  For instance, he used/uses a picture of a mountain peak in Washington State on multiple profile pages, including one of his

6
**DECLARATON OF DEVIN G. NUNES**

Twitter accounts. He also uses a picture of the Seattle skyline.

17.    I have reviewed Meredith's declaration filed in this matter. Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students, but I have first-hand knowledge that he was. I believe that this is the origin of his obsession with me and his desire to harm me.

18.    Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his accounts, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average" number, (c) the identity of the accounts that he controls, (d) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.*, "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,[4] and (f) the subject matters of the 3.73 daily tweets that Meredith "liked".

19.    Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist with an expertise in computer science. Significantly, since the filing of this action, Meredith has altered his LinkedIn profile in an effort to downplay his expertise in computer science. He used to describe himself as a "Data Scientist":

---

[4]    Meredith's declaration fails to disclose that, in addition to his tweets and likes, Meredith regularly retweets other users' content multiple times every day.

7
**DECLARATON OF DEVIN G. NUNES**

Now, he claims to be "Executive Director | Co-Founder at Social Impact Analytics Institute". Meredith also erased any reference to DKE Technologies from his LinkedIn profile. [*see* https://www.linkedin.com/in/benpmeredith/] and scrubbed any visible trace of the former website of DKE Technologies from the Internet. For good measure, Meredith also deleted his medium account [*see* https://medium.com/@benpmeredith], which contained numerous incriminating statements.

20.     Meredith's direct threat on my life, coupled with the quantity, aggressive, inappropriate and abusive statements that saturate his tweets, retweets and likes, and the relentless doxing of my location at events, at airports and on airplanes, seriously alarms me and has tormented me for years.  The tweets serve no legitimate purpose other than to harass me and inflict harm.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed by me this 9th day of December, 2020 in Washington, D.C.


_Devin Nunes_
_____
DEVIN G. NUNES, Declarant

8
DECLARATON OF DEVIN G. NUNES

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California  93291.

4

5

On December ___9___, 2020, I served the foregoing **DECLARATION OF DEVIN G.**
**NUNES IN OPPOSITION TO DEFENDANT BENJAMIN PAUL MEREDITH'S MOTION**
**TO STRIKE COMPLAINT PURSUANT TO CCP §426.16** on all interested parties, by placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

6

7

8

| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional<br>Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA  93720<br>Email:  brian@whelanlawgroup.com | |

9

10

11

12

[ ]     **By Personal Service** - I delivered such envelope by hand to the addressee.

13

14

[ X ]     **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

15

16

17

18

[ ]     **By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or provided for.

19

20

21

[ ]     **By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of this declaration to the above interested parties at the listed facsimile transmission telephone number.

22

23

24

[ X ]     **By Electronic Service:**  I sent the afore-described document(s) from email address dnorys@dwisehartlaw.com to the person(s) at the email addresses listed above.  I did not receive within a reasonable time after transmission any electronic message or other indication that the transmission was unsuccessful.

25

26

1

   **X**   **(State)**     I declare under penalty of perjury under the laws of the State of

2   California that the foregoing is true and correct.

3         **(Federal)**  I declare that I am employed in the office of a member of the Bar of

this Court at whose direction the service was made.

4

         Executed on December ___9___, at Visalia, California.

5

6                                      _Deborah M. Norys_

                                        Deborah M. Norys

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT "7"

1   **Brian D. Whelan, Esq.  (SBN 256534)**
    **WHELAN LAW GROUP, A Professional Corporation**
2   **1827 East Fir Avenue, Suite 110**
    **Fresno, California  93720**
3   **Telephone: (559) 437-1079**
    **Facsimile:  (559) 437-1720**
4   **E-mail: brian@whelanlawgroup.com**

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                              COUNTY OF TULARE

9

10  DEVIN G. NUNES,                          )   Case No. VCU284528
                                             )
11           Plaintiff,                      )   **REPLY MEMORANDUM OF POINTS**
                                             )   **AND AUTHORITIES IN SUPPORT OF**
12           v.                              )   **MOTION TO STRIKE COMPLAINT**
                                             )
13  BENJAMIN PAUL MEREDITH,                  )   Date:   December 22, 2020
    TWITTER, INC., and DOES 1 to 100,        )   Time:   8:30 a.m.
14  Inclusive,                               )   Dept.:  7
                                             )
15           Defendants.                     )   Complaint Filed:   October 5, 2020
                                             )   Trial Date:        Not Set
16                                           )
                                             )
17                                           )
                                             )
18

19          Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") submits the

20  following reply in support of his motion for an order striking the causes of action alleged against

21  him by Plaintiff DEVIN NUNES ("Plaintiff" or "NUNES" ) pursuant to C.C.P. § 425.16.

22                                          **I.**

23                                   **INTRODUCTION.**

24          While the rules of evidence and civil procedure have little role in the political theater that

25  Nunes is accustomed to, the applicable rules bar this political lawsuit from proceeding.

26          In the first instance, there is a dispute as to the speech and conduct at issue. Consequently,

27  in the anti-SLAPP analysis, Nunes carries the burden to show a probability of prevailing on the

28  merits. Our California Supreme Court in *City of Montebello v. Vasquez*, (2016) 1 Cal. 5th 409

                                              1

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

**DEC 15 2020**

STEPHANIE CAMERON, CLERK
BY:_____
Leticia Hernandez-Sandoval

FAXED

1  stated: "If ... a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be

2  resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's

3  burden to show a probability of prevailing on the merits." Id. at 424.   In fact, "[i]t is not the

4  defendant's burden ... to establish that the challenged cause of action is [ ] protected as a matter

5  of law." *(Lieberman v. KCOP Television, Inc.*, (2003) 110 Cal.App.4th 156, 165.)

6      Because Nunes was obligated to provide competent admissible evidence to demonstrate a

7  probability of prevailing on the merits, but failed to do so, this motion must be granted.

8                      **NUNES' FLAWED CONSPIRACY THEORY**.

9      Relying on the word of his attorneys,  Nunes sued Meredith for "thousands" of written

10  statements and alleged commercial activities.  (Complaint, P. 9; Nunes Decl., Paras. 14-16.)

11  Nunes, however, failed to produce a single writing, statement or tweet that Meredith allegedly

12  authored or competent evidence of any commercial activities. The "intelligence" behind this

13  lawsuit,  if it can be called that, and the identification of Meredith as a party, boils down to

14  Nunes' attorneys having *located* Meredith "by searching the internet and twitter." (Nunes Decl.,

15  Paras. 14-16.) Beyond the layers of hearsay and foundational problems presented by Nunes'

16  Declaration, the information is provably false.

17      According to Nunes, the "conspiracy" was discovered when Nunes' attorneys "found"

18  Meredith's wife after serendipitously stumbling upon a tweet from @fresyas or "Yas Mendoza."

19  (Nunes Decl., P. 14.)  Ms. Mendoza, the owner of the account at issue, acknowledges, with

20  admissible evidence, that the tweet starting the Nunes' misadventure never came from her

21  account and is indeed a fabrication. (Mendoza Decl., p. 3-5.)

22      Next, in response to Meredith's moving papers, Nunes claimed everything in his lawsuit

23  is true.  (Nunes Decl., P. 2.)  In verifying the complaint, Nunes doubled down on the August 27,

24  2020 sue-any-more-cows- plane-event conspiracy. With admissible evidence, Ms. Carter, the

25  individual who lives in Utah and had asked Mr. Nunes about suing any more cows on the flight,

26  acknowledges that she does not know Meredith, has never heard of Meredith, and has never

27  spoken with Meredith. Instead, Ms. Carter spontaneously thought to ask Nunes about suing more

28  cows because of the absurdity of a congressman suing a "twitter cow."  (Carter Decl. Paras. 2-5.)

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

1   Further, the video was re-tweeted thousands of times by people that enjoyed the video and not as

2   part of some broader conspiracy.  (Carter Decl. P. 4.)

3          Last, Meredith does not sell, nor has he ever sold, Nunes' mugs and/or t-shirts or other

4   similar Nunes paraphernalia or merchandise. Meredith does not have a gofundme account nor

5   has he ever set one up.  Meredith only has one twitter account.  Meredith has never threatened

6   Nunes nor told Nunes "to slit his own throat." Meredith does not "dox" Nunes and is <u>not</u> the only

7   person in the state of Washington with an affinity for Mt. Rainier internet backgrounds.

8   (Meredith Decl., Paras. 2-8.)   Most importantly, Nunes ("Ranking Member of the House

9   Permanent Select Committee on Intelligence") has offered no competent intelligence or

10  admissible evidence to the contrary. None exists.

**II.**
**<u>LAW AND DISCUSSION.</u>**

11

12  A.   <u>**Defendant Easily Satisfies the First Prong Because Plaintiff Cannot Show that**</u>

13       <u>**the Underlying Speech Is Illegal** – *As a Matter of Law*</u>.

14         Nunes claims Meredith threatened his life in September 2019 by instructing Nunes, through

15  twitter, to kill himself. According to Nunes, Meredith deleted the offending tweet. (Nunes Decl. Para

16  6.) Nunes does not identify Meredith's twitter name or twitter handle. While claiming thousands of

17  tweets exist, Nunes does not provide any single tweet ascribed to Meredith.   Nunes does not state

18  who actually saw the tweet or if it was relayed to him by someone else. Then, one year later, Nunes

19  filed this lawsuit.   Meredith, who knows the name of his twitter account and knows what he wrote

20  or did not write, did not threaten Nunes or instruct Nunes to "slit his own throat with a razor."

21  (Meredith Decl., P. 3.)

22         Consequently, because there is a dispute as to the underlying political conduct, speech and/or

23  statements, the first prong of the two-prong analysis has been satisfied. "Our Supreme Court has

24  emphasized that the exception for illegal activity is very narrow and applies only in undisputed cases

25  of illegality. '**If . . . a factual dispute exists about the legitimacy of the defendant's conduct, it**

26  **cannot be resolved within the first step but must be raised by the plaintiff in connection with**

27  **the plaintiff's burden to show a probability of prevailing on the merits.'**  [Emphasis added.]

28  '[T]he showing required to establish conduct illegal as a matter of law - *either through defendant's*

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

1   *concession or by uncontroverted and conclusive evidence* - is not the same showing as the plaintiff's

2   second prong showing of probability of prevailing.' Applying *Flatley*, subsequent courts have

3   reiterated that it is only in 'rare cases in which there is uncontroverted and uncontested evidence that

4   establishes the crime as a matter of law." (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1478,

5   internal citations omitted, italics in original.)

6   "In *Flatley*, the Supreme Court noted that 'Mauro did not deny that he sent the letter nor did

7   he contest the version of the telephone calls set forth in Brandon's and Field's Declarations in

8   opposition to the motion to strike. We may therefore view this evidence as uncontroverted.' " *Supra*,

9   39 Cal.4th at pp. 328–329. **Here**, in contrast, ***the evidence is controverted***. Defendant denies that

10   he made any of the statements that Plaintiff alleges he made, and denies that he used Plaintiff's

11   image and/or likeness for commercial activities, etc.  Defendant also claims that the he did not

12   coordinate with "violent extremists" to "attack" Plaintiff and that he is not responsible for a

13   "unprecedented" number of tweets; contrary to Plaintiff's assertion that Defendant has multiple

14   Twitter accounts, Defendant only has one Twitter account. Thus, there is a dispute as to whether the

15   statements were even made, and if so, exactly what Defendant said and how often he said it, and

16   whether it constituted a true threat and/or harassment.

17   The conduct as alleged in the complaint, even if it were accurately reported, does not

18   necessarily constitute a "true threat" and/or "harassment" *as a matter of law*, as (1) there are no

19   specific statements referenced in the complaint – rather, the allegations are merely vague

20   characterizations and legal conclusions; thus, it is impossible to conclude – *as a matter of law* – that

21   the alleged tweets, etc. constituted a true threat when none of the actual language, or even a factual

22   summary for that matter, is presented to the Court.  Plaintiff does not even include one of the alleged

23   Tweets as an example in his Declaration.[1]  And, separately, (2) the alleged conduct constituted

24   

25   [1] The only example that Plaintiff offers is one characterization of a Tweet that he, wrongfully,
attributes to Defendant.  The alleged Tweet was supposedly made by Defendant in response to a

26   statement made by Plaintiff encouraging Plaintiff to cut his own throat with a razor.  Even this
characterization, if taken as undisputed (which, of course, is not the case) cannot, as a matter of law,

27   be construed as a true threat: There are several factual issues surrounding this statement that prevent
the Court from determining, as a matter of law, that this was a "true threat."  One, Plaintiff states that

28   the Tweet was quickly deleted.  The fact that the Tweet was deleted can be construed to mean that

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

4

1  protected speech concerning a "public issue or an issue of public interest." On this point, *Vogel v.*
2  *Felice*, (2005) 127 Cal. App. 4th 1006 is instructive. The plaintiffs in *Vogel* were candidates for
3  public office who challenged statements the defendant made about them on the defendant's public
4  website. *Id.* at 353. The plaintiffs alleged that:

5        "[T]he website 'contained statements associating Plaintiffs with
      criminal conduct and fraud,' and specifically noted 'the statement 'J.
6        J. Vogel's Wanted as a Dead Beat Dad,' which, when clicked upon,
      opened another web site dedicated to locating 'deadbeat dads,' ' and
7        'the statement, 'Paul Grannis-Bankrupt, Drunk & Chewin' tobaccy'
      which when clicked upon, opened a new web page associating
8        Plaintiff Grannis with criminal, fraudulent, and immoral conduct."
      Plaintiffs alleged that additional (but unspecified) defamatory
9        statements appeared in '[n]umerous e-mails and bulletin messages ...
      sent and received through said web site' as well as in '[o]ther web
10        pages in said web site,' which 'contained false and defamatory
      statements about Plaintiffs, including ... patent associations with
11        criminal and fraudulent conduct.' " *Id.* at 355.

12        In concluding that these statements were protected by the anti-SLAPP statute, the Court of
13  Appeal stated, in pertinent part, as follows:

14        "Here all of the causes of action alleged by plaintiffs rest exclusively
      and entirely on defendant's conduct in publishing the offending
15        statements on his Web site. Since that conduct fell squarely within the
      realm protected by section 425.16, all of plaintiffs' causes of action
16        are subject to the statute." *Id.* at 16

17        Thus, Plaintiff's complaint that Defendant, "published and republished ... statements
18  accusing Plaintiff of federal and state crimes, assassination, treason, corruption, conspiracy, lying,
19  cheating, stealing, inciting murder, and many other horrible and false claims and acts," do not
20  constitute unprotected speech on their face.

