# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN G. NUNES, | Case No. 1:21-cv-00078-JLT-BAM |
| Plaintiff, | ORDER GRANTING MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CIV. PROC. § 425.16 AND DENYING MOTION FOR SPECIFIED DISCOVERY |
| v. | |
| BENJAMIN PAUL MEREDITH and DOES 1 to 100, Inclusive, | (Doc. 10-1 at 3-27; Doc. 10-1 at 142-51) |
| Defendants. | |

Before the Court is Ben[1] Paul Meredith's motion to strike the complaint pursuant to California Civil Procedure § 425.16 (Doc. 10-1 at 3-27 ("Mtn. Strike")) and Devin Nunes's motion for specified discovery pursuant to California Civil Procedure § 425.16(g) (Doc. 10-1 at 142-51 ("Mtn. Discovery")). The claims subject to the motion to strike include civil stalking under California Civil Code § 1708.7 and common law commercial misappropriation. For the reasons discussed below, the motion to strike is hereby **GRANTED** and the motion for discovery is **DENIED**. Claim one for civil stalking is **DISMISSED** with leave to amend and claim three for commercial misappropriation is **DISMISSED** with prejudice.

///

---

[1] Defendant corrected his name in the motion to strike as "Ben Paul Meredith," although he was named in the complaint as "Benjamin Paul Meredith." (Mtn. Strike at 12.)

1

# I. BACKGROUND

## A. Procedural Background

Devin Nunes originally filed his complaint in Tulare Superior Court on October 5, 2020, against Ben Paul Meredith and Twitter, Inc. (Doc. 1 at 8.) Nunes asserted two claims against Meredith: (claim 1) stalking under California Civil Code § 1708.7 and (claim 3) common law misappropriation. (*Id.* at 8, 19-21, 25-26.) Nunes asserted two claims against Twitter: (claim 2) aiding and abetting in the tort of stalking and (claim 4) violation of unfair competition law under California Business and Professional Code § 17200 *et seq*. (*Id.* at 8, 21-30.) On January 14, 2021, Nunes dismissed the claims against Twitter. (*Id.* at 2.)

On January 20, 2021, Meredith removed the case to federal court. (Doc. 1 at 1-5.) Before removing the case, Meredith filed a motion to strike the complaint in its entirety under California Code of Civil Procedure § 425.16, also referred to as an anti-SLAPP motion. (*See generally* Mtn. Strike.) Nunes filed a response on December 9, 2020 (Doc. 10-1 at 59-77 ("Oppo. to Strike")) and later filed a motion for leave to conduct specified discovery pursuant to California Civil Procedure § 425.16(g) (*see generally* Mtn. Discovery). The parties fully briefed both motions before removal to this Court. (*See* Doc. 10-1 at 92-98 ("Reply"); Doc. 10-1 at 122-27 ("Sur-reply"); (Doc. 10-1 at 155-74 (responses to Mtn. Discovery)). On February 2, 12, 2021, Meredith motioned the Court to review and rule on the pending motions, as originally submitted. (Doc. 10.)

## B. Factual Background

Nunes's complaint arises from Meredith's purported pattern of public, negative commentary about Nunes and his political career. (Doc. 1 at 14-16.) As of the filing of the complaint, Devin Nunes served as the congressional representative for California's 22nd district. (*Id.* at 11.) He has served on various committees in the U.S. House of Representatives, such as the National Parks Subcommittee and Permanent Select Committee on Intelligence. (*Id.*) Nunes has received criticism from many individuals for his political positions and actions taken pursuant to his role in national politics. (Mtn. Strike at 12-13.) He has also filed a myriad of lawsuits across the country in attempts to stop this criticism. (*Id.*) His lawsuit against Meredith seeks similar relief and makes broad allegations that Meredith used multiple Twitter accounts to harass and

stalk Nunes. (Doc. 1 at 9-12.) Nunes did not submit copies of these posts, nor did he identify the accounts, which he contends Meredith manages as part of his alleged scheme to stalk and harass Nunes. (*See id.*)

According to Nunes, Meredith is a sophisticated artificial intelligence data scientist who co-founded a technology company, which creates and delivers artificial intelligence solutions. (Doc. 1 at 12.) Nunes further contends that Meredith used this "extensive experience" to launch a campaign of harassment on Twitter, designed "to embarrass Plaintiff, to make Plaintiff's life miserable, and to instill fear in Plaintiff and others." (*Id.* at 20.) Specifically, Nunes makes the following allegations regarding Meredith's conduct:

- Operates multiple "anonymous Twitter accounts in a scheme to follow, alarm and harass" Nunes (Doc. 1 at 12)
- Coordinated with "violent third partiers" (Doc. 1 at 12)
- "Doxed"[2] Nunes's locations "dozens of times" (Doc. 1 at 10)
- "[T]weeted and retweeted *thousands* of false, threatening, hateful, riotous, profanity-laced, salacious and scandalous statements about Plaintiff" (Doc. 1 at 14) (emphasis in original)
- Accused Nunes of various state and federal crimes (Doc. 1 at 14)
- Used "derogatory, insulting and threatening hashtags within tweets" (Doc. 1 at 15)
- "[T]hreatened Plaintiff's life and threated to come after Plaintiff" (Doc. 1 at 15)
- Used Nunes's name, photograph, and likeness to sell merchandise and to conduct "professional fundraising" with Meredith's social media posts (Doc. 1 at 25-26.)