21

22  it was not intended to be delivered to Plaintiff or that it was not meant as a serious threat. Second,
23  and separately, the alleged Tweet does not indicate that the Defendant will himself carry out a threat
of violence or is encouraging others to commit violence towards Plaintiff. Third, without the
24  context, it is impossible to determine whether the alleged Tweet was a joke – Plaintiff admits that
the Tweet was in response to a statement made by Plaintiff, but does not provide that statement.
25  Plaintiff also claims that he reported the Tweet to the police, but fails to mention whether or not
there were any charges or any investigations that resulted or supply any evidence corroborating the
26  claim; it can be inferred that the failure to include this information means that the police determined
that the alleged Tweet was not actionable. Last, Plaintiff fails to provide the evidence to substantiate
27  when and how he discovered the alleged Tweet. His Declaration lacks foundation on this point.
28  This is important because, likely, he learned of the "quickly deleted Tweet" through third-party
hearsay – this is not admissible evidence.

5

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**B.** **Plaintiff Fails to Establish A Probability of Prevailing on the Merits.**

The second prong of the anti-SLAPP analysis compels Nunes to produce competent admissible evidence demonstrating a probability of prevailing on the merits. Nunes has failed to do so and thus this motion must be granted. *Alpha & Omega Dev., LP v. Whillock Contracting, Inc.,* (2011) 200 Cal. App. 4th 656 states:

> "To show a probability of prevailing for purposes of section 425.16, a plaintiff must ' " 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.' " ' [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010; see also *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [plaintiff " 'must demonstrate that the complaint is ... supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' "].) "[T]he plaintiff 'cannot simply rely on the allegations in the complaint' [citation]...." (*ComputerXpress, Inc. v. Jackson*, supra, 93 Cal.App.4th at p. 1010.) Rather, " '[t]he plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.]...' " (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679, 105 Cal.Rptr.3d 98.) **Thus, Declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded."** [Emphasis added.] (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26, 53 Cal.Rptr.3d 752.)" *Id.* at 663-64.

Since there is no admissible evidence to support Plaintiff's claims because the only evidence that he submits is a Declaration that should be disregarded; it "lacks foundation, personal knowledge, is argumentative, speculative, impermissible opinion, hearsay, *and* conclusory." Any one of these objections, alone, is enough to disregard Plaintiff's evidence. Thus, Plaintiff cannot show a probability of prevailing and his Complaint must be stricken in its entirety.[2]

/ / /

/ / /

/ / /

---

[2] Defendant also objects to Plaintiff's references to unpublished, CA state authority. Unlike unpublished federal cases which can be used (see *Airline Pilots Assn. Internat. v. United Airlines, Inc.,* (2014) 223 Cal. App. 4th 706, 481, fn. 7.), Cal. Rule of Court, Rule 8.1115(a) specifically prohibits courts and parties from relying on unpublished, CA state opinions. Plaintiff does not show that any of the exceptions in Rule 8.1115(b) apply. Thus, his citations to unpublished, CA State cases should be disregarded. (Even if those cases were considered, it would not change the outcome; they are inapposite and do not address the issues in this case. They all concern private disputes, between private parties and do not discuss the constitutional protections at issue in this case.)

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1070
Fax: 559-437-1720

## III.

## CONCLUSION.

In sum, all of Plaintiff's causes of action are within the ambit of the anti-SLAPP statute, and he would not prevail on any of them.  Defendant's motion should be granted in its entirety

Dated: December 15, 2020

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-457-1079
Fax: 559-437-1720

7

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

# EXHIBIT "8"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK
BY:_____

Leticia Hernandez-Sandoval

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5

6   Attorneys for: Defendant BENJAMIN PAUL MEREDITH

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF TULARE

9

10  DEVIN G. NUNES,                      )   Case No. VCU284528
                                         )
11            Plaintiff,                 )   DEFENDANT'S OBJECTIONS TO
                                         )   DECLARATION OF DEVIN G. NUNES IN
12        v.                             )   OPPOSITION TO DEFENDANT'S
                                         )   MOTION TO STRIKE COMPLAINT
13  BENJAMIN PAUL MEREDITH,              )
    TWITTER, INC., and DOES 1 to 100,    )   Date:   December 22, 2020
14  Inclusive,                           )   Time:   8:30 a.m.
                                         )   Dept.:  7
15            Defendants.                )
                                         )   Complaint Filed:   October 5, 2020
16  _____  )   Trial Date:        Not Set

17

18        Defendant BENJAMIN PAUL MEREDITH ("Defendants") hereby submits his

19  objections to the Declaration of Devin G. Nunes filed in support of his opposition to Defendant's

20  Motion to Strike.

21  **OBJECTIONS TO STATEMENTS MADE IN THE DECLARATION OF DEVIN G. NUNES**

22

| Statement by Devin G. Nunes | Objections | |
|---|---|---|
| 1.   I reviewed the complaint before it was filed, and affirm that the facts stated in the complaint are truthful and accurate. **P2:5-7, Para. 2** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation. | Sustained: _____<br><br>Overruled: _____ |

23

24

25

26

27

28

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | |
|---|---|---|
| 2.   For over two (2) years, Meredith has used Twitter to follow, alarm, place me under surveillance, and relentlessly harass me. He uses multiple different Twitter accounts to tweet about me, retweet statements about me, and like posts by third parties about me. **P3:1-3, Para. 5** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 3.   In September 2019, Meredith threatened my life. He quoted one of my tweets, and then encouraged me to cut my own throat with a razor. Shortly after he posted the threat, he deleted it. The tweet greatly alarmed me. I repotted the matter to the Capitol Police. **P3:4-6, Para. 6** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 4.   Between 2019 and the date of this Declaration, Meredith has published and republished thousands of false, threatening, hateful, degrading, riotous, profanity-laced, salacious and scandalous statements about me. His tweets have included hundreds of lewd, lascivious and hateful images of me, including images that pottray me performing criminal acts. Meredith has published hundreds of statements falsely accusing me of federal and state crimes, assassination, treason, corruption, conspiracy, lying, cheating, stealing, inciting murder, and many other horrible and false claims and acts. **P3:7-14, Para. 7** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

2

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Presno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE COMPLAINT

| | | |
|---|---|---|
| 5. Meredith targeted me in hundreds of his offensive and demeaning tweets and retweets by "tagging" me. Each time he include "@DevinNunes" in a tweet or retweet, that post came directly to my homepage. In this manner, he intentionally forced his unwanted statements upon me and my followers. The volume of tweets and retweets was (and continues to be) staggering. Meredith publishes incessantly, day and night, which leads me to believe that there are multiple people involved in the harassment campaign. It is very personal, and it causes substantial emotional distress and fear for my safety and the safety of my family and my staff. **P3:15-22, Para. 8** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 6. Meredith frequently included threatening and harassing "#hashtags" in his tweets and retweets in order to encourage third parties to search for me and get Meredith's issues "trending" **P3:23-4:1, Para. 9** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 7. Meredith followed my personal and professional activities a lmost hourly, and routinely threatened to show up at fundraisers and other events and to di srupt my business. He so licited agents to search me out at airports and events, including recently at the Republican National Convention, to watch me, to surreptitiously photograph and videotape me, and my campaign vehicles. He posted the photos and video to Twitter. **P4:2-6, Para. 10** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

3

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | |
|---|---|---|
| 8. Meredith has repeatedly doxed my location on airplanes, at airports, and at multiple events. **P4:7-8, Para. 11** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 9. During the recent Congressional Election, Meredith repeatedly doxed the location of my campaign vehicles. His tweets incited people to vandalize vehicles and assault one of my staff. In two separate incidents in August 2020, one of my staff members had his car vandalized and severely damaged outside my Visalia office, and another staff member had a bottle thrown at a campaign vehicle - pictures of which Meredith had posted on line - as she drove it. **P4:9-14, Para. 12** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 10. Meredith has conscripted my name and uses it in his primary Twitter account. He has also organized a GoFundMe campaign in which he uses my name to solicit funds to pay his personal expenses. Meredith has generated substantial funds from this enterprise. Meredith is also using my name and picture to sell merchandise, such as t-shirts and coffee mugs. **P4:15-19, Para. 13** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

4

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

| | | |
|---|---|---|
| 11. My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter. On September 16, 2019, sho1tly after Meredith threatened my life, a WordPress.com website appeared on the Internet. The website contains the following information: [https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-formerjanz-intern-fresyas-mendoza-fresno-politics/] . The user of the @EmmettMiche11em Twitter account created the following profile: A review of tweets in which @EmmettMiche 11 em was tagged revealed that she was tagged by Meredith in innumerable tweets about me. **P5:1-6:18, Para. 14** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 12. After searching for Twitter profiles with similar descriptions, i. e., "Mom, wife, therapist, dog friend", my attorneys came across a Twitter account for a "Michelle Meredith" in Gig Harbor, Washington. [https://twitter.com/michelemeredith?lang=en]. Through the Whitepages, they discovered that she was married to Meredith, the same person who was tagging her in the vile tweets and retweets he published about me. **P6:19-24, Para. 15** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |
| 13. My attorneys also learned that Meredith has more than one Twitter account by studying the profile pictures that Meredith used in various websites. For instance, he used/uses a picture of a mountain peak in Washington State on multiple profile pages, including one of his Twitter accounts. He also uses a picture of the Seattle skyline. **P6:25-7:1, Para. 16** | (A) Hearsay. Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument. Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523. | Sustained: _____<br><br>Overruled: _____ |

5

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

| | | |
|---|---|---|
| 14.   I have reviewed Meredith's declaration filed in this matter. Meredith does not deny that he is a violent, repeat offender with a serious criminal history. He disputes that he was forced out of Tulare County Republican Party Central Committee due to his inappropriate relationships with female students, but I have first-hand knowledge that he was. I believe that this is the origin of his obsession with me and his desire to harm me. **P7:2-6, Para. 17** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |
| 15.   Meredith's declaration omits material information regarding his use of Twitter, including (a) the name or handle of his accounts, (b) the number of tweets Meredith actually posted in 2019 and 2020, as opposed to some "average" number, (c) the identity of the accounts that he controls, ( d) the identity of those with whom he communicates, ( d) the nature of his communications, i.e., "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets and retweets,4 and (t) the subject matters of the 3.73 daily tweets that Meredith "liked". **P7:7-14, Para. 18** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

6

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

| | | |
|---|---|---|
| 16.    Meredith admits that he is co-founder and chief technology officer of DKE Technologies, a "search engine development company". He supplies the Court with part of a website address, "(dketechnologies.com)". Meredith appears to deny that he is a data scientist with an expertise in computer science. Significantly, since the filing of this action, Meredith has altered his LinkedIn profile in an effort to downplay his expettise in computer science. He used to describe himself as a "Data Scientist": Now, he claims to be "Executive Director I Co-Founder at Social Impact Analytics Institute". Meredith also erased any reference to DKE Technologies from his LinkedIn profile. [see https://www.linkedin.com/in/benpmeredith/] and scrubbed any v isible trace of the former website of DKE Technologies from the Internet. For good measure, Meredith also deleted his medium account [see https://medium.com/@benpmeredith ], which contained numerous incriminating statements. **P7:15-8:12, Para. 19** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |
| 17.    Meredith's direct threat on my life, coupled with the quantity, aggressive, inappropriate and abusive statements that saturate his tweets, retweets and likes, and the relentless dloxing of my location at events, at airports and on airplanes, seriously alarms me and has tormented me for years. The tweets serve no legitimate purpose other than to harass me and inflict harm **P8:13-18, Para. 20** | (A) Hearsay.  Devin G. Nunes offers hearsay for which there is no exception. Evid. Code §1200.<br><br>(B) Lacks foundation and improper legal conclusion and argument.  Evid Code §800; *Bowden v. Robinson* (1977) 67 Cal.App.3d 75, 720.<br><br>(C) Lacks requisite personal knowledge/lacks foundation.<br><br>(D) Violates best evidence rule. Evidence Code §1523.<br><br>(E) Irrelevant.  Evidence Code §350 and 352. | Sustained: _____<br><br>Overruled: _____ |

7

Whelan Law Group,
A Professional Corporotion
1827 East Fir Avenue, Suite 110
Fresno, California 95720
Tel: 559-437-1079
Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

1

2   Dated: December 15, 2020

WHELAN LAW GROUP,
A Professional Corporation

3

4   By Brian D. Whelan,
Attorneys for Defendant BENJAMIN PAUL
MEREDITH

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

EXHIBIT "9"

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 1 5 2020

STEPHANIE CAMERON, CLERK

BY: _Leticia Hernandez Sandoval_

1  Brian D. Whelan, Esq.  (SBN 256534)
   WHELAN LAW GROUP, A Professional Corporation
2  1827 East Fir Avenue, Suite 110
   Fresno, California  93720
3  Telephone: (559) 437-1079
   Facsimile:  (559) 437-1720
4  E-mail: brian@whelanlawgroup.com

5

6  Attorneys for: Defendant BEN PAUL MEREDITH

7       SUPERIOR COURT OF THE STATE OF CALIFORNIA

8             COUNTY OF TULARE

9

10  DEVIN G. NUNES,         )  Case No. VCU284528
                      )
11      Plaintiff,      )  **REPLY DECLARATION OF BEN**
                      )  **MEREDITH IN SUPPORT OF**
12     v.          )  **DEFENDANT'S SPECIAL MOTION TO**
                      )  **STRIKE PLAINTIFF'S COMPLAINT**
13  BENJAMIN PAUL MEREDITH, )  **PURSUANT TO CALIFORNIA CODE OF**
   TWITTER, INC., and DOES 1 to 100, )  **CIVIL PROCEDURE SECTION 425.16**
14  Inclusive,         )  **(ANTI-SLAPP)**
                      )
15      Defendants.   )  Date:  December 22, 2020
                      )  Time:  8:30 a.m.
16               )  Dept.:  7
                      )
17               )  Complaint Filed:   October 5, 2020
                      )  Trial Date:        Not Set

18

19     I, BEN PAUL MEREDITH, declare:

20      1.    I am the one of the Defendants in this case.  The following facts are within my

21  personal knowledge and, if called as a witness, I can testify competently to each of them.