Nunes did not provide any examples of this alleged digital speech with his complaint. With his opposition to the anti-SLAPP motion, Nunes included a website screenshot which states that a woman named Michelle Emmett is responsible for the @devincow Twitter account that was used to "troll Nunes" (i.e., to post Tweets about Nunes). (Oppo. to Strike at 85 (Nunes Declaration).) Nunes also provided a screenshot of Emmett's personal Twitter account. (*Id.* at

---

[2] "'Dox' means to publicly identify or publish private information about a particular individual on the Internet with malicious intent, especially as a form of punishment or revenge." (Oppo. to Strike at 69 n.5.)

86.) Nunes asserts a connection exists between Emmett and Meredith because Meredith posted many Tweets tagging the Emmett's personal account and research from "Whitepages" shows the two were married. (*Id.*) Nunes provided no further examples, screenshots, or other evidence of the alleged connection.

In general, Meredith denies these claims and maintains Nunes's incorrectly attributes the statements to Meredith. (Mtn. Strike at 12; Reply at 94-95.) According to Meredith, even if he were responsible for the accused digital speech, these statements fall under the protection of the First Amendment and filed a motion to strike the complaint in its entirety under the anti-SLAPP statute. (Mtn. Strike at 12, 16.) For the reasons set forth below, the Court **GRANTS** Meredith's motion to dismiss and **DENIES** Nunes's motion for leave to conduct discovery.

## II.  LEGAL STANDARDS

### A.  Anti-SLAPP Motion to Strike under § 425.16

Under California law, "SLAPP" lawsuits refer to "strategic litigation against public participation," and they attempt "to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006). California's anti-SLAPP statute, California Civil Procedure § 425.16, creates an avenue for pre-trial dismissal of SLAPP lawsuits that "masquerade as ordinary lawsuits" but aim to deter "expression through costly, time-consuming litigation." *Makaeff v. Trump Univ.*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotations omitted); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 819 (1994)).

Under the anti-SLAPP statute, a defendant may move to strike a claim or complaint when the underlying conduct underlying was an "act in furtherance of [the] right to petition or free speech." *Wilcox*, 27 Cal. App. 4th at 818. In relevant part, § 425.16 provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. § 425.16(b).

4

To evaluate an anti-SLAPP motion, courts use a two-step analysis. *Daniels v. Robbins*, 182 Cal. App. 4th 204, 214 (2010). First, the defendant bears the initial burden to demonstrate the challenged causes of action arise from an act in furtherance of the defendant's right of petition or free speech, including:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. § 425.16(e). The moving defendant must "identify[] all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

If the defendant satisfies this burden, the analysis moves to step two. At step two, the burden shifts to the plaintiff to show a probability of prevailing on the challenged claim. *Metabolife Int'l*, 264 F.3d at 840; *Daniels*, 182 Cal. App. 4th at 214. The Ninth Circuit held that courts must apply federal rules of procedure when determining the proper standard of review to assess the probability of prevailing. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The standard of review depends on how the anti-SLAPP motion is styled. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) (noting the "division of anti-SLAPP motions to strike into two categories: motions that challenge the legal sufficiency of complaints and motions that challenge the factual sufficiency of complaints"). When "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," the standard of review under Federal Rule of Civil Procedure 12(b)(6) applies. *Planned Parenthood*, 890 F.3d at 834. "[O]n the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

///

///

5

**B.     Motion for Leave to Conduct Discovery under California Civil Procedure § 425.16(g)**

As part of his response to Meredith's anti-SLAPP motion, Nunes filed a motion for leave to conduct specified discovery and to preclude ruling on the anti-SLAPP motion until he has an opportunity to obtain such discovery. (Mtn. Discovery at 144-45.) Under California Civil Procedure Code § 425.16(g), a court may order "specified discovery" on proper motion showing "good cause." However, Ninth Circuit precedent establishes that this provision, along with the other limited discovery aspects of § 425.16 contradicts the federal rules. *Planned Parenthood*, 890 F.3d at 833-34. Because a federal court follows its procedural rules rather than conflicting state rules, the Court must apply the typical discovery procedures under Rule 12(b)(6) and Rule 56. *Id.*; *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Court, therefore, will construe Nunes's motion for specified discovery under the federal procedural rules.

Under a 12(b)(6) standard, discovery is not required to determine the sufficiency of the pleadings. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (holding plaintiff not entitled to discovery prior to dismissal because "the purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints allegations without subjecting themselves to discovery"). Under Rule 56, however, courts may postpone summary judgment to allow discovery where the party makes the requisite showing under Rule 56(d). *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Thus, whether Nunes is entitled to discovery depends on whether the Court reviews Meredith's anti-SLAPP motion as a motion to dismiss or motion for summary judgment at step two of the anti-SLAPP analysis.