22      2.    <u>One Twitter Account</u>: I started my one and only twitter account in February 2012.

23  I only have one twitter account.  I do not have multiple twitter accounts, nor have I ever had

24  multiple twitter accounts.

25      3.    <u>No Threats</u>: Again, I have never threatened Nunes' life. I have never tweeted,

26  stated, or written (until now) "that Nunes should slit his throat with a razor." I have never said

27  that Nunes should kill himself or cause himself bodily harm. Again, I have never directly or

28  indirectly threatened Nunes' life, nor have I told anyone directly or indirectly to threaten Nunes'



Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93726
Tel: 559-437-1079
Fax: 559-437-1720

1

DECLARATION OF BEN MEREDITH

life. I have never threatened bodily harm to Nunes nor said that I would cause bodily harm to Nunes nor have I invited others, including Nunes, to cause bodily harm to Nunes. Since this lawsuit began, I have reviewed twitter posting about Nunes. There are thousands of twitter users that are vehemently opposed to Nunes. Perhaps one of them threatened Nunes, but it was not me. Nunes derides me for not identifying my twitter handle with the suggestion being that if I had only done so he could have or would have tracked down some evidence. Nunes did not identify my twitter handle in the lawsuit or in his opposition to this motion and did not identify anything I ever wrote or published because there is no evidence of any threats. While it is likely I have deleted or edited tweets in last eight years, I can think of none specifically and none that concern Nunes. I have certainly deleted nothing since being sued in this lawsuit and have not "spoliated" evidence – though none existed in the first instance as I never made "true threats" as Nunes and his counsel claim.

4.    Hourly Tracking & other Delusional Claims: In his opposition papers, Nunes accused me of monitoring his movements 24 hours a day, "doxing" him at airports (and elsewhere), along with being a violent criminal. On all points, Nunes is both misguided and deluded. Nunes claims that I am "obsessed" because he was told by an unnamed person something about me that did not happen almost twenty years ago with a student. Like Nunes' other below-the-belt claims, every aspect of this claim is false -- except potentially what some unnamed person may have told Nunes 20 years ago (though I have no way of knowing what that was or could have been it also sounds made up).

5.    Third-Party Activities & Mt. Rainier Pictures: I do not control or conspire with third parties to do anything related to Nunes nor do I control the thousands upon thousands of people that use Mount Raineer in their profile pictures or elsewhere. In the State of Washington, where I live,  Mount Rainier is depicted on the state license plate and is an icon of the Seattle/Puget Sound region. Nunes claims that because I used a picture of the iconic mountain as a backdrop on a website therefore others using a similar backdrop are my agents or in fact me. This illogical conclusion is absurd.  There are approximately 13 million people living in the Puget Sound region.  I have seen many people use the same mountain backdrop on their twitter

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1721

2

accounts. I can confidently say under oath that those other people who also like and use the mountain picture are not me nor do I control them – whoever they may be.

6.     _Merchandise and Go Fund Me Account_: I have never sold Devin Nunes merchandise of any kind, including, but not limited to, coffee mugs and/or t-shirts. I do not have a gofundme account nor have I ever organized one or set one up. I have made no money off of Devin Nunes – though I expect him to pay my fees and costs for having to bring this motion. As a joke and expression of my first amendment right, I though about buying a Devin Nunes mug online for my attorney as a Christmas gift after this lawsuit started. Out of respect for Nunes who does not want that to happen, I will not be getting my attorney a gift this year.

7.     _August 27, 2020 Event_: I was not involved in asking Nunes if he had sued any more cows lately on his flight from Salt Lake City, Utah to Washington D.C.. I have looked at the video on twitter. The video appears to have been re-tweeted over eight thousand times, contains over twenty-six thousand likes and was viewed over one million times. All of this information is publicly available on twitter.  Nunes claims that I shared or "doxed" this video even before he even landed. I did not.

8.     Nunes advances dozens of other bizarre and factually erroneous claims designed to disparage me. Suffice it to say, Nunes has either willfully perjured himself or been misled by the attorneys that apparently are supplying the "intelligence."

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 13, 2020.

Ben Meredith

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1070
Fax: 559-437-1720

3

DECLARATION OF BEN MEREDITH

# EXHIBIT "10"

Brian D. Whelan, Esq. (SBN 256534)
WHELAN LAW GROUP, A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California  93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
E-mail: brian@whelanlawgroup.com

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK
BY Leticia Hernandez Sandoval

Attorneys for: Defendant BEN PAUL MEREDITH

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF TULARE

| | |
|---|---|
| DEVIN G. NUNES, | Case No. VCU284528 |
| Plaintiff, | **DECLARATION OF JAMIE CARTER IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 (ANTI-SLAPP)** |
| v. | |
| BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 to 100, Inclusive, | |
| Defendants. | Date:  December 22, 2020<br>Time:  8:30 a.m.<br>Dept.: 7 |
| | Complaint Filed:  October 5, 2020<br>Trial Date:  Not Set |

I, JAMIE CARTER, declare:

1.      The following facts are within my personal knowledge and, if called as a witness, I can testify competently to each of them.

2.      I live in Utah. On August 27, 2020, I boarded a flight from Salt Lake City, Utah to Washington D.C. to take part in the march on Washington.  After I boarded the flight, I noticed that Congressman Devin Nunes was seated two rows in front of me. I consider myself politically active and I knew of Devin Nunes at the time I saw him on the plane. I also knew that Mr. Nunes' was suing a twitter user called @devincow.  What I did not know, until I saw Mr. Nunes seated a couple of rows in front of me, was that Mr. Nunes would be on the same flight.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1



DECLARATION OF JAMIE CARTER

3.      After about an hour into the flight, I left my seat and went to the bathroom. After leaving the bathroom, I took my phone out and video recorded Mr. Nunes responding to my question about suing any more cows lately. What I said was "Sued any cows lately ....sued any cow..more cows.. lately ....moo moo." Mr. Nunes did not verbally respond.

4.      I was not encouraged to ask Mr. Nunes if he had sued any more cows lately by anyone. In fact that idea came to me spontaneously as I was leaving the bathroom. Again, I did this myself and not part of some nefarious Antifa plot – which is what Mr. Nunes later professed to the news.  When we landed, the flight attendants blocked everyone from getting off until Nunes had deplaned. I posted the video of Nunes' non-verbal response to my question about suing more cows on twitter and people retweeted it thousands of times.  To be sure, this was also not part of some conspiracy or at the direction of anyone. I did this alone.

5.      I have never heard of Ben Meredith. I have never communicated with Ben Meredith.  It was just good (or bad) luck that I was on the same plane as Devin Nunes at the same time on August 27, 2020.  I have first amendment rights to express my dissatisfaction with political lawsuits against twitter cows, and I exercised my right to ask a sitting Congressman if he was suing any more cows while we were in a public space.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 12, 2020

JAMIE CARTER

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

# EXHIBIT "11"

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California   93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

                                        FILED
                            TULARE COUNTY SUPERIOR COURT
                                  VISALIA DIVISION

                                  DEC 15 2020

                            STEPHANIE CAMERON, CLERK
                            BY: Leticia Hernandez/ Sandoval

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     COUNTY OF TULARE

9

10  DEVIN G. NUNES,                    )   Case No. VCU284528
                                       )
11           Plaintiff,                )   **DECLARATION OF YASMIN MENDOZA**
                                       )   **IN SUPPORT OF DEFENDANT'S**
12           v.                        )   **SPECIAL MOTION TO STRIKE**
                                       )   **PLAINTIFF'S COMPLAINT PURSUANT**
13  BENJAMIN PAUL MEREDITH,            )   **TO CALIFORNIA CODE OF CIVIL**
    TWITTER, INC., and DOES 1 to 100,  )   **PROCEDURE SECTION 425.16**
14  Inclusive,                         )   **(ANTI-SLAPP)**
                                       )
15           Defendants.              )   Date:   December 22, 2020
                                       )   Time:   8:30 a.m.
16                                     )   Dept.:  7
                                       )
17                                     )   Complaint Filed:   October 5, 2020
                                       )   Trial Date:        Not Set
18

19           I, Yasmin Mendoza, declare:

20           1.      The following facts are within my personal knowledge and, if called as a witness,

21  I can testify competently to each of them.

22           2.      In Spring 2019, I started using the twitter handle @fresyas.  Until I changed the

23  @fresyas account handle on January 1, 2020, I was the exclusive user and sole controller of the

24  twitter handle @fresyas. I ultimately had to change the account name because weird non-human

25  bot users would flood my posts and mentions, and then strange twitter accounts started to follow

26  me and cause me a lot of alarm and concern for my own safety.

27           3.      I have reviewed the declaration of "Devin G. Nunes in opposition to Defendant,

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax 559-437-1720

FAXED

                                        1
                        DECLARATION OF YASMIN MENDOZA

Benjamin Paul Meredith's motion to strike complaint pursuant to CCP 425.16." I see at page five (5) of Mr. Nunes' declaration a tweet that he attributes to me. I recognize my handle @fresyas, and a picture of myself next to the handle. <u>I did not tweet that message at any point in time, nor did anyone on my behalf.</u> I specifically recognize that tweet because I was asked by people about it at the time and I took a screen shot of it because I thought that it would be erased by whoever posted it. The tweet is not mine, and the contents of the tweet are not true. Attached hereto as Exhibit "A" is a true and correct copy of the tweet at issue appearing at page five (5) of Mr. Nunes' declaration.

4       In the Exhibit "A" tweet, I recognize the name of Nancy Gilmore. Nancy worked on the Andrew Janz for Congress campaign in 2018. I know Nancy. I also worked on Mr. Janz' campaign. I do not know who Michelle Emmitt is nor have I met her, to my knowledge. I have never spoken with Nancy Gilmore about Michelle Emmitt, @devincow, trolling Mr. Nunes online,  who set up the @devincow, or any other twitter user allegedly following Devin Nunes or set up to do that.

5.       To be abundantly clear, the tweet seen in Exhibit "A," that Congressman Devin Nunes claims I tweeted, authored, and published is not in fact my tweet. I did not author any of the text appearing in Exhibit "A," nor did anyone do so at my request or with my permission, and the text itself is false.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 10, 2020.

Yasmin Mendoza

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF YASMIN MENDOZA

# EXHIBIT "12"

Brian D. Whelan, Esq.  (SBN 256534)
WHELAN LAW GROUP, A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California  93720
Telephone: (559) 437-1079
Facsimile:  (559) 437-1720
E-mail: brian@whelanlawgroup.com

**FILED**
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 15 2020

STEPHANIE CAMERON, CLERK
BY:_____

Attorneys for: Defendant BENJAMIN PAUL MEREDITH

Letizia Hernandez Sandoval

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF TULARE

|  |  |
|---|---|
| DEVIN G. NUNES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BENJAMIN PAUL MEREDITH,<br>TWITTER, INC., and DOES 1 to 100,<br>Inclusive,<br><br>　　　　　Defendants. | Case No. VCU284528<br><br>**PROOF OF SERVICE**<br><br><br><br><br><br>Complaint Filed:　October 5, 2020<br>Trial Date:　　　Not Set |

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On December 15, 2020, I caused to be served the within document(s):

1.　**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE COMPLAINT**

2.　**REPLY DECLARATION OF BEN MEREDITH IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURES SECTION 425.16 (ANTI-SLAPP)**

3.　**DEFENDANT'S OBJECTIONS TO DECLARATION OF DEVIN G. NUNES IN IPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT**

4.　**DECLARATION OF JAIME CARTER IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURES SECTION 425.16 (ANTI-SLAPP)**

FAXED

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

5.      **DECLARATION OF YASMIN MENDOZA IN SUPPORT TO DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURES SECTION 425.16 (ANTI-SLAPP)**

( )    **VIA FAX:** by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )    **BY HAND DELIVERY:** by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )    **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )    **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )    **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)    **BY ELECTRONIC SERVICE:** by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 15, 2020, at Fresno, California.

*Stacey Vue*
STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

**PROOF OF SERVICE**

# EXHIBIT "13"

1   Derek P. Wisehart, Esq. #178100
    Law Offices of Derek P. Wisehart
2   2330 W. Main Street
    Visalia, California 93291
3   Telephone:     (559) 636-9473
    Facsimile:     (559) 636-9476
4   Email: derek@dwisehartlaw.com

5   Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
6   300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
7   Telephone: (804) 501-8272
    Facsimile: (202) 318-4098
8   Email: stevenbiss@earthlink.net
9   (*Application for Admission Pro Hac Vice
    Filed*)
10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF TULARE

15

16  DEVIN G. NUNES.                    Case No. VCU284528

17              Plaintiff,             **PLAINTIFF'S SUR-REPLY IN
                                       OPPOSITION TO DEFENDANT'S REPLY
18  vs.                                MEMORANDUM OF POINTS AND
                                       AUTHORITIES**
19  BENJAMIN PAUL MEREDITH,
    TWITTER, INC., and                 Date:    December 22, 2020
20  DOES 1 to 100, Inclusive,          Time:    8:30 a.m.
                                       Dept.    7
21
                Defendants.
22

23

24

25

26

27

28

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, respectfully submits this Sur-Reply to the reply memorandum of points and authorities in support of motion to strike filed by defendant, Benjamin Paul Meredith ("Meredith").

1.  Meredith does not address *any* of Plaintiff's cases, and therefore concedes that a cause of action for stalking does not arise from protected activity.  True threats, including veiled or hoax threats, are crimes. [https://www.fbi.gov/news/stories/hoax-threats-awareness-100518].[1] Threats are not "acts in furtherance of a person's right of free speech".  There is also no dispute that thousands upon thousands of lewd, lascivious, obscene, offensive, hateful and degrading tweets, retweets, replies and likes, constantly directed (tagged) at a single person on Twitter (Plaintiff), over a two-year period, constitutes "harassment" within the meaning of § 1708.7 of the California Civil Code.[2]  No Court has ever condoned or excused the use of social media to threaten, intimidate, humiliate and degrade on the scale seen in this case.