**III.     ANALYSIS**

**A.     Conduct in Furtherance of Speech**

Under step one of the anti-SLAPP analysis, the defendant must show the alleged activities that form the basis of the asserted claims are "protected," thereby bringing the claim within the scope of the anti-SLAPP statute. *Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1183 (2011)). To be protected under the statute, "the acts underlying the plaintiff's cause of action [must] fall within one of the four

6

1 categories spelled out in section 425.16, subdivision (e)." *Collier v. Harris*, 240 Cal. App. 4th 41,
2 50-52 (2015).

3     Meredith argues that activities underlying Nunes's claims for stalking and
4 misappropriation arise from conduct in further of speech protected under § 425.16(e)(3) of the
5 anti-SLAPP statute. (Mtn. Strike at 18-20.) This subsection protects statements "made in a place
6 open to the public or a public forum in connection with an issue of public interest." Cal. Civ.
7 Proc. § 425.16(e)(3). The inquiry does not depend on "the form of the plaintiff's cause of action
8 but, rather, the defendant's activity that gives rise to his or her asserted liability." *Hilton v.*
9 *Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010) (quoting *Navellier v. Sletten*, 29 Cal. 4th 82,
10 92 (2002)). The court focuses on the nature of the activity and whether the associated speech
11 occurred "in connection with a public issue or an issue of public interest." *See Steep Hill Labs.,*
12 *Inc. v. Moore*, 2018 WL 1242182, at *5 (N.D. Cal. Mar. 8, 2018) (internal quotations omitted)
13 (evaluating whether a cause of action for stalking meets step one of the anti-SLAPP analysis by
14 considering whether the statements underlying the stalking claim related to a public interest); *see*
15 *also World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1568 (2009).

16     Whether statements concern a public interest is construed broadly. *Gilbert v. Sykes*, 147
17 Cal. App. 4th 13, 23 (2007). California Courts have identified three categories of public interests:
18 "(1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly
19 affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread,
20 public interest.'" *Hilton*, 599 F.3d at 906; *Rivero v. Am. Fed'n of State, Cnty., and Mun. Emps.,*
21 *AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003). However, the anti-SLAPP statute excludes
22 statements "not made in the context of any public discussion," are not "directed at encouraging
23 others to participate in the discussion," and do not "have any effect on a substantial number of
24 people beyond those to whom the information [is] directly conveyed." *World Fin. Grp.*, 172 Cal.
25 App. 4th at 1572-73.

26     Nunes's claims arise from Meredith's alleged repeated instances of "cyberstalking" on
27 Twitter by posting negative, threatening, harassing statements. (Oppo. to Strike at 68.) Nunes
28 alleges Meredith made "*thousands* of false, threatening, hateful, riotous, profanity-laced,

7

salacious and scandalous statements." (Doc. 1 at 14 (emphasis in original).) According to Nunes, Meredith's posts on Twitter included accusations that Nunes committed federal and state crimes and "directly threatened" Nunes's life and property. (*Id.* at 14-15.) Meredith argues these statements constitute protected conduct because they occurred in a public forum and relate to an issue of public interest. (Mtn. Strike at 18-20.) The Court agrees.

First, Meredith's post on Twitter occurred in a public forum because "websites [that] are accessible to the public" are considered public forums for the purposes of the anti-SLAPP statute. *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017) (statements made on Facebook constitute in a public forum). Nunes does not dispute this conclusion.

Second, the content of Meredith's Tweets relates to a public interest as defined under the anti-SLAPP statute. According to Nunes, Meredith's posts on Twitter all involve some form of negative commentary on Nunes. (Oppo. to Strike at 68-69.) As Nunes himself explains, he is a United States Congressman, representing California's 22nd Congressional District and serves as a Ranking Member of the House Permanent Select Committee on Intelligence. (*Id.* at 67.) "High profile individuals," such as politicians and celebrities, are persons in the public eye and of public interest that typically receive "extensive media scrutiny." *Jackson*, 10 Cal. App. 5th at 1254 (finding statements on social media regarding a celebrity's various medical conditions and treatments are matters of public interest); *see also Henley v. Jacobs*, 2019 WL 8333524, at *9 (N.D. Cal. Aug. 2, 2019) (concluding statements regarding "competitors and politicians, unquestionably concern an 'entity in the public eye' on a matter of 'widespread public interest'").

Meredith's commentary on Nunes as a political leader constitutes a topic of widespread public interest because "the right to speak on political matters is the quintessential subject of our constitutional protections." *Collier*, 240 Cal. App. 4th at 52-53 (holding the registration of domain names for websites used to endorse and discuss political candidates was in furtherance of protected speech under the anti-SLAPP statute); *Roberts v. Los Angeles Bar Assn.*, 105 Cal. App. 4th 604, 614 (2003) (internal quotations omitted) ("Public discussion about the qualifications of those who hold or wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment."). Critiques of Nunes's

qualifications as political leader, such as statements about his criminal history, further underscore a public interest concern. *Matson v. Dvorak*, 40 Cal. App. 4th 539, 543, 548 (1995) (affirming trial court's dismissal of a political candidate's invasion of privacy claim where a flyer alleged the candidate owed hundreds of dollars to the police department for unpaid fines).