2.  Meredith understates the severity of his conduct and completely misses the big picture of stalking.

---

[1]   Meredith threatened Plaintiff in a "reply" to one of Plaintiff's tweets.  A "reply" on Twitter is a response to another person's Tweet.  A user, such as Meredith, can reply by clicking or tapping the **reply** icon from a tweet.  When Meredith replied to Plaintiff's tweet, threatening Plaintiff's life, the reply showed up on Meredith's profile page timeline and on Plaintiff's homepage.   Plaintiff also received a notification in his Notifications tab. [https://help.twitter.com/en/using-twitter/mentions-and-replies#:~:text=%20Reply%20overview%20%201%20A%20reply%20is,follow%20the%20person%20who%20replied%20and...%20More%20].  **Meredith's declarations fail to disclose the number and nature of the "replies" he posted to tweets written about Plaintiff.**

[2]   "'Harass' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, torments, or terrorizes the person, and which serves no legitimate purpose.  The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person." *Cal. Civ. Code § 1708.7(b)(5).*

3.    Meredith's "evidence" consists almost entirely of general denials. His credibility, however, is tainted by his admitted spoliation of evidence, the full extent of which is not yet known to the Court or Plaintiff. The Court will note that Meredith is very careful in his choice of words. In his reply declaration, he represents that he has only one Twitter account. He admits that it is "likely I have deleted or edited <u>tweets</u>[3] in the last eight years", but "none that concern Nunes." Significantly, Meredith claims that he has "deleted nothing since being sued in this lawsuit", **but** Nunes's evidence clearly shows that Meredith changed his LinkedIn profile, scrubbed the DKE Technologies website from the Internet, and deleted his Medium account. Meredith is not being truthful and he is deliberately trying to put blinders on the Court.

4.    In the face of Plaintiff's unequivocal evidence concerning Meredith's threat and his abuse of Twitter over the past two years, Meredith continues to conceal the name of his Twitter account, and he continues to obfuscate on relevant matters, such as (a) the number of tweets he posted in 2019 and 2020, (b) the identity of the accounts that he controls, (c) the identity of those with whom he communicates, (d) the nature of his communications, *i.e.* "direct messages", with those third-parties, (e) the subject matters of Meredith's tweets, retweets and replies, and (f) the subject matters of the 3.73 "average" daily tweets that Meredith "liked".

5.    Meredith's reply declaration, ¶ 5, contains an admission that clearly demonstrates he is using more than one Twitter account. Meredith represents in his reply declaration that "Nunes claims … I used a picture of the iconic mountain [Mt. Rainier] as a backdrop on a website therefore others using a similar backdrop are my agents or in fact me". **Plaintiff in his**

---

[3]    Meredith is a data scientist with an intimate working knowledge of Twitter's architecture. He knows the difference between a "tweet" and a "reply". As stated above, Meredith threatened Plaintiff in a "reply", which Meredith then quickly deleted.

**Declaration never claimed that Meredith used a picture of "Mt. Ranier"**. Plaintiff pointed out that Meredith uses "a picture of a mountain peak in Washington State on multiple profile pages, including one of his Twitter accounts." Plaintiff did not include a picture of the "mountain peak". Meredith voluntarily supplied the name of the "mountain peak" because *only Meredith knows the picture profile he used on his website and on his alternative Twitter account was a picture of Mt. Ranier*.

6.     It is also striking that Meredith "took the time" to calculate the exact average number of "tweets" and "likes" he posted since the "inception" of his Twitter days in 2012, *but* Meredith refuses to identify the name of his account(s) and refuses to admit the substance of a single one of thousands of tweets, retweets, replies and likes he posted about Plaintiff.[4]

7.     Meredith's reply memorandum includes a declaration by Yas Mendoza, which compounds Meredith's credibility problems. Ms. Mendoza was an intern for Andrew Janz ("Janz") during Janz's failed campaign against Plaintiff in 2018. She is pictured in multiple tweets that still appear on Twitter. [https://twitter.com/claraa559/status/1045792382459895810]. In 2018, Ms. Mendoza tweeted from an account called, "@yazmendza". Her tweets are preserved by the "Wayback Machine", a digital archive of the World Wide Web, founded by the Internet Archive, a nonprofit library based in San Francisco. Ms. Mendoza states that she started using the twitter handle, "@fresyas", in "Spring 2019", after she was followed by "strange twitter accounts", which, like Plaintiff, caused her "a lot of alarm and concern for my own safety." Ms.

---

[4]     Obviously, Meredith is hiding material information related to his use of Twitter, including the number of accounts he controls. In light of Meredith's obfuscation, if the court does not deny this motion at the outset, then good cause exists and Plaintiff alternatively respectfully requests that this hearing be continued, and that the court grant leave to conduct limited SLAPP discovery to pursuant to § 425.16(g) on the issue of reasonable probability of prevailing and to verify the information that Meredith intentionally omitted.

---

Mendoza claims that she did not tweet the message on July 8, 2019, but offers the Court no hypothesis as to how someone hacked her Twitter account and posted the very content specific message about Twitter account, **@devincow**, being an account connected to Meredith's wife. Ms. Mendoza also fails to note that she deleted her old "@fresyas" account in early 2020, and replaced it with an account simply titled, "Yas", with the handle "FresYas". The motive for deleting the old account is unknown without discovery.

8.      Finally, the connection to Janz is highly relevant. Janz is the founder of the Voter Protection Project ("VPP"). [https://protectvoting.org/our-team/]. On at least one occasion, as disclosed on VPP's Form 3X filed with the Federal Election Commission ("FEC"), VPP paid Meredith's attorney's fees:

Image# 201907269151676268

| SCHEDULE B   (FEC Form 3X) ITEMIZED DISBURSEMENTS | Use separate schedule(s) for each category of the Detailed Summary Page | FOR LINE NUMBER: (check only one) | | PAGE 307 OF 315 |
|---|---|---|---|---|
| | | ☒ 21b ☐ 22 ☐ 23 ☐ 26 ☐ 27 ☐ 28a ☐ 28b ☐ 28c ☐ 29 ☐ 30b | | |

Any information copied from such Reports and Statements may not be sold or used by any person for the purpose of soliciting contributions or for commercial purposes, other than using the name and address of any political committee to solicit contributions from such committee.

NAME OF COMMITTEE (In Full)
Voter Protection Project

A. Full Name (Last, First, Middle Initial)
The Hawkins Law Firm

Mailing Address 222 Monument Ave

| City Richmond | State VA | Zip Code 23220 |
|---|---|---|

Date of Disbursement
M M / D D / Y Y Y Y
04   15   2019

FEC Identification Number
C

Purpose of Disbursement
Legal Consulting

Candidate Name

Category/Type

Transaction ID : VVB53AD8Q)
Amount of Each Disbursement this Period
3000.00

| Office Sought: | House Senate President | Disbursement For: | Primary ☐ General ☐ Other (specify) ▼ |
|---|---|---|---|
| State: | District: | | Memo Item |

Plaintiff reasonably expects that further connection between Meredith and Janz will be revealed in discovery.

///

///

1

2     IV.     **CONCLUSION AND REQUEST FOR RELIEF**

3          For the reasons stated above, in Plaintiff's Memorandum in Opposition and at the hearing

4     of this matter, Plaintiff respectfully requests that Meredith's motion to strike be **DENIED**.

5

6          *In the alternative*, if Meredith's criminal and civil cyber-stalking, threatening, and

7     harassing course of conduct somehow survives the step-one prong of the court's analysis as an

8     exercise of protected free speech, then good cause exists to continue this hearing and grant leave

9     pursuant to CCP §425.16(g) (upon Noticed Motion if necessary), to conduct limited discovery

10    on the step-two prong of reasonable probability of prevailing.

11

12

13    DATED:        December 18, 2020        LAW OFFICE OF DEREK P. WISEHART

14

15                                          _____

16                                          Derek P. Wisehart, Attorney for Plaintiff.

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

4

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California  93291.

5

6

On December _18_, 2020, I served the foregoing **PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

7

on all interested parties, by placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

8

9

10

11

| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA  93720<br>Email:  brian@whelanlawgroup.com | |

12

13

    [  ]     **By Personal Service** - I delivered such envelope by hand to the addressee.

14

15

16

17

    [  ]     **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

18

19

20

    [  ]     **By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or provided for.

21

22

23

    [  ]     **By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of this declaration to the above interested parties at the listed facsimile transmission telephone number.

24

25

    [ X ]     **By Electronic Service:**  I sent the afore-described document(s) from email address derek@dwisehartlaw.com to the person(s) at the email addresses

26

1    listed above.   I did not receive within a reasonable time after transmission any electronic message or other indication that the transmission was unsuccessful.

2

3    __X__ **(State)**   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

4    _____ **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

5

6    Executed on December ___/8___, at Visalia, California.

7

Derek P. Wisehart

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT "14"

1    **Brian D. Whelan, Esq.** (SBN 256534)
     **WHELAN LAW GROUP, A Professional Corporation**
2    1827 East Fir Avenue, Suite 110
     Fresno, California 93720
3    Telephone: (559) 437-1079
     Facsimile: (559) 437-1720
4    E-mail: brian@whelanlawgroup.com

5

6    Attorneys for: Defendant BEN PAUL MEREDITH

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                 COUNTY OF TULARE

9

10   DEVIN G. NUNES,            Case No. VCU284528

11         Plaintiff,        **NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA IN SUPPORT OF**

12         v.             **DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT**

13   BENJAMIN PAUL MEREDITH,    **PURSUANT TO CALIFORNIA CODE OF**
    TWITTER, INC., and DOES 1 to 100,   **CIVIL PROCEDURE SECTION 425.16**
14   Inclusive,             **(ANTI-SLAPP)**

15         Defendants.

16                  Date:   December 22, 2020
                  Time:   8:30 a.m.
                  Dept.:   7

17

18                 Complaint Filed:    October 5, 2020
                Trial Date:       Not Set

19

20   TO THE COURT AND TO COUNSEL OF RECORD FOR ALL PARTIES:

21          PLEASE TAKE NOTICE that Defendant BEN PAUL MEREDITH, by and through

22   his attorneys hereby respectfully submits this Notice of Errata in the DECLARATION OF YASMIN

23   MENDOZA IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFF'S

24   COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

25   (ANTI-SLAPP), dated December 10, 2020 and previously filed with the Court on December 15,

26   2020.

27   ////

28   ////

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 18 2020

STEPHANIE CAMERON, CLERK
BY: Leticia Hernandez-Sandoval

FAXED

1

NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA

1          Due to an oversight Exhibit "A" to the declaration was inadvertently omitted from

2  the filing on December 15, 2020. The proper and complete Declaration of Yasmin Mendoza is

3  respectively attached hereto as Exhibit "A".

4

5  Dated: December 18, 2020           WHELAN LAW GROUP,
                             A Professional Corporation

6

7                             By Brian D. Whelan,
                             Attorneys for Defendant BENJAMIN PAUL

8                             MEREDITH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA

EXHIBIT "A"

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5
    Attorneys for: Defendant BEN PAUL MEREDITH
6

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      COUNTY OF TULARE

9

10  DEVIN G. NUNES,                      )   Case No. VCU284528
                                         )
11          Plaintiff,                   )   DECLARATION OF YASMIN MENDOZA
                                         )   IN SUPPORT OF DEFENDANT'S
12          v.                           )   SPECIAL MOTION TO STRIKE
                                         )   PLAINTIFF'S COMPLAINT PURSUANT
13  BENJAMIN PAUL MEREDITH,              )   TO CALIFORNIA CODE OF CIVIL
    TWITTER, INC., and DOES 1 to 100,    )   PROCEDURE SECTION 425.16
14  Inclusive,                           )   (ANTI-SLAPP)
                                         )
15          Defendants.                  )   Date:   December 22, 2020
                                         )   Time:   8:30 a.m.
16                                       )   Dept.:  7
                                         )
17                                       )   Complaint Filed:   October 5, 2020
                                         )   Trial Date:        Not Set
18

19          I, Yasmin Mendoza, declare:

20          1.      The following facts are within my personal knowledge and, if called as a witness,

21  I can testify competently to each of them.

22          2.      In Spring 2019, I started using the twitter handle @fresyas.  Until I changed the

23  @fresyas account handle on January 1, 2020, I was the exclusive user and sole controller of the

24  twitter handle @fresyas. I ultimately had to change the account name because weird non-human

25  bot users would flood my posts and mentions, and then strange twitter accounts started to follow

26  me and cause me a lot of alarm and concern for my own safety.

27          3.      I have reviewed the declaration of "Devin G. Nunes in opposition to Defendant,

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

1

DECLARATION OF YASMIN MENDOZA

Benjamin Paul Meredith's motion to strike complaint pursuant to CCP 425.16." I see at page five (5) of Mr. Nunes' declaration a tweet that he attributes to me. I recognize my handle @fresyas, and a picture of myself next to the handle.  I did not tweet that message at any point in time, nor did anyone on my behalf. I specifically recognize that tweet because I was asked by people about it at the time and I took a screen shot of it because I thought that it would be erased by whoever posted it. The tweet is not mine, and the contents of the tweet are not true. Attached hereto as Exhibit "A" is a true and correct copy of the tweet at issue appearing at page five (5) of Mr. Nunes' declaration.

4       In the Exhibit "A" tweet,  I recognize the name of Nancy Gilmore. Nancy worked on the Andrew Janz for Congress campaign in 2018. I know Nancy. I also worked on Mr. Janz' campaign. I do not know who Michelle Emmitt is nor have I met her, to my knowledge.  I have never spoken with Nancy Gilmore about Michelle Emmitt, @devincow, trolling Mr. Nunes online,  who set up the @devincow, or any other twitter user allegedly following Devin Nunes or set up to do that.

5.       To be abundantly clear, the tweet seen in Exhibit "A," that Congressman Devin Nunes claims I tweeted, authored, and published is not in fact my tweet. I did not author any of the text appearing in Exhibit "A," nor did anyone do so at my request or with my permission, and the text itself is false.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on December 10, 2020.


Yasmin Mendoza

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DECLARATION OF YASMIN MENDOZA

EXHIBIT "A"

14.    My attorneys traced the anonymous Twitter accounts to Meredith by searching the Internet and Twitter.  On September 16, 2019, shortly after Meredith threatened my life, a WordPress.com website appeared on the Internet.    The website contains the following information:

# Michelle Emmett is @devincow reveals former Janz intern @fresyas Mendoza #Fresno #politics

👤 janzinterntruths    🕐 September 16, 2019    🏷 Politics    🏷 Fresno

 **Yas Mendoza**                          

Michelle Emmitt @EmmettMichellem is @devincow.  She made the account to troll Nunes because Nancy Gilmore asked her to.