Nunes does not dispute that Meredith's Tweets concern a widespread public interest or that he is in the public eye. Instead, Nunes broadly asserts that "[w]hen words are part of a pattern of stalking or harassing behavior, they do not constitute protected speech." (Oppo. to Strike at 64.) Nunes provides no authority to support his assertion. Despite listing approximately three pages of case law, none offer any guidance to interpret the protections of California's anti-SLAPP statute. (*Id.* at 64-66.) The vast majority of Nunes's authorities originate from other jurisdictions, irrelevant to California law. (*Id.*) The few cases Nunes cited from the Ninth Circuit and California courts, do not involve challenges to the anti-SLAPP protections, but rather analyzed First Amendment protections to rebut stalking and harassment allegations. *See, e.g.*, *People v. Borelli*, 77 Cal. App. 4th 703, 716 (2000); *United Artists Corp. v. United Artist Studios, LLC*, 2019 WL 6917918, at *10 (C.D. Cal. 2019). Nunes did not explain how the First Amendment protections apply to the analysis of step one under the anti-SLAPP statute. To the contrary, the California Legislature "did not limit the scope of the anti-SLAPP statute to activity protect by the constitutional rights of speech and petition. It went on to include 'any act . . . *in furtherance* of' those rights." *City of Montebello v. Vasquez*, 1 Cal.5th 409, 421 (2016) (emphasis in original). Accordingly, when determining the scope of anti-SLAPP protections, courts must look to "the statutory definitions in section 425.16, subdivision (e)," not simply to First Amendment law. *Id.* at 422; *see also Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 106 (2018) (citing *Montebello*, 1 Cal. 5th at 422) ("*Montebello* precludes plaintiffs from using substantive First Amendment principles to limit the scope of protection afforded by the anti-SLAPP law.").

To the extent Nunes attempts to argue that the alleged conduct is illegal as a matter of law and, thus, beyond the purview of the anti-SLAPP statute, Nunes has not met his burden to show this exception applies. The California Supreme Court recognizes an exception to the anti-SLAPP protections for conduct that is "conclusively established" as illegal, because the statute only

protects *valid* activities taken in furtherance of constitutional rights. *Zucchet v. Galardi*, 229 Cal. App. 4th 1466, 1478 (2014) (citing *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006)). However, the "exception for illegal activity is very narrow and applies only in undisputed cases of illegality." *Id.* at 1478. To establish the exception applies, the plaintiff must show the conduct is illegal as a matter of law "through defendant's concession or by uncontroverted and conclusive evidence." *Flately*, 39 Cal. 4th at 320. If a "factual dispute exists about the legitimacy of the defendant's conduct," the exception does not apply at step one of the anti-SLAPP analysis. *Id.* at 316.

To the extent Nunes argues the illegal conduct exception applies, he has not sufficiently evidenced the alleged stalking or harassing is illegal as a matter of law. Nunes alleges "Meredith directly threatened Plaintiff's life and threatened to come after Plaintiff." (Doc. 1 at 15.) Nunes contends he "reasonably believes that Meredith's ongoing pattern of conduct will eventually result in a violent attack on Plaintiff." (*Id.* at 16.) Indeed, "true threats" include those where "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" and fall outside the anti-SLAPP protections. *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1218-19 (2010) (affirming the anti-SLAPP statute did not protect a threat containing explicit details about defendant's desire to murder the plaintiff and where the defendant confirmed he made these statements on the Internet). Nonetheless, under the illegal conduct exception, a dispute of fact regarding the seriousness of the intent renders the exception inapplicable. *See Dziubla v. Piazza*, 59 Cal. App. 5th 140, 145 (2020) (holding a "thinly veiled threat" about what could happen if plaintiff continued to pursue litigation does not amount to illegal conduct as a matter of law). Meredith denies making any threatening statements towards Nunes and disputes the seriousness of any alleged threats.[3] (Reply at 95.) Because factual disputes exist regarding the speaker's intent and identity, the Court finds

---

[3] In Nunes's response to the anti-SLAPP motion, he makes an additional allegation claiming, "Meredith threatened Plaintiff's life in September 2019 by posting a tweet that encouraged Plaintiff to cut his throat with a razor." (Oppo. to Strike at 68.) Allegations not made with the original complaint are not properly before the Court. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (As a general rule, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). Regardless, even if the Court were to consider these allegations, it still does not satisfy Nunes's burden because this allegation is subject to a factual dispute. Meredith disputes having made the alleged threat and questions whether the Tweet was intended in a joking manner. (Reply at 95-96, n.1.)

1  the alleged threats do not fall under the exception for illegal conduct.