29 PM  8 Jul '19

3 Retweets  4 Likes

[https://janztrolls.wordpress.com/2019/09/16/michelle-emmett-is-devincow-reveals-former-janz-intern-fresyas-mendoza-fresno-politics/].    The user of the @EmmettMichellem Twitter account created the following profile:

1

### PROOF OF SERVICE

2      I am employed in the County of Fresno, State of California.  I am over the age of
18 years and not a party to this action.  My business address is:  Whelan Law Group, A

3   Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On
December 18, 2020, I caused to be served the within document(s): **NOTICE OF ERRATA TO**

4   **DECLARATION OF YASMIN MENDOZA IN SUPPORT OF DEFENDANT'S SPECIAL**
**MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA**

5   **CODE OF CIVIL PROCEDURE SECTION 425.16**
**(ANTI-SLAPP)**

6   ( )    **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to

7        the fax number(s) set forth below on this date.

8   ( )    **BY HAND DELIVERY:**   by causing to be personally delivered the document(s) listed
above to the person(s) at the address(es) set forth below on this date.

9   ( )    **BY MAIL:** by placing the envelope, addressed to addresses below, for collection and

10       mailing on the date following our ordinary business practices.  I am readily familiar with
this business' practice for collecting and processing correspondence for mailing.  On the

11       same day that correspondence is placed for collection and mailing, it is deposited in the
ordinary course of business with the United States Postal Service in a sealed envelope

12       with postage fully paid.

13  ( )    **BY PERSONAL SERVICE:** by causing document(s) listed above to be personally
served to the person(s) at the address(es) set forth below.

14  ( )    **BY EXPRESS MAIL DELIVERY:** by causing document(s) listed above to be

15       deposited with the United States Express Mail Service for delivery to the person(s) at the
address(es) set forth below.

16  **(X)**    **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be

17       electronically mailed to the e-mail addresses listed below.

18       Derek P. Wisehart                          Steven S. Biss
         Law Offices of Derek P. Wisehart           300 West Main Street, Suite 102

19       2330 W. Main Street                         Charlottesville, Virginia 22903
         Visalia, CA 93291                          Tel: (804) 501-8272

20       Tel: (559) 636-9473                         Fax: (202) 318-4098
         Fax: (559) 636-9476                         Email: stevenbiss@earthlink.net

21       Email: derek@dwisehartlaw.com
                                                    Counsel for Plaintiff

22       Counsel for Plaintiff

23

24       I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.

26       Executed on December 18, 2020, at Fresno, California.

27                                             _____
                                                       STACEY VUE

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

NOTICE OF ERRATA TO DECLARATION OF YASMIN MENDOZA

EXHIBIT "15"

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California  93720
3   Telephone:  (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

DEC 18 2020

STEPHANIE CAMERON, CLERK
BY:
Leticia Hernandez-Sandoval

5

6   Attorneys for: Defendant BEN PAUL MEREDITH

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          COUNTY OF TULARE

9

10  DEVIN G. NUNES,                     )    Case No. VCU284528
                                        )
11          Plaintiff,                  )    DEFENDANT'S OBJECTIONS TO
                                        )    PLAINTIFF'S SUR-REPLY IN
12      v.                              )    OPPOSITION TO DEFENDANT'S REPLY
                                        )    MEMORANDUM OF POINTS AND
13  BENJAMIN PAUL MEREDITH,             )    AUTHORITIES
    TWITTER, INC., and DOES 1 to 100,   )
14  Inclusive,                          )    Date:   December 22, 2020
                                        )    Time:   8:30 a.m.
15          Defendants.                 )    Dept.:  7
                                        )
16  _____)    Complaint Filed:   October 5, 2020
                                             Trial Date:        Not Set
17

18          Defendant BEN PAUL MEREDITH ("Defendant") hereby objects to Plaintiff's sur-

19  reply as it is not authorized by the Code of Civil Procedure. (C.C.P. § 1005.)

20

21  Dated: December 18, 2020            WHELAN LAW GROUP,
                                        A Professional Corporation
22

23
                                        By Brian D. Whelan,
24                                      Attorneys for Defendant BEN PAUL MEREDITH

25

26  FAXED

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                        1

                 DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUR-REPLY

**PROOF OF SERVICE**

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On December 18, 2020, I caused to be served the within document(s): **DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

( )  **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )  **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )  **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )  **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )  **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)  **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

Derek P. Wisehart
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Tel: (559) 636-9473
Fax: (559) 636-9476
Email: derek@dwisehartlaw.com

Counsel for Plaintiff

Steven S. Biss
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Tel: (804) 501-8272
Fax: (202) 318-4098
Email: stevenbiss@earthlink.net

Counsel for Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 18, 2020, at Fresno, California.

STACEY VUE

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SUR-REPLY

EXHIBIT "16"

1   Derek P. Wisehart, Esq. #178100
    Law Offices of Derek P. Wisehart
2   2330 W. Main Street
    Visalia, California 93291
3   Telephone:    (559) 636-9473
    Facsimile:    (559) 636-9476
4   Email: derek@dwisehartlaw.com

5   Steven S. Biss, Esquire
    (Virginia State Bar No. 32972)
6   300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
7   Telephone: (804) 501-8272
8   Facsimile: (202) 318-4098
    Email: stevenbiss@earthlink.net
9   *(Application for Admission Pro Hac Vice
    Filed)*
10

11  Attorneys for Plaintiff, DEVIN G. NUNES

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                          COUNTY OF TULARE

15

16  DEVIN G. NUNES.                          Case No. VCU284528

17              Plaintiff,                   **PLAINTIFF'S NOTICE OF MOTION AND
                                             MOTION FOR LEAVE TO CONDUCT**
18  vs.                                      **SPECIFIED DISCOVERY PURSUANT TO
                                             C.C.P. § 425.16(g)**
19  BENJAMIN PAUL MEREDITH,
20  TWITTER, INC., and                       Date:    January 22, 2021
    DOES 1 to 100, Inclusive,                Time:    8:30 a.m.
21                                           Dept.    10
                Defendants.                  **Hon. Gary L. Paden**
22

23

24

25

26

27

28

    **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED
    DISCOVERY PURSUANT TO C.C.P. § 425(g)**

Plaintiff, DEVIN G. NUNES ("Plaintiff"), by his undersigned counsel, pursuant to California Code of Civil Procedure ("C.C.P.") § 425.16(g), for good cause respectfully moves the Court for leave to conduct specified discovery (detailed below) in the event the Court proceeds to step two in its analysis of the anti-SLAPP motion to strike filed by defendant, Benjamin Paul Meredith ("Meredith").

### Notice of Motion and Notice of Hearing

TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 22, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 10 of the Tulare County Superior Court, located at 221 S. Mooney Blvd., Visalia, California 93291, Devin G. Nunes, by counsel, will move the Court pursuant to § 425.16(g) of the California Code of Civil Procedure for leave to conduct specified discovery (detailed below).

Plaintiff has timely filed this motion. Good cause exists to allow him to conduct limited discovery. In his anti-SLAPP motion, Meredith contends that Plaintiff is unable to demonstrate a probability of prevailing on his claims of stalking and common law commercial misappropriation. Meredith is hiding the ball. He possesses evidence that will support Plaintiff's claims. For the reasons stated below, the Court should permit Plaintiff to conduct limited discovery.

### Memorandum of Points and Authorities

1.  The filing of a motion to strike pursuant to C.C.P § 425.16 stays all discovery proceedings in the action. Section 425.26(g) provides that the Court "on noticed motion and for good cause shown, may order that specified discovery be conducted" notwithstanding the automatic stay.

---

2

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

2.     "If the plaintiff makes a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case, the plaintiff must be given the reasonable opportunity to obtain that evidence through discovery before the motion to strike is adjudicated.  The trial court, therefore, must liberally exercise its discretion by authorizing reasonable and specified discovery timely petitioned for by a plaintiff in a case such as this, when evidence to establish a prima facie case is reasonably shown to be held, or known, by defendant or its agents and employees." *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal.App.4th 855, 868, 44 Cal.Rptr.2d 46 (1995); *see also Ruiz v. Harbor View Community Ass'n*, 134 Cal.App.4th 1456, 1475, 37 Cal.Rptr.3d 133 (2005) (defamation case remanded to the trial court to consider plaintiff's discovery request on the issue of publication); *Garment Workers Center v. Superior Court*, 117 Cal.App.4th 1156, 1162, 12 Cal.Rptr.3d 506 (2004) ("Surely the fact [that] evidence necessary to establish the plaintiff's prima facie case is in the hands of the defendant or a third party goes long way toward showing good cause for discovery.").

3.     In determining whether good cause exists to lift the discovery ban, other relevant factors to consider include: (a) "whether the information the Plaintiff seeks to obtain through formal discovery proceedings is readily available from other sources or can be obtained through informal discovery"; (b) "the Plaintiff's need for discovery in the context of the issues raised in the [anti-] SLAPP motion," and (c) the relative circumstances of the parties and the importance of freezing discovery to protect the Defendant. *Garment Workers Center*, 117 Cal.App.4th at 1162, 12 Cal.Rptr.3d at 509-510.

4.     A court exercising its discretion to grant or deny a motion for discovery under § 425.16(g) should remain mindful that the anti-SLAPP statute was adopted to end meritless suits targeting "protected speech", "*not* to abort potentially meritorious claims due to a lack of

discovery." *Sweetwater Union High School Dist. v. Gilbane Building Co.*, 6 Cal.5ᵗʰ 931, 949, 243 Ca,Rptr.3d 880 (2019).

5.      Here, all of the relevant factors weigh in favor of allowing Plaintiff to conduct limited discovery.

**A.**      ***Meredith Possesses Necessary Evidence***

6.      Meredith possesses specific information that is necessary to establish a prima facie case of stalking and common law commercial misappropriation, including (a) the name or handle of his Twitter account(s), (b) the number of tweets, retweets, replies and likes Meredith actually posted in 2019 and 2020, (c) the identity of the Twitter accounts that Meredith controls or that he used in 2019 and 2020,[1] (d) the identity of those with whom Meredith communicates, (d) the nature of his communications, *i.e.*, private "direct messages", with those third-parties, (e) the content of Meredith's tweets, retweets, replies and likes, and (f) all sources of income for Meredith in 2019 and 2020.

7.      Each of these specific subject matters is relevant to show a pattern of alarming and harassing conduct and credible threats under California's stalking statute – § 1708.7 of the California Civil Code – and commercial misappropriation of Plaintiff's name and likeness.

**B.**      ***The Discovery Is Not Available Through Alternate Means***

8.      The specified discovery is not available through alternate means.

9.      Meredith is in possession, custody and control of his tweets, retweets, replies and likes – to the extent he has not deleted or otherwise spoliated the information.

---

[1]      For instance, Meredith slipped up and admitted in his reply declaration that he used the same profile picture ("Mt. Rainier") on one of his websites and on an alternate Twitter account.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

10.     Although Meredith quickly deleted the threat at issue in this case, that "reply" tweet remains stored and in the possession of Twitter.

11.     In this case, Twitter can be compelled to produce the "contents" of Meredith's stored communications and all "non-content" records relating to Meredith.

12.     Section 2702(a)(1) of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, prohibits Twitter – an entity providing electronic communications service to the public – from divulging the "contents" of a communication while in electronic storage by Twitter. "Content" is information "concerning the substance, purport, or meaning" of a communication. *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F.Supp.2d 114, 127 (E.D. Va. 2011) (quoting 18 U.S.C. § 2510(8)).

13.     Section 2702(a)(3) prohibits Twitter from divulging non-content records or other information pertaining to a subscriber to or customer of Twitter "to any governmental entity". Plaintiff is clearly not a governmental entity. Thus, he is entitled to production of the non-content records and information without question. *See, e.g., 18 U.S.C. § 2702(c)(6) (Twitter may divulge a non-content record or other information pertaining to a subscriber to or customer of Twitter "(6) to any person other than a governmental entity")*; *Xie v. Lai*, 2019 WL 7020340, at * 1, 5 (N.D. Cal. 2019) (granting application for service of subpoena on Google seeking "all non-content email headers, including the 'to' and 'from' lines and the dates, from the Google email account of Terry Lai", where the applicants alleged that "Mr. Lai is guilty of breach of contract, conspiracy, and misappropriation under Canadian law") (citing *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, 2013 WL 256771, at 3 (N.D. Cal. 2013) (allowing discovery of "[d]ocuments sufficient to show the recipient(s), sender, date sent, date received, date read, and date deleted of emails.")); *Loop AI Labs, Inc. v. Gatti*, 2016 WL 787924, at * 3 (N.D. Cal. 2016) ("Because Loop is not a governmental entity, AT&T may disclose to it the

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

subscriber information requested by the subpoena"); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at * 3 (N.D. Cal. 2013) (holding that party was entitled to non-content "subscriber information", including phone numbers, email addresses, alternate email addresses, IP addresses used to access the account,[2] dates and times of access to the account, and other user identification information); *see id. Malibu Media, LLV v. Doe*, 2015 WL 4040409, at * 2 (D. Md. 2015) (18 U.S.C. § 2702(c)(6) expressly permits disclosure of a subscriber's "name, address, telephone number, and e-mail address" in response to a Rule 45 subpoena); *Systems Products and Solutions, Inc. v. Scramlin*, 2014 WL 3894385, at * 8 (E.D. Mich. 2014) ("Metadata associated with electronic communications … are not considered to be content protected by the SCA … This … includes a subscriber's name, address, records of session times and durations, telephone or instrument number, or other subscriber number or identity").

14.     Twitter has an ulterior motive and will resist every effort to produce **_any_** content communications relating to Meredith and the Doe Defendants.  Twitter is unlawfully using its platform to aid and abet criminal conduct.