2  Finally, Nunes argues the anti-SLAPP statutes does not protect the activities giving rise to his claims because they are "conduct, not his speech." (Oppo. to Strike at 74.) Nunes again provides a lengthy list of inapplicable cases, by citing unpublished opinions[4] from California courts. (*Id.* at 74-75.) Notably, the statute explicitly covers conduct not merely speech. *See* Cal. Civ. Proc. § 425.16(b) (emphasis added) (protecting "any *act* of that person in furtherance of the person's right of petition or free speech"). Thus, Nunes has no authoritative rebuttal to the conclusion that the alleged behavior giving rise to his claims falls under the protected activity of the anti-SLAPP statute.

**B.     Probability of Prevailing on Claims**

    1.     <u>Applicable Standard of Review for Meredith's Anti-SLAPP Motion</u>

Before the Court can evaluate the probability of success under step two of the anti-SLAPP analysis, it must first determine the relevant standard of review according to *Planned Parenthood*. *Planned Parenthood*, 890 F.3d at 834. Because Meredith filed the motion before removing the case to federal court, Meredith styled the motion under California procedure for anti-SLAPP motions. As detailed above, federal procedures to review anti-SLAPP motions differ from California procedures. *Id.* Meredith filed the motion before discovery began, which indicates the Court should construe Meredith's motion under the 12(b)(6) standard. *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 849 (N.D. Cal. 2020) (reviewing only the legal challenges in an anti-SLAPP motion removed from state court because "factual challenges are premature as no discovery has yet taken place"). Otherwise, to apply a summary judgment standard, the Court must first allow the parties to take discovery. *Toranto v. Jaffurs*, 2016 WL 11621397, *2 (S.D. Cal. Nov. 23, 2016) (quoting *Z.F. v. Ripon Unified School Dist.*, 482 Fed. App'x 239, 240 (9th Cir. 2012) ("Where an anti-SLAPP motion is based on factual arguments, 'then the motion must

---

[4] The California Rules of Civil Procedure prohibit both Nunes and the Court from citing to or otherwise relying on unpublished opinions. Cal Rules of Court, Rule 8.1115(a) ("Except as provided in (b), an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."); see also State Farm Mut. Auto. Ins. Co. v. Penske Truck Leasing Co., L.P., 2021 WL 4810642, at *2 (9th Cir. Oct. 15, 2021) ("But California prohibits other courts from citing its unpublished cases.").

11

be treated though it were a motion for summary judgment, and discovery must be permitted.'")).

Moreover, Meredith's arguments about why Nunes lacks a probability of prevailing further suggest the Rule 12(b)(6) standard is appropriate because they primarily focus on the legal sufficiency of Nunes's claims as pled in the complaint. Meredith argues the First Amendment bars both claims as a matter of law. (Mtn. Strike 21-25.) Meredith further argues that Nunes failed to plead one of the statutory elements for civil stalking by not providing any independent corroborating evidence. (*Id.* at 26.) Meredith also argues California Civil Code § 3344(d) defeats the misappropriation claim. (*Id.* at 25-26.) Meredith's arguments relate to the sufficiency of the claims on their face and therefore resemble arguments made on motions to dismiss. *Shapour v. DOT*, 2014 WL 3850012, at *3 (E.D. Cal. Aug. 5, 2014) ("[T]he district court resolves a facial challenge as it would a Rule 12(b)(6) motion to dismiss."); *see also My Daily Choice, Inc. v. Butler*, 2021 WL 3475547, at *3 (D. Nev. Aug. 6, 2021) ("A facial challenge attacks the sufficiency of the allegations and mirrors a Rule 12(b)(6) motion to dismiss.").

As previously discussed, a motion to dismiss does not require special discovery as Nunes requests in his motion (Mtn. Discovery). Because the Court will review Meredith's anti-SLAPP motion as a motion to dismiss, the Court need not allow discovery to assess whether Nunes has sufficiently plead his claims. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."); *see also Metabolife*, 264 F.3d at 846-47 (concluding that the discovery stay required by California Civil Procedure Code § 425.16(g) does not apply in federal court). Accordingly, the Court **DENIES** Nunes's motion for specified discovery under pursuant to California Civil Procedure § 425.16(g).

2. <u>Motion to Dismiss Standard under Rule 12(b)(6)</u>

Under Rule 12(b)(6), the Court's review is limited to the allegations in the complaint. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993). (Under Rule 12(b)(6), "review is limited to the complaint alone."); *See also Herring Networks*, 8 F.4th at 1155-56 (holding district court did not err in refusing to consider evidence submitted by the parties "outside of the pleadings" because plaintiff cannot convert the anti-SLAPP motion into one for summary

judgment). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 663 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### 3. Claim 1: Civil Stalking under Cal. Civ. Code § 1708.7

#### a. *Whether Claim Is Barred by First Amendment*

Meredith argues Nunes's stalking claim fails as a matter of law because it is barred by the First Amendment. (Mtn. Strike at 21-25.) Meredith primarily relies on reasoning from a case outside this Court's jurisdiction and involving a criminal indictment for cyberstalking. *United States v. Cassidy*, 814 F. Supp. 2d 574, 576, 583 (D. Md. 2011). In *Cassidy*, the court concluded the First Amendment rendered the defendant's indictment under the federal stalking statute unconstitutional because defendant's conduct fell under protected speech and the criminal statute's content-based restriction did not survive strict scrutiny, as applied to the defendant's