15.     Both Twitter and Meredith can be compelled to turn over Meredith's "content" communications. *See, e.g., In re Akhmedova*, 2020 WL 6891828, at * 3 (N.D. Cal. 2020) ("a service provider may disclose the contents of an account holder's electronic communications with the 'lawful consent' of the account holder"); *Lucas v. Jolin*, 2016 WL 2853576, at * 8 (S.D. Ohio 2016) ("In a personal injury case, when a plaintiff seeks damages for claimed injuries, he or she is often directed to execute a release in order for the defendant to examine his or her

---

[2]     This non-content information is important in a case such as this, where Meredith may be accessing anonymous Twitter accounts registered in his wife's name, *i.e.* **@DevinCow**, or where Meredith's accounts are being accessed from multiple different computers around the country as part of a coordinated stalking campaign aided and abetted by Twitter.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

medical records related to the injuries, including medical records that may prove pre-existing injuries or otherwise lend credence to the defense.  In a similar way, Net VOIP will be compelled to request directly from Google the release of certain emails within the relevant time period, so that Plaintiff has some opportunity to discover relevant documents that may undermine the grounds on which Net VOIP seeks summary judgment and help prove Plaintiff's claim"); *Fawcett v. Altieri*, 38 Misc.3d 1022, 960 N.Y.S.2d 692, 597 (N.Y. Super. 2013) (private social media posts may be compelled from a user in civil discovery "just as material from a personal diary may be discoverable"); *see also Facebook v. Superior Court*, 4 Cal.5th 1245, 1274, 417 P.3d 725 (2018) ("we conclude that communications configured by a social media user to be public fall within section 2702(b)(3)'s lawful consent exception,[3] presumptively permitting disclosure by a provider").

16.     Since the specified discovery is only available from Meredith and Twitter, this factor clearly militates in favor of allowing the limited discovery.

**C.     *The Parties Are Equally Situated***

17.     In *Garment Workers Center*, the Court of Appeals ruled that the trial court erred in allowing a large retailer to take discovery from a nonprofit group advocating for low-income immigrant workers, absent the finding that there was a reasonable probability that the issue of actual malice would be reached, on the defendant's motion to strike.

---

[3]     Section 2702(b)(3) of the SCA provides that Twitter "may divulge the contents of a communication-- ... **(3)** with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service".  In this case, Meredith chose to make his communications, tweets, retweets, replies and likes, freely accessible to the public.  Therefore, he necessarily consented to their disclosure.  To the extent that section 2702(b)(3)'s lawful consent exception applies to Meredith's tweets, retweets, replies and likes, that provision by itself *compels* Twitter to comply with a subpoena for the content communications. *Facebook*, 4 Cal.5th at 1282, 417 P.3d at 750.

---

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425(g)**

18.     Here, Plaintiff is the victim of a stalker who relentlessly posts and reposts disparaging and degrading statements on Twitter.  Unlike in *Garment Workers Center*, the parties to this action are on an equal par.

### Conclusion and Request for Relief

In the context of § 425.16(g), "good cause" requires "a showing that the specified discovery is necessary for the plaintiff to oppose the [anti-SLAPP] motion and is tailored to that end. *Britts v. Superior Court*, 145 Cal.App.4[th], 1112, 1125, 52 Cal.Rptr.3d 185 (2006).  Plaintiff has shown the additional facts that he expects to uncover, and how those facts are tailored to his opposition to Meredith's anti-SLAPP motion.  Since Meredith contests that Plaintiff has demonstrated a prima facie case of stalking and commercial misappropriation, and has chosen to lodge a series of general denials, the specified discovery is all the more relevant and important. *Compare, e.g., Tutor-Saliba Corp. v. Herrera*, 136 Cal.App.4[th] 604, 618, 39 Cal.Rptr.3d 21 (2006) ("the discovery sought by Tutor in its moving papers was purportedly needed to establish a prima facie case for defamation.  However, as noted, Herrera neither denied making the statements attributed to him in the complaint, nor any of the other elements necessary to establish a prima facie claim for defamation against him.  Herrera's position was that, even if Tutor could make out a prima facie claim of defamation, he had affirmative defenses to a prima facie case in the form of the absolute privileges he was asserting … In light of this record, the trial court was well within its discretion in denying discovery.  The request sought discovery in order to prove the elements of a prima facie claim for defamation.  As noted, a prima facie case for defamation was conceded by Herrera").

To be clear, Meredith's motion to strike fails the first step, and it should be denied without more.  In the event that the Court proceeds to step two, however, where Plaintiff must show a probability of prevailing on his claims of stalking and common law commercial

8

1    misappropriation, Plaintiff respectfully requests the Court to grant his motion and permit the

2    specified discovery.

3

4    DATED:      December 29, 2020            LAW OFFICE OF DEREK P. WISEHART

5

6                                           Derek P. Wisehart, Attorney for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED
DISCOVERY PURSUANT TO C.C.P. § 425(g)**

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF TULARE

3

4

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to the within action; my business address is 2330 W. Main Street, Visalia, California 93291.

5

6

On December 29 , 2020, I served the foregoing **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. §425.16(g)** on all interested parties, by placing a true copy thereof enclosed in a sealed envelope and addressed as follows:

7

8

9

10

11

| Brian D. Whelan, Esq.<br>WHELAN LAW GROUP, A Professional Corporation<br>1827 East Fir Ave., Suite 110<br>Fresno, CA  93720<br>Email:  brian@whelanlawgroup.com | |
|---|---|
| Thomas G. Sprankling<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>*Via email only:*<br>thomas.sprankling@wilmerhale.com | |

12

13

14

15

16

17

[   ]      **By Personal Service** - I delivered such envelope by hand to the addressee.

18

19

[ X ]      **By Mail** - I deposited such envelope with the United States Postal Service, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Visalia, California.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

20

21

22

23

[   ]      **By Express Service Carrier** - I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents in an envelope designated by the said express carrier, with delivery fees paid or provided for.

24

25

26

1

**[  ]**      **By Facsimile** - I transmitted from a facsimile transmission machine whose telephone number is 559/636-9476, the afore-described document(s), and a copy of this declaration to the above interested parties at the listed facsimile transmission telephone number.

2

3

**[ X ]**      **By Electronic Service:**  I sent the afore-described document(s) from email address derek@dwisehartlaw.com to the person(s) at the email addresses listed above.  I did not receive within a reasonable time after transmission any electronic message or other indication that the transmission was unsuccessful.

4

5

6

__X__  **(State)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7

_____  **(Federal)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

8

9

Executed on December 29 , at Visalia, California.

10

11

Derek P. Wisehart

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT "17"

1   Brian D. Whelan, Esq.  (SBN 256534)
    WHELAN LAW GROUP, A Professional Corporation
2   1827 East Fir Avenue, Suite 110
    Fresno, California   93720
3   Telephone: (559) 437-1079
    Facsimile:  (559) 437-1720
4   E-mail: brian@whelanlawgroup.com

5   Attorneys for: Defendant BEN PAUL MEREDITH

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                                COUNTY OF TULARE

9

10  DEVIN G. NUNES,                          )   Case No. VCU284528
                                             )
11          Plaintiff,                       )   **DEFENDANT'S MEMORANDUM OF**
                                             )   **POINTS AND AUTHORITIES IN**
12          v.                               )   **OPPOSITION TO PLAINTIFF'S MOTION**
                                             )   **FOR LEAVE TO CONDUCT DISCOVERY**
13  BENJAMIN PAUL MEREDITH,                  )
    TWITTER, INC., and DOES 1 to 100,        )
14  Inclusive,                               )
                                             )   Date:   December 22, 2020
15          Defendants.                      )   Time:   8:30 a.m.
                                             )   Dept.:  7
16                                           )
                                             )   Complaint Filed:   October 5, 2020
17                                           )   Trial Date:        Not Set
                                             )

18

19          Defendant BEN PAUL MEREDITH ("Defendant" or "MEREDITH") hereby submits this

20  opposition to Plaintiff DEVIN NUNES ("Plaintiff" or "NUNES" ) request to conduct discovery.

21                                      I.
                                   **INTRODUCTION.**

22          In his lawsuit, Nunes claims that Meredith used multiple Twitter accounts to harass and

23  stalk Nunes across thousands of tweets. With his motion to conduct discovery, Nunes

24  acknowledges he can locate no single statement or Tweet supporting his claims against Meredith.

25  Indeed, Nunes does not even know Defendant's Twitter name or handle. The California

26  legislature enacted C.C.P. Section 425.16 to quickly shut down cases like this one, and reject

27  unlawful fishing expeditions.

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

                                             1

                        MEMORANDUM OF POINTS AND AUTHORITIES

FAXED

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

JAN 07 2021

STEPHANIE CAMERON, CLERK
BY:_____
    Leticia Hernandez Sandoval

1    Plaintiff's lawsuit is transparently motivated by an unlawful animus which is underscored

2  by its target of phantom speech.  Defendant has already stated, under oath, that he did not engage

3  in any of the unlawful activities alleged in Plaintiff's Complaint.  And much worse, Plaintiff, the

4  Ranking Member of the United States House Permanent Select Committee on Intelligence,

5  knows this.

6    Plaintiff's motion fails because he is required to -- but cannot -- establish good cause for

7  relief to conduct discovery.  His motion is based entirely on misguided speculation.  For this

8  reason alone his motion fails (see *Schroeder v. Irvine City Council*, (2002) 97 Cal.App.4th 174).

9  Plaintiff's motion also fails because it is a transparent attempt to test Defendant's declaration –

10  this is specifically prohibited (see *1-800 Contacts, Inc. v. Steinberg*, (2003) 107 Cal.App.4th

11  568).

12    Next, Plaintiff's motion also fails because he cannot show that he can overcome the First

13  Amendment protection for anonymous speech since he fails to (1) identify the alleged account(s)

14  and (2) cannot provide any of the specific statements that are at issue in this case (see *Glassdoor,*

15  *Inc. v. Superior Court*, (2017) 9 Cal. App. 5th 623).  Since the discovery he seeks is improper

16  and barred under these circumstances, Plaintiff's motion is futile and should be denied on this

17  separate ground.

18    Last, Nunes filed this motion after the initial anti-SLAPP hearing date had come and gone

19  and then served this motion late.  Thus, the motion is procedurally defective and untimely. (The

20  motion was served by e-mail and mail on December 29, 2020, or exactly 16 court days before the

21  hearing. Because both mail service and e-mail service on December 29, 2020 were untimely, the

22  motion itself is defective. See CCP Sections 1005 and 1113, and COVID Rules, Rule 12.)

## II.
## ARGUMENT.

**A.**    **THE GOAL OF THE ANTI-SLAPP STATUTE IS TO PREVENT PLAINTIFFS FROM ENGAGING IN FISHING EXPEDITIONS, SUCH AS THIS ONE.**

26  The California Supreme Court explained the reason behind the Legislature's enactment of

27  Code of Civil Procedure section 425.16, the "anti-SLAPP" statute:

28    "The Legislature enacted section 425.16 to prevent and deter 'lawsuits
      [referred to as SLAPP's] brought primarily to chill the valid exercise of the

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

2

MEMORANDUM OF POINTS AND AUTHORITIES

constitutional rights of freedom of speech and petition for the redress of grievances.' § 425.16(a).

**Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources,' the Legislature sought '"to prevent SLAPPs by ending them early and without great cost to the SLAPP target."'** Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.

**In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit.** *See Equilon Enterprises,* at p. 65 (noting that the 'short time frame for anti-SLAPP filings and hearings' *and the 'stay of discovery pending resolution of the motion evidences the Legislature's intent to minimize the litigation costs of SLAPP targets.*)" *Varian Med. Systems, Inc. v. Delfino,* (2005) 35 Cal.4th 180, 192 (emphasis added).

"[T]he [anti-SLAPP] statute is intended to 'provid[e] a fast and inexpensive unmasking and dismissal of SLAPP's.' [Citation.] Obviously, the purpose of the statute would be frustrated if the plaintiff could drag on proceedings for many months by claiming a need to conduct additional investigation. The legislative intent is best served by an interpretation which would require a plaintiff to marshal facts sufficient to show the viability of the action *before* filing a SLAPP suit." *Ludwig v. Superior Court,* (1995) 37 Cal. App. 4th 8, 16.

The anti-SLAPP statute requires an expedited hearing and a stay on discovery in order to serve "the legislative policy of early evaluation and expeditious resolution of claims arising from protected activity." *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294. This statutory stay on discovery was enacted to protect defendants from the burden and expense of discovery until the anti-SLAPP motion has been decided. CCP section 425.16(g). The court can allow limited discovery to address the motion only where the plaintiff has established good cause. *Varian, supra,* 35 Cal.4th at 192. "Section 425.16 was intended to . . . [provide] a fast and inexpensive unmasking and dismissal of SLAPP's . . . Anti-SLAPP legislation, therefore, must be fast, inexpensive and constitutional or it is of no benefit to SLAPP victims, the court or the public." *Wilcox v. Superior Court,* (1994) 27 Cal. App. 4th 809, 823 (emphasis added).

Clearly, the very promise of the anti-SLAPP statute was to limit the plaintiff's ability to "drain" the defendants' resources without good cause.

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

3

MEMORANDUM OF POINTS AND AUTHORITIES

Here, the Plaintiff comes to this Court empty handed, admitting in his moving papers that he does not even know the names of any of the Twitter accounts that he accuses Defendant of operating. This is very odd. How, then, can Plaintiff attribute to Defendant the wrongful conduct when he does not even have a name of an account to point to? Moreover, Plaintiff does not submit any declarations to support his motion. Under these circumstances, one can only conclude that Plaintiff does not know what he's looking for and just as Defendant maintains there never was any probable cause for the filing of this lawsuit.

**B.      THE PLAINTIFF HAS NOT ESTABLISHED "GOOD CAUSE"
         FOR OBTAINING LIMITED DISCOVERY.**

**1. Speculation is Insufficient to Justify "Good Cause" for Discovery.**

"The anti-SLAPP legislation in section 425.16 was crafted to provide an efficient means of dispatching a plaintiff's meritless claims at the inception of the lawsuit to promote 'continued participation in matters of public significance.' Accordingly, the filing of a section 425.16 motion to strike stays discovery until the motion is ruled on, **although the court has discretion to permit specified discovery for good cause**." *Schroeder v. Irvine City Council*, (2002) 97 Cal.App.4th 174, 183 (emphasis added).[1]

In *Schroeder*, the court of appeal found that the trial court "did not abuse its discretion in concluding [the Plaintiff] had not shown good cause for a continuance to conduct" discovery, where "[**the Plaintiff] proffered no evidence other than his own speculation**" to support his request for discovery. *Id*. at 192; *see also Paterno v. Superior Court*, (2008) 163 Cal. App. 4th 1342 (Plaintiff in defamation suit must first establish a showing of falsity *before* engaging in discovery). In *Schroeder*, the plaintiff "sought the script for the telephone calls made as part of the Vote 2000 program. He argued the persons placing those telephone calls must have been given a script to follow when speaking to the voter and speculated the script might have included a plea to vote in favor of Measure F." *Id*. Here, this Court is faced with similar circumstances. The Plaintiff does not know the names of any of the alleged Twitter accounts he claims are

---

[1] "Moreover. . . the reviewing court will not disturb the trial court's decision unless it has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." *Tutor- Saliba Corp. v. Herrera*, (2006) 136 Cal. App. 4th 604, 617.