1  case. *Id.* at 582-85. The court recognized that "true threats" remain unprotected by the First

2  Amendment. *Id.* at 583. However, the court found none of the harassing statements by the

3  defendant amounted to a true threat but were merely "speech [that] may have inflicted substantial

4  emotional distress." *Id.*

5  As explained above, a factual dispute exists regarding the circumstances of the alleged

6  threat to Nunes's life and whether it constitutes a "true threat." Although under the first prong of

7  the anti-SLAPP statute this factual dispute must be resolved in Meredith's favor, under the second

8  prong, as required under *Planned Parenthood*, the Court must view any factual dispute in the

9  light most favorable to Nunes. *Planned Parenthood*, 890 F.3d at 834; *Mangiaracina v. Penzone*,

10 849 F.3d 1191, 1198 (9th Cir. 2017) ("At [the motion to dismiss] stage, we accept all allegations

11 of material fact as true and construe them in the light most favorable to the plaintiff."). Assuming

12 Nunes's allegations made in the complaint are true—that Meredith was responsible for a

13 threatening post and did so with serious intent to inflict harm on Nunes—the complaint has

14 sufficiently pled facts to overcome a First Amendment defense because a true threat does not fall

15 under First Amendment protection.

16 Even if Meredith could establish the statements did not constitute true threats, Meredith

17 has not cited, and the Court has not found, any authorities applying the First Amendment defense

18 as a matter of law to California's civil stalking statute. The issue, in *Cassidy*, involved applying

19 the First Amendment defense to a federal criminal statute for stalking. *Cassidy*, 814 F. Supp. 2d

20 at 582-85. Given the discrepancies between the offense charged in *Cassidy* and Nunes's civil

21 claim, the Court declines to extend the reasoning from *Cassidy* to California's civil code, without

22 guidance from state courts on this matter. *See Lantz Ret. Invs., LLC v. Glover*, 2021 WL 6118182,

23 at *8 (E.D. Cal. Dec. 23, 2021) (declining to apply the party's cited case under Oregon law to an

24 issue arising under California law where the party provided no controlling authority); *Covenant*

25 *Media of Cal., L.L.C. v. City of Huntington Park*, 377 F. Supp. 2d 828, 837 n.26 (C.D. Cal. 2005)

26 (declining to resolve an issue of California law without "California authority directly on point").

27       b.    *Sufficiency of Corroborating Evidence to Support Claim*

28 Even if the First Amendment does not bar Nunes's stalking claim, Meredith argues Nunes

14

failed to state a claim for civil stalking under § 1708.7 because he did not provide corroborating evidence to support his claim. (Mtn. Strike at 26.) Under § 1708.7, "the plaintiff shall be required to support his or her allegations with *independent corroborating evidence*." Cal. Civ. Code § 1708.7(a)(1) (emphasis added). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The 12(b)(6) standard requires plaintiff to make a showing under *every* element of the asserted claim. *Student Loan Marketing Assoc.*, 181 F.R.D. at 634.

Nunes did not provide any corroborating evidence such to satisfy this element of the civil stalking statute. Despite alleging that Meredith posted thousands of statements disparaging and threatening Nunes on Twitter, a public and freely accessible platform, Nunes did not provide any of these allegedly offending posts to the Court. (*See* Doc. 1 at 14.) Nunes did not submit any communications or statements by Meredith to corroborate his allegation that Meredith posted thousands of Tweets disparaging Nunes.

The only documentary evidence that Nunes attached, undermines rather than corroborates his claim. With his opposition to the motion to dismiss,[5] Nunes submitted a screenshot from a website, purportedly identifying Michelle Emmet as the owner of the @devincow Twitter account used to "troll Nunes." (Doc. 10-1 at 85-86 (Nunes Declaration).) Nunes also included a screenshot of Michelle Emmett's personal Twitter page. (*Id.*) Nunes contends he reviewed Emmett's Tweets which revealed "she was tagged by Meredith in innumerable tweets about [Nunes]." (*Id.*) Nunes, however, did not submit any of these "innumerable" Tweets. Nunes also claims the "Whitepages" indicated Emmett was married to Meredith.[6] (*Id.*) Nunes likewise failed

---

[5] Typically, the Court will not consider evidence outside the pleadings on a motion to dismiss. However, because the parties briefed the anti-SLAPP motion according to differing state court procedures and to accord the most favorable review to Nunes, the Court gives a cursory review of the evidence contained in Nunes's declaration as part of the motion to strike. *See Drexler v. Billet*, 784 F. App'x 548, 549 (9th Cir. 2019) (Where the court relied on the "general nature of Drexler's allegations, only glancingly referenced Billet's declaration" it did not incorrectly apply the Rule 12(b)(6) standard.).

[6] The Court fails to see the relevance of this fact. To the extent that Nunes intends to convey that Meredith is responsible for Emmett's Tweets because he was married to her, the Court rejects that notion as unfounded at this time; Nunes has cited no case law suggesting that the actions of an individual can be imputed to their spouse as a matter of law or fact in these circumstances.

to provide this alleged evidence.