4

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

MEMORANDUM OF POINTS AND AUTHORITIES

1   associated with Defendant and/or Defendant's alleged accomplices, yet he insists that

2   Defendant's Twitter account must contain illegal statements.  This is highlighted by the fact that

3   he does not even supply any declaration to support this motion.  Like the plaintiff in *Schroeder*,

4   Plaintiff has nothing other than his own speculation, and such is insufficient to constitute "good

5   cause."

6       **2. Discovery May Not be Obtained Merely to "Test" the Opponent's Declarations.**

7       All of the discovery items specified in Plaintiff's motion (i.e. the name of Defendant's

8   Twitter account, the number of Tweets, his Tweets, etc.) are targeted at testing Defendant's

9   declaration; Defendant , under oath, has already declared, among other things, that he has only one

10  Twitter account, identified the average number of his Tweets, and stated that he never threatened

11  Plaintiff.  **"Discovery may not be obtained merely to 'test' the opponent's declarations."** *1-*

12  *800 Contacts, Inc. v. Steinberg*, (2003) 107 Cal.App.4th 568, 593.  All of the items identified in

13  Plaintiff's motion are sought simply to test Defendant's declaration.  This is not allowed.  See also

14  *Sipple v. Foundation for Nat. Progress*, (1999) 71 Cal.App.4th 226, the plaintiff demanded - as

15  Plaintiff now demands - that "he should be permitted to test respondents' self-serving declarations

16  and elicit circumstantial evidence through discovery before being subjected to dismissal for

17  failure to establish a prima facie case." *Sipple* 71 Cal.App.4th at 247. The Court concluded, "that

18  to allow appellant such extensive discovery would subvert the intent of the anti-SLAPP

19  legislation." *Id.*

20  **C.   IN ADDITION TO FAILING TO SHOW GOOD CAUSE EXISTS,
     PLAINTIFF FURTHER FAILS TO SATISFY THE REQUISITE LEGAL
21   CRITERIA TO OVERCOME THE OBJECTIONS TO THE SPECIFIED
     DISCOVERY.**

22      Individuals have a right to speak anonymously under the First Amendment.  (See *Krinsky*

23  *v. Doe 6*, (2008) 159 Cal. App. 4th 1154, 1163: "[A]n author's decision to remain anonymous,

24  like other decisions concerning omissions or additions to the content of a publication, is an aspect

25  of the freedom of speech protected by the First Amendment."  Moreover, Twitter has standing to

26  protect the constitutional rights of its users.  On this point, the court in *Glassdoor, Inc. v. Superior*

27  *Court*, (2017) 9 Cal. App. 5th 623 states:

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

5

MEMORANDUM OF POINTS AND AUTHORITIES

"We do not believe a plaintiff in MZ's position is entitled to compel the disclosure of an anonymous poster's identity without first clearly identifying, on the record, the specific statements claimed to have given rise to liability. It is not sufficient—if in fact it is true—that MZ identified the challenged statements in communications with opposing counsel. It is the court, not counsel, that must determine whether a prima facie showing of actionable statements has been made. It is impossible to perform such a task without knowing the exact statements on which liability is predicated." *Id.* at 636.

Here, Plaintiff fails to identify the names of any of the accounts that he claims are owned by Defendant. Nor does he provide the language of any of the statements that he claims were allegedly made by Defendant. Under these circumstances, where he cannot name the alleged accounts nor identify any of the specific statements, Plaintiff cannot overcome the First Amendment objection to the discovery he seeks. And to be certain, Defendant stands on his First Amendment rights. Defendant's right to anonymous speech cannot be overcome with vague and baseless allegations.

And, this is not some effort by Defendant to "hide the ball;" aside from protecting his constitutional rights, Defendant has a real concern that once the identity of his Twitter account is exposed, fake Tweets wrongfully attributed to his account may begin to surface in this lawsuit or people may also threaten to do harm to Defendant – which is of real concern given the political climate and the recent events in our Nation's Capitol Building. (Threats and harassment has already occurred with another Twitter user tangentially involved in this case: see the declaration of Yasmin Mendoza filed in support of Defendant's anti-SLAPP motion.) Given that Plaintiff cannot identify any of the exact statements allegedly made, nor any of the  names of the Twitter accounts that he claims are associated with Defendant, he cannot overcome the objections to this discovery. Plaintiff's motion should be denied on this separate ground.

### III.
### CONCLUSION.

For the reasons discussed at length above, Defendant respectfully requests that this Court deny Plaintiff's request for limited discovery.

Dated: January 7, 2021

WHELAN LAW GROUP,
A Professional Corporation

By Brian D. Whelan,
Attorneys for Defendant BEN PAUL MEREDITH

6

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1079
Fax: 559-437-1720

MEMORANDUM OF POINTS AND AUTHORITIES

## PROOF OF SERVICE

I am employed in the County of Fresno, State of California.  I am over the age of 18 years and not a party to this action.  My business address is:  Whelan Law Group, A Professional Corporation, 1827 East Fir Avenue, Suite 110, Fresno, California 93720.  On January 7, 2021, I caused to be served the within document(s): **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY**

( )    **VIA FAX:**  by causing to be transmitted via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

( )    **BY HAND DELIVERY:**  by causing to be personally delivered the document(s) listed above to the person(s) at the address(es) set forth below on this date.

( )    **BY MAIL:**  by placing the envelope, addressed to addresses below, for collection and mailing on the date following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully paid.

( )    **BY PERSONAL SERVICE:**  by causing document(s) listed above to be personally served to the person(s) at the address(es) set forth below.

( )    **BY EXPRESS MAIL DELIVERY:**  by causing document(s) listed above to be deposited with the United States Express Mail Service for delivery to the person(s) at the address(es) set forth below.

(X)    **BY ELECTRONIC SERVICE:**  by causing document(s) listed above to be electronically mailed to the e-mail addresses listed below.

| | |
|---|---|
| Derek P. Wisehart<br>Law Offices of Derek P. Wisehart<br>2330 W. Main Street<br>Visalia, CA 93291<br>Tel: (559) 636-9473<br>Fax: (559) 636-9476<br>Email: derek@dwisehartlaw.com<br><br>Counsel for Plaintiff | Steven S. Biss<br>300 West Main Street, Suite 102<br>Charlottesville, Virginia 22903<br>Tel: (804) 501-8272<br>Fax: (202) 318-4098<br>Email: stevenbiss@earthlink.net<br><br>Counsel for Plaintiff |
| Thomas G. Sprankling (SBN 294831)<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>2600 El Camino Real, Suite 400<br>Palo Alto, CA 94306<br>Tel: (650) 858-6000<br>Fax: (650) 858-6100<br>Email:<br>thomas.sprankling@wilmerhale.com<br><br>Counsel for Defendant Twitter, Inc. | Patrick J. Carome (pro hac vice pending)<br>Ari Holtzblatt (pro hac vice pending)<br>WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>Tel: (202) 663-6000<br>Fax: (202) 663-6363<br>Email: patrick.carome@wilmerhale.com<br>ari.holtzblatt@wilmerhale.com<br><br>Counsel for Defendant Twitter, Inc. |

Whelan Law Group,<br>A Professional Corporation<br>1827 East Fir Avenue, Suite 110<br>Fresno, California 93720<br>Tel: 559-437-1079<br>Fax: 559-437-1720

7

MEMORANDUM OF POINTS AND AUTHORITIES

1

       I declare under penalty of perjury under the laws of the State of California that the

2

foregoing is true and correct.

3

       Executed on January 7, 2021, at Fresno, California.

4

                              STACEY VUE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Whelan Law Group,
A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Tel: 559-437-1070
Fax: 559-437-1720

8

MEMORANDUM OF POINTS AND AUTHORITIES

# EXHIBIT "18"

1  Thomas G. Sprankling (SBN 294831)
2  WILMER CUTLER PICKERING
       HALE AND DORR LLP
3  2600 El Camino Real, Suite 400
   Palo Alto, CA  94306
4  Telephone: (650) 858-6000
5  Facsimile:  (650) 858-6100
   thomas.sprankling@wilmerhale.com
6
7  Patrick J. Carome (*pro hac vice* pending)
   Ari Holtzblatt (*pro hac vice* pending)
8  WILMER CUTLER PICKERING
       HALE AND DORR LLP
9  1875 Pennsylvania Avenue, NW
   Washington, DC 20006
10 Telephone: (202) 663-6000
   Facsimile:  (202) 663-6363
11
12 patrick.carome@wilmerhale.com
   ari.holtzblatt@wilmerhale.com
13 ***Attorneys for Defendant Twitter, Inc.***
14
15                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
16
17                            **COUNTY OF TULARE**
18

| | |
|---|---|
| DEVIN G. NUNES,<br><br>    Plaintiff,<br><br>    v.<br><br>BENJAMIN PAUL MEREDITH, TWITTER, INC., and DOES 1 TO 100, Inclusive,<br><br>    Defendants. | **CASE NO. VCU284528**<br><br>**TWITTER'S OPPOSITION TO PLAINTIFF'S MOTION TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425.16(g)**<br><br>Date: January 22, 2021<br>Time: 8:30 am<br>Dept.: 10<br>Hon. Gary L. Paden<br><br>Complaint Filed:   October 5, 2020<br>Trial Date:      Not yet set |

19
20
21
22
23
24
25
26
27
28
29
30
31
32

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Barrett v. Rosenthal,*
40 Cal. 4th 33 (2006) ...............................................................................................3

*Ben Ezra, Weinstein & Co. v. Am. Online Inc.,*
1998 WL 896459 (D.N.M. July 16, 1998) ...............................................................3

*Britts v. Superior Court,*
145 Cal. App. 4th 1112 (2006) ................................................................................2

*Facebook, Inc. v. Superior Court,*
4 Cal. 5th 1245 (2018) .............................................................................................4

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) (en banc) .................................................................3

*Glassdoor, Inc. v. Superior Court of Santa Clara Cty.,*
9 Cal. App. 5th 623 (2017) ......................................................................................5

*Krinsky v. Doe 6,*
159 Cal. App. 4th 1154 (2008) ................................................................................5

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995) .................................................................................................5

*Moore v. Powell,*
70 Cal. App. 3d 583 (1977) .....................................................................................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
591 F.3d 250 (4th Cir. 2009) ...................................................................................3

*Nunes v. Twitter, Inc.,*
Case No. C49-1715 (Va. Cir. Ct. Henrico County 2019) ........................................1

*Pickwick Stages Sys. v. Superior Court in and for Los Angeles County,*
138 Cal. App. 448 (1934) ........................................................................................3

*Rainsy v. Facebook, Inc.,*
311 F. Supp. 3d 1101 (N.D. Cal. 2018) .................................................................3, 4

*Shenwick v. Twitter, Inc.,*
2018 WL 833085 (N.D. Cal. Feb. 7, 2018) .............................................................4

*South Sutter, LLC v. LJ Sutter Partners, L.P.*,
  193 Cal. App. 4th 634 (2011) ................................................................................3

*Thompson v. Thames*,
  57 Cal. App. 4th 1296 (1997) ...............................................................................3

*Tutor-Saliba Corp. v. Herrera*,
  136 Cal. App. 4th 604 (2006) ...............................................................................2

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) .................................................................................3

**Statutes**

18 U.S.C. § 2702(a)(1) ...................................................................................................4

47 U.S.C. § 230 ..............................................................................................................3

18 U.S.C. § 2701 ............................................................................................................3

**Other Authorities**

Letter from Circuit Court of Henrico County Re: Devin Nunes v. Twitter, Inc.,
  Elizabeth L. "Liz" Mair, Mair Strategies LLC,et al., *Nunes v. Twitter, Inc.*, Case
  No. C19-1715 (Va. Cir. Ct. Henrico County June 24, 2020) .....................................1

Memorandum in Support of Motion to Quash Subpoena By Non-Party Twitter, Inc.,
  *Fitzgibbon v. Radack*, Case No. 3:20-mc-00003, ECF No. 2 (W.D. Va. Feb. 4,
  2020) .......................................................................................................................1

Order on Twitter's Motion to Dismiss, *Nunes v. Twitter, Inc.*, Case No. C19-1715
  (Va. Cir. Ct. Henrico County July 9, 2020) ............................................................1

https://help.twitter.com/en/safety-and-security/how-to-make-twitter-private-and-
  public (last accessed Jan. 4, 2021) .........................................................................4

Without waiving its objection to venue of this action in this Court and its pending request that this action be transferred to the Superior Court for San Francisco County,[1] Defendant Twitter, Inc. ("Twitter") hereby opposes Plaintiff Representative Devin G. Nunes's Notice of Motion and Motion for Leave to Conduct Specified Discovery Pursuant to C.C.P. § 425.16(g) ("Motion"), to the extent such Motion seeks to obtain discovery from Twitter. As explained below, there are a host of reasons why any discovery from Twitter in its capacity as a putative party to this case should not be permitted at this time.

This lawsuit marks the second time in two years that Nunes has sued Twitter and one or more Twitter accountholders for messages criticizing or satirically mocking Nunes that were allegedly authored and posted on the Twitter platform (often anonymously) by those accountholders or other third parties. *See Nunes v. Twitter, Inc.*, Case No. 19-1715 (Va. Cir. Ct. Henrico County 2019). Neither lawsuit has proceeded past the pleadings stage, and the claim against Twitter in the referenced Virginia suit was dismissed with prejudice about a month before the present suit was filed.[2] Yet, in both lawsuits, Mr. Nunes has sought—and thus far, been denied—discovery concerning the account information and communications of persons who have criticized him on the Twitter platform. In addition, one of the lawyers representing Mr. Nunes in both the present suit and the referenced Virginia suit also unsuccessfully sought similar information by issuing a third-party party subpoena to Twitter in an unrelated lawsuit in which that lawyer was representing a different plaintiff.[3]

Through the present Motion, it appears that Mr. Nunes may be seeking the same sort of

---

[1] *See* Twitter, Inc.'s Notice Of Motion And Motion To Transfer Venue To The Superior Court For San Francisco County Pursuant To The Terms Of The Parties' Venue-Selection Clause (Dec. 24, 2020).