Considering only the evidence Nunes has submitted, the website and Emmett's Twitter page indicates *Emmett*, not Meredith, is responsible for the alleged harassment and stalking of Nunes on Twitter. Nothing in the record links Meredith to Emmett's accounts. While the 12(b)(6) standard requires the Court to take facts in the light favorable to the plaintiff and make *reasonable* inferences, it does not require the Court to make illogical leaps. *See Fazaga v. FBI*, 916 F.3d 1202, 1211 (9th Cir. 2019) (internal citations omitted) ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss."). Accordingly, none of the documentary evidence provided by Nunes connects Meredith to the alleged harassment or stalking.[7]  Thus, Nunes has failed to sufficiently plead all explicit elements of stalking claim under § 1708.7. *Rydberg v. U.S. Postal Serv.*, 2021 WL 1851033, *7 (N.D. Cal. Jan. 21, 2021) (finding the complaint's failure to provide "independent corroborating evidence for [defendant's] behavior or identify conduct that constitutes a specific credible threat" failed to state a claim for civil stalking); *see also Roberts v. Levine*, 2019 WL 5650626, at *10 (S.D. Cal. Oct. 30, 2019) (finding Facebook messages attached to the complaint showing defendants reached out to plaintiff several times, but in a positive manner, did not satisfy plaintiff's burden to provide corroborating evidence for its stalking claim). Because Nunes did not sufficiently plead his claim for civil stalking, he failed to show a probability of success at the motion to dismiss stage.

        4.     <u>Claim 3: Common Law Misappropriation</u>

Meredith makes two arguments to support his conclusion that Nunes's misappropriation claim should be dismissed. First, Meredith contends the First Amendment bars the claim. (Mtn. Strike at 21-25.) Second, Meredith argues the statutory exemptions under § 3344(d) prohibit

---

[7] Nunes identifies another incident for which he provided no evidence or logical basis to attribute it to Meredith. Nunes claims that Meredith was associated with a political activist who "harassed" Nunes on plane. (Doc. 1 at 10). According to Nunes, Meredith endorsed the incident by posting photos of it. (*Id.*) However, Nunes did not provide screenshots of Meredith's alleged posts. Although Meredith submitted a copy of a news article reporting the incident with his motion, nothing in this article implicates Meredith's involvement. (Mtn. Strike, Ex. A.) Therefore, this potential evidence suffers from the same defect as the @devincow Twitter page because it shows no connection to an action or statement by Meredith.

1   common law misappropriation actions arising from conduct concerning public affairs. (*Id.* at 26.)
2   As described below, because the Court agrees that § 3344(d) bars Nunes's misappropriation
3   claim, the Court need not reach Meredith's First Amendment argument.

4   Section 3344(d) prohibits a cause of action under the statute for unauthorized use of a
5   person's name, voice, signature, photograph, or likeliness if used "in connection with any news,
6   public affairs, or sports broadcast or account, or any political campaign." Cal. Civ. Code
7   § 3344(d). California courts and the Ninth Circuit apply this statutory exemption to both the
8   statutory and common law causes of action for commercial misappropriation. *See Dora v.*
9   *Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545 (1993) ("[T]he resolution of the statutory cause
10  of action would determine the plaintiff's ability to maintain the common law cause of action.");
11  *see also Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 416-17 (2001) (applying the
12  "public affairs" defense under § 3344(d) to a common law claim for misappropriation); *Estate of*
13  *Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1010 (9th Cir. 2012) ("In
14  other words, California courts do not apply a common law public interest defense, separate and
15  apart from the statutory public affairs defense, to statutory right of publicity claims.").

16  Nunes did not respond to the argument that § 3344(d) bars his misappropriation claim but
17  argued only that "Meredith offers no fact to support any 'transformative use' defense." (Oppo. to
18  Strike at 77.) The "transformative use" defense relates to Meredith's argument under the First
19  Amendment defense but does not apply to the statutory exemption. *See Comedy III Prods., Inc. v.*
20  *Gary Saderup, Inc.*, 25 Cal. 4th 387, 398-407 (2001) (outlining the balancing test applied in cases
21  where defendant asserts the First Amendment bars a claim for misappropriation).

22  Separate from his First Amendment defense, Meredith argues the statutory exemption
23  under § 3344(d) bars Nunes's claim because the alleged conduct underlying the claim relates to a
24  matter of public affairs. (Mtn. Strike at 25-26.) According to Nunes' allegations, Meredith has
25  used Nunes name, photograph, and likeness "for professional fund-raising" and to promote
26  himself and his "multiple anonymous Twitter accounts." (Doc. 1 at 25.) Nunes contends Meredith
27  used his identity and likeness for his own commercial and personal purposes and profited from
28  this use in connection with Meredith's "tweets and other social media posts." (*Id.*) Nunes does not