[2] *See* Letter from Circuit Court of Henrico County Re: Devin Nunes v. Twitter, Inc., Elizabeth L. "Liz" Mair, Mair Strategies LLC, et al., *Nunes v. Twitter, Inc.*, Case No. C19-1715 (Va. Cir. Ct. Henrico County June 24, 2020); Order on Twitter's Motion to Dismiss, *Nunes v. Twitter, Inc.*, Case No. C19-1715 (Va. Cir. Ct. Henrico County July 9, 2020). All out-of-state authority is attached to this brief as Exhibit A.

[3] *See* Memorandum In Support of Motion to Quash Subpoena By Non-Party Twitter, Inc., *Fitzgibbon v. Radack,* Case No. 3:20-mc-00003, ECF No. 2 (W.D. Va. Feb. 4, 2020). All three suits specifically have sought information relating to Twitter accountholders allegedly connected to the account @DevinCow—a Twitter account that purports to belong to "Devin Nunes' Cow," and which frequently posts Tweets critical of Plaintiff Nunes. As Mr. Nunes's declaration in support of his opposition to Meredith's special motion to strike makes clear, Mr. Nunes apparently now believes that Mr. Meredith is in some way connected with the creator of the @DevinCow account. *See* Nunes Decl. at ¶¶ 14-16.

1   discovery from Twitter.  The Motion asks for a court order authorizing him to immediately begin
2   seeking discovery of several broad categories of information relating to Meredith's alleged use of
3   Twitter: (a) the name or handle of Meredith's Twitter account(s); (b) the number of "tweets,
4   retweets, replies and likes" that Meredith posted in 2019 and 2020; (c) the identity of the Twitter
5   accounts that Meredith "controls or that he used in 2019 or 2020;" (d) the "identity of those with
6   whom Meredith communicates;" (e) the "nature of [Meredith's] communications . . . with those
7   third-parties;" and (f) the "content of Meredith's tweets, retweets, replies, and likes."  Mot. at ¶ 6.

8        While it is not completely clear to which party Plaintiff intends to direct such discovery, to
9   the extent Plaintiff seeks leave to obtain discovery directly from Twitter, the Motion should be
10  denied for several independent reasons, including because this Court may not issue orders against
11  Twitter until first ruling on Twitter's pending motion to transfer, because 47 U.S.C. § 230 ("Section
12  230") immunizes Twitter from the burdens of litigation (including party discovery) with respect to
13  claims arising from third-party speech on the Twitter platform, because another federal statute, the
14  Stored Communications Act ("SCA") prohibits the Court from ordering Twitter to disclose the
15  contents of any communication without the consent of a party to such communication, and because
16  the First Amendment to the U.S. Constitution and the free speech clause of the California
17  Constitution strictly limit the circumstances in which Twitter may be required to disclose
18  information that could unmask the identities of persons who speak anonymously on its platform.

19       *First*, and separate from arguments that are specific to any discovery being sought from
20  Twitter, Nunes's Motion suffers from a basic procedural defect: it fails to indicate "what specific
21  discovery [is] needed, and why it [is] needed" (let alone the party from whom the discovery is
22  sought).  *Tutor-Saliba Corp. v. Herrera*, 136 Cal. App. 4th 604, 619 (2006).  Nunes argues that his
23  Motion should be granted so that he can seek "evidence" concerning Meredith's Twitter handle,
24  Meredith's Twitter accounts, Meredith's Tweets, Meredith's communications with third parties, and
25  Meredith's sources of income (Mot. at ¶ 6).  But in order to receive court authorization to take
26  discovery under CCP § 425.16(g), a party must "specif[y] discovery [that] is necessary for the
27  plaintiff to oppose the [Anti-SLAPP] motion and [be] tailored to that end."  *Britts v. Superior Court*,
28  145 Cal. App. 4th 1112, 1125 (2006).  Nunes's Motion fails both prongs of this test.  The Motion
29  does not explain how any of the general categories of discovery that Nunes seeks would assist him in
30  opposing Defendant Meredith's Anti-SLAPP motion.  Nor does the Motion appear to be "tailored"
31  to discovery that would actually address the issues raised in Meredith's Anti-SLAPP motion.  *See*
32  *Britts*, 145 Cal. App. 4th at 1125.  It seeks broad categories of discovery—e.g., "the identity of those

1   with whom Meredith communicates" and "all sources of income for Meredith in 2019 and 2020"

2   (Mot. ¶ 6)—that have no apparent relationship to any of the threshold legal issues that Meredith has

3   raised.

4    *Second*, because Twitter has filed a motion to transfer venue in this case, and that motion

5   remains pending, any order "compel[ing]" (Mot. at ¶ 11) Twitter to provide discovery would be

6   procedurally improper.  A transfer motion "operates as a supersedeas or stay of proceedings, and

7   must be disposed of before any other steps can be taken." *Pickwick Stages Sys. v. Superior Court in*

8   *and for Los Angeles County*, 138 Cal. App. 448, 449 (1934); *accord South Sutter, LLC v. LJ Sutter*

9   *Partners, L.P.*, 193 Cal. App. 4th 634, 655 (2011).  The filing of a transfer motion "'suspends the

10  power of the trial court to act upon any other question until the motion has been determined.'"

11  *Moore v. Powell*, 70 Cal. App. 3d 583, 587 (1977); *see also Thompson v. Thames*, 57 Cal. App. 4th

12  1296, 1303-1304 (1997) ("Generally . . . the court cannot rule on other substantive issues while the

13  motion for change of venue is pending.").

14   *Third*, Section 230 of the federal Communications Decency Act, 47 U.S.C. § 230, prohibits

15  any court order allowing Mr. Nunes to seek discovery from Twitter, at least at this early stage of the

16  case.  Section 230 immunizes providers of online services, such as Twitter, from lawsuits, like this

17  one, that seek to hold them liable for harms allegedly caused by content that appeared on the

18  provider's platform but that was created by third parties. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 53

19  (2006) (Section 230 "broadly shield[s] all providers from liability for 'publishing' information

20  received from third parties.").  Section 230 "protect[s] websites not merely from ultimate liability,

21  but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando*

22  *Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc).  For that reason,

23  courts routinely bar all discovery against online services providers until after the provider has had a

24  chance to assert its Section 230 immunity and the Court has had a chance to rule on the immunity.

25  *See, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 425-426 (1st Cir. 2007)

26  (affirming lower court's decision not to allow preliminary discovery); *Ben Ezra, Weinstein & Co. v.*

27  *Am. Online Inc.*, 1998 WL 896459, at *2 (D.N.M. July 16, 1998) (granting motion to stay discovery

28  based on congressional intent to "protect[] from the burdens of litigation."); *see also Nemet*

29  *Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (rejecting plaintiff's

30  discovery request and noting that courts "aim to resolve the question of § 230 immunity at the

31  earliest possible stage").

32   *Fourth*, contrary to what Nunes argues (at Mot. ¶ 15), the SCA, 18 U.S.C. § 2701, et seq.

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

prohibits the Court from ordering Twitter to disclose the contents of any communication of Meredith's or any other Twitter accountholder's communications via the Twitter platform unless at least one party to the communication has provided consent—and here Nunes has not established that any such consent presently exists.  As Nunes acknowledges, "Section 2702(a)(1) of the [SCA] prohibits Twitter—an entity providing electronic communications service to the public—from divulging the 'contents' of a communication while in electronic storage by Twitter." Mot. ¶ 12; *see also Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018) (holding that the SCA prohibited disclosure of direct Twitter messages).[4]  Nunes attempts to circumvent that restriction by arguing that Meredith gave "lawful consent" to disclose such communications by making his "tweets, retweets, replies and likes, freely accessible to the public." Mot. at n. 3.  For that proposition, Nunes relies on *Facebook, Inc. v. Superior Court*, 4 Cal. 5th 1245 (2018).  But that case held only that the SCA's "lawful consent" requirement was met for purposes of "communications that were configured by the registered user to be public, and that ***remained so configured at the time the subpoenas were issued***." *Facebook*, 4 Cal. 5th at 1250 (emphasis added).  As to other, non-public communications, the California Supreme Court affirmed the lower court's holding that such communications could *not* be disclosed under the SCA. *Id.*

Here, Nunes is obviously not seeking from Twitter merely the disclosure of "communications that were configured by the registered user to be public, and that [have] remained so configured."  The one rationale that Nunes offers for seeking discovery from Twitter (as opposed to just from Meredith) is that some of Meredith's Tweets may have been "deleted," Mot. ¶ 10—in which case any such Tweets that might still remain in Twitter's possession would, by definition, not still be "configured" to be public "at the time the subpoenas" issue. *Facebook*, 4 Cal. 5th at 1250. And more generally, if Nunes were seeking only public communications, then there would be no need for him to seek discovery at all under CCP § 425.16(g).  Nor is it true that all "tweets, retweets, replies, and likes," are "freely accessible to the public." Mot. at n.3.  Any person may set his or her Twitter account so as to limit the public availability of the information.[5]  The SCA expressly prohibits Twitter from disclosing any such non-public communications, absent consent or some

---

[4] Such "content" includes, but is not limited to, the text or other substance of messages sent or received via Twitter, "likes" communicated via Twitter, and the identities of Twitter accountholders who issue such "likes." *See Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114-115 (N.D. Cal. 2018).

[5] *See* "How to protect and unprotect your Tweets," https://help.twitter.com/en/safety-and-security/how-to-make-twitter-private-and-public (last accessed Jan. 4, 2021).

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

1   other applicable exception.  *See* 18 U.S.C. § 2702(a)(1) ("[A] person or entity providing an

2   electronic communication service to the public shall not knowingly divulge to any person or entity

3   the contents of a communication while in electronic storage by that service.").

4   *Finally*, several categories of discovery sought by Nunes seek to unmask individuals who

5   have chosen to speak anonymously on the Twitter platform, including the requests for "the name or

6   handle of [Meredith's] Twitter account(s);" the "identity of the Twitter accounts that Meredith

7   controls or that he used in 2019 and 2020;" and "the identity of those with whom Meredith

8   communicates."  *See* Mot. ¶ 6.  Indeed, Nunes admits in his own declaration that he served these

9   requests in order to unmask certain "anonymous Twitter accounts." Nunes Decl. at ¶ 14.  Any court

10  order requiring Twitter to produce such information would implicate serious concerns under the First

11  Amendment and the free speech clauses of the California Constitution.  It is well settled that the First

12  Amendment protects the rights of persons to engage in anonymous speech. *See McIntyre v. Ohio*

13  *Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous, like

14  other decisions concerning omissions or additions to the content of a publication, is an aspect of the

15  freedom of speech protected by the First Amendment.").  As a result, discovery may not be used to

16  try to unmask the identity of persons who communicate anonymously on the Internet, except under

17  very limited circumstances that are not present here. *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154,

18  1173-1174 (2008) (requiring plaintiff to make a reasonable effort to provide notice to the anonymous

19  speaker, and make a prima facie showing of the elements of libel, before allowing discovery into the

20  speaker's identity); *accord Glassdoor, Inc. v. Superior Court of Santa Clara Cty.*, 9 Cal. App. 5th

21  623, 634 (2017).

22  In light of the foregoing, Twitter respectfully requests that the Court deny Plaintiff's Motion

23  insofar as it seeks a Court order under CCP § 425.16(g) permitting Plaintiff to seek discovery from

24  Twitter.

25                                       Respectfully submitted,

26

27  Dated:  January 8, 2021              WILMER CUTLER PICKERING HALE
                                         AND DORR LLP

28
                                         /s/   Thomas G. Sprankling
29                                       Thomas G. Sprankling (SBN 294831)
                                         WILMER CUTLER PICKERING
30                                          HALE AND DORR LLP
                                         2600 El Camino Real, Suite 400
31                                       Palo Alto, CA  94306

32

Telephone: (650) 858-6000
Facsimile:  (650) 858-6100
thomas.sprankling@wilmerhale.com

Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

**Attorneys for Defendant Twitter, Inc.**

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

**<u>CALIFORNIA STATE COURT PROOF OF SERVICE</u>**

*Nunes v. Meredith, et al.*

Tulare County Superior Court Case No. VCU284528

At the time of service, I was over the age of 18 and not a party to this action.  I am employed in the County of Santa Clara, State of California.  My business address is Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, California 94306 and my electronic service address is Thomas.Sprankling@wilmerhale.com.

On January 8, 2021, I caused the foregoing document described as:

**TWITTER'S OPPOSITION TO PLAINTIFF'S MOTION TO CONDUCT SPECIFIED DISCOVERY PURSUANT TO C.C.P. § 425.16(g)**

to be electronically served on the interested parties listed below, pursuant to California Code of Civil Procedure § 1010.6(a)(2) and Mr. Wisehart's, Mr. Biss's, and Mr. Whelan's express written consent to electronic service via emails to myself and my colleagues dated December 23, 2020.

Derek P. Wisehart (SBN: 178100)
Law Offices of Derek P. Wisehart
2330 W. Main Street
Visalia, CA 93291
Telephone: (559) 636-9473
Facsimile:  (559) 636-9476
derek@dwisehartlaw.com

Steve S. Biss (*pro hac vice* pending)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile:  (202) 318-4098
stevenbiss@earthlink.net
*Attorneys for Plaintiff Devin G. Nunes*

Brian D. Whelan (SBN 256534)
Whelan Law Group
1827 East Fir Avenue, Suite 110
Fresno, CA 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
brian@whelanlawgroup.com
*Attorney for Defendant Benjamin Meredith*

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery

1          I declare under penalty of perjury under the laws of the State of California that the foregoing
2   is true and correct.

3

4   Executed on January 8, 2021 at Redwood City, California.

5

6

7                                                                    _____
8                                                                    Thomas G. Sprankling

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

Twitter's Opposition To Plaintiff's Motion To Conduct Specified Discovery