dispute, however, that the challenged conduct relates to Meredith's critique of Nunes as a political figure. (*See* Oppo. to Strike at 67-68.) In fact, Nunes affirmatively alleges Meredith's intent for appropriating his likeness was to "take advantage of Plaintiff's reputation, prestige, and known brand in Tulare County." (Doc. 1 at 26.) According to Nunes, Meredith's scheme of digital speech targets and seeks to disparage Nunes's reputation as a political figure in the community. (*Id.* at 9-10.) Matters of current political issues, such as commentary on the suitability of a political official squarely fall within the § 3344(d) exemptions. *Michaels v. Internet Entm't Grp.*, 1998 WL 882848, at **3-4 (C.D. Cal. Sept. 10, 1998) (noting § 3344(d) provides a "complete newsworthiness defense" which includes "discussion of politics and public affairs"); *Dora*, 15 Cal. App. 4th at 545-46 (noting the "public affairs" exemption under § 3344(d) includes matters of public interest beyond just "politics or public policy"). Because the challenged conduct arises in the context of Meredith's critique of Nunes as a politician, the Court finds § 3344(d) bars Nunes's claim for misappropriation.[8]

**C.     Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party acted in bad faith. *Leadsinger, Inc. v. BMG Music Pub'g*, 512 F.3d 522, 532 (9th Cir. 2008). The liberal policy of granting leave to amend on Rule 15 equally applies to anti-SLAPP motions styled as motions to dismiss. *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015), aff'd, 853

---

[8] In addition to the arguments addressed above, Nunes makes a general allegation that Meredith caused "spoilation" of evidence by altering his LinkedIn profile "to downplay his expertise in computer science," by "scrubbing" his company's website from the Internet, and by deleting his "medium account." (Oppo. to Strike at 69-71.) Nunes argues the Court should deny Meredith's motion based on this reason alone; however, he cited no statute, local rule, or case law to support his contention. (*Id.*) Because Nunes provides no legal basis upon which the Court can grant his request, the Court will not address this argument. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (courts need not address arguments that are not briefed with specificity).

1   F.3d 1004 (9th Cir. 2017) (internal quotations omitted) ("[I]t is generally error to grant a

2   defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the

3   plaintiff leave to amend."); *see also Sanchez v. Am. Media, Inc.*, 2020 WL 8816343, at *4 (C.D.

4   Cal. Dec. 29, 2020) (explaining how "California and federal courts also differ with respect to

5   granting leave to amend if an anti-SLAPP movant succeeds" because federal courts employ a

6   "more liberal policy"). Nunes did not request leave to amend his complaint, however, the Court

7   "should grant leave to amend even if no request to amend the pleading was made, unless it

8   determines that the pleading could not possibly be cured by the allegation of other facts." *Cook,*

9   *Perkiss & Liehe*, 911 F.2d at 247; *Perez v. Mortg. Elec. Registration Sys.*, 959 F.3d 334, 340 (9th

10  Cir. May 11, 2020).

11         As to Nunes's stalking claim, if he can submit with his amended complaint, independent

12  corroborating evidence to satisfy the statutory requirement under California Civil Code

13  § 1708.7(a)(1), Nunes may sufficiently state a claim and a probability of success to overcome the

14  anti-SLAPP motion at the motion to dismiss stage. Therefore, amendment as to the stalking claim

15  would not be futile, and the Court **GRANTS** leave to amend claim one.

16         Regarding Nunes's claim for misappropriation, however, the Court finds amendment

17  would be futile. As explained above, the statutory exemption under California Civil Code

18  § 3344(d) bars the misappropriation claim as a matter of law. The basic allegations forming

19  Nunes's claim indicate any alleged use of Nunes's name or likeness bears on a public issue

20  because Nunes is a politician in the public eye. (*See* Oppo. to Strike at 67-69; Mtn. Strike at 17-

21  18.) Regardless of any additional facts that Nunes may plead, his current allegations, accepted as

22  true, revolve around Nunes's role as a political figure. Any misappropriation of his identity or

23  likeness in this context would fall into the public affairs exception under § 3344(d). Thus,

24  amendment of additional facts would be futile to remedy Nunes's commercial misappropriation

25  claim. *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (leave to amend properly denied as

26  futile where proposed additional facts would still fail to establish a claim as a matter of law).

27  Accordingly, the Court **DISMISSES** with prejudice claim three.

28

**IV.     ORDER**

For the reasons set forth above, the Court **ORDERS:**

1. The motion to strike the complaint pursuant to California Civil Procedure § 425.16 (Doc. 10-1 at 3-27) is **GRANTED**.

2. The motion for leave to conduct specified discovery pursuant to California Civil Procedure § 425.16(g) (Doc. 10-1 at 142-51) is **DENIED**.

3. Claim One, Civil Stalking under California Civil Code § 1708.7 is **DISMISSED without prejudice**.

4. Claim Three, common law commercial misappropriation, is **DISMISSED with prejudice**.

5. Nunes **SHALL** file an amended complaint within **30 days** of service of this order. **Failure to timely file an amended complaint may result in dismissal of the remaining claim for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated:    **June 21, 2022**                                          /s/ Jennifer L. Thurston
                                                                                     UNITED STATES DISTRICT JUDGE